UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on behalf
of S.M., a minor; and S.M.,

                                  Plaintiffs,

v.

MARK DANNELS; PAT DOWNING;
SUSAN HORMANN; MARY KRINGS;
KRIS KARCHER; SHELLY MCINNES;
RAYMOND MCNEELY; KIP OSWALD;
MICHAEL REAVES; JOHN RIDDLE;
SEAN SANBORN; ERIC SCHWENNINGER;
RICHARD WALTER; CHRIS WEBLEY;
ANTHONY WETMORE; KATHY WILCOX;
CRAIG ZANNI; DAVID ZAVALA; JOEL D.
SHAPIRO as Administrator of the
Estate of David E. Hall; VIDOCQ
SOCIETY; CITY OF COQUILLE; CITY OF
COOS BAY; and COOS COUNTY,

                                Defendants.

Case No. 6:20-cv-01163-MK (Lead Case)

**FINDINGS AND
RECOMMENDATION**

Page 1 — FINDINGS AND RECOMMENDATION

NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor; and S,M,

                                        Plaintiffs,

v.

OREGON STATE POLICE,

                                        Defendant.

_____

Case No. 3:21-cv-1719-MK (Trailing Case)

**FINDINGS AND RECOMMENDATION**

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Nicholas James McGuffin, as an individual and as guardian *ad litem* on behalf of his minor daughter, S.M. ("Plaintiffs"), bring this action against Defendants. First Am. Compl., ECF No. 100 ("FAC"). Plaintiffs' First Claim for Relief under 42 U.S.C. § 1983 alleges ten separate counts of federal violations: Fourteenth Amendment (Count 1); malicious prosecution (Count 2); illegal pretrial detention following the issuance of legal process (Count 3); failure to disclose exculpatory information (Count 4); failure to intervene (Count 5); conspiracy (Count 6); destruction of exculpatory evidence (Count 7); unconstitutional policies, practices, and customs as to Municipal Defendants (Count 8); violation of S.M.'s Fourteenth Amendment rights (Count 9); and vicarious liability as to Vidocq Society Defendants (Count 10). FAC ¶¶ 196–264, ECF No. 100.[1] Against Defendant Oregon State Police ("OSP"), Plaintiffs assert only a § 1983 claim for unconstitutional policies, practices, and customs. *See* Compl. 19, ECF No. 1.[2] Plaintiffs' seven remaining claims for relief arise under Oregon state law: false imprisonment (Second Claim); malicious prosecution (Third Claim); civil conspiracy (Fourth Claim); negligent training and supervision as to Municipal Defendants and OSP (Fifth Claim); intentional infliction of

_____

[1] Unless otherwise noted, all references are to the docket in the Lead Case, 6:20-cv-01163-MK.

[2] *See* Trailing Case, 3:21-cv-01719-MK.

emotional distress (Sixth Claim); negligent and/or intentional spoliation of evidence (Seventh Claim); and attorney fees (Eighth Claim). FAC ¶¶ 265–310, ECF No. 100; Compl. 25, ECF No. 1.[3]

Defendants Hormann, Krings, Riddle, and Wilcox ("State Defendants") move for partial dismissal under Fed. R. Civ. P. 12(b)(6) as to the following counts of Plaintiffs' First Claim for Relief under § 1983: malicious prosecution (Count 2); illegal pretrial detention following issuance of legal process (Count 3); conspiracy (Count 6); and destruction of exculpatory evidence (Count 7). State Defs.' Mot. Dismiss 2, ECF No. 104 ("State Defs.' Mot."). State Defendants also move to dismiss the following state law claims: malicious prosecution (Third Claim); civil conspiracy (Fourth Claim); and negligent and/or intentional spoliation of evidence (Seventh Claim). *Id.*

Defendants Dannels, Downing, Karcher, McInnes, McNeely, Oswald, Reeves, Sanborn, Schwenninger, Webley, Wetmore, Zanni, Zavala, City of Coquille, City of Coos Bay, and Coos County ("Municipal Defendants") move for partial dismissal under Fed. R. Civ. P. 12(b)(6) as to Plaintiffs' malicious prosecution claims under § 1983 (First Claim, Count 2) and Oregon state law (Third Claim). Muni. Defs.' Mot. Dismiss 2–3, ECF No. 105 ("Muni. Defs.' Mot.").

Defendants Vidocq Society and Richard Walters (collectively, "Vidocq Defendants") move for partial dismissal under Fed. R. Civ. P. 12(b)(6) as to the following counts of Plaintiffs' First Claim as to Defendant Vidocq Society only: destruction of exculpatory evidence (Count 1); failure to disclose exculpatory information (Count 4); and failure to intervene (Count 5). Vidocq Defs.' Mot. Dismiss 1, ECF No. 106 ("Vidocq Defs.' Mot."). Vidocq Defendants move to dismiss the following counts of Plaintiffs' First Claim as to both Defendant Vidocq Society and

---

[3] *See* Trailing Case, 3:21-cv-01719-MK.

Page 3 — FINDINGS AND RECOMMENDATION

Defendant Walters: malicious prosecution (Count 2); illegal pretrial detention following issuance of legal process (Count 3); conspiracy (Count 6); unconstitutional policies, practices, and customs (Count 8); violation of S.M.'s Fourteenth Amendment rights (Count 9); and vicarious liability (Count 10). *Id.* Vidocq Defendants also move to dismiss the following state law claims: malicious prosecution (Third Claim); civil conspiracy (Fourth Claim); and negligent or intentional spoliation of evidence (Seventh Claim). *Id.* at 1–2.

Defendant Oregon State Police ("OSP") moves for partial dismissal under Fed. R. Civ. P. 12(b)(6) as to Plaintiffs' § 1983 claim alleging unconstitutional policies, practices, and customs. OSP Mot. Dismiss 2, 5, ECF No. 120 ("OSP Mot."). OSP also moves to dismiss the following state law claims: malicious prosecution (Third Claim); civil conspiracy (Fourth Claim); and negligent and/or intentional spoliation of evidence (Seventh Claim). *Id.* at 5.

For the reasons that follow, State Defendants' motion for partial dismissal (ECF No. 104) should be GRANTED in part and DENIED in part; Municipal Defendants' motion for partial dismissal (ECF No. 105) should be DENIED; Vidocq Defendants' motion for partial dismissal (ECF No. 106) should be GRANTED in part and DENIED in part; and OSP's motion for partial dismissal (ECF No. 120) should be GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiffs' FAC and are accepted as true for the purpose of the pending motions. *See* FAC, ECF No. 100.

Plaintiff Nicholas McGuffin ("McGuffin") spent nine years in prison after being convicted on a non-unanimous verdict in Coos County Circuit Court of manslaughter for the murder of his girlfriend, Leah Freeman ("Freeman"). *Id.* ¶¶ 21–27. In December 2019, all charges against McGuffin were dismissed, and McGuffin was released from prison. *Id.* ¶ 25.

### I.    Freeman's Disappearance

Freeman disappeared on June 28, 2000. That evening, McGuffin drove Freeman to her friend's house, Cherie Mitchell. McGuffin did not see, speak with, or otherwise interact with Freeman ever again after dropping her off at the Mitchell residence. *Id.* ¶¶ 28–29. Sometime before 9:00 p.m., Mitchell and Freeman argued, Freeman grew angry with Mitchell, and Freeman left the Mitchell residence alone on foot and walked toward town. Multiple witnesses, including Mitchell, saw Freeman walking alone in the direction of Coquille High School. Witnesses also saw Freeman standing outside the high school and across the street from the high school. The last known witness reported seeing Freeman alive near the cemetery and the gas station between 9:15 p.m. and 9:30 p.m. At 11:30 p.m., Freeman's right tennis shoe was reportedly found near the cemetery and the gas station. *Id.* ¶¶ 31–36.

Shortly after 9:00 p.m. that night, the time McGuffin planned to pick up Freeman for a double date with their friends, McGuffin arrived at the Mitchell residence and learned that Freeman had left and started walking toward town. McGuffin began to search for Freeman that night and continued to search for her. *Id.* ¶¶ 40–42. More than twenty witnesses saw and interacted with McGuffin, and other records confirmed McGuffin's whereabouts and activities while he was searching for Freeman. *Id.* ¶¶ 43–44.

On June 29, 2000, McGuffin and Freeman's family reported Freeman missing to the City of Coquille Police Department ("CPD"). Plaintiffs allege CPD initially refused to investigate or even search for Freeman. *Id.* ¶¶ 45–48. On August 3, 2000, Freeman's body was found approximately eight miles from the location where she had last been seen alive. *Id.* ¶ 39.

II.    **Original Investigation**

After initially refusing to investigate, CPD and Defendant City of Coquille decided to conduct an investigation. Several of the Municipal Defendants (the "Original Investigating Officers") investigated the murder but did not make an arrest. The Original Investigating Officers included Defendants Reaves, Hall, McInnis, Zavala, Downing, Oswald, Zanni, Wetmore, and Karcher. *Id.* ¶¶ 48–51. During the investigation, Defendant Oswald allegedly discovered Freeman's left tennis shoe but did not take any steps to preserve evidence from the shoe or the area where it was found. *Id.* ¶¶ 37–38. Plaintiffs allege all Original Investigating Officers agreed to fabricate evidence against McGuffin and falsely reported that McGuffin failed a polygraph examination in an attempt to coerce false confessions from McGuffin and his friend, Brent Bartley. The Original Investigating Officers also allegedly reported the fabricated results of McGuffin's polygraph examination to the public through media outlets. *Id.* ¶¶ 52–59.

The Original Investigating Officers used the fabricated polygraph evidence to obtain two search warrants for McGuffin's property, and fabricated reports of traffic stops with McGuffin on the night of Freeman's murder. The Original Investigating Officers also allegedly destroyed a videotape containing exculpatory evidence and attempted to persuade a witness, Kristen Steinhoff, to falsely implicate McGuffin in Freeman's murder, later suppressing evidence of these attempts as well. Although they did not indict or arrest McGuffin, the Original Investigating Officers continued to harass and question him about Freeman's murder without McGuffin's attorney present. *Id.* ¶¶ 60–71, 86–89.

Freeman's right shoe that was found during the original investigation was tested for DNA at the OSP Lab in July 2000. The test revealed Freeman's DNA as well as the DNA of an unidentified male that did not match McGuffin's DNA. Plaintiffs allege that this evidence was

suppressed by Defendants Krings, Hormann, and Wilcox ("OSP Lab Defendants") and the Original Investigating Officers. Sometime after the original investigation concluded, the case of Freeman's murder went cold. *Id.* ¶¶ 72–86.

### III.    Cold Case Investigation

Eight years after Freeman's death, in 2008, Defendant Reeves resigned as the Coquille Chief of Police and Defendant Dannels became the new Chief. Working with a team of Defendants McNeely, Sanborn, Webley, Karcher, Zanni, Schwenninger, Hormann, and Wilcox (the "Cold Case Investigators"), Dannels reopened the Freeman investigation. Plantiffs allege that the Cold Case Investigators—some of whom were also the Original Investigating Officers— knew that the Original Investigating Officers crafted a false theory of McGuffin's guilt based on fabricated evidence and knew of exculpatory evidence that established McGuffin's innocence. *Id.* ¶¶ 91–101.

In addition to suppressing the evidence fabricated by the Original Investigating Officers, the Cold Case Investigators allegedly fabricated additional evidence, including a false report that blood was found on Freeman's right shoe. The City of Coquille also requested assistance from the Vidocq Society, an organization comprised of volunteers who provide pro bono forensic assistance on cold case homicides at the request of law enforcement agencies. Plaintiffs allege Defendant City of Coquille and the Cold Case Investigators did so because Vidocq Society would be willing to develop a "profile" that would falsely purport to link McGuffin to the crime. *Id.* ¶¶ 102–109.

Plaintiffs allege Defendant Walter volunteered as a "profiler" and agent for the Vidocq Society at the time Defendant Dannels reopened the Freeman investigation. Defendant Walter allegedly agreed to create a psychological profile of Freeman's killer that implicated McGuffin

in her murder, and then presented it to the media and to the Cold Case Investigators. While standing next to the cemetery where Freeman was last seen alive, Defendant Dannels told the televised news program "20/20" that Freeman's shoe was found on the road with blood on it. Together with the Cold Case Investigators, Walter also allegedly fabricated a motive for Freeman's murder and falsely reported that Freeman may have been pregnant at the time of her murder, that McGuffin was afraid he would be charged with statutory rape if the pregnancy was discovered, and that the blood on the right tennis shoe indicated Freeman had been "smashed in the face." Plaintiffs allege that Defendant McNeely also reported the pregnancy theory on the news program "20/20" even though he knew that it was false, as did Walter. *Id.* ¶¶ 110–121.

The Cold Case Investigators also allegedly fabricated evidence by making false reports and eliciting false testimony from witnesses Scott Hamilton, Richard Bryant, and John Lindegren, whose statements were used against McGuffin both at grand jury and at trial. In 2010, 10 years after Freeman's death, McGuffin was indicted for Freeman's murder based on Defendants' fabricated evidence. *Id.* ¶¶ 122–140.

## IV.   McGuffin's Arrest and Trial

McGuffin was arrested and charged on August 23, 2010. The Cold Case Investigators invited "20/20" to film the arrest while making false and inflammatory statements about McGuffin to the show's producers, including statements about McGuffin's motive for murdering Freeman; that McGuffin could be carrying a gun; that McGuffin's car had been "wiped" of evidence of the murder; and that several witnesses had placed McGuffin with Freeman on the night Freeman was abducted. Plaintiffs allege that at the time they made these statements, the Cold Case Investigators knew or should have known that they were false and failed to intervene in each other's wrongdoing. McGuffin was detained continuously from his arrest date until his

trial. About one year after the indictment, McGuffin was tried and convicted of manslaughter by a non-unanimous vote of the jury. The DNA evidence found on Freeman's shoe was never disclosed by the prosecution to McGuffin's lawyers, or to the jury at McGuffin's trial. *Id.* ¶¶ 140–158.

McGuffin appealed his conviction but the direct appeals of his conviction were denied and he sought post-conviction relief. In December 2019, the District Attorney unilaterally moved to dismiss all charges against McGuffin. The District Attorney then pursued an *ex parte* order of dismissal without waiting for any response to the motion. Plaintiff alleges that the District Attorney previously told a reporter, "[t]here is unknown male DNA on those shoes. Does it exonerate McGuffin? Maybe, but I don't know." Plaintiff further alleges that the District Attorney recognized that, if pursued, the action would result in a decision in favor of McGuffin due to lack of inculpatory evidence, as well as exculpatory evidence and government misconduct discovered during the post-conviction case. On December 17, 2019, the court dismissed the criminal case and McGuffin was released from custody. By the time McGuffin was released from custody, he had served over nine years in jail and prison. *Id.* ¶¶ 164–168.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l*

*Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## DISCUSSION

### I.    Section 1983 Claims

State Defendants move for partial dismissal as to the following counts of Plaintiffs' First Claim for Relief under § 1983: malicious prosecution (Count 2); illegal pretrial detention following issuance of legal process (Count 3); conspiracy (Count 6); and destruction of exculpatory evidence (Count 7). State Defs.' Mot. 2, ECF No. 104. OSP moves for partial

dismissal as to Plaintiffs' § 1983 claim alleging unconstitutional policies, practices, and customs (First Claim, Count 8). OSP Mot. 2, 5, ECF No. 1

Municipal Defendants move for partial dismissal as to Plaintiffs' malicious prosecution claims under § 1983 (First Claim, Count 2). Muni. Defs.' Mot. 2–3, ECF No. 105.

Vidocq Defendants move for partial dismissal as to the following counts of Plaintiffs' First Claim as to Defendant Vidocq Society only: destruction of exculpatory evidence (Count 1); failure to disclose exculpatory information (Count 4); and failure to intervene (Count 5). Vidocq Defs.' Mot. 1, ECF No. 106. Vidocq Defendants move to dismiss the following counts of Plaintiffs' First Claim as to both Defendant Vidocq Society and Defendant Walters: malicious prosecution (Count 2); illegal pretrial detention following issuance of legal process (Count 3); conspiracy (Count 6); unconstitutional policies, practices, and customs (Count 8); violation of S.M.'s Fourteenth Amendment rights (Count 9); and vicarious liability (Count 10). *Id.*

## A.    Personhood

This Court previously dismissed Plaintiffs' § 1983 claims because "OSP has not waived its Eleventh Amendment immunity" and "OSP is not a 'person' for the purposes of Plaintiff's § 1983 claim[.]" F&R 16, ECF No. 83; Order, ECF No. 99. The question here is whether OSP, by removing to federal court and therefore waiving its Eleventh Amendment immunity, is now a "person" for the purpose of § 1983.[4] OSP argues that it is not because Eleventh Amendment immunity and § 1983 "personhood" are distinct issues. OSP Mot. 6, ECF No. 120. Plaintiffs argue OSP "unequivocally waived its immunity when it removed to federal court" and is "therefore, a 'person' subject to suit under section 1983." Pls.' Resp. 2, ECF No. 122.

---

[4] OSP concedes it "waived its immunity from the jurisdiction of federal court" by removing this case to federal court. OSP's Mot. 6, ECF No. 120.

In *Will*, the Supreme Court held that a state is not a "person" within the meaning of §

1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). At the heart of the parties'

dispute is their differing interpretations of the following portion of *Will*:

> This does not mean, as petitioner suggests, that we think that the
> scope of the Eleventh Amendment and the scope of § 1983 are not
> separate issues. Certainly they are. But in deciphering
> congressional intent as to the scope of § 1983, the scope of the
> Eleventh Amendment is a consideration, and we decline to adopt a
> reading of § 1983 that disregards it.

*Id.* at 66–67. OSP argues that *Will* did not collapse Eleventh Amendment immunity and § 1983

personhood into a single issue. OSP Reply 3, ECF No. 123. Plaintiffs, however, argue that the

Supreme Court "explicitly tied the two concepts together." Pls.' Resp. 8, ECF No. 122.

In *Lapides*, the Supreme Court held "that the State's action joining the removing of this

case to federal court waived its Eleventh Amendment immunity—though, as we have said, the

District Court may well find that this case, now raising only state-law issues, should nonetheless

be remanded to the state courts for determination." *Lapides v. Board of Regents*, 535 U.S. 613,

624 (2002). The Supreme Court limited its analysis to the context of state law claims because the

plaintiff's "only federal claim against the State arises under 42 U.S.C. § 1983, that claim seeks

only monetary damages, and we have held that a State is not a 'person' against whom a §

1983 claim for money damages might be asserted." *Id.* at 616–17.

Given the Supreme Court's reasoning in *Lapides*, Eleventh Amendment *immunity* and

Section 1983 "*personhood*" are distinct concepts. The Supreme Court has "routinely

addressed *before* the question whether the Eleventh Amendment forbids a particular statutory

cause of action to be asserted against States, the question whether the statute itself *permits* the

cause of action it creates to be asserted against States (which it can do only by clearly expressing

such an intent)." *Vermont Agency of Natural Resources v. United States*, 529 U.S. 765, 799

(2000) (emphasis in original). "The ultimate issue in the statutory inquiry is whether States can be sued under this statute; and the ultimate issue in the Eleventh Amendment inquiry is whether unconsenting States can be sued under this statute." *Id.* A state's waiver of Eleventh Amendment immunity does not resolve the question of whether Section 1983 itself *permits* the cause of action against the state. Under *Will* and *Lapides*, it is clear that Section 1983 does not permit the cause of action against OSP because a state is not a "person" against whom a § 1983 claim might be asserted. *See Lapides*, 535 U.S. at 616–17; *Will*, 491 U.S. at 64.[5]

Here, while OSP waived its Eleventh Amendment immunity by removing this action to federal court, it did not concede it is a "person" within the meaning of § 1983. As such, OSP's motion to dismiss should be granted with prejudice as to Plaintiffs' § 1983 claim alleging unconstitutional policies, practices, and customs (Count 8).

## B.    *Monell* Doctrine

This Court previously dismissed all counts of Plaintiffs' § 1983 claim against Defendant Vidocq Society because "the Complaint does not allege that the Vidocq Society had knowledge of [Defendant] Walter's conduct throughout the investigation and prosecution[.]" F&R 33, ECF

---

[5] In their Response, Plaintiffs cite to *Walden v. Nevada*, 945 F.3d 1088, 1095 (9th Cir. 2019). Under *Walden*, "a State defendant that removes a case to federal court waives its immunity from suit on all federal-law claims in the case, including those claims that Congress failed to apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity." 945 F.3d 1088, 1094 (9th Cir. 2019). However, as explained, the ability to sue "persons" within the definition of Section 1983 is a different legal question than Eleventh Amendment immunity. *See Lapides*, 535 U.S. at 616–17, 624 (determining that a state's removal to federal court waived its Eleventh Amendment immunity, but also noting no viable Section 1983 claim existed because a State is not a "person" under section 1983); *see also, e.g.*, *Rapley v. Oregon Dep't of Human Servs.*, No. 3:17-cv-00294-YY, 2017 WL 2927164, at *8 (D. Or. June 19, 2017) ("While it is true that removal waives 11th Amendment immunity, this waiver does not change the requirement that Section 1983 claims must be brought against persons, not states and their agencies."); *Strong v. Washington*, 2021 WL 510621, at *2 (E.D. Wash. Feb. 11, 2021) ("[T]he defense of Eleventh Amendment immunity is separate and distinct from the issue of whether Defendants are 'persons' within the definition of § 1983."); *Mueller v. Department of Public Safety*, 2020 WL 1866428, at *2 (D. Haw. Apr. 14, 2020) ("A State Defendant can consent to suit in federal court based on removal. The ability to sue 'persons' within the definition of Section 1983 is a different question. The question is sometimes intertwined with 'sovereign immunity' in the caselaw, but these are separate legal arguments and should be made as such."). Additionally, *Walden* concerned a Fair Labor Standards Act claim in which "personhood" was not at issue. As such, the Ninth Circuit's *Walden* decision did not affect the Supreme Court's ruling in *Will* that a state is not a "person" within the meaning of § 1983.

No. 83; Order, ECF No. 99. In the FAC, Plaintiffs allege that "Defendant Vidocq Society acted as an agent of Defendant City of Coquille and was acting under color of law and within the scope of its agency for Defendant City of Coquille." FAC ¶ 10, ECF No. 100.

Vidocq Defendants argue that: (1) Plaintiffs fail to allege any additional facts in the FAC that Vidocq Society had actual knowledge of Defendant Walter's conduct throughout the investigation and prosecution, Vidocq Defs.' Mot. 22, ECF No. 106; and (2) "[t]here is no *respondeat superior* liability for private corporations for its employees' or agents' deprivations of others' civil rights under § 1983," Vidocq Defs.' Reply 2, ECF No. 115.

    1.   <u>Respondeat Superior</u>

First, "[a] private corporation may be liable under § 1983[.]" F&R 33, ECF No. 83; Order, ECF No. 99; *see also Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1209 ("[I]n certain circumstances, a litigant may seek damages under 42 U.S.C. § 1983 from a private party based on a violation of a constitutional right.").[6] In *Monell*, the Supreme Court held that municipalities and other local government units could be sued for constitutional violations under § 1983. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978). The court also held, however, that "a municipality cannot be held liable solely because it employs a tortfeasor— or, in other words . . . on a *respondeat superior* theory." *Id.*

In *Tsao*, the Ninth Circuit held that *Monell* also applies to suits against private entities. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). "As *Monell* observed, the text of § 1983 'cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.'" *Id.* "To create

---

[6] The Court has previously determined that Plaintiffs "have alleged that Vidocq Defendants were state actors for the purposes of § 1983." F&R 32, ECF No. 83; Order, ECF No. 99.

liability under § 1983, the constitutional violation must be caused by 'a policy, practice, or custom of the entity[.]'" *Id.*

Plaintiff asks this Court "to consider the arguments raised across the country . . . that support *respondeat superior* liability for private entities like the Vidocq Society." Pl.'s Resp. 17, ECF No. 112. However, the Ninth Circuit in *Tsao* held clearly that *Monell* applies to private entities, and this Court is bound by that holding. As such, Plaintiffs cannot proceed against Defendant Vidocq Society on a *respondeat superior* theory of liability. Vidocq Defendants motion to dismiss should be granted as to that theory.

2.    Sufficiency of *Monell* Claim

"To make out a claim against [a private corporation] under *Monell*, [a plaintiff] must show that (1) [the private corporation] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [the private corporation]." *Tsao*, 698 F.3d at 1139 (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1024 (9th Cir. 2008)).

Plaintiffs allege that "[t]he violation of McGuffin's constitutional rights and resulting wrongful conviction were not mere accidents or anomalies but, instead, were caused by the policies, practices, and/or customs of the City of Coquille, Coos County, the City of Coos Bay, and the Vidocq Society (the 'Municipal Defendants')." FAC ¶ 185, ECF No. 100. Vidocq Defendants argue that Plaintiffs have impermissibly lumped Defendants Vidocq Society and Walter in with "Municipal Defendants" in violation of Rule 8. Vidocq Defs.' Reply 13, ECF No. 115.[7]

---

[7] In *Destfino v. Reiswig*, the Ninth Circuit addressed the issue of "shotgun pleadings":

> The order dismissing the first amended complaint explained that the complaint grouped multiple defendants together and failed to "set out which of the

Because the FAC does not distinguish between Defendant Vidocq Society and Municipal Defendants, Plaintiffs have not sufficiently pled facts to state a *Monell* claim against Defendant Vidocq Society. As such, Plaintiffs' § 1983 claim against Defendant Vidocq Society should be dismissed.

In sum, Counts 1 through 9 should be dismissed without prejudice and with leave to amend, while Count 10 (Vicarious Liability of Vidocq Society) should be dismissed with prejudice because Plaintiffs cannot proceed against Defendant Vidocq Society on a *respondeat superior* theory of liability.

### C.    First Claim, Count 2: Malicious Prosecution

#### 1.    State and Municipal Defendants

State Defendants argue dismissal is appropriate as to Plaintiffs' First Claim, Count 2 because Plaintiffs cannot allege the prosecution was terminated in McGuffin's favor. State Defs.' Mot. 1, ECF No. 104. Municipal Defendants argue dismissal is appropriate as to Plaintiffs' First Claim, Count 2 because: (1) Plaintiffs cannot allege the prosecution was terminated in McGuffin's favor; and (2) the "law of the case" has already established that Plaintiff's malicious prosecution claims fail. Muni. Defs.' Mot. 3–6, ECF No. 105. Plaintiffs argue they have properly pled facts from which a jury may infer "favorable termination" and find Defendants liable for malicious prosecution. Pls.' Resp. 14–16, ECF No. 110. Plaintiffs further argue that the "law of the case" doctrine does not apply. Pls.' Resp. 3–4, ECF No. 111.

---

defendants made which of the fraudulent statements/conduct." The district court made clear in this order that plaintiffs must amend their "shotgun pleading" to "state[ ] clearly how each and every defendant is alleged to have violated plaintiffs' legal rights." The second amended complaint was properly dismissed because it failed to do this, continuing to make "everyone did everything" allegations.

630 F.3d 952, 959 (9th Cir. 2011) (alterations in original).

Federal courts rely on state common law for the elements of state law malicious prosecution. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). To prevail on a malicious prosecution claim under Oregon law, the claimant must demonstrate (1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the claimant's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result. *Miller v. Columbia City*, 282 Or. App. 348, 360 (2016). While "[d]ismissal of an indictment at the request of the district attorney is generally sufficient to satisfy the requirement that the criminal proceeding has terminated in the favor of the plaintiff," *Rose v. Whitbeck*, 277 Or. 791, 798–99 (1977), the dismissal must "reflect adversely on the merits of the action," *Perry v. Rein*, 215 Or. App. 113, 130 (2007).

The termination standard for Plaintiffs' federal claim of malicious prosecution, however, is determined by federal law. Under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), a claimant is not permitted to bring a civil rights claim that would render his criminal conviction invalid until his underlying conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." The Supreme Court reiterated in *McDonough v. Smith* that the favorable termination requirement is satisfied "once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*." 139 S. Ct. 2149, 2157 (2019).

After State Defendants argued Plaintiffs' claims warranted dismissal because the relevant criminal proceedings did not terminate in McGuffin favor, this Court previously determined:

> Here, Plaintiffs have alleged that after McGuffin's conviction was
> vacated, the charges against him were dismissed. Under

> *McDonough* and *Heck*, all that is required to bring a § 1983 claim
> of malicious prosecution is that the underlying conviction has been
> invalidated "in some way." Thus, the District Attorney's reasons
> for dismissing the charges against McGuffin notwithstanding,
> McGuffin's conviction was vacated by Judge Sullivan's General
> Judgment and the Coos County District Attorney dismissed all
> criminal charges against him. McGuffin's underlying conviction
> was thus terminated in McGuffin's favor within the meaning of
> *Heck*, and Plaintiffs are entitled to bring their federal claim of
> malicious prosecution against Defendants.

F&R 31, ECF No. 83. The Court finds no reason to reconsider its previous finding that

McGuffin's underlying conviction was terminated in his favor within the meaning of *Heck*. As

such, State Defendants' motion and Municipal Defendants' motion should be denied as to

Plaintiffs' First Claim, Count 2.

        2.    <u>Vidocq Defendants</u>

Vidocq Defendants argue dismissal is appropriate as to Plaintiffs' First Claim, Count 2

because: (1) this Court has already determined that the claim is time-barred; and (2) Plaintiffs

have not alleged facts demonstrating that Defendant Walter contributed to the grand jury's

indictment, McGuffin's arrest, or McGuffin's conviction. Vidocq Defs.' Mot. 11–14, ECF No.

106. Plaintiffs argue: (1) this Court did not dismiss Plaintiffs' federal claim for malicious

prosecution as time-barred; and (2) this Court already considered and rejected the Vidocq

Defendants' assertion that Defendant Walter did not influence the indictment, prosecution, or

conviction. Pls.' Resp. 7–9, ECF No. 112.

First, the Court notes that it previously dismissed Plaintiff's "Illegal Detention and

Prosecution" claim because "Plaintiffs could have brought their false arrest and false

imprisonment claims immediately after McGuffin's arrest, notwithstanding his pending criminal

proceedings." F&R 20, ECF No. 83. In the Ninth Circuit, a claimant's false arrest and false

imprisonment claims based on an arrest that ultimately led to a conviction, and which was later

invalidated because the arrest was not supported by probable cause, are barred by the *Heck*

doctrine. *Id.*; *see Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). However, this Court

dismissed the previous "Illegal Detention and Prosecution" claim without prejudice and noted

that "Plaintiffs are entitled to bring their federal claim of malicious prosecution against

Defendants." F&R 20, ECF No. 83. As such, the Court did not previously find that Plaintiffs'

federal malicious prosecution claim was time-barred.

Second, the Court has already considered Defendant Walter's role in McGuffin's

prosecution:

> With respect to Plaintiffs' federal count of illegal prosecution,
> however, the Court disagrees with the Vidocq Defendants'
> argument for the same reasons stated above. Here, Plaintiffs have
> alleged that Walter fabricated evidence that formed the basis of
> McGuffin's wrongful prosecution, indictment, and conviction, and
> that Walter made statements to prosecutors to influence the
> criminal proceedings. Specifically, Walter created a psychological
> profile of Freeman's killer and presented it to the media and to the
> Cold Case Investigators. Together with the Cold Case
> Investigators, Walter also allegedly fabricated a motive for
> Freeman's murder by falsely reporting that Freeman may have
> been pregnant at the time of her murder, and that McGuffin was
> afraid he would be charged with statutory rape if the pregnancy
> was discovered. On this record, the Vidocq Defendants' motion to
> dismiss Plaintiffs' federal count of illegal detention and
> prosecution should be denied.

F&R 35, ECF No. 83. The Court finds no reason to reconsider its previous finding. As such,

Vidocq Defendants' motion should be denied as to Plaintiff's First Claim, Count 2 as to

Defendant Walter only. However, as discussed above, Vidocq Defendants' motion should be

granted as to Defendant Vidocq Society, with leave to amend, because Plaintiffs have not

sufficiently pled facts to state a *Monell* claim against Defendant Vidocq Society.

### D.      First Claim, Count 3: Illegal Pretrial Detention

State Defendants argue dismissal is appropriate as to Plaintiffs' First Claim, Count 4 because it merely renames their time-barred "Illegal Detention and Prosecution" claim that this Court previously dismissed. State Defs.' Mot. 6, ECF No. 104. Plaintiffs argue this Court only dismissed as time barred the portion of Plaintiffs' claim that arose out of the arrest, the FAC contains no claim related to McGuffin's arrest, and Count 3 concerns only a claim for an ongoing wrong that commenced after the issuance of legal process. Pls.' Resp. 9–10, ECF No. 110.

Vidocq Defendants argue dismissal is appropriate as to Plaintiffs' First Claim, Count 3 because: (1) this Court has already determined that the claim is time-barred; (2) Plaintiffs have not alleged facts demonstrating that Vidocq Defendants held McGuffin in custody or that either Defendant had any control over McGuffin's post-legal process detention; and (3) Plaintiffs failed to allege McGuffin suffered an ongoing harm from the time of his arrest to his release or facts that McGuffin's arrest was predicated solely on false statements. Vidocq Defs.' Mot. 14–15, ECF No. 106. Plaintiffs argue: (1) Plaintiffs did not plead a claim for violation arising out of McGuffin's arrest; and (2) the Court already considered and rejected Vidocq Defendants' assertion that they did not hold McGuffin in custody or have control over his detention. Pls.' Resp. 10–13, ECF No. 112.

First, and as explained above, the Court previously dismissed Plaintiff's "Illegal Detention and Prosecution" claim because "Plaintiffs could have brought their false arrest and false imprisonment claims immediately after McGuffin's arrest, notwithstanding his pending criminal proceedings. As such, Plaintiffs' claim of illegal detention should be dismissed because it fails to sufficiently establish an ongoing wrong commencing at McGuffin's pretrial detention."

F&R 20, ECF No. 83. In the Ninth Circuit, a claimant's false arrest and false imprisonment

claims based on an arrest that ultimately led to a conviction and which was later invalidated

because the arrest was not supported by probable cause, are barred by the *Heck* doctrine. *Id.*; *see*

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). In their FAC, Plaintiffs' illegal pretrial

detention claim does not concern McGuffin's arrest. Because this Court only found that the

portion of Plaintiffs' claim that arose out of the arrest was time barred, Plaintiffs' First Claim,

Count 3 (illegal pretrial detention) is not time barred. As such, State Defendants' motion should

be denied as to Plaintiffs' First Claim, Count 3.

Second, the Court previously made the following findings as to Plaintiffs' state law

claim:

> The Vidocq Defendants argue that they cannot be liable for Count
> Two of Plaintiffs' First Claim for illegal detention, and Plaintiffs'
> Second Claim of false imprisonment. The Vidocq Defendants
> assert that they cannot be liable for these claims because they did
> not imprison McGuffin or participate in his arrest or prosecution. .
> . . Here, Plaintiffs have pleaded facts that support Walter's liability
> for instigating McGuffin's imprisonment by producing a
> psychological profile that implicated McGuffin in Freeman's
> murder and by knowingly suppressing other evidence. The
> Complaint alleges that Walter took an active role in the
> investigation and prosecution by partnering with law enforcement
> to become an agent of the City of Coquille. . . . Because Plaintiffs
> have alleged that Walter actively influenced the investigation of
> Freeman's murder and McGuffin's subsequent indictment, arrest,
> and prosecution, the Court rejects the Vidocq Defendants'
> arguments.

F&R 33–34, ECF No. 83. Vidocq Defendants, however, assert that the above findings were

restricted to Plaintiffs' illegal detention claim under Oregon state law, and silent as to Plaintiffs'

federal claim. Vidocq Defs.' Reply, ECF No. 115. Vidocq Defendants' distinction is a red

herring.

In their FAC, Plaintiffs allege "Defendants, individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, caused McGuffin to be subjected to illegal pretrial detention following the issuance of legal process, in spite of the fact that they knew McGuffin was innocent, in violation of his rights secured by the Fourth Amendment and incorporated by the Fourteenth Amendment." FAC ¶ 213, ECF No. 100. The Supreme Court has noted that

> pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. . . . That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. . . . If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.

*Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 137 S.Ct. 918–19 (2017). Here, Plaintiffs have alleged Defendant Walter created a false psychological profile that implicated McGuffin, fabricated a motive for Freeman's murder that implicated McGuffin, and made false statements to the media and Cold Case Investigators. FAC ¶¶ 110–121, ECF No. 100. Taking Plaintiffs' allegations as true, Defendant Walter's conduct contributed to false statements that were the basis of McGuffin's pretrial detention unsupported by probable cause. That Defendant Walter's false statements were not the only false statements at issue is immaterial. Plaintiffs have sufficiently pled facts giving rise to a Fourth Amendment illegal pretrial detention claim. As such, Vidocq Defendants' motion should be denied as to Plaintiff's First Claim, Count 3.

### E.    First Claim, Count 6: Conspiracy

State Defendants and Vidocq Defendants argue dismissal is appropriate as to Plaintiffs'

First Claim, Count 6 because Plaintiffs have failed to allege a meeting of the minds to support a

plausible conspiracy. State Defs.' Mot. 7–10, ECF No. 104; Vidocq Defs.' Mot. 16, ECF No.

106.

To plausibly allege the existence of a conspiracy, a plaintiff must show "an agreement or

'meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps*

*Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (quotations omitted). "To be liable, each

participant in the conspiracy need not know the exact details of the plan, but each participant

must at least share the common objective of the conspiracy." *Id.* at 1541. In addition, the

Plaintiffs must allege that defendants acted jointly in concert and that some overt act was done in

furtherance of the conspiracy. *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974).

This Court previously determined:

> Plaintiffs have not pled the existence of overt acts that plausibly
> support a conspiracy. Plaintiffs allege that the Vidocq Defendants
> fabricated a psychological profile that implicated McGuffin in
> Freeman's murder, as well as other evidence that supported a false
> theory of McGuffin's guilt. Plaintiffs also alleged that the Vidocq
> Defendants suppressed exculpatory evidence, and that the
> fabricated evidence formed the basis for McGuffins' wrongful
> arrest, indictment, and conviction. While the facts presented in the
> complaint present parallel conduct that facilitated McGuffin's
> indictment and eventual conviction, they do not "nudge [the] claim
> across the line from conceivable to plausible." *Twombly*, 550 U.S.
> at 570. Because Plaintiffs have failed to plausibly allege a meeting
> of the minds between all Defendants implicated in the alleged
> conspiracy, Plaintiffs' Sixth Claim should be dismissed, and with
> leave to amend.

F&R 17–18, ECF No. 83; Order, ECF No. 99.

In the FAC, Plaintiffs allege the Original Investigation never stopped because the Original Investigation and the Cold Case Investigation were part of the same investigation with multiple overlapping members. FAC ¶ 94, ECF No. 100. As to the Defendant Walter, Plaintiffs specifically allege that, "at the time they agreed to involve Defendant Walter as an agent in the investigation," the City of Coquille and the Cold Case Investigators knew about Defendant Walter's prior misconduct. Plaintiffs further allege that "Defendants Walter and Vidocq Society offered the same service to the City of Coquille and the Cold Case Investigators who needed to fabricate a motive and corresponding narrative to overcome the obvious weaknesses in the case against McGuffin, including the fact of his innocence." *Id.* ¶¶ 106–111.

Taking these allegations as true, Plaintiffs have adequately pled the existence of a meeting of the minds and overt acts that plausibly support a conspiracy. As such, State Defendants' motion and Vidocq Defendants' motion should be denied.

### F.    First Claim, Count 7: Destruction of Exculpatory Evidence

State Defendants argue dismissal is appropriate as to Plaintiffs' First Claim, Count 7 because it does not contain sufficient factual allegations to support a plausible inference that State Defendants unlawfully destroyed evidence. State Defs.' Mot. 10–11, ECF No. 104. This Court previously determined that the "allegations in the Complaint are sufficient to link each Defendant to this conduct for the purposes of stating a claim that Defendants failed to disclose exculpatory evidence." F&R 11, ECF No. 83; Order, ECF No. 99. Since then, Plaintiff has alleged additional facts in the FAC to show that each and every named Defendant knowingly possessed exculpatory evidence and failed to disclose it. For example, Plaintiffs explicitly allege the destruction of evidence by each of the State Defendants (Hormann, Krings, Riddle, and Wilcox).  FAC ¶¶ 240, 305. As such, State Defendants' motion should be denied.

### G.    First Claim, Count 8: Unconstitutional Policies, Practices, and Customs

In their motion, Vidocq Defendants indicate they move for partial dismissal as to Plaintiffs' First Claim, Count 8 as to both Vidocq Society and Walter. Vidocq Defs.' Mot. 1, ECF No. 106; *see also* Vidocq Defs.' Reply 1, ECF No. 115. As explained *supra* § I.B.2, Plaintiffs have not pled facts sufficient to state a *Monell* claim against Defendant Vidocq Society. Moreover, Plaintiffs' FAC alleges "McGuffin's injuries were caused by the policies, practices, and customs of the Municipal Defendants, as well as by the actions of policy-making officials for the Municipal Defendants." FAC ¶ 245, ECF No. 100. Nowhere in the FAC do Plaintiffs allege Defendant Walter was a policy-making official for Municipal Defendants. *See, e.g.*, *id.* ¶¶ 244–57. As such, Plaintiffs' First Claim, Count 8 should be dismissed without prejudice and with leave to amend.[8]

### H.    First Claim, Count 9: Violation of S.M.'s 14th Amendment Rights

Vidocq Defendants move for partial dismissal as to Plaintiffs' First Claim, Count 9 as to both Vidocq Society and Walter. Vidocq Defs.' Mot. 1, ECF No. 106; *see also* Vidocq Defs.' Reply 1, ECF No. 115. Vidocq Defendants, under the heading of "Count 9: Violation of S.M.'s Fourteenth Amendment Rights Should be Dismissed," argue the following: "Defendant Vidocq Society reincorporates their earlier argument that the Court previously dismissed all 42 U.S.C. § 1983 claims against them due to finding no liability for Walter's conduct pursuant to respondeat superior liability and therefore, Count 8 should be dismissed as to Vidocq Society." Vidocq Defs.' Mot. 21, ECF No. 106.

The Court has scoured Vidocq Defendants' motion and reply and has been unable to find an argument as to why Plaintiffs' First Claim, Count 9 should be dismissed as to Defendant

---

[8] Municipal Defendants do not move to dismiss Plaintiffs' First Claim, Count 8. *See* Muni. Defs.' Mot. 2–3, ECF No. 105.

Walter. *See id.*; *see also* Vidocq Defs.' Reply, ECF No. 115. As such, Vidocq Defendants'

motion should be denied as to Plaintiffs' First Claim, Count 9 against Defendant Walter.

> **I.      First Claim, Count 10: Vicarious Liability of Vidocq Society**

In their motion, Vidocq Defendants indicate they move for partial dismissal as to

Plaintiffs' First Claim, Count 10 as to both Vidocq Society and Walter. Vidocq Defs.' Mot. 1,

ECF No. 106; *see also* Vidocq Defs.' Reply 1, ECF No. 115. However, Plaintiffs bring their First

Claim, Count 10 as to Defendant Vidocq Society only. *See* FAC ¶¶ 244–57, ECF No. 100.

Defendant Walter is not implicated in Count 10.

As explained above, under the Ninth Circuit's holding in *Tsao*, Plaintiffs cannot proceed

against Defendant Vidocq Society on a *respondeat superior* theory of liability. As such, and as

recommended above, Plaintiffs' First Claim, Count 10 should be dismissed with prejudice.

**II.    State Law Claims**

State Defendants move to dismiss the following state law claims: malicious prosecution

(Third Claim); civil conspiracy (Fourth Claim); and negligent and/or intentional spoliation of

evidence (Seventh Claim). State Defs.' Mot. 2, ECF No. 104. For the purpose of this discussion,

"State Defendants" include OSP.

Municipal Defendants move to dismiss Plaintiff's state law claims malicious prosecution

claim (Third Claim). Muni. Defs.' Mot. 2–3, ECF No. 105.

Vidocq Defendants move to dismiss the following state law claims: malicious

prosecution (Third Claim); civil conspiracy (Fourth Claim); and negligent and/or intentional

spoliation of evidence (Seventh Claim). Vidocq Defs.' Mot. 1–2, ECF No. 106

For the reasons that follow, as to Plaintiffs' state law claims, State Defendants' motion should be DENIED; Municipal Defendants' motion should be DENIED; and Vidocq Defendants' motion should be DENIED.

### A.   Third Claim: Malicious Prosecution

State Defendants, Municipal Defendants, and Vidocq Defendants argue dismissal is appropriate as to Plaintiff's state law malicious prosecution claim because the criminal proceedings against McGuffin did not terminate in his favor. State Defs.' Mot. 11, ECF No. 104; Muni. Defs.' Mot., ECF No. 105; Vidocq Defs.' Mot. 29, ECF No. 106.

This Court previously determined:

> Here, Judge Sullivan's General Judgment vacating McGuffin's conviction contained no indication of a finding of innocence or exoneration. After McGuffin's conviction was vacated, it was within the discretion of the Coos County District Attorney to proceed with a new criminal trial against McGuffin. The Coos County District Attorney chose not to so proceed and dismissed the charges against McGuffin, stating that he chose this course of action because two of prosecution's key witnesses were deceased, and because McGuffin had already served 9 years of a potential 10-year sentence for manslaughter. The dismissal of charges against McGuffin therefore does not "reflect adversely on the merits" of those charges as required by state law for a favorable termination. *Perry*, 215 Or. App. at 130.

> Plaintiffs argue that it is improper for the Court to consider the reason that the charges against McGuffin were dismissed in determining whether the termination of McGuffin's charges was "favorable." The court in *Perry*, however, noted that in Oregon, a fact-specific inquiry is required to determine whether a voluntary dismissal of charges was favorable. The purpose of the inquiry is to determine whether the decision to dismiss the charges reflected adversely on the merits of the case. *Id.*, at 126. The *Perry* court found that a complainant's motivations for dismissing a complaint were directly relevant to the question of favorable termination. *Id.*, at 128. Because Plaintiffs have not alleged facts to show that the criminal charges against McGuffin were favorably terminated in a way that reflects adversely on the merits of the charges, Plaintiffs'

state law claim of malicious prosecution (Third Claim) should be
dismissed, and with leave to amend.

F&R 30, ECF No. 83.

Since then, Plaintiffs have alleged in their FAC that, before dismissing the charges

against McGuffin, the District Attorney told a reporter, "[t]here is unknown male DNA on those

shoes. Does it exonerate McGuffin? Maybe, but I don't know." FAC ¶ 165, ECF No. 100.

Plaintiffs also allege that, "[b]ased upon information and belief, the District Attorney recognized

that, if pursued, the action would result in a decision in favor of McGuffin due to the lack of

inculpatory evidence, as well as the exculpatory evidence and government misconduct

discovered during the post-conviction case." *Id.* ¶ 166.

As this Court has noted, under *Perry*, a fact-specific inquiry is required to determine

whether a voluntary dismissal of charges was favorable. *Perry*, 215 Or. App. at 130.

Additionally, the *Perry* court determined that a complainant's motivations for dismissing a

complaint were directly relevant to the question of favorable termination. *Id.* at 128. Taking

Plaintiffs' allegations as true, the District Attorney's dismissal reflected adversely on the merits

of the action. As such, the Court concludes that McGuffin's underlying conviction was thus

terminated in McGuffin's favor. The State Defendants' motion, Municipal Defendants' motion,

and Vidocq Defendants' motion should be denied as to Plaintiff's state law malicious

prosecution claim.

### B.    Fourth Claim: Civil Conspiracy

As explained above, Plaintiffs have adequately pled the existence of a meeting of the

minds and overt acts that plausibly support a conspiracy. As such, State Defendants' motion and

Vidocq Defendants' motion should be denied as to Plaintiffs' state law civil conspiracy claim.

### C.      Seventh Claim: Negligent/Intentional Spoliation of Evidence

State Defendants and Vidocq Defendants both argue that Plaintiff has not alleged

sufficient facts to support a spoliation of evidence claim under Oregon state law. State Defs.'

Mot. 2, ECF No. 104; Vidocq Defs.' Mot. 25–26, ECF No. 106.

The Court previously determined:

> The State Defendants argue that Plaintiffs' Spoliation Claim
> should be dismissed as to the State Defendants because it does not
> allege spoliation by any State Defendant. On the contrary,
> Plaintiffs allege that the State Defendants suppressed DNA
> evidence found on one of Freeman's shoes, as well as other
> potentially exculpatory evidence and evidence of Defendants' own
> misconduct. (Compl. ¶¶ 65-66, 296.) Plaintiffs have thus identified
> the State Defendants' roles in the spoliation of evidence.
> . . .
> Although Plaintiffs allege that Walter fabricated evidence to
> implicate McGuffin in Freeman's murder, there are no specific
> allegations that either of the Vidocq Defendants participated in the
> destruction of any evidence.

F&R 26, ECF No. 83; Order, ECF No. 99.[9] As explained, since then, Plaintiffs have alleged

additional facts in their FAC to show that each and every named State Defendant knowingly

possessed exculpatory evidence and failed to disclose it. FAC ¶¶ 240, 305. Additionally,

Plaintiffs allege in the FAC that "Defendants Vidocq Society and Walter destroyed all evidence

of their involvement and misconduct in the criminal case against McGuffin, except a single two-

page internal memorandum documenting certain fabricated evidence." Id. ¶ 305. These

allegations are sufficient to support a spoliation of evidence claim under Oregon state law. As

---

[9] The Court notes a scrivener's error a page later in which the Court added "the State Defendants are not alleged to have participated in the destruction of videotapes or any other evidence." F&R 27–28, ECF No. 83. The Court earlier found that Plaintiffs had sufficiently identified the State Defendants' roles in the spoliation of evidence. *See id.* at 26. Additionally, given the allegations in Plaintiffs' FAC, this Court is satisfied Plaintiffs have sufficiently alleged a state law spoliation of evidence claim.

such, State Defendants' motion and Vidocq Defendants' motion should be denied as to Plaintiffs' state law spoliation of evidence claim.

## III.    Sanctions

In responding to Vidocq Defendants' motion to dismiss, Plaintiffs ask the Court to "award Plaintiffs the costs incurred to oppose the specific arguments that were already considered and rejected by the Court." Pls.' Resp. 1, ECF No. 112. To the extent Plaintiffs are requesting sanctions under Rule 11, Plaintiffs' request should be denied because "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

## RECOMMENDATION

For the reasons above, OSP's motion for partial dismissal (ECF No. 120) should be GRANTED in part and DENIED in part; State Defendants' motion for partial dismissal (ECF No. 104) should be GRANTED in part and DENIED in part; Municipal Defendants' motion for partial dismissal (ECF No. 105) should be DENIED; and Vidocq Defendants' motion for partial dismissal (ECF No. 106) should be GRANTED in part and DENIED in part. The Court summarizes the recommendation for each claim raised in Defendants' motions to dismiss as follows:

I.     First Claim: Section 1983

a.   Count 1: Fourteenth Amendment

Defendant Vidocq Society:              GRANTED, dismissed without prejudice

b.   Count 2: Malicious Prosecution

Defendant Vidocq Society:              GRANTED, dismissed without prejudice

Defendant Walter:                            DENIED

|   |   |
|---|---|
| State Defendants: | DENIED |
| Municipal Defendants: | DENIED |

c.  Count 3: Illegal Pretrial Detention

|   |   |
|---|---|
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |
| Defendant Walter: | DENIED |
| State Defendants: | DENIED |

d.  Count 4: Failure to Disclose Exculpatory Information

|   |   |
|---|---|
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |

e.  Count 5: Failure to Intervene

|   |   |
|---|---|
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |

f.  Count 6: Conspiracy

|   |   |
|---|---|
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |
| Defendant Walter: | DENIED |
| State Defendants: | DENIED |

g.  Count 7: Destruction of Exculpatory Evidence

|   |   |
|---|---|
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |
| State Defendants: | DENIED |

h.  Count 8: Unconstitutional Policies, Practices, and Customs

|   |   |
|---|---|
| Defendant OSP: | GRANTED, dismissed with prejudice |
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |

i.  Count 9: Violation of S.M.'s Fourteenth Amendment Rights

|   |   |
|---|---|
| Defendant Vidocq Society: | GRANTED, dismissed without prejudice |

    j.   Count 10: Vicarious Liability of Vidocq Society

        Defendant Vidocq Society:          GRANTED, dismissed with prejudice

II.    State Law Claims

    a.   Third Claim: Malicious Prosecution

| | |
|---|---|
| State Defendants: | DENIED |
| OSP: | DENIED |
| Municipal Defendants: | DENIED |
| Vidocq Defendants: | DENIED |

    b.   Fourth Claim: Civil Conspiracy

| | |
|---|---|
| State Defendants: | DENIED |
| OSP: | DENIED |
| Vidocq Defendants: | DENIED |

    c.   Seventh Claim: Spoliation of Evidence

| | |
|---|---|
| State Defendants: | DENIED |
| OSP: | DENIED |
| Vidocq Defendants: | DENIED |

///

///

///

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. *See* Fed. R. Civ. P. 72. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED this <u>16th</u> day of September 2022.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge