Anthony R. Scisciani III, OSB No. 070013
Meredith A. Sawyer, *pro hac vice*
Kelsey L. Shewbert, OSB No. 221063
Lisa Lear, OSB No. 852672
HWS LAW GROUP
101 SW Main Street, Suite 1605
Portland, OR 97204
Phone: (503) 542-1200
Fax: (503) 542-5248
ascisciani@hwslawgroup.com
msawyer@hwslawgroup.com
kshewbert@hwslawgroup.com
llear@hwslawgroup.com
*Attorneys for Defendant Vidocq Society*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem,* on behalf of S.M., a minor,<br><br>                              Plaintiffs,<br><br>   v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY, | Civil Case No. 6:20-CV-01163-MK (Lead Case)<br><br><br>DEFENDANT VIDOCQ SOCIETY'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P 56<br>Request For Oral Argument |

Defendants.

EE

VIDOCQ SOCIETY,

             Cross-Claimant.

v.

MARK DANNELS, PAT DOWNING,
SUSAN HORMANN, MARY KRINGS,
KRIS KARCHER, SHELLY MCINNES,
RAYMOND MCNEELY, KIP OSWALD,
MICHAEL REAVES, JOHN RIDDLE,
SEAN SANBORN, ERIC
SCHWENNINGER, RICHARD WALTER,
CHRIS WEBLEY, ANTHONY WETMORE,
KATHY WILCOX, CRAIG ZANNI, DAVID
ZAVALA, JOEL D. SHAPIRO AS
ADMINISTRATOR OF THE ESTATE OF
DAVID E. HALL, CITY OF COQUILLE,
CITY OF COOS BAY, and COOS COUNTY.

             Cross Defendants


NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on behalf
of S.M., a minor,

             Plaintiffs,

v.

OREGON STATE POLICE,

             Defendant.

Civil Case No. 3:21-cv-01719- MK
(Trailing Case)

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

## TABLE OF CONTENTS

*Page*

LOCAL RULE 7-1 CERTIFICATION ................................................................11

MOTION.............................................................................................................11

MEMORANDUM IN SUPPORT .......................................................................11

I.     INTRODUCTION. ....................................................................................11

II.    STATEMENT OF FACTS .........................................................................14

    A. 2000: Investigation into Freeman's Homicide ......................................14

    B. 2008-2010: Cold Case Investigation ...................................................16

        1.   Scope of re-investigation by Cold Case Investigators .....................16

        2.   Oregon law enforcement consult with Vidocq..................................16

            a. Initial scheduling communications with Vidocq........................16

            b. Background information regarding Vidocq and Walter ............17

            c. Oregon law enforcement's presentation of Freeman case to Vidocq ........19

            d. Walter's additional involvement in Freeman case after Vidocq

              luncheon ......................................................................................22

    C. 2010-2011: Indictment, Arrest, Trial, Conviction, and Denial of McGuffin's

      Appeals.................................................................................................22

        1.   Vidocq had no involvement in the Grand Jury proceedings or indictment......22

        2.   Vidocq had no involvement in McGuffin's arrest, prosecution, or trial ..........23

    D. 2015-2019 McGuffin's Post-Conviction Proceedings...........................26

III.   CURRENT PROCEDURAL POSTURE ................................................27

    A. Original Complaint ...............................................................................27

    B. First Amended Complaint ....................................................................28

    C. Second Amended Complaint.................................................................29

IV.   LEGAL STANDARD & ARGUMENT ..................................................30

    A. Summary Judgment Standard ...............................................................30

    B. In light of Court's Prior Dismissal of Plaintiffs' claims for Vicarious

      Liability (§1983) and False Light and Defamation (state law), Vidocq cannot

      be held liable for any tortious conduct by Walter. ..................................30

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 3

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

C. Plaintiffs Cannot Establish Liability under §1983 based upon *Monell* because Vidocq is a Private Entity, was Not Acting Under Color of State Law, and its Conduct Did Not Amount to State Action. ........................................32

   1. To prove a *Monell* claim under §1983, Plaintiffs must show Vidocq was a state actor. ......................................................................................32

   2. Tests to determine whether a private entity's conduct amounts to state action. .............................................................................................33

   3. Vidocq was Private, nonprofit organization and was not a state actor; at most, Vidocq acted as a limited consultant................................34

D. Plaintiffs Also Cannot Establish Liability under *Monell* because they Cannot Establish that Vidocq's Conduct Proximately Caused the Deprivation of Their Constitutional Rights............................................37

   1. Plaintiffs cannot establish that Vidocq fabricated any evidence which led to McGuffin's conviction.............................................................38

   2. Plaintiffs cannot establish that Vidocq suppressed any evidence that led to McGuffin's conviction.....................................................................39

   3. The evidence is undisputed that Vidocq's conduct had no impact on McGuffin's arrest, prosecution, or conviction..................................41

E. Plaintiffs Cannot Establish the Elements of their State-Law Claims, which should be Dismissed with Prejudice .......................................43

   1. Plaintiffs cannot establish proximate cause regarding their state law claims. .......................................................................................43

   2. Plaintiffs cannot establish other requisite elements of their state tort claims. .......................................................................................43

      a. False Imprisonment.............................................................43

      b. Malicious Prosecution.........................................................44

      c. Civil Conspiracy .................................................................45

      d. Negligent Training and Supervision ....................................46

      e. Intentional Infliction of Emotional Distress ........................47

      f. Negligent and/or Intentional Spoliation of Evidence...........47

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 4

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

F.  Plaintiff SM Cannot Recover for Loss of Consortium Under §1983 or Under Oregon State Law...................................................................................49

　　1.  Plaintiff SM cannot establish her loss of consortium claim under §1983. ......49

　　2.  Plaintiff SM cannot establish her loss of consortium claim under Oregon state law. ...................................................................................................49

G.  Plaintiffs' Claims are Barred by the Doctrine of Issue Preclusion. .......................50

　　1.  The doctrine of issue preclusion prevents litigation in a later proceeding of an issue of fact or law that has been finally determined in a prior proceeding...........................................................................................50

　　2.  All elements of issue preclusion are established here, warranting the dismissal of the current civil rights action. ...................................................51

　　　　a.  The fundamental issue in the prior PCR proceeding and the current civil action is identical.  ....................................................................51

　　　　b.  Preclusive effect of PCR judgment and opportunity to be heard.........52

　　　　c.  The issue of whether McGuffin was wrongly convicted was "actually litigated" in the PCR proceedings, given the unique nature of those PCR proceedings. .......................................................52

　　　　　　i.  Unique nature and requirements of PCR proceeding .............52

　　　　　　ii.  Actual litigation of wrongful conviction issue in the PCR proceeding..............................................................................54

H.  This Court Should Take Judicial Notice of the Pleadings and Orders from Oregon State Court Proceedings Relied Upon in this Motion..............................57

V.  CONCLUSION..................................................................................58

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 5

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

## TABLE OF CASES AND AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry,*
449 U.S. 90 (1980)................................................................................50

*American Manufacturers Mutual Insurance Co. v. Sullivan,*
526 U.S. 40 (1999)................................................................................32

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...............................................................................30

*Arnold v. IBM,*
637 F.2d 1350  (9th Cir. 1981) ...............................................................37

*Ashley v. Hoyt,*
912 P.2d 393, 139 Or. App. 385 (1996)...................................................52

*Bartz v. State,*
314 Or. 353, 839 P.2d 217 (1992) ..........................................................52

*Berg on behalf of Est. of Higbee v. Benton,*
297 Or. App. 323, 443 P.3d 714 (2019)...................................................50

*Blum v. Yaretsky,*
457 U.S. 991 (1982)...............................................................................34

*Bonds v. Landers,*
279 Or. 169, 566 P.2d 513 (1977) ..........................................................45

*Brady v. Maryland,*
373 U.S. 83 (1963)........................................................................ *passim*

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993)...............................................................................39

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).........................................................................29, 30

*Chavez v. State,*
364 Or. 654, 438 P.3d 381 (2019) ..........................................................53

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 6

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*Classen v. Arete NW, LLC,*
254 Or. App. 216, 294 P.3d 520 (2012)...........................................................................47

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
251 F.3d 1252 (9th Cir. 2001) .........................................................................................29

*Collins v. Christie,*
No. 06-4702, 2007 WL 2407105 (E.D. Pa. 2007) ...........................................................36

*Crumpton v. Gates,*
947 F.2d 1418 (9th Cir. 1991) .........................................................................................37

*Cruz v. Multnomah Cnty.,*
279 Or. App. 1, 381 P.3d 856 (2016)...............................................................................43

*Curnow v. Ridgecrest Police,*
952 F.2d 321, (9th Cir. 1991) ..........................................................................................48

*Datt v. Hill,*
347 Or 672, 677–80, 227 P3d 714 (2010) .......................................................................53

*Deeths v. Lucile Slater Packard Children's Hospital at Stanford,*
No. 1:12-cv-02096-LJO, 2013 WL 6185175  (E.D. Cal., 2013) ......................................36

*Drake v. Portundo,*
321 F.3d. 338 (2nd Cir. 2003)..........................................................................................22

*Evans v. Chalmers,*
703 F.3d 636 (4th Cir. 2012) ...........................................................................................37

*Flagg Bros., Inc. v. Brooks,*
436 U.S. 149 (1978)..........................................................................................................32

*Gilbert v. Feld,*
788 F. Supp. 854 (E.D. Pa. 1992) ....................................................................................36

*Gorenc v. Salt River Project Agr. Imp. & Power Dist.,*
869 F.2d 503 (9th Cir. 1989) ...........................................................................................33

*Green v. Franke,*
357 Or. 301, 350 P.3d 188 (2015) ...................................................................................53

*Harper v. City of Los Angeles,*
533 F.3d 1010  (9th Cir. 2008) ..................................................................................32, 37

*Jensen v. Lane Cnty.,*
222 F.3d 570 (9th Cir. 2000) ......................................................................32, 33

*King v. Massarweh,*
782 F.2d 825 (9th Cir.1986) ..............................................................................37

*Lichau v. Baldwin,*
333 Or. 350, 39 P.3d 851 (2001) .......................................................................52

*Lockhead v. Weinstein,*
24 Fed. App'x 805 (9th Cir. 2001) ....................................................................36

*Lugar v. Edmondson Oil Co.,*
457 U.S. 922 (1982).......................................................................................32, 33

*Marbet v. City of Portland,*
CV 02-1448-HA, 2003 WL 23540258 (D. Or. Sept. 8, 2003) ..........................49

*Massey v. Ojaniit,*
759 F.3d 343 (4th Cir. 2014) .............................................................................38

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986).............................................................................................30

*McGanty v. Staudenraus,*
321 Or. 532, 901 P.2d 841 (1995) ......................................................................46

*Melo v. Oregon,*
6:15-CV-02177-MC, 2016 WL 297430 (D. Or. Jan. 20, 2016) ........................47

*Miller v. Baldwin,*
176 Or. App 500, 32 P.3d 234 (2001).................................................................53

*Mills v. City of Covina,*
921 F.3d 1161 (9th Cir. 2019) ............................................................................50

*Monell v. Dep't of Soc. Servs. of City of New York,*
436 U.S. 658 (1978)................................................................................... *passim*

*National Collegiate Athletic Assn. v. Tarkanian,*
488 U.S. 179 (1988)............................................................................................32

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 8

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*Nelson v. Emerald People's Utility Dist.,*
318 Or. 99, 862 P.2d 1293 (1993) ...................................................................50

*Northwest v. Presbyterian Intercommunity Hosp.,*
293 Or 543, 652 P.2d 318 (1982) ....................................................................49

*O'Handley v. Padilla,*
579 F. Supp. 3d 1163, (N.D. Cal. 2022) ...........................................................36

*O'Handley v. Weber,*
62 F.4th 1145 (9th Cir. 2023) ..........................................................................36

*Omnipoint Communications, Inc. v. Comi,*
233 F.Supp.2d 388, 395 (N.D.N.Y.2002)..........................................................35

*Osborne v. Fadden,*
285 Or. App 431, 437 (2009)...........................................................................45

*Patterson v. Miller,*
451 F. Supp. 3d 1125, (D. Ariz. 2020), aff'd, 857 Fed. Appx. 282 (9th Cir. 2021). .........38

*Rawson v. Recovery Innovations, Inc.,*
975 F.3d 742 (9th Cir. 2020) .....................................................................33, 34

*Rayburn v. Hogue,*
241 F.3d 1341 (11th Cir. 2001) ......................................................................33

*Reeves v. Nooth,*
294 Or. App 711, 432 P3d 1105 .....................................................................52

*Rendell–Baker v. Kohn,*
457 U.S. 830 (1982)........................................................................................32

*R-Goshen LLC v. Andrews,*
115 F. App'x 465 (2d Cir. 2004) .....................................................................35

*R-Goshen LLC v. Vill. of Goshen,*
289 F. Supp. 2d 441 (S.D.N.Y. 2003)..............................................................35

*Soderstrom v. Premo,*
274 Or. App 624, 360 P3d 1272 (2015), *rev den.*, 358 Or. 550 (2016)............................53

*State v. Dell,*
156 Or. App. 184, 967 P2d 507 (1998)..............................................................53

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 9

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*State v. Sines,*
359 Or. 41, 379 P.3d 502 (2016) ................................................................45, 46

*State Farm Fire & Cas. Co. v. Century Home Components, Inc.,*
275 Or. 97, 550 P.2d 1185 (1976) ....................................................................50

*State Farm Fire & Cas. Co. v. Sallak,*
140 Or. App. 89, 914 P.2d 697 (1996)..............................................................51

*Teegarden v. State ex rel. Oregon Youth Auth.,*
270 Or. App. 373, 348 P.3d 273 (2015)............................................................44

*Terry v. Maricopa County Comm. Col. Dist.,*
626 F. Supp 3d.1092 (2022) .............................................................................49

*Tiano v. Elsensohn,*
268 Or. 166, 520 P.2d 358 (1974) ....................................................................51

*Tiner v. Premo,*
284 Or. App 59, 391 P 3d 816 (2017)...............................................................53

*Tsao v. Dessert Palace, Inc.,*
698 F 3d.1128 (9th Cir. 2012) ....................................................................28, 32

*Washington v. Johnson,*
165 Or. App. 578, 997 P.2d 263 (2000), *rev. den.* 330 Or. 553 ......................53

*West v. Atkins,*
487 U.S. 42, 49 (1988)......................................................................................32

## Statutes

42 U.S.C. §1983.......................................................................................... *passim*

Fed. Rule of Evidence 201 ...............................................................................57

ORS 43.130......................................................................................................52

ORS 40.135(1)(c)..............................................................................................48

ORS 138.510, et. seq. ............................................................................52, 53, 55

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Defendant Vidocq Society and Plaintiffs conferred by telephone on January 6, 2025 on the nature of the instant Motion and were unable to resolve these issues.

The body of this Motion is 49 pages and complies with the limits set forth by the court in its order dated November 27, 2024, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.[1]

## MOTION

Pursuant Federal Rule of Civil Procedure 56 Defendant Vidocq Society ("Vidocq") moves for summary judgment on all claims asserted by Plaintiff Nicholas McGuffin individually ("McGuffin") and on behalf of his minor daughter, S.M. ("SM"), as her *guardian ad litem* (collectively, "Plaintiffs"), as set forth in their Second Amended Complaint ("SAC").[2] This Motion is supported by the accompanying memorandum, the Declarations of Meredith A. Sawyer ("MAS Decl."), and Norman W. Frink ("NF Decl.") and exhibits thereto, and the pleadings and records on file.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

This case arises out of Plaintiff Nicholas McGuffin's claim that he was wrongly convicted of killing his 15-year-old girlfriend, Leah Freeman ("Freeman") in 2000. He

---

[1] DKT #271, Order
[2] DKT #143, SAC

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

assigns blame for that conviction to all parties who were involved in the criminal proceedings against him.

Plaintiffs' Second Amended Complaint asserts nine counts under 42 USC §1983 ("§1983") and seven causes of action under Oregon state law against the Oregon law enforcement entities and their employees involved in the investigation of Freeman's homicide, including City of Coquille, City of Coos Bay, Coos County, and Oregon State Police. Plaintiffs also assert claims against defendant Vidocq, a private, volunteer organization who briefly consulted with the City of Coquille Police Department ("CPD") and State prosecuting attorney regarding the Freeman case, and Vidocq's former member, defendant Richard Walter ("Walter").

The crux of Plaintiffs' §1983 claims against Vidocq is premised on *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiffs contend that Vidocq, acting as an agent of CPD, failed to enact adequate policies and procedures which led to the deprivation of McGuffin's constitutional rights. Without any evidence, Plaintiffs contend that Vidocq employed defendant Walter, who, due to the absence of adequate policies and procedures, partnered with CPD and other defendants to intentionally fabricate and suppress evidence in an effort to frame McGuffin for Freeman's homicide in violation of McGuffin's constitutional rights.[3]

Plaintiffs' §1983 claims against Vidocq are without merit and should be dismissed with prejudice. First, this Court has already ruled that Vidocq cannot be held liable for

---

[3] McGuffin contends that he was deprived of his right to due process and a fair trial under the 14th amendment and his right to be free from prosecution absent probable cause under the 4th amendment. He further contends that SM (a minor) was deprived of his love and affection as her father in violation of the 14th amendment.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Walter's conduct under a vicarious liability/ respondent superior theory. Second, Plaintiffs cannot meet the threshold requirement of state action necessary to impose separate liability on Vidocq as private entity. The evidence is undisputed that Vidocq was not a "state actor" acting under color of state law but, instead, was a private entity acting, at most, as a limited consultant to the CPD. Accordingly, Vidocq has no obligations under *Monell* and cannot be liable for failing to enact adequate policies and procedures. Third, Plaintiffs cannot establish the proximate cause element of their §1983 claims. Not only is there no evidence that Vidocq fabricated or suppressed any evidence, but it is also undisputed that Vidocq's nominal involvement in the Freeman case had no effect whatsoever on McGuffin's indictment, arrest, prosecution, or conviction. Fourth, SM's loss of consortium claim necessarily fails, given the lack of merit of her father's (McGuffin') §1983 claim.

Plaintiffs' state tort claims against Vidocq are equally meritless and should also be dismissed with prejudice. As with the §1983 claims, Plaintiffs cannot establish that Vidocq's conduct was the proximate cause of any alleged harm, nor can they satisfy the other requisite elements of their state tort claims as described in more detail below.

Finally, Plaintiffs' claims are barred in their entirety based upon the doctrine of issue preclusion.[4] The Malheur County Circuit Court, which heard McGuffin's Petition for Post-Conviction Relief, previously entered a General Judgment identifying the three limited bases for concluding that McGuffin was wrongly convicted of Freeman's homicide

---

[4] This Court has not ruled on Vidocq' issue preclusion defense (aka "collateral estoppel") but instead ruled on the previously asserted res judicata defense (aka "claim preclusion"). *See,* DKT #83, p.23. The elements of the two defenses are distinct.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

and vacating the conviction. The General Judgment does not identify any conduct by Vidocq as a basis for McGuffin's wrongful conviction. Plaintiffs are prohibited by the doctrine of issue preclusion from re-litigating the basis for McGuffin's wrongful conviction and now arguing that Vidocq was cause of that conviction.

## II.    STATEMENT OF FACTS

### A.    2000: Investigation into Freeman's Homicide

Leah Freeman was born in 1985 and grew up in the small town of Coquille, Oregon. She was beloved by her family and friends. As a high school freshman, she participated in volleyball, basketball, and track. She was particularly close to her mother, Cory Courtwright, and they had very loving relationship.[5] Sheri Mitchell, Freeman's best friend, described Freeman during McGuffin's criminal trial as follows:

> She was hilarious. She was so funny and she was fun and goofy and like this little ball of energy that nobody could keep up with. She was just – everybody wanted to be around her. Like she was just friends with everybody. I mean, she was just – I don't know – she was awesome.[6]

On the evening of June 28, 2000, 15-year-old Leah Freeman went missing. She was last seen walking away from her friend Sherri Mitchell's house.[7] Freeman's disappearance was initially treated as a runaway by the CPD, but after she had been missing for several days, a formal homicide investigation was initiated.[8]

---

[5] Cory Cortwright Criminal Trial Testimony, Day 3, at p. 44:24-25; 46:3-8, 55:13-16, **Exh. 1** to Decl. of Meredith A. Sawyer ("MAS Decl.")
[6] Sherri Mitchell Criminal Trial Testimony, Day 4 at 57:4-8, **Exh. 2** to MAS Decl.
[7] DKT #143, SAC at ¶¶22
[8] Dep. of Micheal Reaves at 53:12-16, **Exh. 3** to MAS Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

The CPD was the lead law enforcement agency on the case.[9] Its investigation was initially conducted by then Chief of Police, defendant Michael Reeves, with the assistance of defendants Coos County Sherriff's Office and Medical Examiner Kris Karcher, and defendant City of Coos Bay Police Department (collectively, "Original Investigating Officers" per the SAC).[10] On August 3, 2000, six weeks after her disappearance, Freeman's significantly decomposed body was found at a remote wooded site, eight miles outside of Coquille.[11]

From the outset, Plaintiff Nicholas McGuffin was considered the primary person of interest by Oregon law enforcement.[12] The original investigation included interviews of dozens of witnesses, DNA testing of Leah's tennis shoes and clothing by a lab in England, polygraph examinations administered to McGuffin and several other witnesses, analysis conducted of McGuffin and another witness's (Bartley) written statements by the FBI, inspections and other forensic testing of physical evidence (including McGuffin's property and vehicles), and DNA swabs from people of interest (McGuffin, William Sero, and Kip Oswald).[13]

Notwithstanding the efforts of the Original Investigating Officers no suspects were arrested. In approximately 2002, the case went cold.[14]

---

[9] *Id*. at 54:14-55:8
[10] DKT #143, SAC ¶¶ 51
[11] Dep. of Paul Frasier (current case) at 45:17-20, **Exh. 4** to MAS Decl.
[12] *Id*. at 62:5-11; Dep. of Craig Zanni at 68:12-69:14, **Exh. 5** to MAS Decl.; Expert Report of Norman Frink, at p. 7 at ¶1, **Exh. A** to Decl. of Norman Frink ("NF Decl.").
[13] CPD Case Summary of Freeman provided to Vidocq, **Exh. 6** to MAS Decl.; Frasier Dep (PCR case) at 13:4 -21:5, **Exh. 7** to MAS Decl.; Fraiser Dep. (current case) at 57:14-59:3, **Exh. 4** to MAS Decl.
[14] General Judgment (PCR case) at ¶6, **Exh. 8** to MAS Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

B.    **2008-2010: Cold Case Investigation**

1.  **Scope of re-investigation by Cold Case Investigators**

In 2008, defendant Mark Dannels ("Dannels"), the newly elected CPD Chief of Police reopened the Freeman case, in conjunction with the Coos County District Attorney, Paul Fraiser ("Frasier").[15] Dannels put together a new team of investigators, (collectively "Cold Case Investigators" per the SAC) and began a two-year re-investigation of Freemans's homicide.[16] Under Dannels' and Frasier's lead, their new efforts included collecting, itemizing, and organizing all old evidence; conducting fresh interviews of old and new persons of interest; reexamining old evidence, and following up on new leads.[17]

2.  **Oregon Law Enforcement consult with Vidocq**

a.  **Initial scheduling communications with Vidocq**

In July 2009, Dannels was approached by Vidocq's case manager at the time Fred Bornhoffen (now deceased) regarding the Freeman case. Bornhoffen proposed that Oregon law enforcement consider presenting the Freeman case for consideration at one of Vidocq's monthly lunch meetings.[18] Dannels discussed the matter with Frasier who agreed it was worth exploring.[19]

---

[15] DKT 143, SAC ¶94
[16] DKT 143, SAC ¶95: The "Cold Case Investigators" included defendants Mark Dannels (CPD Chief of Police), Raymond McNeeley, Sean Sanborn and Chris Webley (CPD), Craig Zanni (Coos County Sherriff); Krish Karcher (Coos County ME); Eric Schwenninger (Coos Bay PD); Susan Hormann and Kathy Wilcox (Oregon State Police Lab) and John Riddle (Oregon State Police).
[17] Dannels Dep. Vol. II (7/15/22) at 248:25- 260:18, **Exh. 9** to MAS Decl.; Dannels Dep. Vol. III (9/1/23) at 55:24-57:24, **Exh. 10** to MAS Decl.; Frasier Dep. (PCR case) at 36:6-42:9, **Exh. 7** to MAS Decl.
[18] Dannels Dep Vol. II (7/15/22) at 312:22-313:3; **Exh. 9** to MAS Decl.; Letter from Bornhoffen to Dannels, **Exh. 11** to MAS Decl.
[19] Frasier Dep.(current case) at 223:3-224:9, **Exh. 4** to MAS Decl.; Dannels Dep. Vol. III ( 9/1/23) at 87:12-22, **Exh. 10** to MAS Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

### b. Background information regarding Vidocq and Walter

Vidocq is a private 501(c)(3) non-profit, pro-bono organization, incorporated as a fraternal organization in Pennsylvania in 1991 and run as a social organization.[20] Vidocq is governed by its Articles of Incorporation, Constitution and Bylaws, and Code of Ethics and Conduct and is run by a volunteer board of directors, consisting of a commissioner, case manager, secretary and treasurer.[21] Vidocq's membership consists of a diverse group of professionals with expertise in the criminal justice system. The members are all volunteers.[22] Vidocq's stated mission is to act as a free resource to law enforcement agencies in their effort to solve cold homicide cases, particularly to smaller jurisdictions that do not have the expertise or resources to fully investigate a homicide.[23]  Vidocq has no employees. It has never been hired or retained by any law enforcement agency and does not charge for its limited consultation. This is true with respect to the Freeman case.[24]

To accomplish its mission, Vidocq holds monthly lunch meetings in Philadelphia where it invites a law enforcement agency to present the facts and posture of a particular "cold case" to the membership. During the lunch meeting, - and relying solely on the information provided by the law enforcement agency - Vidocq members brainstorm possible ways in which law enforcement might reconsider the facts of their case.[25] This

---

[20] Dep. of Barbara Cohan (2/14/24) at 26:18-22; 31:2-23; 180:22-183:16, **Exh. 12** to MAS Decl.

[21] Articles of Incorporation, Constitution and Bylaws, and Code of Ethics and Conduct, **Exh. 13, 14, 15,** respectively to MAS Decl.

[22] Cohan Dep. (2/14/24) at 34:23-35:6, **Exh. 12** to MAS Decl. Vidocq's membership consists of current and former police detectives, FBI agents, pathologists, toxicologists, medical examiners, prosecuting attorneys, forensic pathologists, handwriting experts, and psychologists, among others.

[23] Cohan Dep. (2/14/24) at 39:4-42:4; 59:11-60:16, **Exh. 12** to MAS Decl.

[24] *Id.* at 132:14-21; 134:1-17; 134:3-17.

[25] Cohan Dep. (2/14/24) at 159:13-160:4, **Exh. 12** to MAS Decl. The information Vidocq has regarding a particular cold case is limited to what the law enforcement agency provides.

brainstorming might include suggestions of other possible leads, recommendations regarding additional forensic testing or persons to interview, or alternative perspectives regarding evidence already gathered.[26] Vidocq members' opinions and suggestions are their own - not that of Vidocq – and those opinions are never intended to bind the organization. It is not uncommon for members to have conflicting suggestions and opinions. Ultimately, the law enforcement agency is the decisionmaker on whether to use any of suggestions or opinions offered by Vidocq members – if at all – upon return to their own jurisdiction.[27]

Pursuant to its Code of Ethics, Vidocq maintains all shared investigation material strictly confidential. Law enforcement is advised of this policy and Vidocq understands that law enforcement relies on this confidentiality.[28] The purpose of this confidentiality policy is to protect law enforcement's ongoing investigation. Vidocq's confidentiality policy does not apply to the law enforcement agency itself, and law enforcement may share any suggestion or opinion provided by a Vidocq member with the prosecutor and counsel for a criminal defendant in conformance with applicable law. Vidocq does not dictate what information law enforcement may share and with whom; any disclosure obligation rests entirely with local law enforcement authorities.[29]

---

[26] Cohan Dep. (2/14/24) at 57:21 -58:21, **Exh. 12** to MAS Decl.
[27] *Id.* at 149:17- 151:21.
[28] Vidocq Code of Ethics at pp. 1-2, **Exh.15** to MAS Decl.; Cohan Dep (6/27/24) at 55:23-56:9, **Exh. 16** to MAS Decl.
[29] Cohan Dep. (6/27/24) at 59:10-62:11, **Exh. 16** to MAS Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Defendant Richard Walter was a founding member of Vidocq in 1990 and has a master's degree in psychology.[30] He has never held an elected board of directors' position with Vidocq, nor has he ever had any policymaking role. In 2012, the board invited Walter to take an "*ex-offico*" board member status and he was allowed to participate in board meetings but had no voting rights.[31] In 2016, Walter resigned as a Vidocq member.[32]

### c. Oregon law enforcement's presentation of Freeman case to Vidocq

In the fall of 2009, Dannels and Fraiser agreed to attend Vidocq's luncheon and present the Freeman case for consideration. In advance of the lunch meeting, Dannels provided a memorandum to Vidocq's then case manager (Bornhoffen), summarizing the facts of the Freeman case ("CPD Freeman Case Summary"), which was to be distributed to Vidocq members in advance of the meeting.[33] In January 2010, Dannels, Frasier, defendant Coos County Sherriff Craig Zanni, and Oregon Department of Justice analyst Lisa McGowen attended the Vidocq luncheon in Philadelphia.[34] Dannels and Frasier understood that information shared by Oregon law enforcement would be confidential and not shared with the public.[35]

Just prior to the start of the luncheon, defendant Walter introduced himself to Frasier and gave him an article he had written with Robert Keppel, entitled *"Profiling*

---

[30] Walter Dep. 39:10-40:10. **Exh. 17** to MAS Decl.

[31] Cohan Dep. (2/14/24) at 180:14-21, **Exh. 12** to MAS Decl.; Cohan Dep. (6/27//24) at 11:4-16, **Exh. 16** to MAS Decl.

[32] Walter's resignation occurred after the board voted to not allow him to accept compensation for subsequent work on a case that Vidocq had previously considered. Cohan Dep. (2/14/24) at 189:19-190:19, **Exh.12** to MAS Decl.

[33] CPD Freeman Case Summary, **Exh. 6** to MAS Decl.

[34] Frasier Dep. (current case) at 83:14-24, **Exh. 4** to MAS Decl.

[35] *Id.* at 224:1-19.

*Killers: a Revised Classification Model For Understanding Sexual Murder*."[36] The article, which Walter told Fraiser he thought might be useful in identifying Freeman's killer, concerned Walter's "power assertive" personality theory. Frasier did not read the article until several days later, when he returned to Oregon.[37]

 Frasier put on a PowerPoint presentation to the Vidocq membership during the lunch meeting. As stated in his PowerPoint presentation, Frasier's goal, was to: "Eliminate McGuffin as the suspect and identify the perpetrator of crime OR if McGuffin is guilty, develop a prosecutable case."[38] Vidocq had no input as to what information Frasier presented to the group. The presentation took about an hour with another 15-20 minutes of follow-up discussion with the group.[39]

 At the conclusion of the presentation, and based on the information presented, Vidocq's members were unable to offer any substantive suggestions on how to proceed further with the investigation. As Frasier testified in his deposition:

> You know, I don't recall Vidocq Society giving me any advice. And frankly, I was disappointed in the trip. . . . I was looking for information that would help us move forward, either to tell us we were going the wrong way or that this was – we were going the right way. And they didn't - they didn't give us any suggestions whatsoever that I recall.[40]

Dannels confirmed Frasier's assessment, testifying in his deposition that Vidocq "added

---

[36] Frasier (current case) at 92:5-25, **Exh. 4** to MAS Decl.
[37] *Id.* at 227:21-228:10, 238:8-18.
[38] Power Point Presentation, Slide No. 89, **Exh. 18** to MAS Decl.; Fraiser Dep. (current case) at 84:13-85:10; 86:14-87:10, **Exh. 4** to MAS Decl.
[39] Frasier Dep. (current case) at 84:7-85:15, **Exh. 4** to MAS Decl.
[40] *Id.* at 88:20-89:5

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

no significant value to where we went with the case."[41]

### d. Walter's additional involvement in Freeman case after Vidocq luncheon

Following the luncheon, Walter met with Frasier, Dannels, Zanni, and McGowen for dinner in Philadelphia[42] and continued to discuss Walter's "power assertive" personality theory as being relevant to the identification of Freeman's perpetrator. Vidocq was unaware of this meeting and there is no record it was ever authorized or approved by Vidocq.[43]

In late spring 2010, Walter travelled to Coquille to appear on the ABC News Show 20/20, which was filming a story about Freeman's homicide. The testimony is conflicting as to who invited Walter to Coquille for this meeting. Walter testified that CPD invited him,[44] whereas Dannels testified that ABC extended the invitation.[45] Regardless, there is no evidence that Vidocq was aware of, or approved, Walter's trip to Coquille.[46]

During the trip to Coquille, Walter met briefly with Dannels and Fraiser, and the ABC producers. Oregon law enforcement showed Walter photographs of Freeman's decomposed body and her tennis shoes. Walter was taken to the location where one of Freeman's shoes was found and where her body was found. Walter also was interviewed

---

[41] Dannels Dep. Vol. III (9/1/23) at 45:7-19, **Exh. 10** to MAS Decl. At some point, it appears Bornhoffen had analyses performed regarding a statement provided McGuffin and witness Brent Bartley by Vidocq associates. Those statements were never used by the CPD or Frasier and had had no impact on the investigation. *Id.* at 99:25-102:4; Frasier Dep. (current case) at 241:20-245:15, **Exh. 4** to MAS Decl.
[42] Frasier Dep. (current case) at 83:20-24; 85:16-18, **Exh. 4** to MAS Decl.
[43] Dannels Dep. Vol II ( 7/15/22) at 325:7-23, **Exh. 9** to MAS Decl.; Frasier Dep. (current case) at 227:21-229:3, **Exh. 4** to MAS Decl.
[44] Walter Dep. at 257:16-21, **Exh. 17** to MAS Decl.
[45] Dannels Dep. Vol II ( 7/15/22) at 171:19-25, 332:20-333:9, **Exh. 9** to MAS Decl.; Dannels Dep. Vol III (9/1/23) at 80:7-12, **Exh. 10** to MAS Decl.
[46] Cohan Dep. (2/14/24) at 143:13-144:12; 160:20-25;161:12-162:16, **Exh.12** to MAS Decl.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 21

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

by 20/20 producers regarding his opinions as to his "power assertive" personality theory and his understanding of certain physical evidence, which understanding turned out to be wrong.[47]

During Walter's visit, Frasier told Walter that he did not find Walter's prior article or his "power assertive" personality theory relevant to the Freeman case because the profile did not match the facts of the case.[48] Walter then gave Frasier another article that Walter claimed to have written (unpublished), entitled "*Sex Murders: motivations, intentions and secondary mechanisms*" and represented that it was on point. Frasier never read the second article.[49]

Also during Walter's trip to Coquille, Frasier learned that Walter had been disqualified as an expert witness in the Second Circuit on the grounds that Walter had misrepresented his qualifications and experience during a criminal trial in New York.[50] Frasier testified during his deposition that once he learned about the federal court's decision, he concluded that the prosecution could no longer use or be associated with Vidocq or Walter, and Frasier severed ties with both. No further communications occurred between Oregon law enforcement and Vidocq or Walter.[51]

## C.     2010-2011: Indictment, Arrest, Trial, Conviction, and Denial of McGuffin's Appeals

---

[47] Dannels Dep. Vol. III. at 50:4- 51:25; 52:14-54:2; **Exh. 10** to MAS Decl.
[48] Frasier Dep. (current case) at 92:22-93:3, 117:17-20, **Exh. 4** to MAS Decl.
[49] *Id.* at 92:22-93:11, 117:9-118:1, 238:19-24.
[50] Frasier Dep.(current case) at 118:1-5, 159:24-160:1, **Exh. 4** to Sawyer Decl., referring to *Drake v. Portundo*, 321 F.3d. 338 (2nd Circ. 2003) ("Drake I"). Upon becoming alerted to this case by Walter, Vidocq independently investigated its assertions and concluded they were unfounded. Dep. of William Fleisher at 86:18-87:3; :93:9-97:12, **Exh. 19** to MAS Decl.
[51] Fraiser Dep. (current case) at 118:1-5, 159:24-160:1, **Exh. 4** to MAS Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

### 1. Vidocq had no involvement in the Grand Jury proceedings or indictment

In July 2010 Frasier initiated grand jury proceedings to determine whether an indictment should be issued with respect to Freeman's homicide and, if so, against whom. By that time, Fraiser had already severed ties with Vidocq and Walter and no Vidocq member testified to the grand jury. None of the 119 witnesses who did testify referenced Vidocq or any of its members, including Walter, nor was Walter's "power assertive" theory referenced.[52] After hearing all testimony, the grand jury voted to indict McGuffin for Freeman's homicide.[53]

### 2. Vidocq had no involvement in McGuffin's Arrest, Prosecution, or Trial.

McGuffin was arrested by the CPD on August 23, 2010 and charged by Frasier with first degree murder and the lesser charge of voluntary manslaughter.[54] The evidence is undisputed that neither Vidocq nor Walter had any authority to conduct any part of CPD's investigation and, in fact, did not participate. Neither interviewed witnesses, collected evidence, or provided expert opinions. Neither was provided with CPD's investigative file.[55] Neither had any role with respect to McGuffin's physical arrest or detention.[56] Dannels testified that CPD did not hire Vidocq (or Walter) to conduct any part of its investigation and did not pay for any consultation. Neither Vidocq nor any of its members was an agent of CPD, nor were they acting subject to CPD's control. Dannels testified

---

[52] Frink Expert Report at pp.11-12 ¶17, **Ex. A** to NF Decl.
[53] Grand Jury Indictment, **Exh. 20** to MAS Decl.
[54] DKT #1, ¶134 (Original Complaint)
[55] Dannels Dep. Vol. III (9/1/23) at 78:15-80:6, 80:25-81:11, 84:5-7; 84:20-85:24; 99:4-24, 101:23-102:1, **Exh. 10** to MAS Decl.
[56] *Id.* at 79:2-5, 80:4-7. Frasier Dep. (current case) at 235:10-25 at **Exh. 4** to MAS Decl.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 23

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

during his deposition that nothing Vidocq or Walter provided had any bearing on law enforcement's investigation and nothing they provided was used in any manner.[57] In sum, neither Vidocq nor Walter had any role in how CPD conducted its investigation.[58] Moreover, Frasier testified unequivocally that the decision to charge and prosecute McGuffin was his alone and that neither Vidocq nor Walter played any role in that decision.[59]

McGuffin's trial began on July 5, 2011, in Coos County Circuit Court and lasted 10 days.[60] There is no evidence that Vidocq (or any of its members) had any influence or impact on the arrest, prosecution, or conviction of McGuffin. Vidocq did not participate in developing trial theories or strategy, questioning witnesses, or providing expert testimony.[61] Walter's "power assertive" personality profile was never used at trial and had no bearing on McGuffin's conviction. Frasier testified unequivocally in his deposition that Vidocq did not provide anything that was used at trial.[62] That testimony is consistent with a letter that Frasier wrote to the Oregon DOJ dated August 3, 2019, in response to McGuffin's initial Petition for Post-Conviction Relief:

> Long story short: I did not use anything we learned from Mr. Walter or the Vidocq Society and certainly did not use it at trial and it had no effect on the verdict in this case.[63]

---

[57] Dannels Dep. Vol. III (9/1/23) at 45:12-46:11, 60:5-19, 85:21-24, 89:8-25, **Exh. 10** to MAS Decl.; Frasier Dep. (current case) at 219:7-13, **Exh. 4** to MAS Decl.
[58] Dannels Deposition Vol. III (9/1/23) at 45:12-46:11, 81:22-82:4, 89:8-25. **Exh. 10** to MAS Decl.
[59] Frasier Dep. (current case) at 235:10-25 at **Exh. 4** to MAS Decl.; Expert Report of Norman Frink, pp.5-6, section A, **Exh. A.** to Decl. of Norman Frink. ("NF Decl.")
[60] DKT #143, SAC ¶152
[61] Frasier Dep. (current case) at 234:24-235:18; **Exh. 4** to MAS Decl.
[62] Id. at 234:24-235:18, 228:19-229:20.
[63] 3rd Installment Letter from Frasier to Paul Reim, DOJ, dated 8/10/16, **Exh. 21** to MAS Decl.; Frasier Dep. at 232:17-235:25, **Exh.4** to MAS Decl.

Frasier testified in his deposition that the statements made in this letter were true and correct.[64] Plaintiff's defense counsel agrees that there was no evidence or testimony provided by anyone from Vidocq Society at McGuffin's criminal trial.[65]

Vidocq's expert, former Chief Deputy Prosecutor Norman Frink, performed a comprehensive review of both counsels' opening statements and closing arguments from the criminal trial, and performed a review of the trial testimony of all witnesses. Frink confirms in his expert report that there is no reference or mention during trial by any witness or attorney regarding Vidocq, Walter, or the power assertive personality profile.[66]

Frasier also testified that prior to trial, he provided McGuffin's defense counsel with all of the limited materials he had regarding Vidocq.[67] Vidocq's very limited consultation with Oregon law enforcement was not concealed from the McGuffin's defense counsel.[68] Moreover, as neither Vidocq nor Walter were employees, retained experts, or otherwise agents of the CPD or prosecution, McGuffin's defense counsel had every opportunity to interview them to understand the nature and scope of their involvement prior to trial.

On July 19, 2011, a jury convicted McGuffin of first-degree voluntary manslaughter of Leah Freeman. He was sentenced to 10 years in prison on August 1, 2011.[69] McGuffin's appeals to the Court of Appeal and Petition for Review to the Supreme Court were denied.

---

[64] Frasier Dep. (current case) at 234:16-235:25, **Exh.4** to MAS Decl.
[65] McCrea Dep. at 112:17-24, **Exh. 22** to MAS Decl.
[66] Frink Expert Report, at pp.12-14 and footnote 24, ¶¶17-20, **Ex. A** to NF Decl.
[67] Frasier Dep. (current case) at 89:14- 92-16; **Exh.4** to MAS Decl.
[68] McCrea Dep. at 108:12-19, **Exh. 22** to MAS Decl.
[69] DKT #143, SAC ¶¶152-154

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Sometime *after* McGuffin's trial in 2011, Vidocq's case manager (Bornhoffen) updated Vidocq's master case list and included a brief summary of the Freeman case that had been presented to the Society, entitled, *"No. 207. Synopsis of Leah Freeman Case. 2000"* ("Freeman Synopsis").[70] The Freeman Synopsis includes information about the case and suggests Walter provided this information, though Walter has denied that.[71] Regardless, the Freeman Synopsis does not include any exculpatory information regarding McGuffin.[72]

**D.    2015-2019 McGuffin's Post-Conviction Proceedings**

After his appeals were denied, McGuffin sought post-conviction relief ("PCR") under ORS §138.40 *et. al*. McGuffin's PCR Petition did not include any allegations that Vidocq's conduct was the cause of his alleged wrongful conviction. Furthermore, McGuffin did not advance any such argument during the PCR trial.[73]

The PCR court issued its General Judgment on November 19, 2019, vacating McGuffin's conviction on very narrow grounds related to the conduct of (1) McGuffin's trial counsel, and (2) the State's prosecuting attorney. The General Judgment did *not* include any findings that Vidocq's conduct was the cause of McGuffin's conviction. Furthermore, the PCR court did not exonerate McGuffin, as he repeatedly claims in this lawsuit, and in fact denied his claim of Actual Innocence. Instead, the PCR court remanded

---

[70] Freeman Case Synopsis, **Exh. 23** to MAS Decl.; Cohan Dep. at 92:1-19, **Exh. 12** to MAS Decl.

[71] *Id.;* Walter Dep. at 270:11-277:11, **Exh. 17** to MAS Decl.

[72] *Id.*, Frink Expert Report, pp. 13 ¶9, **Exh. A.** to NF Decl.

[73] 5th Amended Petition for Post-Conviction Relief, **Exh. 24** to MAS Decl.; McGuffin Trial Memorandum (PCR case), **Exh. 25** to MAS Decl.; Frink Expert Report, pp. 7-8, ¶¶2-4, **Exh. A.** to NF Decl.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 26

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

the case for a new trial.[74] Thereafter, District Attorney Frasier decided not to recharge McGuffin, given that McGuffin had already served 9 ½ years of a 10-year sentence and two important witnesses had died.[75]

## III.    CURRENT PROCEDURAL POSTURE

### A.    Original Complaint

In July 2020, Plaintiffs filed their Original Complaint, alleging seven separate counts as part of their First Claim for Relief under 42 U.S.C. §1983:

- 14th Amendment (Count 1);
- Illegal Detention and Prosecution (Count 2);
- Failure to Disclose Exculpatory Information (Count 3);
- Failure to Intervene (Count 4);
- Conspiracy (Count 5);
- Destruction of Exculpatory Evidence (Count 6);
- Unconstitutional, Policies, Practices, and Customs of City of Coquille, OSP and OSP Lab, Coos County, and City of Coos Bay (Count 7)

Plaintiffs also asserted ten claims under Oregon state law:

- False Imprisonment (2nd Claim);
- Malicious Prosecution (3rd Claim);
- Invasion of Privacy - False Light (4th Claim);
- Defamation *Per Se* (5th Claim);
- Civil Conspiracy (6th Claim);
- Negligent Training/Supervision Against Muni Defendants & Vidocq (7th Claim);
- Intentional Infliction of Emotional Distress (8th Claim);
- Negligent and/or Intentional Spoliation of Evidence (9th Claim);
- Indemnification (10th Claim);
- Attorney's Fees (11th Claim) [76]

---

[74] Final Judgment (PCR case), **Exh. 8** to MAS Decl.; Frink Expert Report, pp.8, ¶5(a), **Exh. A.** to NF Decl.
[75] State's Motion to Dismiss Charges (criminal case), **Exh. 26** to MAS Decl.
[76] DKT # 1, Original Complaint

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

The Court dismissed all of nine counts against Vidocq under §1983, _without prejudice_ and with leave to amend, on the grounds Plaintiffs failed to state a _Monell_ claim against Vidocq as a private corporation. The Court also dismissed Plaintiffs' Oregon state-law claims against all defendants for Invasion of Privacy/False Light (4th Claim) and Defamation (5th Claim) _with prejudice_ on the grounds those claims were barred by the applicable statute of limitations.[77]

**B**.    **First Amended Complaint**

In October 2022, Plaintiffs filed their First Amended Complaint ("FAC") alleging ten separate counts as part of their First Claim for Relief under 42 U.S.C. §1983:

- 14th Amendment (Count 1)
- Malicious Prosecution (Count 2)
- Illegal Pretrial Detention Following the Issuance of Legal Process (Count 3)
- Failure to Disclose Exculpatory Information (Count 4)
- Failure to Intervene (Count 5)
- Conspiracy (Count 6)
- Destruction of Exculpatory Evidence (Count 7)
- Unconstitutional, Policies, Practices, & Customs -  Muni Defendants (Count 8)
- Violation of SM's 14th Amendment Rights (Count 9)
- Vicarious Liability as to Vidocq (Count 10)

Plaintiffs also asserted seven tort claims under Oregon state law:

- False Imprisonment (2nd Claim)
- Malicious Prosecution (3rd Claim)
- Civil Conspiracy (4th Claim)
- Negligent Training/Supervision -Municipal Defendants and OSP (5th Claim)
- Intentional Infliction of Emotional Distress (6th Claim)
- Negligent and/or Intentional Spoliation of Evidence (7th Claim)
- Attorney's Fees (8th Claim).[78]

---

[77] DKT #83, F&R re Original Complaint at pp. 21-22; 32-33; DKT # 99, Order adopting F&R
[78] DKT #100, FAC

The Court again dismissed all nine counts of Plaintiffs' §1983 claims against Vidocq *without prejudice* and with leave to amend on the grounds that Plaintiffs had not sufficiently pled facts to state a *Monell* claim against Vidocq. Relying on *Monell* and *Tsao v. Dessert Palace, Inc*., 698 F 3d.1128, 1139 (9th Cir. 2012)*,* the Court acknowledged that to state a claim against a private entity under §1983, plaintiffs must establish that any alleged constitutional violation was caused by a specific policy practice or custom of the entity. With respect to Count 10, Vicarious Liability, the Court dismissed this claim *with prejudice*, thereby barring Plaintiffs from seeking relief against Vidocq under §1983 based on conduct by Walter. None of the remaining state law claims were dismissed.[79]

## C.     Second Amended Complaint

In January 2023, Plaintiffs filed their Second Amended Complaint ("SAC"), attempting for the third time to cure pleading defects with respect to their §1983 claims (Counts 1-9) against Vidocq, which were previously dismissed without prejudice on two occasions. The SAC includes new general allegations at Section VI asserting that the constitutional violations arose out of Vidocq's failure to adopt adequate policies and procedures, and additional allegations with respect to Counts 1-8 asserting that misconduct "was undertaken pursuant to the policies, practices, and customs of … *Vidocq*."[80] The SAC asserts the same tort claims under Oregon state law as the FAC.[81]

---

[79] DKT #128, F&R re FAC at pp. 13-15;  DKT #139, Order adopting F&R.
[80] DKT #143, SAC ¶¶ 185, 196-207; 217, 223, 229, 236, 242, 250, 255, and 270. The inclusion of Vidocq is new in the SAC. In the prior FAC, only the Municipal Defendants were identified as having inadequate policies and procedures in Counts 1-8.
[81] The only difference between the FAC and SAC is that the state law claim for negligent training/supervision claim against Vidocq - which was not asserted against Vidocq in the FAC (but only in the original complaint) was reasserted in the SAC.

As discussed below, Plaintiffs' claims as set forth in the SAC against Vidocq cannot survive summary judgment and should be finally dismissed with prejudice.

## IV.    LEGAL STANDARD & ARGUMENT

### A.    Summary Judgment Standard

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on a motion for summary judgment the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims…" *Celotex Corp.*, 477 U.S. at 323-24.

---

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 30

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

**B.**     **In light of Court's Prior Dismissal of Plaintiffs' claims for Vicarious Liability (§1983) and False Light and Defamation (state law), Vidocq cannot be held liable for any tortious conduct by Walter.**

Plaintiffs' Second Amended Complaint is replete with allegations attributing fault to Vidocq based upon Walter's purportedly wrongful conduct, notwithstanding the Court's prior dismissal of the vicarious liability claim. The allegations regarding Walter's conduct include:

- That Walter was Vidocq's employee and agent;[82]
- That Walter and Vidocq were hired by the CPD to create a false psychological profile of the perpetrator to implicate McGuffin in Freeman's homicide;[83]
- That Walter created a false psychological profile at the direction of the CPD which fit McGuffin, which included his theory that the perpetrator was a "power assertive" personality, to link McGuffin to Freeman's death and create a motive;[84]
- That Walter destroyed exculpatory evidence, including police reports, notes, communications, audio/visual records, and evidence bearing on the credibility of the homicide investigation;[85]
- That Walter knowingly made false statements to the media on the ABC 20/20 show for the purpose of influencing potential fact finders in Coquille, including (1) that there was blood on Freeman's right shoe, when there was not; (2) that Freeman was smashed in the face, when there was no evidence of that; (3) that Freeman may have been pregnant and McGuffin had a motive to kill her to avoid charge of statutory rape; (4) that McGuffin's Mustang had been wiped clean on the night of Freeman's disappearance, and (5) that many witnesses saw Freeman and McGuffin together after 9 pm.[86]

In light of the Court's prior dismissal of Plaintiffs' vicarious liability claim (§1983-Count 10), and false light and defamation claims (state law - 4th and 5th claims), Vidocq cannot be held liable for Walter's conduct and the Court should disregard those allegations

---

[82] DKT 143, SAC ¶¶9
[83] *Id.*, ¶¶106 -107
[84] *Id.*,¶¶ 108-109
[85] *Id.*, ¶¶ 251-255
[86] *Id.*, ¶¶106-111; ¶146; ¶202. These allegations are also directed against the Cold Case Investigators.

for purposes of ruling on Vidocq's motion for summary judgment.  To the extent there is any *other* conduct by Walter that Plaintiffs allege was wrongful, Vidocq cannot be held liable for that conduct either, based on the Court's prior orders.

**C.     Plaintiffs Cannot Establish Liability under §1983 based upon *Monell* because Vidocq is a Private Entity, was Not Acting Under Color of State Law, and its Conduct Did Not Amount to State Action.**

Plaintiffs' §1983 claims against Vidocq are premised on finding liability under *Monell*, given that Vidocq is unquestionably a private entity. Plaintiffs claim, without any supporting evidence, that Vidocq, acting as an agent the CPD, failed to enact adequate policies and procedures to protect against the fabrication and suppression of evidence and against false reporting which led to the deprivation of McGuffin's constitutional rights.

**1.     To Prove a *Monell* Claim under §1983, Plaintiffs must show Vidocq was a state actor.**

In order to establish a *Monell* claim against a private entity, a plaintiff must demonstrate that (1) the private entity acted under color of state law (*i.e.*, was a "state actor"), and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of the private entity. *Tsao v. Desert Palace, Inc.,* 698 F. 3d 1128, 1138 (9th Cir. 2012)*,* citing *Harper v. City of Los Angeles,* 533 F.3d 1010, 1024 (9th Cir.2008). Before a court considers whether a private entity's policies and practices were insufficient and deprived the plaintiff of his constitutional rights, the plaintiff must <u>first</u> demonstrate that the private entity was a state actor. The plaintiff bears the burden of proof to establish that the acts of private persons or entities constitute state action under §1983. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978).

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

The Supreme Court has warned that "[c]areful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936 (1982). The "color of law" requirement of §1983 is treated as the equivalent of the "state action" requirement under the Constitution. *Jensen v. Lane Cnty.,* 222 F.3d 570, 574 (9th Cir. 2000), citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982); *West v. Atkins,* 487 U.S. 42, 49 (1988).

A "state actor" includes a state official, or a person who has acted together with or has obtained significant aid from state officials, or a person whose conduct is otherwise chargeable to the state. *Lugar, supra,* 457 U.S. at 937. Liability attaches only to those wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *National Collegiate Athletic Assn. v. Tarkanian,* 488 U.S. 179, 191 (1988).

Excluded from the reach of §1983 is private conduct "however discriminatory or wrongful." *American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 50 (1999). Private actors are not liable under §1983 unless "the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State." *Lugar, supra,* 457 U.S. *at* 937. The inquiry is whether the State was sufficiently involved in causing the harm to the plaintiff, to treat the conduct of the private actor as "under color of state law." *Gorenc v. Salt River Project Agr. Imp. & Power Dist.,* 869 F.2d 503, 506 (9th Cir. 1989). It is very rare for a private citizen engaged in purely private conduct to be viewed as a state actor. *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). Whether certain conduct is

"under color of state law" or "state action" is a question of federal, not state, law. *Gorenc, supra,* 869 F.2d at 505.

**2. Tests to determine whether a private entity's conduct amounts to state action.**

The Supreme Court has identified four tests to determine whether a private entity's conduct amounts to state action: (1) joint action test; (2) governmental nexus test; (3) governmental compulsion or coercion test and (4) public function test. *Rawson v. Recovery Innovations, Inc.,* 975 F.3d 742, 747-48 (9th Cir. 2020). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* at 747.

The "close nexus" and "joint action" tests may be satisfied where the court finds "a sufficiently close nexus between the state and the private actor 'so that the action of the latter may be fairly treated as that of the State itself' or where the State has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Rawson*, *supra* at 749, citing *Jensen*, 222 F.3d at 575–58. The "public function" test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.' *Rawson*, *supra,* 975 F.3d at 747-748. The "governmental compulsion or coercion" test may be satisfied where the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rawson,* 975 F.3d at 747-748, citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

**3. Vidocq was a private, nonprofit organization and was not a state actor; at most, Vidocq acted as a limited consultant.**

In the present case, only the joint action and the nexus tests are potentially

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 34

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

applicable in determining whether Vidocq was engaged in state action. The inquiry under those tests focuses on whether there was a sufficiently close nexus between Vidocq and the CPD such that the actions of Vidocq may be fairly treated as those of the CPD or that there is evidence showing that the CPD so far insinuated itself into a position of interdependence with Vidocq that the CPD must be recognized as a joint participant in the challenged activity. *Rawson,* 975 F.3d at 747- 48.

Here, there is no evidence whatsoever of any nexus or interdependence between Vidocq and the CPD that would support a finding that Vidocq was engaged in state action. In the context of the 10-year investigation into Freeman's homicide, Vidocq's actual involvement was nominal at most. The extent of that involvement included: (1) email exchanges with the CPD inviting Oregon law enforcement to present the Freeman case to Vidocq at its monthly luncheon; (2) circulation of Chief Dannels' summary regarding the Freeman case to the Vidocq membership for review in advance of the luncheon; and (3) Vidocq's sponsorship of the half day lunch meeting in Philadelphia in January 2010 where Frasier presented the Freeman case to the Vidocq members present, who then provided their feedback. The evidence is undisputed that those nominal interactions with Vidocq had no impact on the investigation or prosecution of McGuffin.[87]

Furthermore, the evidence is undisputed that: (1) CPD did not hire or retain Vidocq; (2) Vidocq acted in a *pro bono* capacity only and was not paid by Oregon law enforcement; (3) Oregon law enforcement did not delegate any of its investigative authority to Vidocq

---

[87] *See* footnotes 52, 55-59

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 35

or any of its members to act on law enforcement's behalf; and (4) Oregon law enforcement, including the CPD and prosecuting attorney, did not view Vidocq as its agent or subject to its control.[88] Those undisputed facts demonstrate unequivocally that Vidocq was not acting as an agent or representative of the CPD or prosecuting attorney under color of state law.

To the contrary, at most, Vidocq acted as a limited consultant to the CPD and prosecuting attorney. Courts have held that a consultant's professional opinions and the advice a consultant offers to municipalities are not "state action" and thus cannot support claims against such consultants for liability under §1983. *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 465 (S.D.N.Y. 2003), *aff'd sub nom R-Goshen LLC v. Andrews*, 115 F. App'x 465 (2d Cir. 2004), *citing Omnipoint Communications, Inc. v. Comi,* 233 F.Supp.2d 388, 395 (N.D.N.Y.2002) (where a consultant merely provides professional advice to a municipality, such advice cannot be considered state action for purposes of §1983).

In addition, courts have consistently held that a private party who merely gives information to a state actor has not engaged in sufficient conduct to convert the private party into a state actor. *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1181 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), (one party supplying information to another party does not amount to joint action); *Lockhead v. Weinstein*, 24 Fed. App'x 805, 806 (9th Cir. 2001) ("[M]ere furnishing of information to police officers does not constitute joint action"). Moreover, numerous cases have held that even the

---

[88] *Id.*, *See* footnotes 20-24

distribution of *false* statements to authorities does not convert private conduct into state action.[89]

Here, Vidocq's limited consultation with the CPD and the prosecuting attorney did not constitute joint action, nor did it create a sufficient nexus to establish that Vidocq was engaging in state action. In the absence of a finding of state action, Vidocq cannot be liable for violation of §1983 under *a Monell* theory for failing to enact policies and procedures to protect Plaintiffs' constitutional rights. Plaintiffs have no evidence sufficient to create an issue of material fact with respect to the state action requirement and cannot cure their prior pleading defects. Accordingly,  Plaintiffs §1983 claims, reasserted in the SAC for the third time, should now be dismissed with prejudice.

**D.    Plaintiffs Also Cannot Establish Liability under *Monell* because they Cannot Establish that Vidocq's Conduct Proximately Caused the Deprivation of Their Constitutional Rights**

The specific conduct challenged by Plaintiffs as part of their *Monell* claim is that Vidocq – independent of Walter – fabricated and suppressed evidence that caused the deprivation of Plaintiffs' constitutional rights and caused McGuffin to be wrongfully convicted of killing Freeman.[90]

---

[89] *See*, *e.g.*, *Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at p.4 & n.9 (E.D. Pa. 2007) (finding no state action on basis of giving statements to police, even if knowingly false); *Gilbert v. Feld,* 788 F. Supp. 854, 860 (E.D. Pa. 1992) (finding no state action where complaint alleged that private party provided District Attorney with "false and misleading information in order to instigate criminal charges against plaintiff"); *Deeths v. Lucile Slater Packard Children's Hospital at Stanford,* No. 1:12-cv-02096-LJO, 2013 WL 6185175, at *8, 9 (E.D. Cal., 2013) ("Even if Dr. Stirling made false statements to Kern County social workers regarding the need to remove R.D. from Plaintiff's care, supplying information alone does not amount to conspiracy or joint action under color of state law.").

[90] DKT #143, SAC ¶¶185, 196-207; 256-270

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

In addition to the state action requirement, a plaintiff asserting a §1983 claim under *Monell* must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet that causation requirement, a plaintiff must establish both causation-in-fact and proximate causation." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Specifically, a plaintiff must establish that the defendant's conduct resulted in the deprivation of the plaintiff's constitutional rights. *King v. Massarweh,* 782 F.2d 825, 829 (9th Cir.1986); *Arnold v. IBM,* 637 F.2d 1350, 1355 (9th Cir. 1981); *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation.").[91] Plaintiffs here cannot make this showing.

### 1. Plaintiffs cannot establish that Vidocq fabricated any evidence which led to McGuffin's conviction.

With respect to the fabrication claim, Plaintiffs have failed to identify what evidence they contend Vidocq fabricated. The only allegation asserted is that *Walter* fabricated evidence, specifically by creating a "false" profile of Freeman's killer as a "power assertive" personality that fit McGuffin and was intended to implicate him. As stated above, to the extent that allegation is true (which Vidocq disputes), Vidocq is not vicariously liable for Walter's conduct as the vicarious liability claim has been dismissed.

Furthermore, even assuming Walter's opinions regarding the "power assertive" personality constitute a fabricated profile, and that Vidocq could be held liable for such

---

[91] Traditionally, the requirements for relief under 42 USC § 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by the conduct of a "person" (4) acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

conduct, the so-called "profile" had no bearing on McGuffin's ultimate conviction. It is undisputed that the "power assertive" personality profile was rejected by Frasier long before the grand jury was seated, and that Walter's theory was not advanced during the grand jury proceedings. Furthermore, the "power assertive" personality profile was not used as evidence at trial - either as an exhibit or as witness testimony, nor was that theory advanced by the prosecuting attorney in his opening statement or closing arguments. Hence, the only logical conclusion that can be drawn from these facts is that the purportedly false personality profile had no bearing on, and did not cause, McGuffin's ultimate conviction.[92]

It is well established that "fabrication of evidence alone is insufficient to state a claim for a due process violation." Instead, a plaintiff must establish that the loss of liberty - *i.e.*, his conviction and subsequent incarceration - resulted from the fabrication." *Massey v. Ojaniit,* 759 F.3d 343, 354 (4th Cir. 2014); *Patterson v. Miller*, 451 F. Supp. 3d 1125, 1148 (D. Ariz. 2020), *aff'd*, 857 Fed. Appx. 282 (9th Cir. 2021). Because Walter's allegedly false personality profile was not introduced as evidence at trial, it did not cause the loss of McGuffin's liberty. In *Buckley v. Fitzsimmons,* 509 U.S. 259, 281–82 (1993), Justice Scalia commented on this issue in a concurring opinion:

> …I am aware of no authority for the proposition that the mere false preparation of evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.

---

[92] *See* footnotes 51,61-66; Frink Expert Report, pp.11-12, ¶¶13-17; p.13, ¶20, **Exh. A** to NF Decl.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 39

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

**2. Plaintiffs cannot establish that Vidocq suppressed any evidence that led to McGuffin's conviction.**

With respect to the suppression claim, Plaintiffs argue that Vidocq (1) suppressed evidence of its involvement in the Freeman case, and (2) failed to disclose the Freeman Synopsis prepared by Vidocq's prior case manager (Bornhoffen) to McGuffin's defense counsel prior to trial. Plaintiffs contend the withholding of these documents was done in conformance with Vidocq's confidentiality policy. None of these contentions are supported by the evidence.

Regarding Vidocq's involvement in the Freeman case, Dannels testified that he gave all materials related to Vidocq's involvement to Frasier prior to trial. Frasier testified that he, in turn, provided those documents, as well as the articles Walter had written, to McGuffin's defense counsel prior to trial.[93] Those facts also are confirmed in the Discovery List provided to Ms. McCrea, McGuffin's criminal attorney, which details all discovery Frasier provided to McCrea.[94] During her deposition, McCrea testified she had no basis to dispute that Frasier's testimony on this subject.[95]

Regarding the Freeman Synopsis, that document was prepared by Vidocq's former case manager as part Vidocq's internal master case.[96] Plaintiffs now appear to contend that Vidocq had a duty under *Brady v. Maryland,* 373 U.S. 83 (1963) to provide the Freeman Synopsis to McGuffin's defense counsel prior to trial but failed to so based on Vidocq's

---

[93] *See* footnote 67; Frasier Dep. (current case) at 91:22-92:11, **Exh. 4** to MAS Decl.
[94] Frasier Discovery List, **Exh. 27** to MAS Decl.
[95] McCrea Dep. at 108:12-18, **Exh. 22** to MAS Decl.
[96] Freeman Synopsis**, Exh. 23** to MAS Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

confidentiality policy.[97] The first and most obvious flaw with that argument is that a review

of the Freeman Synopsis itself demonstrates it was written *after* the trial was over and *after*

McGuffin had been convicted - but before sentencing.  The Synopsis states in relevant part:

> McGuffin will be sentenced on August 1. Manslaughter is a Measure 11
> crime, so he will face a minimum of 10 years in prison, and a maximum of
> 20. Any sentence will include time served, in this case one year.[98]

Given that the Synopsis did not exist prior to trial, it could not have been given to the

defense in advance of trial, even assuming a duty to provide the document existed - which

Vidocq denies.

Second, Plaintiffs have offered no legal support for their contention that Vidocq -

a private entity - has any obligation to comply with *Brady*, nor have they produced any

expert witness to provide such opinions.

Third, Plaintiffs' challenge based on Vidocq's confidentiality policy is a red

herring. The policy, which is contained in Vidocq's Code of Ethics, requires that Vidocq

maintain strictly confidential all material shared *by law enforcement* with Vidocq. The

purpose of the policy is to protect law enforcement's ongoing investigation and prohibit

Vidocq members from sharing what it learns from law enforcement with the public. The

confidentiality policy, however, does not apply to, or govern, the law enforcement agency's

conduct. Law enforcement may disclose Vidocq's involvement and any of its member's

---

[97] List of Brady Material Withheld (current case), **Exh. 28** to MAS Decl.

[98] *See* footnote 96.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

opinions or suggestions with the prosecuting attorney and counsel for a criminal defendant in conformance with applicable law.[99]

### 3. The evidence is undisputed that Vidocq's conduct had no impact on McGuffin's arrest, prosecution, or conviction.

Chief Dannels and prosecuting attorney Frasier testified unequivocally that Vidocq's involvement in this case had no bearing on the indictment, arrest, prosecution, and/or conviction of McGuffin. While Oregon law enforcement travelled to Philadelphia to listen to the opinions of Vidocq in order to see if they might learn something that would assist in the solving of Leah Freeman's homicide, ultimately, Daniels and Frasier concluded that nothing of value was provided. Frasier made the decision well before the grand jury was seated in July 2010 to sever all ties with Vidocq and its former member Walter, based on Walter's credibility issues. Dannels and Frasier testified that and nothing that Vidocq or any of its members provided was ever introduced during the grand jury proceedings or at trial, including any of Walter's theories regarding the personality profile of the killer.[100]

Vidocq's expert, former Multnomah Chief Deputy Prosecuting Attorney Norm Frink, conducted a comprehensive review of the underlying criminal proceedings and concluded that no Vidocq member, including Walter, testified at trial, nor were they mentioned at trial in any way during any portion of the proceedings. Walter's power assertive personality profile was never mentioned.[101] Plaintiffs have not identified any

---

[99] See footnotes 59, 61-65

[100] *See* footnotes 51-66
[101] *See*, footnotes 66, 71

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

expert who offered opinions refuting those of Vidocq's expert. No other witnesses in this case has offered any testimony that contradicts that of Dannels or Frasier.

In sum, there is simply no evidence that Vidocq engaged in the conduct Plaintiffs have alleged, either by fabricating or suppressing evidence. And there is no evidence that Vidocq's conduct had any impact on the indictment, prosecution, or conviction of McGuffin. Accordingly, Plaintiffs cannot satisfy the proximate cause element of their §1983 claims and all nine counts assert against Vidocq should be dismissed with prejudice for this reason as well.

## E.    Plaintiffs Cannot Establish the Elements of their State-Law Claims, which should be Dismissed with Prejudice

### 1.    Plaintiffs cannot establish proximate cause regarding their state law claims.

Plaintiffs' state-law tort claims generally assert that all defendants, referenced as a group and without differentiation, acted in such a way as to cause damage to Plaintiffs, namely McGuffin's loss of liberty, mental anguish, and physical and emotional pain; and SM's loss of consortium. Each of the asserted state tort claims includes a causation element, *i.e.*, that a plaintiff must prove that the defendant's alleged wrongful conduct was the proximate cause of the plaintiff's alleged harm. Here, Plaintiffs cannot satisfy this element with respect to any of their state tort claims. As detailed above, the evidence is undisputed that Frasier severed all ties with Vidocq and Walter long before the initiation of the grand jury proceedings, and over a year prior to trial. Vidocq's very minor involvement in the Freeman case did not cause or contribute to McGuffin's indictment, arrest, prosecution, conviction, or incarceration. In the absence of a causal link between

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 43

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Vidocq's conduct and McGuffin's conviction, Plaintiffs' state tort claims should be dismissed with prejudice.

### 2. Plaintiffs cannot establish other requisite elements of their state tort claims.

**a.** __False Imprisonment__ *(2nd Claim):* Plaintiffs claim that all defendants unlawfully incarcerated him without probable cause, premised on fabricated inculpatory evidence and the suppression of exculpatory evidence, which caused harm.[102] To prove false imprisonment, plaintiffs must demonstrate that: (1) defendant caused plaintiff to be confined; (2) defendant intended the act of confinement; (3) plaintiff was aware of being confined; and (4) the confinement was unlawful. *Cruz v. Multnomah Cnty.,* 279 Or. App. 1,6 (at fn 4), 381 P.3d 856 (2016). There is no evidence that Vidocq played any role in the actual confinement of McGuffin. Further, Vidocq's involvement ended after the luncheon in January 2010 and shortly thereafter, Frasier severed all ties with Vidocq long before McGuffin was arrested. Dannels and Frasier testified that Vidocq's conduct played no role in the decision to indict, arrest, or prosecute McGuffin and had no bearing on McGuffin's ultimate conviction. The false imprisonment claim fails.

**b.** __Malicious Prosecution__ *(3rd Claim)*: Plaintiffs claim that all defendants subjected McGuffin to an unreasonable seizure and improper judicial proceedings without probable cause which caused harm.[103] To prove malicious prosecution, a plaintiff must demonstrate: (1) the institution of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4)

---

[102] DKT #143, SAC ¶¶294-295; 300-302
[103] DKT #143, SAC ¶¶ 294-295; 300-302

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 44

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage caused by the prosecution. *Teegarden v. State ex rel. Oregon Youth Auth.*, 270 Or. App. 373, 383, 348 P.3d 273 (2015). There is no evidence that Vidocq insisted, caused, or in any way contributed to the State's decision to charge McGuffin with Freeman's homicide, or to institute criminal proceedings against McGuffin. Frasier testified that the decision to prosecute was his alone and that Vidocq made no recommendations on this issue.[104] The malicious prosecution claim fails.

  **c.**   <u>**Civil Conspiracy**</u> *(4th Claim)*: Plaintiffs claim that all defendants reached an agreement and had a meeting of the minds to close the Freeman case by arresting and indicting McGuffin with the intent he would be convicted, which caused harm.[105] Under Oregon law, a claim for a civil conspiracy is not an independent tort but arises out of a theory of mutual agency under which the acts of each of the conspirators are imputed to the other members for purposes of tort liability. The joint liability that arises from the acts of others is predicated on an agreement or meeting of the minds to accomplish *an unlawful purpose*, or a purpose not in itself unlawful *by unlawful means*, which results in an injury to another. *Osborne v. Fadden*, 285 Or. App 431, 437 (2009); *Bonds v. Landers,* 279 Or. 169, 174-75, 566 P.2d 513 (1977).

  In addition to the lack of evidence (as discussed above) establishing proximate cause, this claim fails for two additional reasons. First, there is no agency relationship between Vidocq and the CPD. The evidence is undisputed that Vidocq was not hired by or

---

[104] Frasier Dep. (current case) at 235:10-25, **Exh. 4** to MAS Decl.
[105] DKT #143, SAC ¶¶ 294-295; 300-302

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

paid by the CPD; that Vidocq did not act subject to the CPD's directive or control; and that the CPD never relinquished its authority to conduct the Freeman investigation to Vidocq or any of its members.[106] See *State v. Sines,* 359 Or. 41, 55, 379 P.3d 502 (2016) (regarding elements of agency relationship).

Second, there is no evidence of any meeting of the minds between Vidocq and the CPD to engage in any unlawful purpose. In fact, Vidocq's stated goal is always to discover the truth; and that was the same here – not to implicate McGuffin.[107] In fact, the evidence shows the *absence* of a meeting of the minds, given Frasier's decision to sever all ties with Vidocq (and Walter) once he learned about Walter's credibility issues, which occurred well before the grand jury proceedings.[108] The civil conspiracy claim fails.

**d.** **Negligent Training and Supervision** *(5th Claim):* Plaintiffs claim that Vidocq breached its duty to train and supervise its employees and agents and, as a result, that McGuffin's constitutional rights were violated.[109] Plaintiffs cannot make this showing. First, the evidence is undisputed that Vidocq did not employ Walter, nor was Walter Vidocq's agent.[110] Vidocq is a volunteer organization and does not have any employees. Vidocq's members are not agents of the organization.[111] In addition, there is no evidence that Vidocq had any knowledge of Walter's conduct outside of the Vidocq lunch presentation in January 2010 and, therefore, Walter was not acting on Vidocq's behalf or

---

[106] Dannels Dep. Vol. III (9/1/24) at 45:12-46:11,81:22-82:4, 89:8-25, **Exh. 10** to MAS Decl.
[107] Cohan Dep. (2/14/24) at 54:7020; 127:11-15, **Exh. 12** to MAS Decl.
[108] *See,* footnote 51.
[109] DKT #143, SAC ¶¶305-306
[110] Frasier Dep. (current case) at 239:3-21, **Exh.4** to MAS Decl.
[111] Cohan Dep. (2/14/24) at 134:5-7, **Exh. 12** to MAS Decl.; Frink Expert Report, pp. 8-9, ¶5(b), **Exh. A** to NF Decl.

subject to its control, which is required to establish an agency relationship. *State v. Sines, supra*, 359 Or. at 55.[112]

Second, defendants are unaware of any legal authority under Oregon law that a private, nonprofit, volunteer organization owes a general legal duty to potential criminal defendant to train or supervise its volunteer members to act in a prescribed manner in order to protect that person's constitutional rights.

 **e.** <u>**Intentional Infliction of Emotional Distress**</u> *(6th Claim):* Plaintiffs claim that all defendants "acted in ways which were extreme and outrageous" and "rooted in an abuse of power or authority" and which caused plaintiffs harm.[113]  To prove intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) defendant intended to inflict severe emotional distress, (2) defendant's acts were the cause of plaintiff's severe emotional distress, and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *McGanty v. Staudenraus,* 321 Or. 532, 543, 901 P.2d 841 (1995).

Plaintiffs have not identified any specific conduct by Vidocq that was expressly intended cause McGuffin to suffer emotional distress. Moreover, given Frasier's testimony that Vidocq's conduct had no bearing on the prosecution or conviction of McGuffin (cite), Vidocq's conduct cannot be the cause of his emotional distress.

 **f.** <u>**Negligent and/or Intentional Spoliation of Evidence**</u> *(7th claim)*

---

[112] Common-law agency exists where a principal "manifests assent to another person" - the agent - that the agent "shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) of Agency* § 1.01 (2006); *State v. Sines,* 359 Or. 41, 55, 379 P.3d 502 (2016).

[113] DKT #143, SAC ¶¶ 294-295; 300-302

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 47

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Plaintiffs claim that all defendants had a duty to preserve evidence and that they breached that duty by suppressing, tampering with, and/or destroying evidence that was exculpatory and materially favorable to McGuffin. As to Vidocq, Plaintiffs claim that Vidocq destroyed all evidence of their involvement in the Freeman case, except for a two-page "internal memorandum" "documenting certain fabricated evidence."[114] Vidocq understand Plaintiffs are referring to the Freeman Case Summary referenced above.

Under Oregon law, spoilation of evidence gives rise to an evidentiary presumption adverse to the spoiler. ORS 40.135(1)(c). Oregon law is unsettled with respect to whether an independent claim for spoilation of evidence exists. *Classen v. Arete NW, LLC,* 254 Or. App. 216, 221–22, 294 P.3d 520 (2012). To the extent an independent claim does exist, a plaintiff must first have brought the underlying claim and either lost or suffered a diminution in the claim's value in order to prove that the alleged spoilation prejudiced the plaintiff. *Id,. Melo v. Oregon*, 6:15-CV-02177-MC, 2016 WL 297430, at *1 (D. Or. Jan. 20, 2016) (not reported).  At a minimum, Plaintiffs' claim for spoilation is premature as the current civil case has not been resolved.

Regardless, the undisputed facts demonstrate that none of the alleged "evidence" of Vidocq's limited involvement in the Freeman case actually was "spoiled." To the contrary, it is undisputed that all limited materials exchanged between Vidocq and Oregon law enforcement, were given by the CPD to Frasier who, in turn, provided those materials to McGuffin's defense counsel prior to trial.[115] The only remaining document was the

---

[114] DKT #143, SAC ¶316.
[115] *See* footnote 67

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 48

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Freeman Synopsis, which was prepared *after* McGuffin's conviction. The spoliation claim fails.

**F.    Plaintiff SM Cannot Recover for Loss of Consortium Under §1983 or Under Oregon State Law.**

**1.    Plaintiff SM cannot establish her loss of consortium claim under §1983.**

SM contends she was deprived of the "the care, comfort, consortium, love, and emotional and financial support from her father" while he was imprisoned and thereafter.[116] The Ninth Circuit has acknowledged that a child has a cognizable claim under federal law for loss of consortium that arises out of her substantive due process liberty interest in her relationship with her father. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (recognizing a "constitutionally protected liberty interest under the Fourteenth Amendment" in the companionship and society between a parent and child). However, SM's loss of consortium claim under the 14th amendment against Vidocq is dependent upon the success of McGuffin's §1983 claims against Vidocq. As addressed in detail above, because McGuffin's §1983 claim against Vidocq fails, SM's loss of consortium claim under §1983 fails as well. *Terry v. Maricopa County Comm. Col. Dist.,* 626 F. Supp 3d.1092 (2022).

**2.    Plaintiff SM cannot establish her loss of consortium claim under Oregon state law.**

SM asserts the same state-law tort claims as McGuffin and alleges loss of consortium damages with respect to each claim arising from her father's incarceration.[117]

---

[116] DKT #143, SAC ¶¶41, 274

[117] DKT #143, SAC ¶¶276, 283 (Malicious Prosecution) ¶¶284, 292 (False imprisonment); ¶¶293, 301(Civil Conspiracy); ¶¶302, 308 (Negligent Training/Supervision); ¶¶309, 313 (Intentional Infliction of Emotional Distress); and ¶¶ 314, 319 (Negligent/Intentional Spoliation of Evidence).

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 49

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Under Oregon law a child has no cause of action for the loss of parental consortium. *Northwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P.2d 318 (1982). This includes a child's claimed loss of consortium damages associated with her parent's civil rights claims. *Marbet v. City of Portland,* CV 02-1448-HA, 2003 WL 23540258, at *13 (D. Or. Sept. 8, 2003). Accordingly, SM's claim for loss of consortium under state law fails.

**G.    Plaintiffs' Claims are Barred by the Doctrine of Issue Preclusion.**

In addition to the arguments set forth above concerning the particular elements of Plaintiffs' various claims (and Plaintiffs' inability to satisfy those elements), Plaintiffs claims are also precluded and should be dismissed based on the procedural defense of issue preclusion. The Court's prior order on claim preclusion (aka "res judicata") advanced by Vidocq, Walters, and the Municipal Defendants in their first motions to dismiss under Rule 12(b)(6), left open the issue preclusion, given that the two doctrines have distinct elements.

**1.    The doctrine of issue preclusion prevents litigation in a later proceeding of an issue of fact or law that has been finally determined in a prior proceeding.**

Under Oregon law, where one tribunal has decided an issue, re-litigation of the same issue in another proceeding is prohibited, if certain requirements are met. *Nelson v. Emerald People's Utility Dist.,* 318 Or. 99, 103, 862 P.2d 1293 (1993). The doctrine of issue preclusion is based on the public's interest in ensuring the finality of judgments and the efficient administration of justice. *State Farm Fire & Cas. Co. v. Century Home Components, Inc.,* 275 Or. 97, 107 550 P.2d 1185 (1976). The rules of collateral estoppel (*aka* "issue preclusion") apply with full force to civil rights actions arising under §1983.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 50

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*Allen v. McCurry,* 449 U.S. 90, 103–05 (1980). State law governs the application of collateral estoppel to a state court judgment in a federal civil rights action. *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019).

The elements of issue preclusion are: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded had a full and fair opportunity to be heard on the issue in the prior proceeding; (4) the party sought to be precluded was a party (or in privity with a party) to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. *Berg on behalf of Est. of Higbee v. Benton*, 297 Or. App. 323, 327, 443 P.3d 714 (2019) (citations omitted).

> **2. All elements of issue preclusion are established here, warranting the dismissal of the current civil rights action.**

> **a. The fundamental issue in the prior PCR proceeding and the current civil action is identical.**
> *(First Element)*

The fundamental issue in the PCR proceeding was whether McGuffin's conviction in the prior criminal case was wrongful and in violation of his constitutional right to due process and a fair trial. The fundamental issue in the current civil rights action is the same.

The difference between the two cases is the identity of parties that McGuffin seeks to blame for his conviction and the remedy that is available. In the prior PCR case, McGuffin argued that it was the conduct of his trial lawyers, appellate lawyers, and the State prosecuting attorney who violated his constitutional rights, all of which allegedly caused his wrongful conviction. In the current civil rights action, McGuffin argues it was

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 51

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

the conduct of the municipal defendants, state defendants, Vidocq, and Walter that allegedly caused his wrongful conviction. The fundamental issue - whether McGuffin was wrongly convicted - is the same in both proceedings.

**b.  Preclusive effect of PCR judgment and opportunity to be heard.**
    *(Third, Fourth, and Fifth Elements)*

Under Oregon law, a decision in a post-conviction proceeding is the type that can be given preclusive effect in a civil trial, as it is a judgment following a trial. A proceeding that concludes in a judicial judgment unquestionably satisfies the final requirement of issue preclusion. ORS 43.130; *Tiano v. Elsensohn,* 268 Or. 166, 170–71, 520 P.2d 358 (1974); *State Farm Fire & Cas. Co. v. Sallak*, 140 Or. App. 89, 94, 914 P.2d 697 (1996). Further, McGuffin was the Petitioner in the prior PCR proceeding and was represented by counsel. He therefore had a full opportunity to be heard regarding the issue.

**c.  The issue of whether McGuffin was wrongly convicted was "actually litigated" in the PCR proceedings, given the unique nature of those PCR proceedings.**
    *(Second Element)*

**i.  Unique nature and requirements of PCR proceeding**

Post-conviction proceedings are governed by the Post Conviction Hearing Act ("PCHA") at ORS 138.510, *et. seq.* "Post-conviction relief is warranted when there has been a 'substantial denial' of 'rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." *Lichau v. Baldwin*, 333 Or. 350, 358, 39 P3d 851 (2001), *citing* ORS 138.530(1)(a). Post-conviction relief is the exclusive means for collaterally challenging the lawfulness of a criminal conviction. ORS 138.540(1); *Bartz v. State*, 314 Or. 353, 362, 839 P.2d

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 52

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

217 (1992); *Reeves v. Nooth*, 294 Or. App 711, 720, 432 P3d 1105. ("The PCHA was intended to provide a detailed, unitary procedure to persons seeking post-conviction relief").

To prevail on a claim for post-conviction relief, the petitioner must prove, by a preponderance of evidence, that he suffered a substantial denial of a state or federal constitutional right in the proceeding below, which renders his conviction void. ORS 138.530(1)(a); *Ashley v. Hoyt*, 139 Or. App. 385, 912 P.2d 393, 912 P.2d 393 (1996). The petitioner must establish not only the denial of a constitutional right, but also that prejudice resulted from the denial. *Washington v. Johnson,* 165 Or. App. 578, 997 P.2d 263 (2000), *rev. den*. 330 Or. 553.[118] The question for the PCR court is whether the alleged constitutional violation had a tendency to affect the outcome of the trial. *Green v. Franke* 357 Or. 301, 312, 350 P.3d 188 (2015) . If the petitioner meets his burden, the court may grant relief by ordering the release of the petitioner, a new trial, a modification of the sentence, or "such other relief as may be proper and just." ORS 138.520; *Datt v. Hill,* 347 Or 672, 677–80, 227 P3d 714 (2010); *Chavez v. State*, 364 Or. 654, 668–70, 438 P.3d 381 (2019).

Relevant to the question whether McGuffin's alleged wrongful conviction was "actually litigated" in the prior PCR proceedings, is the PCHA's express provision related

---

[118] Claims that a conviction resulted from (1) inadequate assistance of counsel (*State v. Dell,* 156 Or. App. 184, 188, 967 P2d 507 (1998)), (2) that the prosecution failed to disclose material, exculpatory evidence in violation of the rule announced in *Brady v. Maryland (Soderstrom v. Premo*, 274 Or. App 624, 627, 360 P3d 1272 (2015), *rev den*, 358 Or. 550 (2016)) or (3) that the prosecution knowingly elicited false testimony or knowingly allowed false testimony to be presented in court (*Tiner v. Premo*, 284 Or. App 59, 71, 391 P 3d 816 (2017)) can all the basis for post-conviction relief.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 53

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

to waiver. Specifically, ORS 138.550(3) states that grounds for relief that were not raised in the original or amended petition *are deemed waived*. ORS 138.550(3). The petitioner is responsible for ensuring that *all* the issues the petitioner wants litigated in a post-conviction proceeding are brought to the attention of the post-conviction court. The petitioner may not sit by and later complain if the post-conviction lawyer fails to raise all issues that the petitioner wants raised. Issues that were raised, or that could have been raised, in a postconviction proceeding may not be relitigated in a subsequent habeas corpus proceeding. *Miller v. Baldwin*, 176 Or. App 500, 507, 32 P.3d 234 (2001).[119]

### ii.   Actual litigation of wrongful conviction issue in the PCR proceeding

With that background in mind, it is clear that the issue whether McGuffin was wrongfully convicted - and if so on what grounds - was "actually litigated" in the prior PCR proceedings.

McGuffin filed his original Petition for Post-Conviction Relief in 2015, asking the court to find that he was actually innocent of the crime of manslaughter, and to order his immediate release or, in the alternative, to order a new trial. McGuffin amended his Petition for Post-Conviction Relief five times.[120] McGuffin's Third Amended Petition ("3rd Petition") was challenged by the State on summary judgment and that challenge bears directly on Vidocq's issue preclusion defense. The 3rd Petition asserted seven claims, including: "actual innocence" (¶7); ineffective assistance of trial and appellate counsel (¶¶8-9); the State's discovery/*Brady* violations (¶¶10(1)-15); and the State's due process

---

[119] The only exception is where "the court on hearing a *subsequent* petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." ORS 138.550(3).
[120] Decl. of MAS ¶36.

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 54

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

violations regarding prosecutorial misconduct, law enforcement misconduct, and insufficiency of evidence (¶¶11-13). The 3rd Petition asserted 187 allegations (approx.) of unconstitutional conduct, which McGuffin claimed led to his wrongful conviction. Of those 187 allegations only three (3) pertained to Vidocq's involvement in the investigation. Specifically, McGuffin claimed that the State failed to disclose materials regarding Vidocq's involvement in the Freeman case to his defense counsel.[121] The State moved to dismiss these allegations in its motion for summary judgment on the grounds that no evidence existed to support these claims.[122]

In McGuffin's opposition brief, McGuffin *agreed* with the State's argument and withdrew his claims regarding the State's alleged failure to disclose Vidocq's involvement in the Freeman case.[123] McGuffin clarified his specific intention to withdraw these allegations by filing a Fourth Amended Petition ("4th Petition," which is referenced in his opposition brief), to show what claims were withdrawn and what claims remained.[124] McGuffin's withdrawal of his claims against the State related to Vidocq's involvement in the Freeman case clearly operates as a waiver of those claims and a bar against assertion of them later, based on ORS 138.550(3).

McGuffin's Fifth Amended Petition (5th Petition) contains no allegations whatsoever that Vidocq's involvement in the Freeman case caused any deprivation of

---

[121] 3rd Petition at ¶¶10(14) and 12 (F)(1)&(3)), **Exh. 29** to MAS Decl. Notably, these allegations are not directed to Vidocq– but to the State.

[122] State's Motion for PSJM (PCR Case), at pp. 5:22-26; 6:24-7:3; 12:7-14, **Exh. 30** to MAS. Decl.

[123] McGuffin Response to State's PMSJ related to 3rd Petition (PCR case) at p.1, **Exh. 31** to MAS Decl.

[124] *Id.* at p.1, footnote 2; *See, also* 4th Petition, **Exh. 31** to MAS Decl. The 4th Petition shows that McGuffin withdrew claims at ¶¶10(14 and 12(F) (as previously alleged in the 3rd Petition, related to Vidocq's involvement.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

McGuffin's constitutional rights.[125] Similarly, the 133 page Trial Memorandum submitted by McGuffin in support of his PCR petition contains no argument that Vidocq's conduct or its policies and practices caused or contributed to his wrongful conviction.[126] In the context of a litigated motion for summary judgment, McGuffin *withdrew* his claims against the State which concerned Vidocq's conduct as grounds for post-conviction relief, acknowledging the absence of evidentiary support for such claims.

The PCR court's General Judgment identified only three grounds that warranted vacating McGuffin's conviction for manslaughter, and none had anything to do with Vidocq's conduct.[127] By excluding Vidocq from the General Judgment, the PCR court determined that Vidocq's involvement in the Freeman case was not a basis for its grant of post-conviction relief and thereby implicitly concluded that Vidocq did not cause or contribute to McGuffin's wrongful conviction.

In sum, McGuffin had every opportunity and incentive - given that his very liberty was at stake - to pursue claims in the PCR proceedings related to Vidocq's conduct. It is standard practice for petitioners to include every possible basis in their post-conviction petition on which relief might be granted, given the stakes.[128] McGuffin's withdrawal and abandonment of those claims in response to the State's motion for summary judgment -

---

[125] 5th Petition, **Exh. 24** to MAS Decl.
[126] McGuffin Trial Memorandum (PCR case), **Exh. 25** to MAS Decl.
[127] General Judgment (PCR case), **Exh.8** to MAS Decl. The bases for vacating the prior conviction include: (1) ineffective assistance of defense trial counsel for failing to call a DNA expert; (2) ineffective assistance of defense trial counsel for failing to challenge the State's investigation regarding witness Backman; and (3) the State's potential *Brady* violation regarding the unidentified male DNA evidence on Freeman's shoes. The Court held there was more than a mere possibility that this conduct may have affected outcome of the trial, which warranted setting aside McGuffin's conviction and remanding for a new trial.
[128] Frink Expert Report at p.8 ¶4, **Exh. A** to NF Decl.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

when doing so operated to preclude him from ever asserting those claims again - necessarily means that the issue as to whether Vidocq's conduct was a cause of his wrongful conviction, was, in fact, "actually litigated" in the PCR proceeding.[129] Based on the above, Plaintiffs' claims in this action should be dismissed in their entirety. The PCR court previously determined that Vidocq's conduct was not a basis for McGuffin's wrongful conviction. Plaintiffs should be barred from re-litigating the issue and circumventing the PCR court's General Judgment where the issue was already decided.

## H.    This Court Should Take Judicial Notice of Pleadings and Orders from Oregon State Court Proceedings Relied Upon in this Motion.

Pursuant to Federal Rule of Evidence 201, the federal court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992)**.**  In support of this motion, Vidocq relies upon various state court pleadings, orders, and documents from McGuffin's criminal case in Coos County Circuit Court and his post-conviction case in Malheur County Circuit Court, including the following exhibits attached to the Declaration

---

[129] To be clear, Vidocq is not taking the position that the PCR court's decision was a final determination that McGuffin's trial counsel and/or the State prosecuting attorney's conduct constituted a violation McGuffin's constitutional rights. The PCR court simply determined that it was more probable than not that their conduct <u>affected the outcome</u> of the criminal trial, which warranted the vacation of McGuffin's conviction and remand for a new trial so that a new jury could decide whether McGuffin was guilty beyond a reasonable doubt based on the evidence and argument that had not been presented to the original jury. Because the prosecuting attorney decided not to retry the case and, instead, to dismiss the charges, the issue of whether counsels' conduct did, in fact, cause a deprivation of McGuffin's constitutional rights has not been "actually litigated."

That being said, the PCR court's rejection of McGuffin's *other* enumerated bases on which he sought relief for his alleged claim that he was wrongfully convicted have been "actually litigated" and McGuffin should not be allowed to re-assert those claims in this civil rights action.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

of Meredith A. Sawyer: Exhibits 1, 2, 7, 8, 20, 21, 24-27, and 29-32. These documents are matters of public record and Vidocq requests that the Court take judicial notice of them.

## IV.    CONCLUSION

Plaintiffs cannot satisfy the fundamental elements of their federal and state law claims against Defendant Vidocq Society. Alternatively, the doctrine of issue preclusion bars Plaintiffs from relitigating the issue already decided in the post-conviction proceeding. For these reasons set forth above, all of the Plaintiffs' claims against Vidocq Society should be dismissed with prejudice.

RESPECTFULLY SUBMITTED, this 7th day of January 2025.

HWS LAW GROUP

BY: */s/ Anthony R. Scisciani III*_____
BY: */s/ Meredith A. Sawyer*_____
Anthony R. Scisciani III, OSB No. 070013
ascisciani@hwslawgroup.com
Meredith A. Sawyer, *pro hac vice*
msawyer@hwslawgroup.com
Lisa E. Lear, OSB No. 852672
llear@hwslawgroup.com
Kelsey L. Shewbert, OSB No. 221063
kshewbert@hwslawgroup.com
Attorneys for Defendant Vidocq Society

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 58

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Oregon, that the following is true and correct:

I am employed by the law firm of HWS Law Group.

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document(s) to which this is attached, in the manner noted on the following person(s):

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| **CO / Plaintiffs**<br>Janis C. Puracal<br>Andrew C. Lauersdorf<br>Maloney Lauersdorf Reiner PC<br>1111 E. Burnside Street, Suite 300<br>Portland, OR 97214 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>jcp@mlrlegalteam.com<br>acl@mlrlegalteam.com<br>cv@mlrlegalteam.com<br>ms@mlrlegalteam.com |
| **CO / Plaintiffs**<br>David B. Owens, *Pro Hac Vice*<br>Loevy & Loevy<br>100 S. King Street, Suite 100<br>Seattle, WA 98104-2885 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>david@loevy.com |
| **CO / Defendants City of Coquille, City of Coos Bay, Coos County, Craig Zanni, Chris Webley, Eric Schwenninger, Sean Sanborn, Ray McNeely, Kris Karcher, Pat Downing, Mark Dannels, Kip Oswald, Michael Reaves, David Zavala, Anthony Wetmore and Shelly McInnes**<br>Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net |
| **CO / Defendants John Riddle, Susan Hormann, Mary Krings, Kathy Wilcox, and Oregon State Police**<br>Jesse B. Davis | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable** |

DEF. VIDOCQ SOCIETY'S
MOTION FOR SUMMARY JUDGMENT
(CASE NO. 6:20-CV-01163-MK) – Page 59

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

| | |
|---|---|
| Todd Marshall<br>Kristen Hoffmeyer<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201 | jesse.b.davis@doj.oregon.gov<br>todd.marshall@doj.oregon.gov<br>kristen.hoffmeyer@doj.oregon.gov<br>maureen.a.mccarthy@doj.oregon.gov<br>jennifer.burdick@doj.oregon.gov |
| **CO / Defendant Richard Walter**<br>Eric S. DeFreest<br>Luvaas Cobb<br>777 High Street, Suite 300<br>Eugene, OR 97401 | ☐　**Via U.S. Mail**<br>☒　**Via E-Mail**<br>☐　**Via Overnight Mail**<br>☒　**Via Court E-Service, if applicable**<br>edefreest@luvaascobb.com<br>KWorkman@luvaascobb.com |
| **CO / Defendant Richard Walter**<br>Laura E. Coffin<br>Coffin Law<br>541 Willamette St Ste 211<br>Eugene OR 97401<br>541-325-8080 | ☐　**Via U.S. Mail**<br>☒　**Via E-Mail**<br>☐　**Via Overnight Mail**<br>☒　**Via Court E-Service, if applicable**<br>lauracoffin@coffin.law |

DATED this 7th day of January 2025.

*/s/ Caroline Bryant*
Caroline Bryant, Legal Assistant