1    Eric S. DeFreest, OSB No. 920475
     edefreest@luvaascobb.com
2    Erek J. Andrus, OSB No. 244161
     eandrus@luvaascobb.com
3    LUVAAS COBB
     777 High Street, Ste. 300
4    Eugene, OR 97401
     Telephone: 541-484-9292
5

6    Laura E. Coffin, OSB No. 075825
     lauracoffin@coffin.law
7    COFFIN LAW
     541 Willamette Street, Ste. 211
8    Eugene, OR 97401
     Telephone: 541-325-8080

9       Attorneys for Defendant Richard Walter

10

11           UNITED STATES DISTRICT COURT

12             DISTRICT OF OREGON

13              EUGENE DISTRICT

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor, | Civil No. 6:20-cv-01163-MK |
| Plaintiffs, | DEFENDANT RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT |
| v. | *Request for Oral Argument* |
| MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY, | |
| Defendants. | |

TABLE OF CONTENTS

Page(s)

LOCAL RULE 7-1 CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

MOTION TO GRANT SUMMARY JUDGMENT FOR RICHARD WALTER . . . . . . . . . 12

MEMORANDUM OF POINTS AND AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    LEGAL STANDARD AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 20

          1.    Standard for Summary Judgment Under Fed.R.Civ.P.56. . . . . . . . . 20

          2.    Walter Did Not Cause, Nor Proximately Cause, Any Injury
              To Either Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

          3.    No Jury Could Find Walter Liable for Plaintiffs' § 1983 Claims
              Because Walter Was Not Acting Under Color of Law. . . . . . . . . . . 22

              a.    Plaintiffs' § 1983 Claims Against Walter Should Be
                    Dismissed Because Walter Was Not Acting Pursuant
                    To A State Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

              b.    Plaintiffs' § 1983 Claims Against Walter Should Be
                    Dismissed Because Walter is Not A State Actor
                    Under § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

                  (1)    Walter Is Not A State Actor Under The Public
                        Functions Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

                  (2)    Walter Is Not A State Actor Under The Joint
                        Action Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

                        (a)    No Conspiracy Between Walter and The State
                              Defendants Existed Because There Was No
                              Meeting Of The Minds To Accomplish Any
                              Deprivation of Plaintiffs' Constitutional
                            Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

                      (b)    Walter Was Not a Willful Participant In Joint
                              Action With The Law Enforcement
                              Defendants Or With Frasier . . . . . . . . . . . . . 31

          4.    Even Assuming Arguendo That Walter Could Be A State Actor,
              Plaintiffs' § 1983 Claims Against Walter Should Be Dismissed . . . . 34

a.      The *Smiddy* Presumption Precludes Walter From Liability For Plaintiffs' § 1983 Claims Arising After Plaintiff Was Indicted Since Frasier Used His Independent Judgment In Indicting Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

b.      Walter Did Not Conspire To Deprive Plaintiffs Of Their Constitutional Rights Because There Was No "Meeting of the Minds" Between Walter and The Other Defendants To Knowingly Attempt to Accomplish a Wrongful Purpose. . . . 35

c.      Walter Did Not Destroy Or Fail To Disclose Exculpatory Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        (1)     Walter Did Not Destroy Exculpatory Evidence And Walter Never Had Custody Or Control Of Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . 37

        (2)     Walter Did Not Fail To Disclose Exculpatory Evidence to Plaintiffs, Nor Did Walter Have Any Duty To Disclose Evidence Of A Criminal Investigation. . . . . 38

d.      Walter Did Not Initiate McGuffin's Prosecution, Therefore No Viable Claim For Malicious Prosecution Under Federal Or State Law Exists. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

e.      Walter Did Not Illegally Detain McGuffin Prior To Trial Following The Issuance Of Legal Process . . . . . . . . . . . . . . 42

f.      Walter Did Not Fail to Intervene. . . . . . . . . . . . . . . . . . . . . 43

g.      Walter Did Not Deprive Plaintiffs Of Their Right To Due Process And A Fair Trial Under The 14th Amendment . . . . . 45

5.      Plaintiffs' State Claims Against Walter Should Be Dismissed. . . . . . 46

a.      Walter is Not Liable For False Imprisonment. . . . . . . . . . . . 46

b.      Plaintiffs' Claims For Civil Conspiracy Against Walter Should Be Dismissed Because There Was No Meeting of The Minds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

c.      Walter Did Not Play An Active Role Nor Influence McGuffin's Prosecution, Or Conviction and Plaintiffs' Claims for Intentional Infliction Of Emotional Distress Against Walter Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

d.      Plaintiffs' Claims For Negligent And/Or Intentional Spoliation of Evidence Against Walter Should be Dismissed . . . . . . . . . 50

6.      S.M. Cannot Succeed On S.M.'s Claims For Loss Of Consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

7.    Plaintiffs' Claims Are Barred By The Preclusive Effect of McGuffin's Claim For Post Conviction Relief. . . . . . . . . . . . . . . . . 52

a.    The Issues In McGuffin's PCR Claim Are Identical To The Issues McGuffin Raised Against Walter, and Were Actually Litigated in McGuffin's PCR Claim. . . . . . . . . . . . . . . . . . 53

b.    McGuffin Was a Party To His PCR Claim and Received A Full and Fair Opportunity To Be Heard . . . . . . . . . . . . . . . . 54

c.    Preclusive Effect Should Be Given To McGuffin's PCR Proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

8.    Plaintiffs Are Not Entitled To Attorney Fees Under 42 U.S.C. § 1988(b) Because Plaintiffs Have Not, And Should Not, Prevail On Their Claims Against Walter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

1

TABLE OF AUTHORITIES

2

Cases                                                                    Page(s)

3

*Adickes v. S. H. Kress & Co.*
4
398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5
*Allen v. McCurry*
449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
6

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*
7
526 U.S. 40 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8
*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
9

*Ariz. v. Youngblood*
10
488 U.S. 51 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

11
*Awabdy v. City of Adelanto*
12
368 F.3d 1062 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

13
*Bartz v. State of Oregon*
839 P.2d 217 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
14

*Beck v. City of Upland*
15
527 F.3d 853 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

16
*Berg v. Benton*
17
443 P.3d 714 (Or. App. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

18
*Blum v. Yaretsky*
457 U.S. 991 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
19

*Bonds v. Landers*
20
566 P.2d 513 (Or. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

21
*Brady v. Maryland*
373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
22

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*
23
531 U.S. 288 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

24
*Butherus v. Bremerton Sch. Dist.*
69 F. App'x. 386 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
25

26
*Butler v. Goldblatt Bros., Inc.*
589 F.2d 323 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*California v. Trombetta*
467 U.S. 479 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Carlin Communications Inc. v. Mountain States Telephone & Telegraph Co.*
827 F.2d 1291 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
590 F.3d 806 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Celotex Corp.v. Catrett*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Children's Health DEF. v. Meta Platforms, Inc.*
112 F.4th 742 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Chudacoff v. Univ. Med. Ctr.*
649 F.3d 1143 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Classen v. Arete NW, LLC*
294 P.3d 520 (Or. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Clemente v. State*
206 P.3d 249 (Or. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Collins v. Womancare*
878 F.2d 1145 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cunningham v. Gates*
229 F.3d 1271 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Ex Parte United States*
287 U.S. 241 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Fenters v. Yosemite Chevron*
761 F.Supp. 2d 957 (E.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Fonda v. Gray*
707 F.2d 435 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Gerstein v. Pugh*
420 U.S. 103 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*Gilbrook v. City of Westminster*
177 F.3d 839 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ginsberg v. Healey Car & Truck Leasing, Inc.*
189 F.3d 268 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gray v. Dep't of Just.*
275 F. App'x 679 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Grisby v. Blodgett*
130 F.3d 365 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Gutzalenko v. City of Richmond*
723 F.Supp. 3d 748, (N.D. C.A. 2024)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Hanline v. Cnty. of Ventura*
LACV 15-8808-VAP (AJWx)
U.S. Dist. LEXIS 237565 (C.D.Cal. Feb. 7, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Hanrahan v. Hampton*
446 U.S. 754 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Harvey v. Harvey*
949 F.2d 1127 (11th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hiber v. Creditors Collection Serv., Inc.*
961 P.2d 898 (Or. App. 1998) *rev* den, 971 P.2d 413 (Or. 1998) . . . . . . . . . . . . . . . . . . . . 46

*House v. Hicks*
179 P.3d 730 *rev den*
195 P.3d 911 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Humbert v. Knutson et al.*
354 P.2d 826 (Or. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Jackson v. Metro. Edison Co.*
419 U.S. 345 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Kirtley v. Rainey*
326 F.3d 1088 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31, 33

*Koon v. U.S.*
518 U.S. 81 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Lee v. Katz*
276 F.3d 550 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Lombard v. Louisiana*
373 U.S. 267 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

*Lugar v. Edmondson Oil Co., Inc.,*
457 U.S. 922 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Manuel v. City of Joliet*
580 U.S. 357 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Marbet v. City of Portland*
No. CV 02-1448-HA
U.S. Dist. LEXIS 25685 (D. Or. Sept. 8, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    51

*Mathis v. Pacific Gas & Elec. Co.*
75 F.3d 498 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*McGanty v. Staudenraus*
901 P.2d 841 (Or. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    48

*McGuffin v. Dannels et. al.*
Slip Copy, No. 6:20-CV-01163-MK
2021 U.S. Dist. LEXIS 187337 (D. Or. July 27, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . .    28

*McGuffin v. Nooth*
Case No. 15CV1030 (Cir. Ct. Or.  2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 52

*McSherry v. City of Long Beach*
584 F.3d 1129 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    34

*Mehta v. City of Upland*
748 Fed. App'x 739 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Mendocino' Envtl. Ctr. v. Mendocino Cnty*
192 F.3d 1283 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    28, 35

*Miller v. Columbia City*
385 P.3d 1214 (Or. App. 2016)
*rev den*, 391 P.3d 797 (Or. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Mockeridge v. Alcona Cnty.*
696 F.Supp. 3d 303 (E.D. Mich. 2023) *recons den.*, No. 1:21-cv-12896,
2023 U.S. Dist. LEXIS 206833 (E.D. Mich. Nov. 17, 2023) . . . . . . . . . . . . . . . . . . . . . 27, 30

*Moghadam v. Jalilvand*
2018 U.S. Dist. LEXIS 121114 (C.D. Cal. July 18, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Moulin v. City of Cent. Point*
2022 U.S. Dist. 117754 (D. Or. April 1, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Naoko Ohno v. Yuko Yasuma*
723 F.3d 984 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Norwest v. Presbyterian Intercommunity Hospital*
652 P.2d 318 (Or. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*O'Handley v. Weber*
62 F.4th 1145 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 27, 31

*O'Neill v. Krzeminski*
839 F.2d 9 (2nd Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Omnipoint Communications, Inc. v. Comi*
233 F.Supp.2d 388 (N.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Pakos v. Clark*
453 P.2d 682 (Or. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Parks Sch. of Business v. Symington*
51 F.3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Patton v. J.C. Penny Co.*
719 P.2d 854 (Or. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Pearson v. Galvin*
454 P.2d 638 (Or. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*R-Goshen LLC v. Andrews*
115 F. App'x 465 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*R-Goshen LLC v. Vill. of Goshen*
289 F.Supp.2d 441 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Rendell-Baker v. Kohn*
457 U.S. 830 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Richards v. Cnty. of San Bernardino*
39 F.4th 562 (9th Cir. June 24, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Richer v. Poisson*
903 P.2d 932 (Or. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Ross by & Through Ross v. City of Eugene*
950 P.2d 372 (Or. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Sanchez v Hartley*
299 F.Supp.3d 1166 (D. Co. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Shelley v. Kraemer*
334 U.S. 1 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Sloman v. Tadlock*
21 F.3d 1462 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Smiddy v. Varney*
665 F.2d 261 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21, 34, 35, 45, 46

*State v. Copeland*
527 P.3d 771 (Or. App. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Stone v. Finnerty*
50 P.3d 1179 (Or. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Sunkist Growers v. Fisher*
104 F.3d 280 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Sutton v. Providence St. Joseph Med. Ctr.*
192 F.3d 826 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Terry v. Adams*
345 U.S. 461 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Thomas v. U.S. Bank N.A.*
260 P.3d 711 (Or. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Tribble v. Gardner*
860 F.2d 321 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Tsao v. Desert Palace, Inc.*
698 F.3d 1128 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26, 31, 33

*United States v. Cooper*
983 F.2d 928 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Koon*
34 F.3d 1416 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United Steelworkers of Am. v. Phelps Dodge Corp.*
865 F.2d 1539 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*U.S. v. Bagley*
473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

1

2

*U.S. v. Davenport*
753 F.2d 1460 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

3

*U.S. v. Gordon*
844 F.2d 1397 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

4

5

*Waldner v. Dow*
876 P.2d 785 (Or. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

6

*Washington Cnty. Police Officers Ass'n v. Washington Cnty.*
900 P.2d 483 (Or. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

7

8

*White v. Scrivner Corp.*
594 F.2d 140 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

9

10

*Wolff v. Du Puis*
378 P.2d 707 (Or. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

11

12

*Wright v. SEIU*
48 F.4th 1112 (9th Cir. 2022)
cert. denied, 214 L. Ed. 2d 451 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

13

Authorities

14

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21
42 U.S.C. § 1988(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 55
Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 20
Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Local Rule 7-1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Oregon Rules of Civil Procedure 43.130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
Oregon Rules of Civil Procedure 138.510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Oregon Rules of Civil Procedure 138.530 (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Oregon Rules of Civil Procedure 138.550 (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Oregon Rules of Civil Procedure 138.610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Oregon Rules of Civil Procedure 138.620 (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

15

16

17

18

19

20

21

22

23

24

25

26

1    <u>LOCAL RULE 7-1 CERTIFICATION</u>

2    In compliance with LR7-1(a)(1), the parties made a good faith effort through personal

3    or telephone conferences to resolve the dispute and have been unable to do so.

4    This brief complies with the limits established by this Court in its order dated November

5    27, 2024 because it contains 45 pages including headings, footnotes, and quotations, but

6    excluding the caption, table of contents, table of cases and authorities, signature block, exhibits,

7    and certificates of counsel.

8    <u>MOTION TO GRANT SUMMARY JUDGMENT FOR RICHARD WALTER</u>

9    Defendant Richard Walter ("Walter"), by and through his undersigned counsel, and

10   pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 56, moves for a grant of summary

11   judgment in his favor, dismissing the following claims of the Plaintiffs stated in Plaintiffs'

12   Second Amended Complaint ("SAC") with prejudice:

13   •    First Claim for Relief: 42 U.S.C. § 1983 (Counts 1–7, 9);

14   •    Second Claim for Relief : State Law - False Imprisonment;

15   •    Third Claim for Relief: State Law - Malicious Prosecution;

16   •    Fourth Claim for Relief: State Law - Civil Conspiracy;

17   •    Sixth Claim for Relief: State Law - Intentional Infliction of Emotional Distress;

18   •    Seventh Claim for Relief: State Law - Negligent and/or Intentional Spoliation of

19        Evidence;

20   •    Eighth Claim for Relief: Attorney Fees Pursuant to 42 U.S.C. § 1988(b);

21   This motion is based upon the materials submitted in the court's file, the declaration submitted

22   herewith and the following points and authorities. In support of this Motion, Walter relies on the

23   accompanying memorandum of law.

24   WHEREFORE, Walter respectfully moves this Court for an order:

25   A.    Granting summary judgment in favor of Walter, dismissing Plaintiffs' complaint

26   against Walter in its entirety and with prejudice pursuant to Fed. R. Civ. P. 56, or in the

     alternative granting summary judgment in favor of Walter on each of the claims individually;

1    B.    Granting Walter attorney fees pursuant to 42 U.S.C. § 1988(b); and

2    C.    Granting Walter any such other relief deemed appropriate under the

3    circumstances.

4    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

5    A.    <u>INTRODUCTION</u>

6    Walter moves for dismissal of Plaintiffs' First, Second, Third, Fourth, Sixth, Seventh,

7    and Eighth claims for Relief pursuant to Fed. R. Civ. P. 56 in the entirety and in the alternative

8    because there are no genuine issues of material fact and Walter is entitled to judgment as a matter

9    of law. Walter is so entitled because Walter is not a state actor, Walter is shielded by the *Smiddy*

10   Presumption, *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), and because a rational trier

11   of fact could not find Walter liable to the Plaintiffs for any of the aforementioned claims, as

12   explained below.

13   For ease of communication, Mark Dannels, Pat Downing, Susan Hormann, Mary Krings,

14   Kris Karcher, Shelly Mcinnes, Raymond Mcneely, Kip Oswald, Michael Reaves, John Riddle,

15   Sean Sanborn, Eric Schwenninger, Chris Webley, Anthony Wetmore, Kathy Wilcox, Craig

16   Zanni, David Zavala, Joel D. Shapiro as Administrator of the Estate of David E. Hall, City of

17   Coquille, City of Coos Bay, and Coos County together are referred to herein as "Law

18   Enforcement Defendants." Plaintiffs Nicholas McGuffin and S.M. together are referred to herein

19   as "Plaintiffs."

20   B.    <u>STATEMENT OF FACTS</u>

21   1.    This case is the most recent event in a series that began over twenty years ago

22   when Leah Freeman ("Freeman") disappeared and was likely murdered on June 28, 2000.

23   Declaration of Eric S. DeFreest, ¶ 2, Ex. 1 (Depo Transcript of District Attorney Robert Paul

24   Frasier ("Frasier"), Ex. 0003)(all exhibits referenced hereafter are to Eric DeFreest's Declaration

25   and will be referenced by exhibit number only).

26   / / /

2.      Nicholas McGuffin ("McGuffin"), one of the plaintiffs in this case, was the primary suspect of the first investigation. Ex. 1 (Depo Transcript of Frasier), p. 62:5-8.

3.      During that investigation, Freeman's right shoe was found on June 28, 2000 on Elm Street. Ex. 2 (trial testimony of Tony Messerle), p. D5 128:6-23; (trial testimony of Kathy Wilcox ("Wilcox")), p. D6 83:5-9. Freeman's left shoe was found on Hudson Ridge on July 5, 2000. Ex. 2 (trial testimony of Sergeant Kip Oswald ("Oswald"), pp. D5 140:11-25, 141:1-14; Ex. 2 (trial testimony of Wilcox), p. D6 83:10-15.

4.      The left shoe had blood on it, but the right did not. Ex. 2 (trial testimony of Wilcox), p. D6 84:1-9. In July of 2000, these shoes were inadvertently mislabeled, which was addressed at the criminal trial of McGuffin. Ex. 2 (trial testimony of Wilcox), pp. D6 76:23-25, 82:12-25, 83:1-12, 84:10-22, 136:7-23.

5.      The second investigation into the death of Freeman began in 2009 (first and second investigations together are referred to as the "Freeman Investigation"). Ex. 3 (Depo Transcript of Police Chief Mark Dannels ("Dannels")), pp. 41:25, 42:1-10; Ex. 1 (Frasier Depo), p.72:15-20.

6.      In late 2009, the Vidocq Society ("Vidocq"), a pro bono group of experts in various areas of investigative analysis, offered Dannels an opportunity to make a presentation of the Freeman Investigation to Vidocq so that Vidocq could offer assistance. Ex. 4 (Deposition Transcript of Barbara Cohan-Saavedra ("Cohan")), pp. 39:4-23, 40:13-25; Ex. 3 (Dannels Depo), pp. 86:16-25, 87:1-6. The invitation was accepted and Frasier presented a summary of the Freeman Investigation to Vidocq. Ex. 1 (Frasier Depo), p. 85:5-10; Ex. 0003.

7.      One of Vidocq's objectives is "[t]o render *pro bono* assistance to law enforcement jurisdictions in the solving of 'cold case' homicides or other crimes." Ex. 4 (Cohan Depo), Ex. 0002.

8.      Seeking independent assistance in a murder investigation is common practice for law enforcement agencies. Ex. 5 (Deposition Transcript of Adam Bercovici ("Bercovici")), pp. 57:23-25, 58:1-4.

9.     Walter first became aware of the Freeman Investigation when Frasier presented to Vidocq. Ex. 6 (Deposition Transcript Walter), p. 238:3-10.

10.     In that presentation, Frasier identified the goal of the Freeman Investigation to be "Eliminate McGuffin as the suspect and identify the perpetrator of the crime Or If McGuffin is guilty, develop a prosecutable case." Ex. 1 (Frasier Depo), Ex. 0003. The summary presentation did not contain information that there was unidentified male DNA reportedly found on Freeman's shoes, nor any statement by Nick Backman reported to Sergeant Craig Zanni identifying Freeman as being in front of the credit union at 9:04 p.m. on the night she disappeared. Ex. 1 (Frasier Depo), p. 227:5-17, Ex 0003.

11.     At that luncheon Walter provided Frasier with the first of two articles Walter would provide Frasier. Ex. 1 (Frasier Depo), p. 228:2-10. After the presentation, Walter, a member of the Vidocq Society at the time, went to dinner with the presenters. Ex. 1 (Fraiser Depo), p. 228:11-16. Walter "provided a summary of what he thought the offender would look like." Ex. 3 (Dannels Depo), p. 83:22-25.

12.     Prior to June 30, 2010, Walter traveled to Coquille, Oregon, being invited and arranged by ABC.   Ex. 3, (Dannels Depo), p. 80:9-24; Ex. 1 (Frasier Depo), p. 160:18-21. Walter would only have traveled to Oregon to provide commentary on the Freeman Investigation if Vidocq agreed to allow it. Ex. 6 (Walter Depo), p. 257:16-23.

13.     ABC filmed a 20/20 television show regarding the Freeman Investigation.  Ex. 3 (Dannels Depo), Exs. 0058 and 0059. Walter was filmed in Oregon for the 20/20 show on or about June 30.  Ex. 1 (Frasier Depo), pp. 157:16-22, 160:12-20, Ex. 14. The crew of 20/20 controlled the script for the show, not Dannels. Ex. 3 (Dannels Depo), p. 80:11-15.

14.     Frasier retained control of prosecutorial decision making and insisted that he would present all angles of the investigation to the grand jury and let the grand jury decide. Ex. 1 (Fraiser Depo), pp. 114:11-25, 115:1-7. Frasier explained to Walter that the first article Walter gave him did not match up with the Freeman case. Ex. 1 (Frasier Depo), p. 117:10-20. Walter

gave Frasier a second article written by Walter, which Frasier never read. Ex. 1 (Frasier Depo), pp. 117:21-25, 118:1-3.

15.    Walter was taken by Dannels and others to the spot where Freeman's body was found and spent twenty-five minutes there. Ex. 6 (Walter Depo), p. 281:8-23.

16.    Walter remembers spending only three days in Oregon. Ex. 6 (Walter Depo), p. 277:20-21. Frasier ended Walter's consultation on the Freeman Investigation no later than June 30, 2010. Ex. 1 (Frasier Depo), pp. 159:17-25, 160:1, 216:11-14; Ex. 0014.

17.    Frasier ended Walter's consultation after learning of *Drake v.Portuondo* ("*Drake* case") a Second Circuit case in which Walter testified, because the court challenged Walter's credentials and testimony. Ex. 1 (Frasier Depo), pp. 216:7-14, 222:3-16, Exs. 0014 and 0031. Frasier had thought of using Walter as a potential witness until Frasier learned of the *Drake* case. Ex. 1 (Frasier Depo), pp. 160:22-25, 161:1-9. Once Frasier learned of the *Drake* case, Frasier chose not to use Walter in any further action Frasier took. Ex. 1 (Frasier Depo), p. 216:11-14. Walter's consultation on the Freeman Investigation ended before Frasier took the matter to grand jury. Ex. 3 (Dannels Depo), p. 85:10-16; Ex. 1 (Frasier Depo), p. 125:6-9.

18.    Frasier did not use anything he learned from Walter, and Walter's commentary had no effect on McGuffin's verdict. Ex. 1 (Frasier Depo), pp. 218:17-20, 229:1-20, Ex. 0031 at 4-6. Frasier did not learn anything new from Vidocq or Walter. Ex. 1 (Frasier Depo)*,* pp. 119:4-9, 235:15-25. Walter was not a witness at McGuffin's grand jury. Ex. 13, (Plaintiffs' Response to Vidocq's First Request for Admission), p. 4; Ex. 6 (Walter Depo), p. 278:14-18; Grand Jury Witness List from *State of Oregon v. Nicholas James McGuffin;* Coos County Case No. 10CR0782, converted case docs on OJIN, pp. 2 and 3 of 739. Walter was not a witness at McGuffin's trial, nor did any evidence used at trial come from Walter. Ex. 13, (Plaintiffs'

/ / /

/ / /

Response to Vidocq's First Request for Admission), p. 4. *See,* converted case docs on OJIN pp. 481-482, 486-487, 492, 498-503, 509-512, 519-523, 530-535, 541-546, 552-557, 562-567 of 739. Walter did not affect Dannels' investigatory approach, nor did Dannels use any of Walter's information. Ex. 3 (Dannels Depo), pp. 59:3-12, 83:1-9.

19.     Walter did not have contact with Dannels or Frasier once he left Oregon. Ex. 3 (Dannels Depo), p. 81:2-7; Ex. 6 (Walter Depo), p. 277:17-21.

20.     Walter's consultation on the Freeman Investigation was pro bono. Ex. 6 (Walter Depo), pp. 259:19-25, 260:1-7. Walter was not paid anything by Frasier's office and Vidocq is an entirely volunteer organization. Ex. 1 (Frasier Depo), p. 239:4-11. Walter was not paid by Frasier's office nor the Coquille Police for his time consulting on the Freeman Investigation. Ex. 1 (Frasier Depo), p. 239:7-21. Walter did not act as an agent of Coos County DA's office. Ex. 1 (Frasier Depo), p. 249:15-17. During the Freeman Investigation, Walter was not acting in his professional capacity. Ex. 6 (Walter Depo), pp. 228:24-25, 229:1-4, 236:6-10.

21.     Walter explained what the disclosed evidence from the Freeman Investigation showed from Walter's perspective, and let law enforcement personnel draw their own conclusions. Ex. 6 (Walter Depo), p. 267:16-22. Walter wanted the law enforcement personnel to come to their own conclusions based on the facts as they asserted them. Ex. 6 (Walter Depo), p. 231:13-23. Walter was there to consult, to listen and help law enforcement personnel understand what they claimed to be true. Ex. 6 (Walter Depo), pp. 228:16-25, 229:1-4. Walter was acting as a stimulant for the thinking process and understanding of the crime scene evidence. Ex. 6 (Walter Depo), p. 236:6-10.

22.     Walter did not challenge any information he was given, nor verify the facts he was given regarding the Freeman Investigation because he had nothing with which to challenge them. Ex. 6 (Walter Depo), pp. 228:15-25, 230:16-21. Walter primarily relied on Dannels for information regarding the Freeman Investigation. Ex. 6 (Walter Depo), p. 227:7-12. Walter did not review any police reports, lab reports, and does not remember viewing any autopsy reports. Ex. 6 (Walter Depo), pp. 279:21-25, 280:1-13.

23.     Throughout Walter's time consulting on the Freeman Investigation, he did not have access to the investigators' evidence files, nor did he conduct any investigating. Ex. 3 (Dannels Depo), p. 80:1-8; Ex. 1 (Frasier Depo), p. 221:1-15. Walter did not provide any deliverable report to Dannels, nor did he have any opportunity to alter evidence or to rule out any suspects. Ex. 3 (Dannels Depo), pp. 81:12-25, 82:1-10, 83:1-25, 84:1-7. Walter did not have an agreement with Frasier's office to provide any "produceable." Ex. 1 (Frasier Depo), p. 218:5-7. Walter did not interview any witnesses.  Ex. 3 (Dannels Depo), pp. 80:25, 81:1-7; Ex. 1 (Frasier Depo), p. 249:7-14.

24.     Walter did not claim that McGuffin murdered Freeman. Ex. 6 (Walter Depo), pp. 234:4-25, 235:1-8; Ex. 3 (Dannels Depo), Exs. 0058 and 0059. Walter knew nothing of the unknown male DNA on the second shoe until after McGuffin's post conviction relief proceeding, when 20/20 called him. Ex. 6 (Walter Depo), pp. 24:18-25, 25:1-9, 230:2-7.

25.     Frasier began presenting information from the Freeman Investigation to the grand jury on July 14, 2010. Motion/Affidavit For Arrest Warrant For McGuffin Aug. 23, 2010 from converted case docs on OJIN p. 4 of 739.

26.     McGuffin was indicted by grand jury on August 23, 2010. Grand Jury Indictment from converted case docs on OJIN, p. 1 of 739.

27.     McGuffin was arrested by August 24, 2010, when he was arraigned. Record of McGuffin's Arraignment from converted case docs on OJIN, p. 8 of 739.

28.     McGuffin's trial began July 5, 2011. Court Reporter's Certificate from covered case docs on OJIN, p. 481 of 739.

29.     Frasier produced materials  relating to Vidocq's involvement in the Freeman Investigation, including the two articles Walter gave to Frasier, to McGuffin's defense team prior to McGuffin's trial.  Ex. 1 (Frasier Depo), pp. 89:14 - 95:17.

30.     The assertion that McGuffin's car had been wiped down was argued at trial.  Ex. 2 (trial testimony closing arguments), p. D9 148:3-25, 149:1-23.

31.     In his closing argument Frasier purports that on the night of Freeman's murder McGuffin finds Freeman, they argue, he follows her and tries to get her into his car, she loses a shoe and ends up with a bloody nose or lip, screams, and he strangles to keep her quiet or in anger. Ex. 2 (trial testimony closing arguments), pp. D9 155:12-25, 156:1-7. Frasier claimed McGuffin then panics and tries to cover up his crime, eventually having a panic attack because of his guilt. Ex. 2 (trial testimony closing arguments), p. D9 156:8-12. Then, as time passes and McGuffin remains free, he gets arrogant. Ex. 2 (trial testimony closing arguments), p. D9 156:13-15.

32.     Walter thought that there could be more than one person involved since a power assertive likes having witnesses. Ex. 6 (Walter Depo), p. 237:3-15.

33.     McGuffin was found guilty of killing Freeman on July 19, 2011. Record of Proceedings and Judgment, Jury Verdict from converted case docs on OJIN, p. 569 of 739.

34.     McGuffin filed a petition for post conviction relief ("PCR") in January, 2015. McGuffin v. Nooth, Case No. 15CV1030; Malheur County, Register of Actions.

35.     Vidocq is mentioned in McGuffin's petitions for PCR up through his Third Amended Petition. Ex. 8 (Third Amended Petition for Post-Conviction Relief ("Third Amended Petition")), pp. 21:13-16, 28:9-18 (2018). In his Third Amended Petition, McGuffin alleges that information regarding Vidocq was not turned over in discovery, and that the State improperly investigated and publicized the Freeman case by involving Vidocq and failing to disclose the entirety of Vidocq's involvement. *Id*.

36.     McGuffin voluntarily withdrew his allegations involving Vidocq. Ex. 9 (Petitioner McGuffin's Opposition To State's Motion for Partial Summary Judgment), p. 1 (2019); Ex. 10 (Fourth Amended Petition For Post-Conviction Relief), pp. 17:17-23, 18:1-15, 21:7-20, 22:1-10 (2019).

37.     The court ruled on the claims in McGuffin's Fifth Amended petition, ultimately granting McGuffin's petition for PCR on three grounds: Ineffective assistance of trial counsel for

failure to investigate the unknown male DNA on Freeman's shoes by neither questioning the state's conclusions nor hiring an independent expert to examine the DNA evidence, ineffective assistance of trial counsel for failure to investigate the Backman report, and a *Brady* violation for failure to disclose the existence of unknown male DNA on Freeman's shoes. Ex. 11 (General Judgment), pp. 7:24-26, 11:9-13, 15:18-21; Ex. 12 (Fifth Amended Petition For Post-Conviction Relief), pp. 3:20-24, 4:1-9, 12:14-21, 13:6-11.

38.    In 2019, McGuffin's conviction was set aside and his case remanded to the trial court. Ex. 11 (General Judgment), pp. 17:23-28, 18:1-2.

39.    S.M. has never interacted with Walter, nor does S.M. know Walter personally. Ex. 7 (S.M. Depo), p. 65:3-12. S.M. does not know who Vidocq is, or what role Vidocq played in McGuffin's investigation, prosecution, or incarceration. S.M.  Ex. 7 (S.M. Depo), pp. 65:23-25, 66:1-15.

C.    LEGAL STANDARD AND ARGUMENT

1.    Standard for Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)(citing Fed. R. Civ. P. 56(c)). There exists no genuine issue as to any material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 50 (9th Cir. 1992), (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson* 477 U.S. at 248. An issue of material fact is genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hanon* 976 F.2d at 500(quoting *Anderson* 477 U.S. at 248) Summary judgment should be granted for a defendant when the evidence supporting a plaintiff's claim is "merely colorable" or "not

1    significantly probative." *Id*. at 249-50. If a defendant is the moving party, the defendant may

2    meet his burden by "pointing out to the district court—that there is an absence of evidence to

3    support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

4         Summary judgment in favor of Walter is justified because, based on the evidence relevant

5    to Plaintiffs' claims against Walter, no reasonable jury could find Walter liable to the Plaintiffs.

6    No jury could find for Plaintiffs' First Claim because (1) under 42 U.S.C. § 1983 Walter was not

7    a state actor during the pertinent time period, (2) Walter is entitled to the *Smiddy* Presumption

8    which Plaintiffs cannot rebut, (3) there was no meeting of the minds between Walter and law

9    enforcement personnel to accomplish a wrongful purpose, (4) Walter did not influence

10    McGuffin's prosecution, (5) Walter did not instigate McGuffin's arrest, (6) Walter did not have

11    access or control of evidence, and (7) Walter did not have an opportunity to intervene in any

12    alleged constitutional violation**.**

13         No jury could find for the Plaintiffs on their second claim because Walter did not

14    persuade or influence anyone, including law enforcement personnel, to arrest McGuffin. No jury

15    could find for the Plaintiffs on their third claim because Walter did not initiate McGuffin's

16    prosecution. No jury could find for the Plaintiffs on their fourth claim because Walter did not

17    engage in a meeting of the minds to accomplish an unlawful purpose or to pursue an objective

18    through unlawful means. No jury could find for the Plaintiffs on their sixth claim because Walter

19    did not play an active role in McGuffin's arrest, prosecution or conviction.  No jury could find

20    for the Plaintiffs on their seventh claim because Walter did not knowingly possess evidence, nor

21    have a duty to disclose evidence. Plaintiffs should not receive attorney fees under their eighth

22    claim because Plaintiffs should not prevail on any aforementioned claims against Walter.

23         2.    Walter Did Not Cause, Nor Proximately Cause, Any Injury To Either Plaintiff

24         There is no evidence that any act or omission of Walter caused any of the harms Plaintiffs

25    allege. Plaintiffs allege violations of Plaintiffs' due process right to a fair trial, to companionship,

26    Fourth Amendment protection against unreasonable search and seizure, conspiracy to commit

these violations, failure to stop these violations, as well as harm from unlawful incarceration, malicious prosecution, intentional emotional damages, destruction of evidence, and conspiracy to commit these acts all arising from the Freeman Investigation and McGuffin's indictment, arrest, and prosecution.[1] There is no evidence indicating Walter affected or altered the course of the Freeman Investigation, or McGuffin's indictment, arrest, and prosecution. Statement of Facts ("SOF") ¶ 18. Walter never claimed McGuffin killed Freeman. SOF ¶ 24. Walter had no control over or authority to influence the Freeman investigation. SOF ¶¶ 20, 23. Walter had no authority to control or create evidence, speak with witnesses, or conduct any investigative activities whatsoever. SOF ¶ 23. Walter had no prosecutorial authority or influence over McGuffin's arrest, indictment and prosecution. SOF ¶¶ 14, 18, 20.

Walter did not affect Dannels' investigative approach toward the Freeman Investigation, nor Frasier's decision to present the case to the grand jury or prosecute McGuffin. Walter merely acted as a springboard for ideas and let law enforcement and Frasier come to their own conclusions. SOF ¶¶ 14, 17, 18, 19, 21. Significantly from a temporal standpoint, Frasier ended communications with Walter before Frasier decided to present evidence of any suspect to the grand jury. SOF ¶ 17. Walter had no contact with Dannels or Frasier after leaving Oregon. SOF ¶ 19. Frasier learned nothing new from Walter, and used nothing from Walter after Walter was removed from the Freeman Investigation. SOF ¶¶ 17, 18. Since Walter did not create or control any evidence and had no effect on the Freeman Investigation, or on McGuffin's indictment, trial or conviction, there is no causal nexus to connect Walter to any alleged injuries underlying Plaintiffs' claims.

3.    No Jury Could Find Walter Liable for Plaintiffs' § 1983 Claims Because Walter Was Not Acting Under Color of Law

To prove a § 1983 claim, a plaintiff must show both "(1) deprivation of a right secured by the Constitution and laws of the United States and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1149 (9th

---

[1] SAC ¶¶ 214, 219, 225, 234, 239-240, 244, 253, 272-273, 279, 285, 294, 310, 316.

22 - DEFENDANT RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT

Cir. 2011)(Internal citations omitted). In a § 1983 claim, action under color of law is "*power*, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the *authority* of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)(emphasis added). Thus, § 1983 does not cover "merely private conduct, no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (internal citations omitted). The "under color of law" requirement of § 1983 is a two-prong inquiry: the "private actor must meet (1) the state policy requirement and (2) the state actor requirement." *Wright v. SEIU*, 48 F.4th 1112, 1121 (9th Cir. 2022), cert. denied, 214 L. Ed. 2d 451 (Jan. 23, 2023).

> a.     Plaintiffs' § 1983 Claims Against Walter Should Be Dismissed Because Walter Was Not Acting Pursuant To A State Policy.

To meet the state policy requirement, a private party's act must have "resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013)(citing *Lugar* 457 U.S. at 937). "'The state policy requirement ensures that the alleged deprivation is fairly attributable to a state policy.'" *Wright*, 48 F.4th at 1122 (citing *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989)). "[W]here a purported state actor misuses–i.e. acts contrary to–a state law, her conduct cannot 'be ascribed to any governmental decision.'" *Moghadam v. Jalilvand*, 2018 U.S. Dist. LEXIS 121114, 3 (C.D. Cal. July 18, 2018) (citing *Lugar*, 457 U.S. at 940).  In *Children's Health DEF. v. Meta Platforms, Inc.*, 112 F.4th 742, 755 (9th Cir. 2024), the Ninth Circuit ruled in favor of the defense, in part because the plaintiffs had failed to fulfill the state policy requirement. CDH asserted that Meta "at the direction of the federal government" censored speech that challen]ged vaccine efficacy and safety.  *Id*. at 750.  The court reasoned that Meta acted "under the terms of its own rules, not under any provision of . . . law," Meta did not "[cede] control.... to the State." *Id*. at 755 (citing *O'Handley v. Weber*, 62 F.4th 1145, 154 (9th Cir. 2023)).

Plaintiffs have not alleged that Walter acted according to a statute, neither is there evidence to support such an assertion. Rather, Plaintiffs allege that Walter acted according to the policies of the City of Coos Bay, City of Coquille, and Coos County. SAC ¶ 189. The evidence contravenes this accusation. Walter provided pro bono consultation in accordance with Vidocq customs and practices on the Freeman investigation as a private party. SOF ¶¶ 7, 20. Walter was neither empowered as, nor did he assume any role as, an agent of City of Coos Bay, City of Coquille, Coos County, or any other government entity. SOF ¶¶ 20, 23. Walter was not paid by, nor delegated any authority from any government entity. SOF ¶¶ 18, 20, 23.

Similar to Meta in *Children's Health DEF*, Walter did not serve any governmental role under any provision of law. Walter was not under the control of any government entity during his time consulting on the Freeman Investigation. Walter was not paid by, nor was he an agent of, any law enforcement entity. SOF ¶ 20. At most, Walter acted according Vidocq's policies regarding members' interactions with investigations that had previously been presented to Vidocq. Vidocq, however, is a private entity, thus its policy is not one of the state. Since Walter was not acting under a state policy, Walter could not be deemed a state actor under § 1983.

　　　　　　b.　　Plaintiffs' § 1983 Claims Against Walter Should Be Dismissed Because Walter is Not A State Actor under § 1983.

A private actor may be a state actor only if their "conduct allegedly causing the deprivation of a federal right was fairly attributable to the State." *Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012)*(citing *Lugar*, 457 U.S. at 937). Whether conduct is "fairly attributable to the State," requires "identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50-51 (1999)*. A private party is a state actor only if they satisfy one of four tests: "(1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao*, 698 F.3d at 1140

/ / /

/ / /

(internal citations omitted). In this case, only the public function and joint action tests may arguably be relevant.[23]

(1)     Walter Is Not A State Actor Under The Public Functions Test.

Although a private actor may be a state actor when they perform an integral part of a government function, Walter was never authorized to perform and never did perform a government function in this case. *Terry v. Adams*, 345 U.S. 461, 469-470 (1953). "[T]he functions at issue must be both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)). A private party does not perform a public function if they have "powers *co-extensive* with the state;" in contrast "the public function test shows state action only when private actors are given powers (or perform functions) that are traditionally the *exclusive* prerogative of the State. *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992)(internal citations omitted).

In *Gutzalenko v. City of Richmond*, 723 F.Supp.3d 748, (N.D. C.A. 2024) the court addressed a distinguishable, but instructive, situation in which the defendant paramedic was alleged to be a state actor under the public function test. The paramedic responded to a police officer's call seeking medical aid for an intoxicated, injured and agitated suspect, who was already in custody when the paramedic arrived. *Id*. at 754. The paramedic injected the suspect

---

[2]The State Compulsion test is used to hold the state liable for actions of private parties. *See, e.g. Lombard v. Louisiana*, 373 U.S. 267, 273-74 (1963)(Holding a city liable for the acts of a private restaurant when those acts were done in accordance with a local custom spoken publicly by the Mayor). Where a plaintiff seeks to hold a private party liable under § 1983, there must be "some other nexus between the private entity and the government." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 839 (9th Cir. 1999). Even so, there is no evidence here that Walter was compelled by a state law or custom. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970) (*abbrogated by statute on other grounds*, *Sanchez v Hartley*, 299 F.Supp.3d 1166, 1201 n.11 (D. Co. 2017)).

[3]The Nexus Test is likewise often used to hold the state liable for private parties' actions. *See Blum v. Yaretsky*, 457 U.S. 991,1004 (1982), *Carlin Communications Inc. v. Mountain States Telephone & Telegraph Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987). When applied to hold private parties liable, those parties are usually organizations rather than persons. *See O'Handley v. Weber*, 62 F.4th 1145, 1157-59 (9th Cir. 2023). Even still, there is no evidence that Walter was pervasively intertwined with any government entity, nor coerced or significantly encouraged by any government entity. *O'Handley* 62 F.4th at 1157 (internal citations omitted).

with a chemical restraint, after which the suspect died. *Id*. The court reasoned that whether the paramedic performed a public function depended on whether the paramedic acted "in a law enforcement capacity when restraining a person or instead acted to provide medical assistance." *Id*. at 757.

Walter was not a state actor because Walter was not performing traditional and exclusively government function at the times relevant to Plaintiffs' claims. Walter was acting as a sounding board for law enforcement personnel's ideas, listening and responding to the limited evidence the Coquille personnel revealed to him, rather than performing any governmental investigating himself. SOF ¶¶ 21, 22, 23. It is normal practice for homicide investigators to seek assistance outside law enforcement. SOF ¶ 8. Assisting law enforcement with ideas for investigations is not an exclusive governmental function. *White v. Scrivner Corp., 594 F.2d 140, 142-43 (5th Cir. 1979)* (Explaining that even searching and detaining suspects are not exclusively government functions).

Unlike the paramedic in *Gutzalenko*, Walter was not actively on the scene at McGuffin's arrest, nor did Walter perform any act in a law enforcement capacity. SOF ¶¶ 3, 9, 21, 22, 23. The paramedic arrived on the scene of an arrest then injected the suspect with a chemical restraint. By contrast, Walter's involvement in the Freeman Investigation consisted solely of interactions with law enforcement personnel. SOF ¶¶ 18, 21, 22, 23. Walter did not collect evidence, interview witnesses, effect arrests, or any other similar activity, and his consultation was severed well before Frasier presented anything to the grand jury. SOF ¶¶ 17, 22, 23. Since Walter did not engage in a function exclusively reserved for the government, Walter was not a state actor under the public functions test.

(2)    Walter Is Not A State Actor Under The Joint Action Test.

To prove that a private party is a state actor under the Joint Action Test, a plaintiff must provide evidence that "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao*, 698 F.3d at 1140 (internal citations

omitted). Joint action may be shown by either "proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id*. (internal citations omitted).

> (a)    No Conspiracy between Walter And The State Defendants Existed Because There Was No Meeting Of The Minds To Accomplish Any Deprivation of Plaintiffs' Constitutional Rights.

To prove joint action through conspiracy, a plaintiff must show "a 'meeting of the minds' between the government and the private party to 'violate constitutional rights.'" *O'Handley*, 62 F.4th at 1159 (citing *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)). This "meeting of the minds" must be one in which the parties "knowingly attempt to accomplish an alleged wrongful purpose." *Id*. 439. Conspirators must "at least share the general conspiratorial objective." *Id*. at 438. When a private actor assists law enforcement in an investigation, law enforcement's bad faith efforts or unlawful objectives are not sufficient alone to prove that the private actor conspired with law enforcement. *Id*. (finding that "mere acquiescence of the bank employees to the investigation request of the FBI to view Fonda's bank records is, without more, insufficient to prove a conspiracy").

In *Mockeridge v. Alcona Cnty.*, 696 F.Supp.3d 303 (E.D. Mich. 2023) *recons den*., No. 1:21-cv-12896, 2023 U.S. Dist. LEXIS 206833 (E.D. Mich. Nov. 17, 2023), the court granted the private party defendant's motion for summary judgment on plaintiffs' § 1983 claims of conspiracy. The plaintiffs alleged that Krentz, the private party defendant, conspired with the government defendants to violate plaintiffs' Fourth Amendment rights by unlawfully searching the plaintiffs' cabins on their property. *Id*. at 313. Krentz and the government defendants communicated through text to coordinate Krentz and his neighbors submissions of complaints about Plaintiffs' cabins to the local health department. *Id*. at 315. Krentz sent texts to the government defendants stating "The consensus was to let [plaintiffs] get this thing in motion then go after them. So, for now, we are watching closely from afar so to speak," and "I believe its

time to intervene on [plaintiffs'] campground operation." *Id*. at 346 (alterations in original). Krentz then escorted the government defendants to the edge of plaintiffs' property by way of a neighbor's property so as not to be seen. *Id*. at 315-316. Krentz drove the government defendants to the edge of the plaintiffs' driveway, then through a circuitous route onto a neighbor's property to view the plaintiffs' property. *Id*. at 338. Once there, the state defendants entered plaintiffs' property to search the plaintiffs' cabins and coaxed Krentz onto the plaintiffs' property to take pictures. *Id*. at 316. Despite these actions, the court dismissed plaintiffs' § 1983 claims against Krentz because there was no shared conspiratorial objective to deprive the plaintiffs of their constitutional rights. *Id*. at 345. The court reasoned that Krentz did not intend the violation of the plaintiffs' Fourth Amendment rights because Krentz stated in his deposition that there was no plan to enter the plaintiffs' property, but merely to observe it from the neighbor's property. *Id*. at 346. Although Krentz and the government defendants had an agreement, it did not extend to searching the plaintiffs' property, which was the source of plaintiffs' alleged constitutional violation. *Id*. at 346-347. Since Krentz did not agree with the government defendants to deprive the plaintiffs of their constitutional rights, there was no conspiracy sufficient to make Krentz liable under § 1983. *Id*. at 347.

Similarly, in the present case, there is no evidence of any meeting of the minds between Walter and law enforcement personnel to allegedly fabricate evidence or a motive against McGuffin. The record does not show that Walter's acts were "unlikely to have been undertaken without an agreement."[4] Seeking independent help on a murder investigation is a common practice of law enforcement agencies around the United States. SOF ¶ 8. Walter's mere cooperation in the Freeman Investigation is an example of a common law enforcement practice, rather than being suggestive of any unlawful conspiracy. Ultimately, Frasier decided not to ask

---

[4] Plaintiffs noted that in *McGuffin v. Dannels et. al., Slip Copy,* No. 6:20-CV-01163-MK, 2021 U.S. Dist. LEXIS 187337 at 19 (D. Or. July 27, 2021) the Court relied on *Mendocino Envtl. Ctr. v. Mendocino Cnty,* 192 F.3d 1283, 1301-02 (9th Cir. 1999) to identify that conspiracy may be proven by circumstantial evidence in the Ninth Circuit. A plaintiff can only prove a conspiracy by "circumstantial evidence," if they establish that the "alleged conspirators committed acts that are unlikely to have been undertaken without an agreement." *Mendocino Envtl. Ctr.* at 1301 (internal citations omitted).

28 - DEFENDANT RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT

Walter to serve as an expert witness, and did not use Walter or any of his ideas at grand jury or at trial. SOF ¶¶ 17, 18. Frasier did not use Walter or his ideas at trial. *Id*.  Neither did Walter create any evidence used at grand jury or trial. SOF ¶¶ 17, 18, 23. Refusing to use any of Walter's ideas as evidence and severing Walter from consulting on the Freeman Investigation are events likely to occur only if there were *no* agreement.  *See Fenters v. Chevron*, 761 F.Supp.2d 957, 994-995 (E.D. Cal. 2010)(Finding no conspiracy where the DA did not use documents provided by the defendant at trial and where defendant's deposition and an interview transcript contravened plaintiff's accusation that defendant and DA obtained a false statement from a witness together).

Neither does the record suggest Walter held any unlawful objective in consulting on the Freeman Investigation. When Frasier presented the Freeman Investigation PowerPoint to Vidocq in January 2010, McGuffin was already the primary suspect. SOF ¶ 10. In the presentation, the stated goal was to either "Eliminate McGuffin as the suspect and identify the perpetrator of the crime Or If McGuffin is guilty, develop a prosecutable case." *Id.* Frasier's January 2010 presentation at Vidocq was Walter's first introduction to the Freeman Investigation. SOF ¶ 9. Walter was invited to Oregon by ABC 20/20 to participate in filming a television program segment, during which he consulted with the Coquille Police Department. SOF ¶¶ 12–16. During that consultation, Walter did not change Dannels' investigative strategy, nor Frasier's strategy toward presenting to the grand jury or seeking an indictment. SOF ¶¶ 17, 18, 19. Walter merely acted as a sounding board for information, leaving law enforcement personnel to make their own decisions. Frasier severed ties between Walter and the Freeman Investigation once Frasier learned of the *Drake* case, well before deciding to take the case to grand jury. SOF ¶ 17. Walter had no contact with any Oregon law enforcement personnel after June 30, 2010. SOF ¶ 19. Thus there is no evidence that Walter engaged in any unlawful objective in consulting on the Freeman Investigation.

/ / /

1    Similar to Krentz in *Mockeridge*, there is no evidence of Walter being involved in a

2  conspiracy to violate the Plaintiffs' constitutional rights. Walter willingly provided analytical

3  commentary on evidence previously collected in the Freeman Investigation, but there is no

4  evidence of any agreement to violate any constitutional rights of any suspect. SOF ¶¶ 21, 23.

5  Walter consulted on the Freeman Investigation to help law enforcement personnel understand

6  the limited amount of facts shared with Walter, as compared to Krentz organizing complaints

7  against the plaintiff, then helping state actors investigate the plaintiff's property.  In *Mockeridge*,

8  the plaintiffs provided evidence of Krentz and the state defendants communicating regarding

9  their plan to submit complaints and view the plaintiffs' property. In comparison here Plaintiffs

10  seemingly rely on the 20/20 television show script of Walter consulting with Dannels on the

11  Freeman Investigation.  Krentz admitted to being present while the state defendants conducted

12  an illegal search, whereas here Walter did not create nor control evidence, and did not influence

13  or affect McGuffin's grand jury indictment, arrest or trial.  In *Mockeridge*, the lack of evidence

14  of a prior plan to search the plaintiffs' property was sufficient to find no meeting of the minds

15  to violate constitutional rights between Krentz and the state defendants. The lack of evidence of

16  a prior plan involving Walter to violate Plaintiffs' constitutional rights is pertinent and should

17  be sufficient to find that there was no meeting of the minds to violate constitutional rights

18  between Walter and anyone else.

19    Since there is no evidence of acts "unlikely to have been undertaken without an

20  agreement" between Walter and law enforcement personnel to violate Plaintiffs' constitutional

21  rights, nor any evidence of an agreement with a wrongful purpose between Walter and law

22  enforcement personnel, there can be no alleged "meeting of the minds" sufficient to support any

23  viable claim or prove conspiracy against Walter.

24  / / /

25  / / /

26

(b) Walter Was Not A Willful Participant In Joint Action With Law Enforcement Personnel.

Walter's input in the Freeman Investigation was not sufficient to qualify Walter as a willful participant in joint action with law enforcement personnel. Joint action through willful participation occurs when "the State significantly involves itself in the private parties' actions and decisionmaking (sic) in a complex and deeply intertwined process." *O'Handley*, 62 F.4th at 1159. "This occurs when the state knowingly accepts the benefits derived form unconstitutional behavior." *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). It is "intentionally demanding and requires a high degree of cooperation between private parties and state officials." *Id.* at 1159-60. As the Supreme Court noted, in joint action cases "examples may be the best teachers." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001).

In *Tsao,* a gambler sued Desert Palace and a Las Vegas police officer under § 1983 for arresting her at a casino. 698 F.3d at 1131-32. She claimed that Desert Palace and the defendant officer acting under color of law conducted an unreasonable search and seizure of her person, thus depriving her of a federally guaranteed right. *Id*. at 1137. The Ninth Circuit found that Desert Palace was acting under the color of law under the joint action test because of "its system of cooperation and interdependence with the" Las Vegas police (LVMPD). After participating in training conducted by LVMPD, Desert Palace's security guards could issue citations, summonses and obtain records from the LVMPD's database, all of which constitutes authority "normally reserved to the state." *Id*. 1140. Therefore, the Ninth Circuit concluded that under this program, the state had "so far insinuated itself into a position of interdependence with Desert Palace that it must be recognized as a joint participant." *Id*.

In *Kirtley v. Rainey*, 326 F.3d 1088, 1093-94 (9th Cir. 2003) the court found that a statutorily appointed guardian who's mandate was to advocate for their appointed child and to "investigate and report factual information to the court concerning parenting arrangements for

the child," was not engaged in joint action. (Internal citations omitted). The court reasoned that since the guardian performed their investigative and reporting duties independently, the guardian did not engage in joint action with the court that appointed him, even when the guardian's judgment "exercised on behalf of the minor corresponds with the state interest in child care." *Id.*

Here, Walter was not deeply intertwined in joint action with the government sufficient to consider him a state actor. Walter was acting as a pro bono consultant on limited information from the Freeman Investigation. SOF ¶¶ 20, 22, 23.  Walter merely shared ideas with law enforcement personnel, who then made their own independent governmental decisions in the Freeman Investigation. SOF ¶¶ 14, 18, 21, 22. Mere information sharing and consulting is insufficient to make Walter a state actor. *See Mathis v. Pacific Gas & Elec. Co.*, 75 F.3d 498, 504 (9th Cir. 1996) (Finding no joint action where a PG&E shared information with state actors, but PG&E retained decision making authority). Other courts have held that providing advice to a government entity is insufficient to transform a private party into a state actor. *See R-Goshen LLC v. Vill. of Goshen*, 289 F.Supp.2d 441, 445 (S.D.N.Y. 2003), *aff'd sub nom R-Goshen LLC v. Andrews*, 115 F. App'x 465 (2nd Cir. 2004) (citing *Omnipoint Communications, Inc. v. Comi*, 233 F.Supp.2d 388, 395 (N.D.N.Y.2002) (Finding that a consultant's provision of opinions and advice to government entities is not state action.)) Courts have reasoned that finding state action upon mere information sharing or consulting would have problematic implications. *See Omnipoint Communications, Inc.* at 395 (Warning against making a state actor out of every private party who recommends legislation); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2nd Cir. 1999) (warning against making a state actor of every private party who seeks law enforcement assistance); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978) (finding "the mere act of furnishing information to law enforcement" insufficient to be deemed state action).

/ / /

Similar to the guardian in *Kirtley*, Walter acted as a private pro bono consultant on the Freeman Investigation. Walter was not acting as an agent of any government entity, and was not in Oregon in his professional capacity. SOF ¶ 20. Walter merely provided pro bono assistance to further develop the Freeman Investigation. SOF ¶¶ 20, 21. Like the guardian in *Kirtley*, Walter primarily served an interest other than the state's. Where the guardian primarily served the interest of his ward, Walter primarily served the mission of the Vidocq Society to render pro bono assistance to law enforcement in investigating unresolved crimes brought to their attention by law enforcement or victims' families. SOF ¶ 7. Walter is actually less intertwined with government entities than the guardian in *Kirtley* since Walter had no statutory mandate to provide input in the Freeman Investigation. While a guardian is statutorily mandated to conduct investigations and report to the court, Walter had no such legal obligation; Walter merely provided pro bono assistance in accord with Vidocq's mission. As such, like the guardian in *Kirtley*, Walter was acting independently when he provided input in the Freeman Investigation.

Unlike the Desert Palace security personnel in *Tsao*, Walter was not in a system of interdependence and cooperation with the state defendants. Walter was not given authority by any governmental entity to interview witnesses, access evidence, or conduct any other investigatory actions. SOF ¶ 23. In contrast, the Desert Palace security participated in LVMPD training courses and could issue citations, summonses, and obtain LVMPD records. Walter had no such engagement with any law enforcement agencies, and merely temporarily acted as a pro bono consulting resource in the Freeman Investigation. SOF ¶¶ 20, 23. Since Walter was less intertwined with any government entity than the guardian in *Kirtley*, and significantly less than the Desert Palace security in *Tsao*, Walter was not engaged in joint action with the state defendants sufficiently to make Walter a state actor under § 1983.

Since Walter is not a state actor under the Public Functions, State Compulsion, Nexus, or Joint Action Tests, Walter was not a state actor in the context of his consultation on the Freeman Investigation. Since Walter was not a state actor, he was not acting under the color of

law, and thus cannot be held liable under § 1983. There being no genuine issue of material fact regarding Plaintiffs' § 1983 claims, Walter is entitled to judgment as a matter of law.

4.    Even Assuming Arguendo That Walter Could Be Deemed A State Actor, Plaintiffs' § 1983 Claims Against Walter Should Be Dismissed.

a.    The *Smiddy* Presumption Precludes Walter From Liability For Plaintiffs' § 1983 Claims Arising After Plaintiff Was Indicted Since Frasier Used His Independent Judgment In Indicting Plaintiff.

The *Smiddy* Presumption is a rebuttable presumption that a "prosecutor filing [a criminal] complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed]," thereby "immunizing 'investigating officers . . . from damages suffered' after the complaint was filed." *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) (citing *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)). *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1146-47 (9th Cir. 2009) (finding that the prosecutor's declaration and testimony along with witnesses' statements indicated that he conducted his own inquiry into whether probable cause existed, therefore plaintiff's bare allegation that the prosecutor did not use his independent judgment is insufficient to create a genuine issue regarding whether probable cause existed). The *Smiddy* Presumption acknowledges that "[a] prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff." *Beck*, 527 F.3d at 862. The Ninth Circuit in *Beck* held that the *Smiddy* Presumption does not apply to a "First Amendment-based retaliatory arrest or prosecution cause of action" but did not overrule it in the "Fourth Amendment context." *Id.* at 865.

The *Smiddy* Presumption exists where plaintiff brings a § 1983 claim against a private actor. *See Sloman v. Tadlock*, 21 F.3d 1462, 1474-75 (9th Cir. 1994) (reasoning that the prosecutor's exercise of independent judgment precludes the plaintiff from recovering attorney fees in a § 1983 claim against both state and private parties).

/ / /

Walter should not be liable for Plaintiffs' § 1983 claims allegedly arising from actions occurring after McGuffin's indictment because Walter is entitled to the *Smiddy* Presumption. Walter is entitled to the *Smiddy* Presumption because Frasier and the grand jury used independent judgment in evaluating evidence to indict McGuffin. Walter's consultation on the Freeman Investigation ended at the latest on June 30, 2010, before grand jury proceedings began. SOF ¶¶ 16, 17. Frasier did not use Walter as a witness at grand jury, nor present any evidence produced by Walter at the grand jury proceedings from which McGuffin was indicted. SOF ¶¶ 17, 18.

Frasier held the decision making authority as to when the Freeman Investigation would be presented to the grand jury. SOF ¶ 14. Frasier did not utilize any of Walter's input in deciding whether to indict McGuffin. SOF ¶¶ 14, 18. Frasier did not learn anything new from Walter. SOF ¶ 18. Since Frasier exercised his independent judgment, without any influence from Walter, when deciding whether to seek McGuffin's indictment, Walter is entitled to the *Smiddy* Presumption for any damages alleged by the Plaintiffs after McGuffin's indictment. Therefore, there is no genuine issue of material fact regarding claims arising after McGuffin's indictment and judgment as a matter of law in favor of Walter is justified.

        b.     **Walter Did Not Conspire To Deprive Plaintiffs Of Their Constitutional Rights Because There Was No "Meeting of the Minds" Between Walter And The Other Defendants To Knowingly Attempt To Accomplish A Wrongful Purpose.**

To prove conspiracy, a plaintiff must show the defendants entered into an agreement or meeting of the minds to violate the plaintiff's constitutional rights. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989). Plaintiffs must further prove that defendants "by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino,* 192 F.3d at 1301 (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)). Each participant must "at least share the common objective of the conspiracy." *United Steelworkers of Am.,* 865 F.2d at 1541.

There is no evidence that could lead a reasonable jury to find Walter liable of conspiracy because there is no evidence of a meeting of the minds between Walter and anyone else to violate the Plaintiffs' constitutional rights. No overt evidence of a conspiracy exists. The record evinces only that Vidocq hosted a presentation of the Freeman Investigation, Walter provided limited commentary on the Freeman Investigation which was ignored or discarded by law enforcement personnel, and Walter permitted 20/20 to interview him for a television show about the disappearance of Freeman, all of which Walter did without remuneration. SOF ¶¶ 6, 12–13, 15–18, 21.

None of Walter's actions, nor those of law enforcement personnel, were unlikely to have been undertaken without an agreement to fulfill an unlawful objective. Plaintiffs speculatively assert without evidence that Vidocq and Walter were sought out by law enforcement personnel because of a perceived willingness to help convict McGuffin by fabricating and withholding evidence. However, the evidence disproves Plaintiffs' allegations. The law enforcement personnel's goal, clearly presented to Vidocq and Walter in Philadelphia, was to either eliminate McGuffin as a suspect and find the perpetrator or develop a case against McGuffin. SOF ¶ 10. In fact, once Frasier learned of the *Drake* case, and before presenting to the grand jury, Frasier ended all communications with Walter and Vidocq, along with their consultation on the Freeman Investigation. SOF ¶¶ 17, 19. Walter did not affect Dannels' investigatory approach in the Freeman Investigation. SOF ¶ 18. Frasier did not use Walter as a witness, nor anything related to Walter as evidence at grand jury or at McGuffin's trial. SOF ¶¶ 17–18. Walter's lack of connection and effect on the investigation, indictment, trial and conviction of McGuffin reflects that there was *no* agreement to jointly fulfill any speculative objective to cause any harm to Plaintiffs.

Since there is no evidence of overt acts evincing a conspiracy, and no evidence of acts that were unlikely to have been undertaken without an agreement, there is no evidence which could raise a genuine issue of material fact regarding whether Walter and law enforcement

1  personnel conspired to fulfill an unlawful objective for the purpose of harming Plaintiffs. Thus

2  judgment as a matter of law in favor of Walter is justified.

          c.      Walter Did Not Destroy Or Fail To Disclose Exculpatory Information

                (1)     Walter Did Not Destroy Exculpatory Evidence And Walter Never
                       Had Custody Or Control Of Evidence.

A criminal defendant's due process rights may be violated if the *government* destroyed

evidence that "possessed 'exculpatory value that was apparent before the evidence was

destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable

evidence by other reasonably available means.'" *United States v. Cooper*, 983 F.2d 928, 931 (9th

Cir. 1993) (citing *California v. Trombetta*, 467 U.S. 479, 489 (1984). However, if the evidence

was only potentially useful, then a defendant's due process rights are not violated unless the

*government agents* acted in bad faith when suppressing or destroying the evidence. *Ariz. v.

Youngblood*, 488 U.S. 51, 58 (1988). A criminal defendant must prove the government "acted

in bad faith in failing to preserve the potentially useful evidence." *United States* 983 F.2d at 931

(citing *Ariz*, 488 U.S. at 58). Bad faith "turns on the government's knowledge of the apparent

exculpatory value of the evidence at the time it was lost or destroyed." *Id*. (Citing *Ariz*, 488 U.S.

at 56-57). Thus, even negligent destruction of potentially exculpatory evidence does not

constitute bad faith. *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997).

Plaintiffs have no Due Process claim against Walter because Walter is not the

*government,* because he is not a state actor, and because Walter had no control over or custody

of evidence developed in the Freeman Investigation. Therefore, Walter had no duty to preserve

or provide McGuffin evidence. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) (Due

Process does not protect against "private conduct, 'however discriminatory or wrongful.'"citing

*Shelley v. Kraemer*, 334 U.S. 1 (1948)).

Even if Walter were presumed to be a state actor, there is no evidence that Walter

destroyed apparently exculpatory evidence that Plaintiffs could not obtain elsewhere. There is

no specific allegation by the Plaintiffs as to what evidence Walter destroyed. The record contravenes Plaintiffs bare allegation, as it indicates that Walter could not have destroyed evidence usable at McGuffin's trial because Walter did not have sufficient access to or custody of evidence while consulting on the Freeman Investigation. SOF ¶¶ 18, 22, 23. Walter received all his information regarding the Freeman Investigation from Dannels, the Coquille Police, or Frasier. SOF ¶¶ 9, 10, 22. However, none of them ever relinquished custodial control of anything later used as evidence to Walter. SOF ¶¶ 18, 23. None of the evidence used to indict McGuffin or at McGuffin's trial originated with Walter. SOF ¶¶ 17, 18. Since Walter could not have destroyed evidence usable at McGuffin's trial, and Walter did not create any evidence, Walter did not destroy any apparently exculpatory evidence.

Further, since Walter did not create anything for the Freeman Investigation, and since Walter obtained all his information from Coquille law enforcement, Dannels, or Frasier, Plaintiffs could have obtained any and all evidence from the prosecutor's office. There is no evidence in the record indicating any evidence was destroyed by Walter, there is no question of material fact and judgment as a matter of law in favor of Walter is justified.

> (2) Walter Did Not Fail To Disclose Exculpatory Evidence to Plaintiffs, Nor Did Walter Have Any Duty To Disclose Evidence Of A Criminal Investigation.

"[T]he suppression *by the prosecution* of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith . . . of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963)(emphasis added). However, in the Ninth Circuit "the law is settled that 'once the officer turns the evidence over to the prosecutor, her duty is complete and due process satisfied.'" *Hanline v. Cnty. of Ventura*, LACV 15-8808-VAP (AJWx), U.S. Dist. LEXIS 237565, at 6 (C.D.Cal. Feb. 7, 2017) (citing *Gray v. Dep't of Just.*, 275 F. App'x 679, 681 (9th Cir. 2008)). Evidence is material only if there is a reasonable probability that, upon disclosure, the proceeding results would have been different. *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). A disclosure of exculpatory evidence "must

1   be made at a time when disclosure would be of value to the accused." *U.S. v. Gordon*, 844 F.2d

2   1397, 1403 (9ᵗʰ Cir. 1988) (citing *U.S. v. Davenport*, 753 F.2d 1460, 1462 (9ᵗʰ Cir. 1985)).

3        Walter had no duty to disclose evidence of any pre-indictment criminal investigation to

4   Plaintiffs. Walter was not a state actor, as explained above. Even if Walter was assumed to

5   qualify as a state actor, he did not have any duty to disclose evidence. Walter was no longer

6   being consulted on the Freeman Investigation well before the prosecution's obligation to disclose

7   exculpatory evidence ever arose. SOF ¶ 17. By the time disclosure would have been of value,

8   Frasier had removed Walter from the Freeman Investigation. Walter's communication with

9   Frasier or any law enforcement personnel ceased before McGuffin was indicted, prosecuted, and

10  convicted. SOF ¶¶ 17, 19, 26–28. Since Walter was no longer involved in the Freeman

11  Investigation when disclosure of exculpatory evidence arose, Walter had no duty to disclose any

12  such evidence which may have previously been revealed to him.

13       Further, there is no evidence that Walter conspired or had the capability to withhold any

14  evidence, material or otherwise. Walter could not have withheld anything deemed evidence

15  himself because Walter did not have access or custody of the evidence developed in the Freeman

16  Investigation. SOF ¶¶ 18,  23. Walter did not produce anything for the Freeman Investigation,

17  nor give testimony therefore Walter did not create any material evidence himself that could be

18  withheld. *Id*. Since Frasier turned over all information regarding Vidocq to McGuffin, and since

19  all the information shared with Walter regarding the Freeman investigation came from law

20  enforcement personnel, Frasier  already had access to all information which Walter may have

21  been exposed to.

22       Walter could not have conspired to withhold evidence either. Walter had no authority or

23  control over the Freeman Investigation or McGuffin's indictment, prosecution and trial. SOF ¶¶

24  20, 23. Walter's views on the Freeman Investigation were irrelevant, since all decision making

25  authority always and ultimately rested with Frasier and Coquille law enforcement. Walter ended

26  contact with Frasier and Dannels at the latest on June 30, 2010, well before Frasier even

1    convened the grand jury. SOF ¶¶ 17, 19, 25. Walter did not know whether McGuffin would be

2    indicted, let alone what would be deemed evidence during McGuffin's trial. Further, since

3    Walter had no access of custody of evidence, there was nothing he could have provided that

4    would have undermined the outcome of McGuffin's trial.[5] Since Walter had no duty to disclose

5    information, nor the access and ability to disclose or effect disclosure of material information,

6    there is no genuine issue of material fact suggesting Walter failed to disclose any exculpatory

7    evidence and judgment as a matter of law in favor of Walter is justified.

8            d.     Walter Did Not Initiate McGuffin's Prosecution, Therefore No Viable
              Claim For Malicious Prosecution Under Federal Or State Law Exists.

9

10        Federal courts rely on state common law for the elements of malicious prosecution

11    claims. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). To successfully claim

12    Malicious Prosecution under Oregon law, a plaintiff must prove 1) the commencement and

13    prosecution of a judicial proceeding against the plaintiff, 2) by or at the insistence of the

14    defendant, 3) the termination of the proceeding in the plaintiff's favor, 4) the existence of malice,

15    or as is sometimes stated, the existence of a primary purpose other than that of securing an

16    adjudication of the claim, 5) the absence of probable cause to prosecute the action, and 6)

17    damages. *Miller v. Columbia City*, 385 P.3d 1214, 1223, (Or. App. 2016), *rev den*, 391 P.3d 797

18    (Or. 2017). A private party does not institute a criminal proceeding unless investigators or a

19    prosecutor act on information given by a private party to begin a prosecution. *Richer v. Poisson*,

20    903 P.2d 932, 935 (Or. App. 1995). There is no evidence that McGuffin's prosecution began

21    based on anything provided by Walter. *See Humbert v. Knutson et al.*, 354 P.2d 826, 828-829

22    (Or. 1960)(Requiring a showing that a private party's "desire to have the proceedings initiated

23    expressed by direction, request, or pressure of any kind [be] the determining factor in the

24    official's decision to commence the prosecution or that the information furnished by him upon

25    which the official acted was known to be false").

26    / / /

---

    [5]The court found only three issues which may have materially affected McGuffin's conviction, none of which involved Walter. SOF ¶ 37.

In *Waldner v. Dow*, the court affirmed a grant of summary judgment for the defendant because the prosecutor did not act on the defendant's statements to begin the plaintiff's prosecution. 876 P.2d 785, 787 (Or. App. 1994). In *Waldner*, the defendant accused the plaintiff, possibly falsely, of arson to the prosecutor. 876 P.2d at 785-86. Seven months later the prosecutor sought and received a grand jury indictment of the plaintiff, calling the defendant and 16 other witnesses before the grand jury. *Id*. at 786-87. The plaintiff claimed that the defendant's statements initiated plaintiff's arson prosecution. *Id*. at 786. The court reasoned that, "[a]t most, the evidence here supports an inference that defendant's information led the prosecutor to make an investigation of the plaintiff's alleged role in the arson," and that such evidence "did not show what role, if any, that defendant's statements played in the prosecutor's decision to seek an indictment." *Id*. at 786-87. Since the evidence merely showed that the defendant led the prosecutor to investigate the defendant, the prosecutor did not act on the defendant's statements to begin the plaintiff's prosecution and therefore the defendant was granted summary judgment. *Id*.

Walter did not institute McGuffin's prosecution because Walter's information was not the determining factor in Frasier or any law enforcement personnel choosing to begin McGuffin's prosecution. Walter did not affect Dannels' investigatory approach, nor did Dannels use any information originating from Walter. SOF ¶ 18. Frasier did not use Walter as a witness, nor Walter's ideas, at grand jury or at McGuffin's trial. *Id*. Walter was separated from consulting in the Freeman Investigation before Frasier sought McGuffin's indictment. SOF ¶¶ 16, 17, 19, 25. When Frasier did decide to convene the grand jury, he intended to present to them all angles of the Freeman Investigation, not just information implicating McGuffin. SOF ¶ 14. Walter was not called as a witness, nor were any of his ideas used at trial. SOF ¶ 18.

Nor did Walter initiate the investigation into Freeman's murder. Walter's consultation on the Freeman Investigation occurred in the midst of the second investigation and ended before Frasier chose to present any evidence to the grand jury. SOF ¶¶ 1, 5, 6, 9, 16, 25. Walter had no

involvement in the first investigation. SOF ¶ 9. There is no evidence that Walter provided any persuasive information while consulting with law enforcement personnel which effected McGuffin's prosecution in any way.

Walter's conferral played an even lesser role in McGuffin's prosecution than the defendant's statements in *Waldner* did against the plaintiff there. Whereas the defendant's accusation in *Waldner* initiated an investigation of the plaintiff, Walter never accused McGuffin of killing Freeman and only became aware of the Freeman Investigation ten years after the initial investigation began. SOF ¶¶ 9, 24. The defendant in *Waldner* was called to be a witness at the grand jury. In contrast, Frasier explicitly decided not to engage Walter as an expert or call him as a witness at grand jury or trial. SOF ¶ 18. Since Walter did not influence Frasier's decision to seek McGuffin's indictment, nor even law enforcement personnel's decision to investigate McGuffin, Walter did not provide anything upon which law enforcement personnel acted to begin McGuffin's prosecution.

Walter did not maliciously prosecute or have any role in the prosecutorial decision concerning McGuffin under Oregon State law or Federal Law. As such, there is no genuine issue of material fact regarding Plaintiffs' malicious prosecution claims and summary judgment in favor of Walter is justified as a matter of law.

> e.     Walter Did Not Illegally Detain McGuffin Prior To Trial Following The Issuance Of Legal Process.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017). To prove a Fourth Amendment violation for illegal detention following the issuance of legal process, a plaintiff must show "a pretrial deprivation of liberty . . .occur[ed] after legal process commence[d]." *Id*. at 366. Legal process includes a probable cause determination. *Id*. at 361. Under the Fourth Amendment, the government "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). "[A]n indictment, 'fair upon its face,' and returned by 'a properly

constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." *Gerstein*, 420 U.S. at fn.19 (citing *Ex Parte United States*, 287 U.S. 241, 250 (1932)). In a claim of illegal detention following issuance of legal process, a "grand jury indictment constitutes prima facie evidence of probable cause." *Moulin v. City of Cent. Point*, 2022 U.S. Dist. 117754, 17 (D. Or. April 1, 2022)(citations omitted).

Walter did not cause McGuffin to suffer any detention following issuance of legal process. Walter had no effect on McGuffin's indictment or arrest. SOF ¶¶ 17–19. Rather, McGuffin's detention was solely determined by the grand jury and the warrant by which he was arrested. SOF ¶ 26. As explained above, Walter did not hold authority to affect the course of the Freeman Investigation. Nor did Walter destroy, fabricate, or suppress evidence, nor institute McGuffin's prosecution. Walter's consultation on the Freeman Investigation ended before Frasier presented the case against McGuffin to the grand jury. Frasier did not use anything created by or related to Walter at grand jury or trial. SOF ¶ 18. Walter did not affect Dannels' investigatory methods, nor did Frasier learn or use anything from Walter. *Id*.

There is no evidence that Walter affected Frasier's decision to present the evidence to the grand jury, that Walter had any effect upon the grand jury indictment or that Walter had any involvement in detaining McGuffin before trial following issuance of legal process. Thus, judgment as a matter of law in favor of Walter is justified.

f.    Walter Did Not Fail to Intervene.

A state actor may have a duty to intervene if a fellow state actor violates someone's constitutional rights. *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) rev'd on other grounds, *Koon v. U.S.*, 518 U.S. 81 (1996). A defendant can only be liable for failure to intervene if the defendant "had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

/ / /

Walter did not fail to intercede because Walter was not a state actor, as explained above. However, assuming arguendo that Walter could be deemed a state actor, he did not have an opportunity to intercede because he had no authority or control over the actions of any law enforcement personnel and no constitutional violation was apparent or established by the subsequent record at any time that Walter was communicating with Oregon law enforcement personnel.

In *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2nd Cir. Jan. 29, 1988) the court found that a defendant police officer's failure to intercede was not a proximate cause of an unanticipated attack on the plaintiff, but may have been the proximate cause for the subsequent dragging of the plaintiff. The court reasoned that the defendant officer did not have an opportunity to intercede in his fellow officers' unexpected attack on the plaintiff because the "three blows were struck in such rapid succession." *Id*. at 11. However the court considered whether the defendant officer may have had an opportunity to intercede after the assault when his fellow officer drug the plaintiff if the defendant officer had been alerted to the danger plaintiff was in. *Id*. at 12.

Engaging the rationale of the *O'Neill* court, Walter was not apprised of any conduct by law enforcement personnel which facially violated any rights of any suspect. While conferring on the Freeman Investigation, Walter relied on the information given to him by law enforcement personnel, assuming it was true. SOF ¶¶ 21–23. Walter was present as a sounding board to share what the evidence might show as presented by law enforcement personnel. SOF ¶ 21. Walter was not acting as an investigator, he did not have access to evidence other than that which law enforcement personnel chose to provide, and Walter did not challenge the accuracy of the information provided by law enforcement personnel. SOF ¶¶ 22, 23.

Walter's consultation on the Freeman Investigation ended weeks before Frasier presented to the grand jury. SOF ¶¶ 16, 25. Walter had no contact with Frasier or Dannels after Walter's consultation ended. SOF ¶ 19. After leaving, Walter did not have occasion nor opportunity to potentially intervene in any part of the continuing Freeman Investigation or criminal proceedings

that followed. Walter did not have an opportunity to intervene and judgment as a matter of law in favor of Walter is justified.

      g.    Walter Did Not Deprive Plaintiffs Of Their Right To Due Process And A Fair Trial Under The 14th Amendment

Plaintiffs assert that Walter deprived McGuffin of his right to due process and a fair trial by withholding evidence and fabricating evidence including soliciting and coercing false statements, without which McGuffin would not have been prosecuted. SAC ¶¶ 210-214. "There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Richards v. Cnty. Of San Bernardino*, 39 F.4th 562, 569 (9th Cir. June 24, 2022) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001))(alterations omitted).

Since Plaintiffs' due process right to a fair trial only arises after indictment, Walter is entitled to the *Smiddy* Presumption regarding Plaintiffs' assertion of this claim. As shown above, since Plaintiffs have no evidence to rebut this presumption, Walter did not violate Plaintiffs' due process right to a fair trial.

Even if the *Smiddy* Presumption were deemed insufficient, Walter did not violate Plaintiffs' due process right to a fair trial because there is no evidence that Walter fabricated or withheld evidence which caused McGuffin to be prosecuted. As explained above, Walter had no duty and no ability to disclose exculpatory evidence, if any, during McGuffin's criminal trial. Walter did not hold any prosecutorial authority nor control or authority over evidence pertinent to the Freeman Investigation. Furthermore, there is no evidence that Walter had any effect upon the investigation of the death of Leah Freeman, nor had any effect upon any prosecutorial decisions of Frasier. There is no evidence in the record that Walter fabricated evidence or was involved in developing evidence. During Walter's consultation on the Freeman Investigation, Walter did not have access to evidence, did not interview witnesses, create evidence or testify at grand jury or trial. SOF ¶¶ 18, 23. Walter merely accepted the facts as presented to him by

1    Frasier and Coquille law enforcement, and acted as a springboard for their ideas. SOF ¶¶ 21, 22.

2    Therefore, there is no evidence that Walter created, fabricated or withheld evidence, whether or

3    not material to the Freeman Investigation.

4        Since Walter is entitled to the *Smiddy* Presumption for Plaintiffs' claims arising after

5    McGuffin's indictment, since there is no evidence that Walter fabricated evidence used at

6    McGuffin's trial, since there is no evidence that Walter's consultation in Freeman Investigation

7    yielded anything that could have effected McGuffin's arrest, prosecution and conviction, and

8    since Walter did not have a duty to disclose, nor custodial capacity to disclose, exculpatory

9    evidence to Plaintiffs, Walter did not fabricate or fail to disclose evidence, and thus did not

10   violate Plaintiffs' due process right to a fair trial.

11       5.    Plaintiffs' State Claims Against Walter Should Be Dismissed

12             a.    Walter is Not Liable For False Imprisonment.

13       False arrest and false imprisonment are indistinguishable torts. *Hiber v. Creditors*

14   *Colleciton Serv., Inc.*, 961 P.2d 898, 901, (Or. App. 1998) *rev* den, 971 P.2d 413 (Or. 1998). To

15   prove false imprisonment, a plaintiff must show that a defendant 1) confined the plaintiff, 2)

16   intended to accomplish the act causing confinement, 3) that plaintiff was aware of the

17   confinement, and 4) the confinement was unlawful. *Ross By & Through Ross v. City of Eugene*,

18   950 P.2d 372, 375, (Or. App. 1997)(Internal citations omitted). To prove a non-participant third

19   party liable for an arrest effected by police, the plaintiff must prove that the non-participant

20   instigated the imprisonment by persuading or influencing the police to make the arrest such that

21   the decision of whether to effect the arrest was not left to the police. *Pearson v. Galvin*, 454 P.2d

22   638, 640, (Or. 1969). "There is no liability for merely giving information to legal authorities,

23   who are left entirely free to use their own judgment." *Stone v. Finnerty*, 50 P.3d 1179, 1191 (Or.

24   App. 2002).

25       Walter did not falsely imprison McGuffin because Walter did not persuade or influence

26   anyone to arrest McGuffin. Walter never claimed that McGuffin killed Freeman. SOF ¶ 24.

Walter did not affect Dannels' investigatory approach. SOF ¶ 18. Walter did not influence or change the course of the Freeman Investigation. SOF ¶¶ 17–19, 23. Frasier ousted and disregarded Walter from the Freeman Investigation before Frasier decided to convene the grand jury and therefore before McGuffin was arrested. SOF ¶¶ 17–18, 25–27. Walter had no contact with Frasier or Dannels after Frasier chose to remove Walter from the Freeman Investigation. SOF ¶ 19. Frasier did not call Walter as a witness (at grand jury or at trial). SOF ¶ 18. Walter did not affect any evidence Frasier chose to present to the grand jury that ultimately and independently indicted McGuffin. SOF ¶¶ 17, 18, 23. Frasier decided to present the Freeman Investigation to the grand jury based on his independent judgment. SOF ¶ 14. Walter did not instigate McGuffin's arrest since he merely provided information to law enforcement personnel, all of whom continued to use their own judgment in the Freeman Investigation. Walter merely acted as a springboard for information, letting law enforcement personnel make up their own minds. SOF ¶ 21. The records shows that Frasier and Dannels did indeed make up their own mind regarding the Freeman Investigation, since Walter neither effected how Dannels investigated the case, nor whether, or how, Frasier chose to prosecute the case. Since Walter merely provided information during his consultation on the Freeman Investigation, he did not persuade or influence anyone to arrest McGuffin.

Walter did not persuade or influence law enforcement personnel to such a degree that they had no choice but to arrest McGuffin. Therefore, Walter did not instigate McGuffin's arrest. Thus there is no genuine issue of material fact regarding Plaintiffs' false imprisonment claim against Walter, and judgment as a matter of law in favor of Walter is justified.

   b.   Plaintiffs' Claims For Civil Conspiracy Against Walter Should Be Dismissed Because There Was No Meeting of The Minds.

Civil Conspiracy in Oregon is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not itself unlawful by unlawful means." *Bonds v. Landers*, 566 P.2d 513, 516 (Or. 1977) (internal citations

omitted). Proving conspiracy requires showing that "(1) two or more persons and for this purpose a corporation is a person, (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Id.* The conspiracy itself is not an "independent tort," but instead requires an overt act from which damages flow. *Id.*

Plaintiffs allege that all Defendants agreed to "'close'" the Freeman case by arresting and indicting McGuffin with the intent that he would be convicted." SAC ¶ 294. However, as detailed above, there is no evidence of any meeting of the minds between Walter and anyone to accomplish any such purpose. The only evidence of law enforcement personnel's objective regarding the Freeman Investigation is the objective stated in their PowerPoint presentation to Vidocq. SOF ¶ 10. Further, Walter never stated that McGuffin killed Freeman. SOF ¶ 24. As stated above, Walter was not a witness at grand jury or McGuffin's trial, no evidence presented at grand jury or trial came from Walter, and Walter was no longer consulting on the Freeman Investigation when McGuffin was indicted, tried, and convicted. SOF ¶¶ 16–18, 26, 28, 33. As such, the record evinces a lack of agreement between Walter and law enforcement personnel.

Therefore, there is no evidence in the record to establish any meeting of the minds between Walter and anyone else to accomplish an unlawful purpose nor accomplish a purpose through unlawful means. Therefore no reasonable jury could find that Walter and law enforcement personnel conspired against Plaintiffs.

> c.    Walter Did Not Play An Active Role Nor Influence McGuffin's Prosecution Or Conviction And Plaintiffs' Claims For Intentional Infliction of Emotional Distress Against Walter Should Be Dismissed.

In Oregon, to prove a claim for Intentional Infliction of Emotional Distress ("IIED") a plaintiff must show "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995) (internal citations

omitted). Whether a defendant's acts transgress the bounds of socially tolerable does not depend "on the result" but rather on "the purpose and the means used to achieve it." *Patton v. J.C. Penny Co.*, 719 P.2d 854, 858 (Or. 1986). "[T]he court function[s] as a gatekeeper" to determine whether conduct amounts to an actionably outrageous transgression of societal norms in the context of an IIED claim. *Clemente v. State*, 206 P.3d 249, 254 (Or. App. 2009) (citing *Pakos v. Clark*, 453 P.2d 682, 691 (Or. 1969) and *House v. Hicks*, 179 P.3d 730, 736 *rev den*, 195 P.3d 911 (2008)).

There is no evidence that Walter's acts were the cause of Plaintiffs' alleged emotional distress. Plaintiffs claim to have suffered "sever emotional distress" as a result of the allegations made in their remaining claims. SAC ¶¶ 309-310. However, there is no evidence that Walter caused any alleged emotional harm to the Plaintiffs. Walter did not affect the investigation, prosecution or trial of McGuffin. SOF ¶¶ 17–19, 23. Walter's only alleged acts were his consultation on the Freeman Investigation and his part on the 20/20 program. During this consultation, Walter did not alter or affect change to the investigation or any potential evidence. SOF ¶¶ 17–19, 23. Rather, Walter's consultation on the Freeman Investigation, which was ended by Frasier by June 30, 2010, did not provide any new information to Frasier or Dannels, nor any evidence used later at grand jury or at McGuffin's trial. SOF ¶¶ 16–18. Walter never alleged that McGuffin was a perpetrator of Freeman's murder. SOF ¶ 24. S.M. has never interacted with Walter, and does not know what role Walter or Vidocq played in McGuffin's incarceration. SOF ¶ 39. Walter's acts did not objectively cause impact to Plaintiffs.

Neither did Walter's acts constitute any extraordinary transgression of the bounds of socially tolerable conduct. Walter did not interact with Plaintiffs at all. Nor did Walter effect McGuffin's indictment, arrest or prosecution, the actions from which Plaintiffs claim their emotional damages stemmed. Walter merely cooperated, for a limited time, with a police investigation, reviewed limited shared material, attempted to share ideas and let law enforcement personnel make up their own minds. SOF ¶¶ 16, 20–23. Walter did not identify McGuffin as a

suspect or perpetrator of Freeman's murder. SOF ¶ 24. McGuffin had been identified as a potential suspect in Leah Freeman's murder prior to the first presentation made at the Vidocq Society luncheon in January 2010, at which Walter was present. SOF ¶ 10.

Since Walter's acts did not effect McGuffin's indictment, arrest, and conviction, and since Walter did not act in a way that constituted an extraordinary transgression of the bounds of socially tolerable conduct, there is no genuine issue of material fact regarding Plaintiffs' IIED claims and judgment as a matter of law in favor of Walter is justified.

### d.    Plaintiffs' Claims for Negligent And/Or Intentional Spoliation of Evidence Against Walter Should Be Dismissed.

Spoliation is the "destruction of evidence through intent or neglect." *State v. Copeland*, 527 P.3d 771, 775 (Or. App. 2023)(internal citations omitted). Oregon does not recognize spoliation as a stand-alone cause of action because the valuation of damages from spoliation comes from the loss in potential recovery from a claim to which the destroyed evidence would have been pertinent. *Classen v. Arete NW, LLC*, 294 P.3d 520, 523–524 (Or. App. 2012). Since "Oregon law generally does not permit a party to recover where the causal nexus between the defendant's conduct and the plaintiff's injury is speculative or uncertain," destroying evidence is not conduct from which an aggrieved party may recover without an underlying claim to which damages may be ascribed. *Id*. at 524.

Walter is not liable to the Plaintiffs for spoliation because there is no evidence that Walter spoiled anything that could have been evidence related to Plaintiffs' claims. Plaintiffs do not identify what "evidence" Walter allegedly spoiled. As explained above, Walter did not create, control or destroy any evidence related to or later used for McGuffin's arrest, trial, or imprisonment. SOF ¶¶ 17, 18, 23. Walter's contacts with the Freeman Investigation ended before Frasier ever decided to present evidence to the grand jury and before the grand jury indicted McGuffin. SOF ¶¶ 16, 25, 26. Walter was not called as a witness, nor asked to provide evidence at the grand jury or trial. SOF ¶¶ 17, 18. Since Plaintiffs' claims in this case allegedly arose from

1    McGuffin's arrest, prosecution, and imprisonment, and Walter did not create, control or destroy

2    any related evidence, Walter did not affect Plaintiffs' claims through spoliation of evidence.

3        Frasier disclosed the presentation to Vidocq and produced documents to McGuffin's

4    defense. SOF ¶ 29. As such, even if those items were deemed "evidence" they were not spoiled

5    by Walter.

6        To the extent that the value of Plaintiffs' spoliation claim arises from Plaintiffs other

7    claims in this case, Plaintiffs' spoliation claim against Walter fails. As explained above, Walter

8    is entitled to judgment as a matter of law regarding all of Plaintiffs' claims against Walter.

9    Plaintiffs have no viable claims of damage against Walter from which a spoliation claim may

10   arise.

11       6.    S.M. Cannot Succeed On S.M.'s Claims For Loss Of Consortium.

12       There is no evidence supporting S.M.'s claims for loss of consortium under either Federal

13   or Oregon law. S.M. alleges that Walter's conduct deprived S.M. of "care, comfort, consortium,

14   love, and emotional and financial support from her father during and after the period of time

15   while he was imprisoned" in violation of the Fourteenth Amendment and as a result of each of

16   Plaintiffs' state law claims against Walter except for Plaintiffs' Seventh Claim for Relief

17   (spoliation claim). SAC ¶¶ 179, 274, 283, 292, 301, 313.

18       S.M.'s claims for loss of consortium under Oregon law have no merit because Oregon law

19   does not recognize claims by a child for loss of their parents' consortium. *Norwest v.*

20   *Presbyterian Intercommunity Hospital*, 652 P.2d 318, 331 (Or. 1982); *See Marbet v. City of*

21   *Portland*, No. CV 02-1448-HA, U.S. Dist. LEXIS 25685 at 36-37 (D. Or. Sept. 8, 2003)

22   (Dismissing a plaintiff's state law claim for parental consortium in a § 1983 action). Thus, no

23   evidence supporting S.M.'s claims and judgment as a matter of law in favor of Walter is

24   justified.

25       S.M. alleges damages for loss of consortium under § 1983 against Walter arising from

26   McGuffin's imprisonment and afterward. SAC p. 41: 273-274. S.M's § 1983 claims for loss of

consortium fail unless McGuffin's underlying § 1983 claims arising from McGuffin's imprisonment succeed. *Butherus v. Bremerton Sch. Dist.*, 69 F. App'x. 386, 387 (9th Cir. 2003) (Dismissing the plaintiff's loss of consortium claim due to the lack of prima facie case for the underlying causes of action.); *see generally Mehta v. City of Upland*, 748 Fed. App'x 739, 743 (9th Cir. 2018). As explained above, McGuffin is unable to establish his §1983 claims against Walter as a matter of law, and therefore S.M.'s §1983 claims against Walter alleging loss of consortium must also fail.

7.     Plaintiff's claims are Barred By The Preclusive Effect of McGuffin's Claim For Post Conviction Relief.

Plaintiffs' claims against Walter are precluded by the doctrine of Issue Preclusion since McGuffin already litigated the underlying issues in his Post Conviction Relief case, *McGuffin v. Nooth*, Case No. 15CV1030 (Cir. Ct. Or.  2015). To determine the preclusive effect of a state-court judgment, the Ninth Circuit applies the law of the state in which the judgment was entered. *Sunkist Growers v. Fisher*, 104 F.3d 280,283 (9th Cir. 1997) (citing 28 U.S.C. § 1738) Issue preclusion, or collateral estoppel, prevents the re-litigation of an issue once "a tribunal has decided [that] issue . . . if five requirements are met." *Washington Cnty. Police Officers Ass'n v. Washington Cnty.*, 900 P.2d 483, 435 (Or. 1995). Those requirements are "(1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect." *Berg v. Benton*, 443 P.3d 714, 717 (Or. App. 2019) (internal citations omitted).

///

///

52 - DEFENDANT RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT

1

2

        a.     The Issues In McGuffin's PCR Claim Are Identical To The Issues McGuffin Raises Against Walter, And Were Actually Litigated In McGuffin's PCR Claim.

3      In Oregon, post conviction relief is governed by the Post-Conviction Hearing Act

4 ("PCHA") set forth in ORS 138.510, *et. seq*.  See generally *Bartz v. State of Oregon*, 839 P.2d

5 217 (1992) (Reviewing the history of the PCHA). The PCHA was created to establish the

6 "exclusive means, after judgment rendered upon a conviction for a crime, for challenging the

7 lawfulness of such judgment or the proceedings upon which it is based." ORS 138.540 (1). To

8 receive relief under the PCHA, a petitioner must establish by preponderance of the evidence one

9 of the grounds listed in ORS 138.530 (1). ORS 138.620 (2). In a case under the PCHA, "all

10 grounds for relief claimed by petitioner . . . must be asserted in the original or amended petition,

11 and *any grounds not so asserted are deemed waived*." ORS 138.550 (3)(emphasis added)[6].

12      Of the potential grounds for PCR, McGuffin alleged that his constitutional rights were

13 denied, rendering his conviction for the killing of Freeman wrongful and void, and that he was

14 innocent.  SOF ¶ 37. In this case Plaintiffs allege that their constitutional rights were denied and

15 that McGuffin's conviction was wrongful.

16      Through various iterations of his petition, McGuffin asserted claims for Brady violations,

17 violations of the Fourteenth Amendment and Oregon Constitution, prosecutorial misconduct,

18 providing false evidence, destruction of evidence and improper investigatory means. SOF ¶ 35.

19 Any claims McGuffin did not assert or had withdrawn were waived once the court issued its

20 judgment on the PCR.  In this case, McGuffin improperly seeks to revitalize waived claims by

21 accusing Walter of violations of the Fourteenth Amendment, withholding, fabricating, and

22 destroying evidence, illegal detention, and malicious prosecution, false imprisonment, conspiracy

23 to commit constitutional violations and emotional harm from these claims.

24

25

26      [6]There are two exceptions to this waiver, neither of which apply here because Plaintiffs are not filing a subsequent PCR petition: (1) if upon hearing a subsequent petition, the court finds that grounds for relief within said petition "could not reasonably have been raised" in a prior petition or (2) if a petitioner withdraws a prior or amended petition before "entry of judgment by leave of the court as provided in ORS 138.610," then "petitioner's right to bring a subsequent petition" is not affected.

53 - DEFENDANT RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT

1    McGuffin mentioned Vidocq in his grounds for relief in his Third Amended Petition, but

2    withdrew the claims involving Vidocq in his Fourth Amended Petition. SOF ¶¶ 35, 36.

3    McGuffin had ample opportunity to assert his allegations related to Walter in one or more of

4    McGuffin's five amended petitions over four years. In his final petition, McGuffin did not accuse

5    Walter of violating McGuffin's constitutional rights, thereby waiving his opportunity to do so.

6    SOF ¶ 37. The court in McGuffin's PCR concluded that of all McGuffin's allegations, only three

7    rose to be a substantial denial of his constitutional rights that materially affected his conviction

8    and none involved Walter or Vidocq. *Id*. Since McGuffin raised and argued the same

9    fundamental issues in his PCR proceeding as those he raises here against Walter, and since any

10   claims he did not bring in his PCR proceeding were waived, McGuffin's claims against Walter

11   are identical to and were actually litigated in McGuffin's PCR proceeding.

          b.    McGuffin Was A Party To His PCR Claim And Received A Full and Fair
12             Opportunity To Be Heard.

13

14        Here, S.M. and McGuffin are the parties to be precluded. McGuffin was the petitioner

15   in his PCR hearing, and is a plaintiff in this case. McGuffin was represented by counsel at his

16   PCR hearing. He amended his PCR petition five times from 2015 to 2019. Thus, McGuffin had

17   a full and fair opportunity in his PCR proceeding to be heard in all issues including those he now

18   raises in the case at bar.

19        Although S.M. was not a party to McGuffin's PCR proceeding, S.M. was in privity with

20   McGuffin regarding the claims she asserts here.  In Oregon, "privity attaches to 'persons who

21   are not parties to an action but who are connected with it in [*sic*] their interests are affected by

22   the judgment . . . as if they were parties.'" *Thomas v. U.S. Bank N.A.*, 260 P.3d 711, 721 (Or.

23   App. 2011) (citing *Wolff v. Du Puis*, 378 P.2d 707, 710 (Or. 1963)). In each of McGuffin's

24   claims against Walter, except for claim 7, S.M. asserts a loss of parental consortium claim. Thus,

25   S.M.'s loss of consortium claims are based on the same allegations that McGuffin makes against

26   Walter. S.M. can only have viable claims for loss of consortium if McGuffin's underlying claims

1    are also viable. The issues involved in McGuffin's claims here are the same as the issues tried

2    in McGuffin's PCR proceeding. As a function of privity, S.M.'s interests were effected by

3    McGuffin's PCR judgment as if S.M. was a party and S.M.'s loss of consortium claims are

4    subject to issue preclusion.

5            c.    Preclusive Effect Should Be Given To McGuffin's PCR Proceeding.

6        In Oregon, a judicial judgment following a proceeding is given preclusive effect. ORS

7    43.130. Issue preclusion applies in § 1983 civil rights actions. *Allen v. McCurry*, 449 U.S. 90,

8    96 (1980). McGuffin was the petitioner in his PCR case. His PCR case ended in a judicial

9    judgment. Thus, McGuffin's PCR judgment should be given preclusive effect in this case.

10            8.    Plaintiffs Are Not Entitled To Attorney Fees Under 42 U.S.C. § 1988(b) Because
                  Plaintiffs Have Not, And Should Not, Prevail On Their Claims Against Walter

11

12       In any action or proceeding to enforce a provision of . . . [42 USC § 1983] . . . the court,

13   in its discretion, may allow the *prevailing party*, other than the United States, a reasonable

14   attorney's fee as part of the costs." 42 USC § 1988(b) (emphasis added). A prevailing party is

15   one "who has established entitlement to some relief on the merits of his claims." *Tribble v.*

16   *Gardner*, 860 F.2d 321, 328 (9th Cir. 1988) (citing *Hanrahan v. Hampton*, 446 U.S. 754, 757

17   (1980)).

18       Plaintiffs' are not entitled to attorneys fees from Walter because Plaintiffs should not

19   prevail in their claims against Walter. As explained above, no reasonable juror could find for the

20   Plaintiffs against Walter on the evidentiary record, and judgment as a matter of law in favor of

21   Walter is justified on all Plaintiffs' claims against him.

22   / / /

23   / / /

24

25

26

1

CONCLUSION

Defendant Richard Walter respectfully requests that the court grant summary judgment in his favor in the entirety or on the individual claims in the alternative, awarding him his reasonable attorney fees, and any other relief deemed appropriate by the court.

DATED this 21st day of January, 2025.

LUVAAS COBB

By:    /s/ Eric S. DeFreest
        Eric S. DeFreest, OSB No. 920475
        edefreest@luvaascobb.com
        Erek J. Andrus, OSB No. 244161
        eandrus@luvaascobb.com
        777 High Street Ste. 300
        Eugene, OR 97402
        Telephone: 541-484-9292
        Attorneys for Defendant Richard Walter