Janis C. Puracal, OSB #132288
E-mail: jcp@mlrlegalteam.com
Andrew C. Lauersdorf, OSB #980739
E-mail: acl@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, OR  97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

David B. Owens, WSBA #53856, *pro hac vice*
E-mail: david@loevy.com
LOEVY & LOEVY c/o
Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
PO Box 85110
Seattle, WA  98145-1110
Telephone: (312) 590-5449

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem*, on behalf of S.M., a minor,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY, | Civil No. 6:20-cv-01163-MTK<br>(Lead Case)<br><br><br>PLAINTIFFS' RESPONSE TO RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT |

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Defendants.

VIDOCQ SOCIETY,

Cross-Claimant,

v.

MARK DANNELS, PAT DOWNING,
SUSAN HORMANN, MARY KRINGS,
KRIS KARCHER, SHELLY MCINNES,
RAYMOND MCNEELY, KIP OSWALD,
MICHAEL REAVES, JOHN RIDDLE, SEAN
SANBORN, ERIC SCHWENNINGER,
RICHARD WALTER, CHRIS WEBLEY,
ANTHONY WETMORE, KATHY WILCOX,
CRAIG ZANNI, DAVID ZAVALA, JOEL D.
SHAPIRO AS ADMINISTRATOR OF THE
ESTATE OF DAVID E. HALL, VIDOCQ
SOCIETY, CITY OF COQUILLE, CITY OF
COOS BAY, and COOS COUNTY

Cross-Defendants.

NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on behalf
of S.M., a minor,

Plaintiffs,

v.

OREGON STATE POLICE,

Defendant.

Civil Case No. 3:21-cv-01719-MTK
(Trailing Case)

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## <u>TABLE OF CONTENTS</u>

I. WALTER HAS FAILED TO SATISFY HIS BURDEN ON SUMMARY JUDGMENT ......... 9

II. MATERIAL FACTS THAT PRECLUDE SUMMARY JUDGMENT ................................. 10

III. POINTS AND AUTHORITIES ON PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 .............................................................................................................................. 17

    A.   A reasonable jury can find Walter worked jointly with the Municipal Defendants and, therefore, was acting under color of law. ......................................... 17

        1.   State Actor ............................................................................................. 19

        2.   State Policy ............................................................................................. 24

    B.   A reasonable jury can find Walter fabricated evidence that caused McGuffin harm… ................................................................................................................... 26

    C.   A reasonable jury can find Walter suppressed favorable evidence from McGuffin. ................................................................................................................. 30

    D.   A reasonable jury can find Walter acted in violation of the Fourth Amendment. ............................................................................................................. 33

    E.   A reasonable jury can find that Walter destroyed evidence. ...................................... 36

    F.   A reasonable jury can find that Walter detained McGuffin without probable cause… ..................................................................................................................... 37

    G.   A reasonable jury can find that Walter failed to intervene. ...................................... 39

    H.   A reasonable jury can find Walter liable for harm to S.M. ....................................... 40

IV. POINTS AND AUTHORITIES ON PLAINTIFFS' CLAIMS UNDER STATE LAW ....... 40

V. POINTS AND AUTHORITIES ON REMAINING ISSUE .................................................. 42

VI. CONCLUSION ................................................................................................................... 46

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................8

*Atkins v. Cty. of Riverside*,
151 F. App'x 501 (9th Cir. 2005) .....................................................................30, 31

*Awabdy v. City of Adelanto*,
368 F.3d 1062 (9th Cir. 2004) .....................................................................32, 33, 37

*Bank of N.Y. Mellon v. Davidson*,
No. 1:17-cv-01335-DAD-EPG, 2019 U.S. Dist. LEXIS 138460 (E.D. Cal.
Aug. 15, 2019) .................................................................................................44

*Barber v. Gladden*,
215 Or. 129, 136, 332 P.2d 641 (1958) ..............................................................43

*Barlow v. Ground*,
943 F.2d 1132 (9th Cir. 1991) ...........................................................................37

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007) ........................................................................28, 37

*Bogle v. State*,
363 Or. 455, 423 P.3d 715 ...............................................................................43

*Bowen v. Maynard*,
799 F.2d 593 (10th Cir. 1986) ...........................................................................31

*Brady v. Maryland*,
373 U.S. 83 (1963) ..................................................................................29, 30, 31

*Caldwell v. City & Cnty. of San Francisco*,
889 F.3d 1105 (9th Cir. 2018) ......................................................................28, 29, 33

*Chiaverini v. City of Napoleon*,
602 U.S. 556 (2024) ........................................................................................36

*Collins v. Womancare*,
878 F.2d 1145 (9th Cir. 1989) ...........................................................................18

*Costanich v. Dep't of Social & Health Servs.*,
627 F.3d 1101 (9th Cir 2010) ...........................................................................23

MALONEY | LAUERSDORF | REINER PC
A T T O R N E Y S   A T   L A W
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Cox v. Premo*,
  297 Or. App. 302, 440 P.3d 81 (2019)...................................................................42

*Crowe* v. *Cnty. of San Diego*,
  608 F.3d 406 (9th Cir. 2010) .............................................................................28

*Devereaux v. Abbey*,
  263 F.3d 1070 (9th Cir. 2001) (*en banc*) ...........................................................25

*Drake v. Portuondo*,
  321 F.3d 338 (2nd Cir. 2003)..............................................................................15

*Drake v. Portuondo*,
  553 F.3d 230 (2nd Cir. 2009)........................................................................15, 27

*Fatai v. City & Cnty. of Honolulu*,
  No. 19-CV-00603-DKW-WRP, 2022 WL 2669530 (D. Haw. July 11, 2022)......36

*Franklin v. Fox*,
  312 F.3d 423 (9th. Cir. 2002) .............................................................................22

*Gordon v. Kleinfelder West, Inc.*,
  No. 3:11-CV-00245-HU, 2012 U.S. Dist. LEXIS 32982 (D. Or. Mar. 12,
  2012) ..................................................................................................................33

*Halsey v. Pfeiffer*,
  750 F.3d 273 (3rd Cir. 2014) ..............................................................................28

*Harris v. City of Los Angeles*,
  No. 2:21-cv-07999-WLH-JPR, 2024 U.S. Dist. LEXIS 173887 (C.D. Cal.
  Sept. 24, 2024) .............................................................................................40, 41

*Hernandez v. AFSCME Cal.*,
  424 F. Supp. 3d 912 (E.D. Cal. 2019)................................................................17

*Hernandez v. Los Angeles*,
  624 F.2d 935 (9th Cir. 1980) ..............................................................................41

*Hiber v. Creditors Collections Serv., Inc.*,
  154 Or. App. 408, 961 P.2d 898 (1998)..............................................................33

*Hughes v. Patrolmen's Benevolent Ass'n*,
  850 F.2d 876 (2nd Cir. 1988) .............................................................................21

*Hunter v. S.D. Dep't of Soc. Servs.*,
  377 F. Supp. 3d 964 (D. S.D. 2019) ...................................................................19

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*Johnson v. Premo*,
  355 Or. 866, 333 P.3d 288 (2014) ........................................................43

*Kyles v. Whitley*,
  514 U.S. 419 (1995)............................................................................31

*Lee v. Katz*,
  276 F.3d 550 (9th Cir. 2002) ...............................................................21

*Leonetti v. Bray*,
  No. 2018 U.S. Dist. LEXIS 241282 (D. Or. Feb. 16, 2018)...................37

*Leslie v. Grupo ICA*,
  198 F.3d 1152 (9th Cir. 1999) ...............................................................9

*Lindsey v. King*,
  769 F.2d 1034 (5th Cir. 1985) .............................................................31

*Lisker v. City of Los Angeles*,
  780 F.3d 1237 (9th Cir. 2015) .............................................................28

*Lopez v. Dep't of Health Services*,
  939 F.2d 881 (9th Cir. 1991) ...............................................................18

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982)..............................................................17, 18, 24

*Manuel v. City of Joliet*,
  580 U.S. 357 (2017)............................................................................36

*Mathis v. Pacific Gas & Electric Co.*,
  75 F.3d 498 (9th Cir. 1996) ...........................................................18, 24

*Mellen v. Winn*,
  900 F.3d 1085 (9th Cir. 2018) .............................................................31

*Mendocino Envtl. Ctr. v. Mendocino Cty.*,
  192 F.3d 1283 (9th Cir. 1999) ........................................................21, 22

*Miller v. United States*,
  945 F.2d 1464 (9th Cir. 1991) ...............................................................8

*Monroe v. Pape*,
  365 U.S. 167 (1961)............................................................................29

*Nelson v. Emerald People's Util. Dist.*,
  318 Or. 99, 862 P.2d 1293 (1993) ......................................................41

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) ....................................................................18, 24

*Ogle v. Nooth*,
    365 Or. 771, 453 P.3d 1274 (2019) ..................................................................43

*Ordonez v. Red Hill Lava Prods., Inc.*,
    No.2:22-cv-03072-SSS-SSCx, 2024 U.S. Dist. LEXIS 127797 (C.D. Cal. June
    4, 2024) ..............................................................................................................8

*Pac. Shores Properties, LLC v. City of Newport Beach*,
    730 F.3d 1142 (9th Cir. 2013) ..........................................................................27

*Pearson v. Galvin*,
    253 Or. 331 (1969)............................................................................................33

*Peterson v. Porter*,
    No. 3:16-cv-01955-JR, 2018 U.S. Dist. LEXIS 219691 (D. Or. Nov. 1, 2018).....................32

*Pulido v. Monk*,
    No. 03:15-CV-01992-AC, 2016 U.S. Dist. LEXIS 182907 (D. Or. Oct. 18,
    2016) ..................................................................................................................33

*Rodarte v. Gutierrez*,
    2023 WL 109723 (9th Cir. Jan. 5, 2023) .........................................................33

*Roudybush v. Zabel*,
    813 F.2d 173 (8th Cir. 1987) ............................................................................17

*Sabbe v. Washington Cnty. Bd. of Commissioners*,
    84 F.4th 807 (9th Cir. 2023) .............................................................................29

*Sierra Medical Services Alliance v. Kent*,
    883 F.3d 1216 (9th Cir. 2018) ............................................................................8

*Singh v. McLauglin*,
    255 Or. App. 340, 297 P.3d 514 (2013)...........................................................33

*Spencer v. Peters*,
    857 F.3d 789 (9th Cir. 2017) ......................................................................23, 25

*State Farm Fire & Cas. Co. v. Century Home Components, Inc.*,
    275 Or. 97, 550 P.2d 1185 (1976) ....................................................................42

*State v. Haynes*,
    1988 Ohio App. LEXIS 3811 (1988)................................................................15

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

*State v. Roquemore*,
    620 N.E.2d 110 (Ct. App. Ohio 1993) ................................................................. 15

*Stewart v. Coughlin*,
    No. 3:20-cv-00497-M, 2023 U.S. Dist. LEXIS 2364 (N.D. Tex. Jan. 6, 2023) ..................... 31

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ......................................................................... 19

*Tennison v. City & Cnty. of San Francisco*,
    570 F.3d 1078 (9th Cir. 2009) ....................................................................... 30

*Thompson v. Clark*,
    596 U.S. 36 (2022) ................................................................................ 36, 37

*Tobias v. Arteaga*,
    996 F.3d 571 (9th Cir. 2021) ......................................................................... 38

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012) ....................................................................... 16

*United States v. Price*,
    383 U.S. 787 (1966) ................................................................................. 18

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    865 F.2d 1539 (9th Cir.1989) (en banc) ............................................................. 22

*Vineyard v. Soto*,
    No. 10-CV-1481-SI, 2011 U.S. Dist. LEXIS 129274 (D. Or. Nov. 7, 2011) ....................... 18

*Ward v. EEOC*,
    719 F.2d 311 (9th Cir. 1983) ...................................................................... 21, 22

*West v. Atkins*,
    487 U.S. 42 (1988) .................................................................................. 23

*Wheeler v. Mui*,
    No. 1:12-cv-00861-DAD-GSA, 2017 U.S. Dist. LEXIS 19406 (E.D. Cal. Feb.
    9, 2017) ......................................................................................... 16, 23

*White v. Roper*,
    901 F.2d 1501 (9th Cir. 1990) ....................................................................... 27

*Williams v. Alameda Cnty.*,
    642 F. Supp. 3d 1001 (N.D. Cal. 2022) .............................................................. 44

*Youngblood v. West Virginia*,
    547 U.S. 867 (2006) (*per curiam*) ................................................................... 29

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Plaintiffs request the Court deny Defendant Richard Walter's motion for summary judgment.

## I.  WALTER HAS FAILED TO SATISFY HIS BURDEN ON SUMMARY JUDGMENT

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  Where "evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine issue of material fact exists.[2]  The Court must "look to not a single pleading, but to the entire record to determine whether there are any factual disputes."[3]

Federal courts recognize that the moving party on summary judgment has "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."[4]  To carry its burden of persuasion, the moving party "must persuade the court that there is no genuine issue of material fact."[5]  Doing so, however, requires the moving party to draw all inferences in favor of the nonmoving party: "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[6]

Just as with the other Defendants, Walter fails to accept *Plaintiffs'* version of the facts, instead construing the evidence in a self-serving manner and without even mentioning

---

[1] FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[2] *Sierra Medical Services Alliance v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (quoting *Anderson*, 477 U.S. at 248).

[3] *Miller v. United States*, 945 F.2d 1464, 1466 (9th Cir. 1991) (citations omitted).

[4] *Ordonez v. Red Hill Lava Prods.*, *Inc.*, No.2:22-cv-03072-SSS-SSCx, 2024 U.S. Dist. LEXIS 127797, at *4 (C.D. Cal. June 4, 2024) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

[5] *Id.*

[6] *See*, *e.g.*, *Leslie v. Grupo ICA*, 198 F.3d 1152, 1157 (9th Cir. 1999) (quoting *Anderson*, 477 U.S. at 255).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

that which undermines his version of events.  Walter's mistake is fatal.  Summary judgment must be denied.

## II.  MATERIAL FACTS THAT PRECLUDE SUMMARY JUDGMENT

1.     Nicholas McGuffin was not in any way involved in the kidnapping and murder of Leah Freeman and is completely innocent of the crime.[7]  Nonetheless, McGuffin has been subjected to more than 20 years of hardships, including nearly a decade of incarceration, for a crime that he did not commit.

2.     McGuffin was wrongfully indicted, prosecuted, and convicted of a murder that he did not commit due to the misconduct of law enforcement agencies and actors that pursued him even though they knew that he was innocent.

3.     Nicholas McGuffin and Leah Freeman were high school sweethearts when Freeman was abducted from their small town of Coquille, Oregon, on June 28, 2000.[8]  The first tangible evidence of Freeman's murder, her right Nike athletic shoe, was found near a local cemetery on the night that she disappeared.[9]  Examination by a criminalist showed that the shoe did not have any blood on it.[10]  Her left shoe was found one week later on Hudson Ridge, a remote area approximately ten miles from the location where the right shoe was found.[11]  The left shoe had bloodstains on the shoelace, the interior heel and ankle area, and the exterior sole.[12]

---

[7] *See* Criminal Trial Transcript (Sentencing) at 1738:18–1742:11 [Dkt. No. 284-1 at 1799–1852] (McGuffin proclaiming his innocence at sentencing hearing).
[8] Nicholas McGuffin Deposition at 28:14–29:1 (Exhibit 10 to the Declaration of Janis C. Puracal in Support of Plaintiffs' Responses to Summary Judgment ("Puracal Decl.")).
[9] Criminal Trial Transcript D5 127:16–132:17 (Messerle) [Dkt. No. 284-1 at 920–25].
[10] 2000-07-17 Wilcox Report at 1 [Dkt. No. 296 at 179].
[11] Criminal Trial Transcript D5 140:11–144:13 (Oswald) [Dkt. No. 284-1 at 934–38].
[12] 2000-07-17 Wilcox Report at 1 [Dkt. No. 296 at 179]); 2001-10-03 FSS Lab Report at 15 (Exhibit 63 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Five weeks after Freeman disappeared, her body was found deep in the woods approximately eight miles from the location where she was last seen alive and three miles from her left shoe.[13]

4.    Freeman's disappearance and death in 2000 shocked the small community of Coquille, and law enforcement were under intense pressure to solve the crime. There were no eyewitnesses to Freeman's disappearance or death, and there is not—and never has been—any blood, hair, fibers, fingerprints, DNA, or any other tangible evidence of any kind connecting McGuffin to the abduction and death of Freeman. Nonetheless, despite a corroborated alibi and no physical evidence to connect him to the crime, McGuffin became Coquille PD's primary suspect within a week after Freeman's disappearance.

5.    Coquille PD Chief Reaves appointed Officer Dave Hall to lead the investigation.[14] By Hall's own admission, he had never investigated a homicide and was ill-equipped to carry out the task.[15] Hall's inexperience, combined with the pressure of a high-profile case, set in motion a bungled investigation.[16] Over the next ten years, personnel from Coquille PD, the Coos County Sheriff's Office ("CCSO"), City of Coos Bay PD ("CBPD"), and the Oregon State Police ("OSP"), under intense community pressure, worked as part of the local "HIT Team"—a multi-agency investigative team—to bury exculpatory DNA results, fabricate evidence, and coerce and manipulate witness testimony in a concerted effort to bring about the indictment and wrongful conviction of McGuffin.

6.    In 2008, Chief Reaves resigned from Coquille PD, and Defendant Mark Dannels replaced him. Dannels was hired based in part upon his pledge of re-opening the Freeman

---

[13] Criminal Trial Transcript D6 218:21–220:7 (Karcher) [Dkt. No. 284-1 at 1293–95].
[14] Michael Reaves Deposition at 54:12–58:18 (Exhibit 54 to Puracal Decl.); 2010-01-23 Schwenninger Case Notes at 3 (Exhibit 48 to Puracal Decl., Attachment 4).
[15] *Id.*
[16] R. Paul Frasier PCR Deposition at 21:12–25:1 (Exhibit 62 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

murder investigation.[17]  Dannels knew that the community was outraged that Freeman's murder had not been solved, and was aware that a group called the "Concerned Citizens of Coquille" had formed to report regularly to the Coquille City Council about problems with the police.[18]

7.     After ten years of investigation, however, and given the known and objective evidence of McGuffin's innocence, Chief Dannels still lacked a coherent narrative that could possibly support seeking charges against McGuffin for the Freeman murder.[19]  The Municipal Defendants turned to the Vidocq Society for assistance at that point.  Vidocq is a group of active and retired individuals, currently or formerly associated with law enforcement, who partner with police in an effort to solve cold cases.[20]

8.     In January 2010, Defendants Dannels and Zanni traveled to Philadelphia to meet with Vidocq, including Walter, and discuss investigating McGuffin for the Freeman murder. Dannels wrote a "case summary" for Vidocq identifying McGuffin as the lead suspect.[21]  Vidocq told them they were "on the right track" in honing in on McGuffin, and Walter fabricated a profile of a "Power Assertive" perpetrator that Walter claimed "fits Mr. McGuffin."[22]  Walter fabricated evidence that Freeman's murder fell under the category of "Power-Assertive Rape-Murder," a crime that would be committed by an arrogant perpetrator who needs to "maintain[ ]

---

[17] *Id.* at 36:16–37:19.
[18] Mark Dannels Deposition at 76:16–79:12 (Exhibit 51 to Puracal Decl.); Rule 30(b)(6) Deposition of City of Coquille at 40:10–41:19 (Exhibit 53 to Puracal Decl.).
[19] 2009-10-13 HIT Team Notes at 7 (Exhibit 46 to Puracal Decl.) ("[Larry] Leader thinks 2 people dumped body from car – Zanni believes he's right"); 2010-01-28 HIT Team Notes at 1–2 (Exhibit 42 to Puracal Decl.) ("??How did Nick contact Dad that night??"; "Need to know how Nick & Bruce [Dad] communicated that night – how do we get dad there to accomplish the vehicle switch?"); Dannels Operation Plan at 2 (Exhibit 66 to Puracal Decl.) (the team had "followed up on new leads," but "most of the leads have not yielded any results")
[20] *See*, *infra*, section III(A).
[21] Dannels Case Summary for Vidocq at 5 (Exhibit 4 to Puracal Decl.).
[22] R. Paul Frasier Civil Suit Deposition at 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

control over a vulnerable victim by an exaggerated machismo overreaction" and the use of "an assertive image and dominating violence."[23]  In this type of killing, according to Walter, the body is "dumped," and the perpetrator "will demand credit for the killing."[24]  Thus, "due to his need for glory and recognition, he may betray his secret to a bar patron, fellow worker, admirer, cell-mate, and sometimes the police."[25]  This profile was entirely made-up to fit McGuffin.[26]  Walter relayed his "profile" to the Municipal Defendants, and the theory was provided to the District Attorney.[27]

9.     After the meeting in Philadelphia, Walter became more involved in working with the Municipal Defendants, offering his fabricated profile, theory of motive, and a false narrative about how the crime occurred, which Walter and the Municipal Defendants claimed fit only McGuffin.[28]

10.     For example, in late June 2010, Walter met with the Municipal Defendants in Coquille and filmed an episode of the ABC News program "20/20."  Walter admits in his motion for summary judgment that he "only traveled to Oregon to provide commentary on the Freeman Investigation" because "Vidocq agreed to allow it."[29]  The episode aired in 2010 (prior to the criminal trial in 2011) and features Walter working with the Municipal Defendants, explaining

---

[23] Robert D. Keppel and Richard Walter, *Profiling Killers: A Revised Classification Model for Understanding Sexual Murder*, 43(4) INT'L J. OF OFFENDER THERAPY AND COMPARATIVE CRIMINOLOGY 417, 420 (1999) (Exhibit 76 to Puracal Decl.).  Walter provided a copy of this article to the District Attorney.  *See* R. Paul Frasier Civil Suit Deposition at 92:7–93:11 (Exhibit 3 to Puracal Decl.).

[24] Keppel and Walter, *supra*, n.23, at 421 and 422.

[25] *Id.*

[26] R. Paul Frasier Civil Suit Deposition at 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).

[27] *Id.*

[28] *See* Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].

[29] Walter's Motion for Summary Judgment at 15 [Dkt. No. 314].

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

the false "profile" he created and the invented motive for Freeman's murder, and further

explaining the false narrative that would ultimately indict, and then convict, McGuffin.[30]

11.     Walter and the Municipal Defendants created the false narrative that McGuffin

caught up to Freeman on the night that she disappeared, they argued, and he hit her in the face

causing her to bleed.[31]  Walter and the Municipal Defendants even fabricated blood evidence on

Freeman's right shoe—the bloodless shoe found next to the cemetery in the vicinity of where

Freeman was last seen alive—as evidence that she was punched in the face and bleeding in that

location.  Chief Dannels announced on "20/20" that the shoe was found "with blood on it," and

Walters reported that the blood indicated that Freeman "was forcibly taken from that point"

where "[s]he got probably smashed in the face."[32]

12.     In an internal document that Vidocq suppressed during the criminal case, Vidocq

documented Walter's involvement in simply making up evidence that would point at McGuffin:

> Richard [Walter] advises me that after discussion, they realized
> that the motive for the crime was the BF [boyfriend] wanted to get
> Leah pregnant, not the other way around, and they must have had a
> fight where her bloody shoe was found.  It was a PA [Power
> Assertive] case and PAs hit for the face, therefore blood, and then
> they surmised that the BF put her in the trunk of the car that he was
> driving and called his father who came over and switched cars,
> allowing the BF to drive around being noticed while the father
> dumped the body.  It explains the sanitation of the car trunk and
> the unauthorized burning and that the BF had an alibi of driving
> around looking for Leah.[33]

There was, in fact, no blood on the right (cemetery) shoe, no evidence of a fight where

the shoe was found, and no evidence that Freeman was hit in the face.[34]  Indeed, there was no

---

[30] 2010-10-15 ABC News 20/20 Transcript (2010) (Exhibit 1 to Puracal Decl.).

[31] *See* Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].

[32] 2010-10-15 ABC News 20/20 Transcript (2010) at 11 (Exhibit 1 to Puracal Decl.).

[33] *See* Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].

[34] *See* 2000-07-17 Wilcox Report at 1 [Dkt. No. 296 at 179]; Autopsy Report (Exhibit 5 to

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

evidence of any traumatic injury to Freeman's face or skull.  There was also no evidence that the car was sanitized or that McGuffin's father had even left the house that evening.[35]

13.    In that internal document that Vidocq suppressed during the criminal case, Vidocq also wrote:  "Richard [Walter] says that the DA was very impressed and indicated that they now saw the case in a new light and he may have enough to indict."[36]  Walter was correct—the fabrications by Walter and the Municipal Defendants were sufficient to secure an indictment, and the State even intended, at one point, on calling Walter as an expert witness in the criminal trial against McGuffin.[37]

14.    Though it was 10 years after the crime, it was just one week after Walter came to Coquille and collaborated with the Municipal Defendants that the State began issuing subpoenas for grand jury witnesses.[38]  The first witness appeared at grand jury one week later on July 14, 2010.[39]

15.    Ultimately, Walter was not called as a witness in the criminal trial.  This is only so, however, because it came out that Walter lacked credibility and had fabricated evidence in other cases.  Prior to his work pursuing McGuffin, multiple courts admonished Walter for fabricating evidence in criminal cases by employing a method of finding out from law enforcement who their lead suspect was, concocting a false psychological profile and narrative of

---

Puracal Decl.); Dannels Case Summary for Vidocq at 1 (Exhibit 4 to Puracal Decl.) ("No broken bones were found.").

[35] 2000-07-06 Wilcox Report of Car [Dkt. No. 310-15 at 231]; Kathy Wilcox Deposition at 109:1–110:13, 113:6–115:13 (Exhibit 6 to Puracal Decl.); Kathy McGuffin Deposition at 14:23–27:21 (Exhibit 21 to Puracal Decl.).

[36] Vidocq's Synopsis at 1 [Dkt. No. 293-2 at 119].

[37] 2016-08-10 Letter from Frasier to Reim at 5 [Dkt. No. 293-2 at 105].

[38] *See* Grand Jury Subpoena to Denise Bertrand (née Freeman) (Exhibit 77 to Puracal Decl.).

[39] *See* Grand Jury (2010) Transcripts [Dkt. No. 295-1] (starting with testimony of Denise Bertrand (née Freeman).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

the crime to fit the existing suspect, and in turn encouraging law enforcement to continue its

pursuit of that individual.[40]

16.    Nonetheless, the evidence fabricated by Walter and the Municipal Defendants

was featured in the criminal case, including at grand jury,[41] as well as in the state's closing

argument for trial, which was punctuated by the fabricated narrative of the crime and hallmarks

of the made-up "power assertive" theory, including references to the arrogance that, in Walter's

narrative, leads to an inadvertent "confession":

///

---

[40] *Drake v. Portuondo*, 553 F.3d 230, 238, 244 (2nd Cir. 2009) ("Walter's deposition on remand confirms that he grossly exaggerated most of his qualifications and outright lied about some of them. . . . Walter then had two weeks to conjure up his quackery.  His direct testimony on picquerism, which spans twelve pages of trial transcript, consisted largely of uninterrupted and prolix exposition, weaving the complicated facts of the case into a seemingly coherent narrative, all pointing to the symptoms of the fictive syndrome called picquerism.  Walter even adapted the symptoms of the syndrome to remedy any potential weaknesses in the prosecution's theory of Drake's motive, for example, the lack of semen evidence."); *Drake v. Portuondo*, 321 F.3d 338, 342 (2nd Cir. 2003) ("It is now apparent that Walter's testimony concerning his qualifications was perjurious."); *State v. Roquemore*, 620 N.E.2d 110, 114 (Ct. App. Ohio 1993) (finding Walter's opinions inadmissible as "stereotyping the defendant"); *State v. Haynes*, 1988 Ohio App. LEXIS 3811, at *13 (1988) (finding Walter's opinions inadmissible as "stereotyping").

[41] *See* Grand Jury (2010) (David Zavala) at 102:2–105:10 [Dkt. No. 295-1 at 98] (testifying to fabricated report of McGuffin driving over the bridge toward home); Grand Jury (2010) (Kris Karcher) at 146:1–147:7, 148:3–11 [Dkt. No. 295-1 at 254] (testifying Freeman was dumped, rolled down the hill, and a path like someone had walked to the edge and looked down; testifying that blood on the shoe was high velocity and could have come from a cough (*i.e.*, from the mouth) or sneeze (*i.e.*, from the nose)); Grand Jury (2010) (Dave Hall) at 66:7–11 [Dkt. No. 295-1 at 186] (testifying McGuffin switched cars); Grand Jury (2010) (Kip Oswald) at 78:1–5 [Dkt. No. 295-1 at 294] (testifying it was his DNA on Freeman's shoe); Grand Jury (2010) (Craig Zanni) at 93:13–21 [Dkt. No. 295-1 at 349] (testifying eliminate everyone except McGuffin); Grand Jury (2010) (Ray McNeely) at 138:4–141:18 [Dkt. No. 295-1 at 1126] (testifying that he confirmed Lindegren's *Survivor* story with a cable tv guide and falsely testifying he never looked up if Rudy was voted off); Grand Jury (2010) (Mark Dannels) at 131:3–132:2, 132:6–138:21 [Dkt. No. 295-1 at 1541] (testifying that no one has threatened any witnesses and there were no difficult witnesses; testifying no DNA of anyone else; testifying eliminated everyone except McGuffin); Indictment [Dkt. No. 291-15 at 2] (listing witnesses appearing by report, including Krings and Wilcox).

MALONEY | LAUERSDORF | REINER pc
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

[McGuffin] gets really upset. "This is my Babydoll. This is my girl. No one else's." He finds her by the high school. He tries to get her into the car. She loses a shoe. *She ends up with a bloody lip or a bloody nose*. She screams, which is what was heard by Mr. Bounds. And in an effort to keep her quiet, or *in anger*, he strangles her.

And then it goes downhill from there. He panics, *changes clothes, switches cars, body gets dumped*. He has to cover for himself. *Has to go around asking questions*. "Where is Leah?" The pressure builds. He has guilt over what he did. He had that anxiety attack.

And then, as time goes by, we start seeing *the arrogance*. And then we get to the point of, "It's amazing what you can get away with in Coos County."[42]

### III. POINTS AND AUTHORITIES ON PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983

**A.    A reasonable jury can find Walter worked jointly with the Municipal Defendants and, therefore, was acting under color of law.**

Walter asserts that he cannot be liable under 42 U.S.C. § 1983 because he is a private party that did not act under "color of law."[43]

Private actors who work alongside or perform services for government agencies just as if they were government agencies themselves engage in state action.[44]   At its core, a reasonable jury can find action under color of law where a retired state official—Walter—lead the efforts of

---

[42] 2011 Criminal Trial Transcript at D9 156:2–15 (emphasis added) [Dkt. No. 284-1 at 1756]. Freeman's cousin—a woman McGuffin barely knew—falsely reported that McGuffin said to her, "It's amazing what you can get away with in Coos County," and the State Defendants, in their motion, portrayed the statement as an admission of guilt. *But see* Plaintiffs' Response to State Defendants' Motion at III(B)(4).

[43] Walter's Motion for Summary Judgment at 24 [Dkt. No. 314].

[44] *See, e.g., Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1140 (9th Cir. 2012) (private casino's security qualified as state action given the cooperation and work with local police agency, training provided to and from the law enforcement agencies, etc.); *Wheeler v. Mui*, No. 1:12-cv-00861-DAD-GSA, 2017 U.S. Dist. LEXIS 19406, at *11 (E.D. Cal. Feb. 9, 2017) (reasonable jury can find that private medical company acted under color of law in providing services to detainees; collecting cases re same).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

an organization designed to assist law enforcement in cold cases, and who specifically did provide that assistance to local law enforcement, resulting a grand jury proceeding that began just one week after Walter literally appeared on the scene in a case that has stagnated over the prior 10 years.[45]

The determination of whether actions by a private party were taken under color of law involves an analysis of whether the conduct causing the deprivation of federal rights is "fairly attributable" to the government.[46]  The Supreme Court's "fair attribution" test under *Lugar v. Edmonson Oil Co*. "has two components: a state policy and a state actor."[47]  Under the state policy component, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."[48]

Under the state actor component, "the defendant must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."[49]

Walter urges the Court to follow a strict formulation of the *Lugar* two-step test, but the Ninth Circuit has "refused to apply the two-step framework rigidly" and has, instead, "suggested that the first step may be unnecessary in certain contexts."[50]  For example, the first step is

---

[45] Statement of Facts ¶¶ 1–16.

[46] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[47] *Hernandez v. AFSCME Cal.*, 424 F. Supp. 3d 912, 919 (E.D. Cal. 2019) (quoting *Roudybush v. Zabel*, 813 F.2d 173, 177 (8th Cir. 1987)).

[48] *Roudybush*, 813 F.2d at 176.

[49] *Id.* at 176–77.

[50] *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023) (citing *Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498, 503 n.3 (9th Cir. 1996)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

unnecessary when there exists "joint action" between the government and a private party.[51] Because the second step of the *Lugar* test is dispositive, Plaintiffs address that step first.

### 1.     State Actor

Joint action "exists where a private party is 'a willful participant in joint action with the State or its agents.  Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'"[52]  As a result, the Supreme Court has explained that to "act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents."[53]

Federal courts sometimes analyze four factors to assist in determining whether private conduct constitutes state action within the meaning of section 1983:  (1) whether the otherwise private actor is performing a public function, (2) whether the otherwise private actor is conducting joint action in concert with state actors, (3) whether the government compelled the action, or (4) whether there is a sufficient nexus between the private and public actors to

---

[51] *See Mathis*, 75 F.3d at 503 n.3 ("PG&E mistakenly argues that Mathis had to show it not only acted in an official capacity but also exercised some right or privilege under state law.  Although private section 1983 liability generally requires a showing of both, where the defendant's 'official character is such as to lend the weight of the State to his decisions,' the two merge.  Had Mathis succeeded in showing that PG&E's decision amounted to 'joint action' with the state, the official character of its partners would suffice.").  *See also Lopez v. Dep't of Health Services*, 939 F.2d 881, 883 (9th Cir. 1991); *Vineyard v. Soto*, No. 10-CV-1481-SI, 2011 U.S. Dist. LEXIS 129274, at **17–18 (D. Or. Nov. 7, 2011) ("Taking Vineyard's allegations as true, and drawing all reasonable inferences in Vineyard's favor, the court concludes that Vineyard has pleaded facts sufficient to satisfy the 'joint action' test.  These allegations are sufficient to state a claim of Farris's active participation and cooperation in the malicious prosecution claim brought against the state actors.  The motion to dismiss the § 1983 claims under Rule 12(b)(6) is denied.").
[52] *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (quoting *Dennis v. Sparks,* 449 U.S. 24, 28 n. 5 (1980)).
[53] *United States v. Price*, 383 U.S. 787, 794 (1966).



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

constitute state action.[54]  "While these factors are helpful in determining the significance of state involvement, there is no specific formula for defining state action."[55]  Instead, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."[56]  Courts, therefore, "ask whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor."[57]

Federal courts recognize that "[w]hether a defendant is a state actor is often a mixed question of law and fact."[58]  Unanswered questions of fact are improper for resolution on a motion for summary judgment and are, instead, for the jury to decide.[59]

Here, whatever formulation of the test is invoked, the record is sufficient for a reasonable jury to find Walter was a willful (if not eager) participant in the Freeman investigation and frankly proud that it was his work that led to an indictment in a decade-old cold case just weeks after he showed up to offer his "expertise."[60]

There is evidence from which a reasonable jury could conclude there was substantial cooperation, proving joint action.  Vidocq testified in this case that its very purpose is to "pool" its expertise to "try to help the smaller police departments" who lack resources, particularly in cold cases.[61]  Vidocq's job is to work exclusively with law enforcement agencies.[62]  Vidocq

---

[54] *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999) (citations omitted).

[55] *Id.* (citations omitted).

[56] *Id.* (quoting *Burton v. Wilmington*, 365 U.S. 715 (1961)).

[57] *Id.*

[58] *Hunter v. S.D. Dep't of Soc. Servs.*, 377 F. Supp. 3d 964, 978 (D. S.D. 2019) (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276 (11th Cir. 2003)).

[59] *See Focus on the Family*, 344 F.3d at 1276.

[60] *See* Statement of Facts ¶¶ 1–16.

[61] Rule 30(b)(6) Deposition of Vidocq at 26:25–27:12, 40:2–20, 59:11–60:16 (Exhibit 90 to Puracal Decl.).  *See also* "The Vidocq Society" by William Fleisher at 2 [Fleisher deposition exhibit 12] (Exhibit 89 to Puracal Decl.).

[62] *Cf.* Rule 30(b)(6) Deposition of Vidocq at 60:14–16, 61:18–23, 117:8–25 (Exhibit 90 to

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

seeks to "to guide police departments" across the country,[63] and the United States Department of Justice lists Vidocq as cold-case resource for law enforcement.[64]  In this case, it is undisputed that, in January 2010, Dannels and Zanni (along with the District Attorney and an individual from the Oregon Department of Justice) flew to Philadelphia to present the McGuffin case to Vidocq, including Walter.[65]  It is further undisputed that Dannels prepared a written summary of the case for the Vidocq membership, and the Municipal Defendants provided information to Vidocq and Walter from the (otherwise confidential) investigative files for the Freeman murder.[66]  It was after receiving and reviewing these materials that Walter approached the Municipal Defendants and District Attorney with his "profile" of the killer.[67]

After the presentation to the full Vidocq membership, the Municipal Defendants asked Walter to travel to Coquille to assist, and Vidocq agreed that he would.[68]  After Dannels and Zanni returned from Philadelphia, there was a meeting of the HIT Team where the team discussed its new strategy to "Keep the press active.  Bring in Vidocq."[69]

In late June 2010, Walter traveled to Coquille where he met with the Municipal Defendants at the Coquille Police Department, reviewed portions of the case file, went out to the crime scene, and appeared on national television with Dannels, at the cemetery where Freeman's right (cemetery) shoe was found, discussing Walter's profile of the perpetrator and their

---

Puracal Decl.) (Vidocq works exclusively with law enforcement agencies).

[63] *Id.* at 27:21–22.

[64] William Fleisher Deposition at 46:10–48:25 (Exhibit 89 to Puracal Decl.).

[65] *See* Statement of Facts ¶¶ 8; Richard Walter Deposition at 187:24–188:1 (Exhibit 93 to Puracal Decl.).

[66] *See* Statement of Facts ¶¶ 8.

[67] R. Paul Frasier Civil Suit Deposition at 227:18–228:7 (Exhibit 3 to Puracal Decl.).

[68] Richard Walter Deposition at 257:16–23 (Exhibit 93 to Puracal Decl.).

[69] 2010-01-28 HIT Team Note (Exhibit 42 to Puracal Decl.); R. Paul Frasier Civil Suit Deposition at 109:9–110:7 (Exhibit 3 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

concocted narrative of how the crime occurred.[70]  Dannels also arranged for Walter to talk to the District Attorney about convening a grand jury.[71]  A reasonable jury can find substantial cooperation.

Any single factor is sufficient on its own to satisfy the requirement of a state action.[72]  In addition to all of the evidence of substantial cooperation, Plaintiffs here address additional facts from which a reasonable jury could conclude there was a conspiracy, which separately demonstrates sufficient joint action.[73]

To prove a conspiracy, a plaintiff must "show an agreement or 'meeting of the minds' to violate [her] constitutional rights."[74] Such an agreement "may be inferred from conduct and need not be proved by evidence of an express agreement"; a plaintiff need only point to some "facts probative of a conspiracy."[75]  In addition, while each participant must "share the common objective" of the conspiracy, "each participant in the conspiracy need not know the exact details of the plan."[76]  It bears emphasis that co-conspirators, like Walter, rarely, if ever, admit their

_____

[70] *See* Statement of Facts ¶¶ 9–10.

[71] R. Paul Frasier Civil Suit Deposition 115:1–116:10 (Exhibit 3 to Puracal Decl.).

[72] *See Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) ("Previously, we expressed uncertainty as to whether satisfaction of a single test could be sufficient to establish that a private entity was a State actor.  However, in *Brentwood*, the Court determined that the nominally private entity whose conduct was challenged was a State actor solely on the basis that the entity was entwined with the State.  The Court held that satisfaction of this single test was sufficient, so long as no countervailing factor existed.") (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletics Ass'n*, 531 U.S. 288, 295 (2001)).

[73] *See*, *e.g.*, *Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 880 (2nd Cir. 1988) ("[A]ppellee's § 1983 claim and its jurisdictional counterpart, 28 U.S.C. § 1343, rested on allegations that the New York City Police Department participated in the conspiracy, thus constituting joint activity considered to be state action by all parties involved.").

[74] *Ward v. EEOC*, 719 F.2d 311, 314 (9th Cir. 1983).

[75] *Id.*; *see also Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301-02 (9th Cir. 1999).

[76] *Franklin v. Fox*, 312 F.3d 423, 441 (9th. Cir. 2002); *see also United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1541 (9th Cir.1989) (en banc) ("To be liable, each

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

actions, which is why conspiracy can be proved through circumstantial evidence.[77]

There is specific evidence from which a jury could conclude that Walter, as part of Vidocq, joined the conspiracy to fabricate evidence that would result in the indictment, prosecution, and conviction of McGuffin.  Vidocq wrote it down.  In its synopsis of the case, Vidocq documented the agreement between Walter and the Municipal Defendants to fabricate evidence.  Vidocq recorded the "meeting of the minds" and the evidence that was fabricated as a result.[78]  Vidocq also recorded the purpose of the conspiracy and the goal achieved: an indictment and conviction.[79]

Vidocq further recorded when the agreement occurred: *prior* to indictment.[80]  Material questions of fact preclude summary judgment on Plaintiffs' claim for conspiracy.

Walter argues that he never said McGuffin was the perpetrator.  There are at least two problems with this contention.  First, Walter need not have said—definitively—that McGuffin *was* the perpetrator to have fabricated evidence falsely implicating McGuffin as a suspect or that purportedly inculpated him in the crime.  Walter was not an eyewitness.  That is nearly always the case for police officers who fabricate evidence.  The act of fabrication comes from the misleading or dishonest reporting or the deliberate mischaracterization of evidence (*e.g.*,

---

participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.").

[77] *See Ward*, 719 F.2d at 314 (explaining that an agreement "may be inferred from conduct and need not be proved by evidence of an express agreement" and that a plaintiff need only point to some "facts probative of a conspiracy"); *Mendocino*, 192 F.3d at 1301–02 (explaining that "'[d]irect evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available' and that "[i]nstead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action'" (quoting *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991))).

[78] Vidocq Synopsis at 1 [Dkt. No. 293-2 at 119] (emphasis added).

[79] *Id.*

[80] *Id.* (District Attorney "may have enough to indict").

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

claiming the right (cemetery) shoe had blood on it, that Freeman was smacked in the face, that McGuffin fit the "profile" of the killer) that amounts to unconstitutional conduct.[81]

Second, Walter's argument is just factually wrong. Walter, in fact, directly implicate not only McGuffin, but also his father.[82]

Walter does not cite to a single case to support the idea that the government can avoid its constitutional obligations by delegating the investigation of crime to a private party. Prisons, for example, cannot avoid providing medical care adequate under the Eighth Amendment simply by hiring private entities.[83] Police cannot either: "[I]f this were the basis for delimiting § 1983 liability, 'the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied.'"[84]

Summary judgment must be denied where, as here, there are facts from which a jury could conclude joint action.

## 2. State Policy

Facts sufficient to satisfy the joint action factor under the second-step of the *Lugar* test— the "state actor" test—are enough to defeat Walter's motion regarding state policy.[85] According to the Ninth Circuit, "where the defendant's 'official character is such as to lend the weight of

---

[81] *See, e.g.*, *Costanich v. Dep't of Social & Health Servs.*, 627 F.3d 1101, 1112 (9th Cir 2010) (direct fabrication includes misquoting, misrepresenting, and falsifying witness statements); *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (fabrication claim where officers "deliberately mischaracterize[]" evidence).

[82] *Id.* (referring to the "BF" for "boyfriend" and to "his father"). *See also* R. Paul Frasier Civil Suit Deposition at 114:11–116:16, 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).

[83] *See Wheeler*, 2017 U.S. Dist. LEXIS 19406, at *11.

[84] *West v. Atkins*, 487 U.S. 42, 56 n.14 (1988) (quoting *West*, 815 F.2d at 998) (Winter, J., dissenting)).

[85] *See O'Handley*, 62 F.4th at 1157.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

the State to his decisions," the two steps of the *Lugar* test "merge."[86]  If the jury concludes that Walter's conduct amounts to "joint action" with the state, the "state policy" test is also satisfied.

Consideration of the disputed evidence confirms the analysis.  Federal courts recognize that "[a] state policy may be inferred from either a state statute, or a well-settled custom or practice."[87]  The state policy test is satisfied because there is evidence from which a jury could conclude that Walter was following a custom or practice of collaborating with the government in the endeavor of investigating a homicide.  Walter's own expert, a former LAPD homicide detective, testified that law enforcement follows a well-established custom or practice of collaborating with outside investigators in homicide cases.[88]  The Municipal Defendants, here, followed that custom or practice to allow Walter to assist with a confidential investigation by law enforcement.

The state policy test focuses on the state-created right or privilege that then caused the deprivation of federal rights.[89]  Here, there is evidence of a state-created right (*i.e.*, the right to investigate homicide as part of a law enforcement team) that then caused the deprivation of federal rights (*e.g.*, the right to be free from fabricated evidence in criminal proceedings, the right to exculpatory evidence in those proceedings, and the right to be free from detention without probable cause).  Questions of fact preclude summary judgment, and the Court should deny the motion accordingly.

---

[86] *Mathis*, 75 F.3d at 503 n.3.
[87] *Id.*
[88] Adam Bercovici Deposition at 57:1–58:4 [Dkt. No. 315-6 at 2–3].  *See also* Walter's Motion for Summary Judgment at Statement of Facts ¶ 8 [Dkt. No. 314].
[89] *See O'Handley*, 62 F.4th at 1156.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**B.    A reasonable jury can find Walter fabricated evidence that caused McGuffin harm.**

There is a clearly established due process right not to be subjected to criminal charges on the basis of fabricated evidence; the "proposition is virtually self-evident."[90]  Evidence can be fabricated in myriad ways.[91]

Here, a reasonable jury can find that Walter fabricated the evidence discussed above in the Statement of Facts.[92]

Nonetheless, Walter argues for judgment as a matter of law.  First, Walter argues that he did not fabricate evidence.  This is Walter's view of the world, but he has neglected to adhere to the summary judgment standard in making this assertion.  Based on the extensive record evidence, a reasonable jury could easily conclude that Walter worked with the Municipal Defendants to fabricate evidence, including (1) the false narrative that, on the night Freeman disappeared, McGuffin caught up to Freeman and argued with her on the road next to the cemetery across from the high school; (2) that McGuffin then hit Freeman in the face; (3) that McGuffin's assault caused Freeman to bleed on her right shoe found near the cemetery; (4) that McGuffin "switched" cars the night Freeman was abducted to drive around town to attempt to create a false alibi before dumping Freeman's body miles away; and (5) that McGuffin's actions fit some "power assertive" profile of the killer, including one whose arrogance leads to an inadvertent confession.[93]

---

[90] *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (*en banc*).
[91] *Spencer*, 857 F.3d at 798.
[92] *See* Statement of Facts ¶¶ 1–16.  Because a reasonable jury can find for Plaintiffs, Walter cannot prevail on his request to preclude attorney fees.  *See* Walter's Motion for Summary Judgment at 55 [Dkt. No. 314].
[93] *See* Statement of Facts ¶¶ 1–16.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Walter asserts that he did not know that the evidence was fabricated because he made no effort to confirm the accuracy of the information.[94]  More to the point, Walter wants this Court to grant him judgment *as a matter of law* for his "ideas," "analytical commentary," "perspective," "input," etc.,[95] because he offered that information without any consideration for the actual facts—*i.e.*, he fabricated all of it.

Walter's argument is further belied by the record.  It is undisputed that the Municipal Defendants provided Walter with confidential information about the investigation.[96]  It is undisputed that Walter traveled to Coquille, went to the cemetery, and then stood should-to-shoulder with Dannels to falsely claim that there was blood on the cemetery shoe that was a direct clue that McGuffin struck Freeman in the face in that location, causing her to bleed.[97]  Just months before he flew to Coquille to film for ABC News 20/20, Walter reviewed Dannels' case summary that showed that (1) there was no blood on the right (cemetery) shoe, (2) there were no broken bones suggesting Freeman was struck, and (3) there was no history of physical abuse between McGuffin and Freeman.[98]

---

[94] Walter's Motion for Summary Judgment at Statement of Facts ¶ 22 [Dkt. No. 314].

[95] Walter's Motion for Summary Judgment at pp.17, 22, 29, 30, 31, 32, 33, 35, 41, 49 [Dkt. No. 314].

[96] *See* Statement of Facts ¶ 8.  *See also* R. Paul Frasier Civil Suit Deposition at 218:21–219:6, 227:18–228:7 (Exhibit 3 to Puracal Decl.) (testifying that Dannels sent materials to Vidocq in advance of the January 2010 meeting, and, upon arriving, "it was either as we were walking in the door or shortly thereafter, here's Mr. Walter" who immediately started "telling us how he had looked at the material that had been sent in.  He started talking about a profile he had developed.").

[97] *See* Statement of Facts ¶¶ 11–12.

[98] *See* Dannels Case Summary for Vidocq at 1–3 (Exhibit 4 to Puracal Decl.) ("No broken bones were found. . . . There were no documented situations where physical abuse between the two occurred. . . . [A] Coos County Deputy Sheriff found on a dirt road on Hudson's Ridge, where kids go to have MIP parties, the matching shoe which by DNA was determined to be Leah's. Medium to High Velocity Blood Spatter was found on the shoe.").

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Put differently, despite Walter's protests to the contrary, a jury could reasonably conclude that Walter deliberately fabricated evidence, or that he knew or should have known McGuffin was innocent, when he nonetheless claimed McGuffin committed the crime.

Evidence of Walter's practices in other cases, relevant to his mental state, would also permit a reasonable jury to infer that Walter did exactly what he had done in other cases: he learned about law enforcement's theory of the case, discovered they had no evidence to support the theory, and then positioned himself to become the hero by working with the officers to fabricate the evidence they would need to secure an indictment and a conviction.[99]  Again, Walter fails to construe the facts in favor of Plaintiffs, as he must do.

Second, Walter argues that his actions cannot have caused Plaintiffs harm.  These arguments—again—refuse to accept the facts in the light most favorable to Plaintiffs.  That is sufficient to deny the motion.  Regardless, Walter (and Vidocq[100]) misunderstand the law.  For one, it has long been established that "[c]ausation is an intensely factual question that should typically be resolved by a jury."[101]  Accordingly, where reasonable persons could differ on the question of causation, "summary judgment is inappropriate and the question should be left to a jury."[102]  That is precisely the case here.  Properly construed, a reasonable jury could easily

---

[99] *See*, *supra*, n.40 (discussing the Second Circuit's opinion in the *Drake* case about Walter's scheme of fabricating a narrative to fit suspect).  *See also* R. Paul Frasier Civil Suit Deposition at 118:20–24 (Exhibit 3 to Puracal Decl.) ("I guess – one of the things I found out about Mr. Walters was that he would take the facts of a case as we knew them and then he would manufacture, if you will, a profile that would fit the only suspect that the prosecution was looking at.").  *See also* William Fleisher Deposition at 70:8–85:11 (Exhibit 89 to Puracal Decl.) (discussing cases where law enforcement had a suspect but no evidence and Walter developed a profile to match the suspect).

[100] Vidocq's Motion for Summary Judgment at 39 [Dkt. No. 287] (arguing evidence fabricated by Walter was not introduced at trial and, therefore, did not cause McGuffin's harm).

[101] *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) (citing *White v. Roper*, 901 F.2d 1501, 1505-06 (9th Cir. 1990)).

[102] *White*, 901 F.2d at 1506.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

conclude that by fabricating evidence against McGuffin, Walter and the other Defendants contributed to his wrongful conviction and injuries.[103]

In addition, a defendant need not have had a greater role at the criminal proceedings to establish causation.  A police officer may be liable "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."[104]  Thus, officers who submit false reports "to the prosecutor may be held liable for damages incurred as a proximate result of those reports."[105]  Walter cites no legal authority for the claim that fabricated information must be entered at trial to cause harm. Instead, the law is to the contrary.  Fabricated documents or information that become part of "the evidentiary record" relied upon in seeking charges are sufficient to violate due process.[106]  That is because, as the Ninth Circuit has recognized, "police investigative materials have evidentiary value wholly apart from assisting trial testimony—they comprise part of the documentary record before the prosecution and defense and affect charging decisions, plea bargaining, and cross-examination of the investigating officers."[107]  Indeed, Walter's conduct is actionable even if

---

[103] *See* Statement of Facts ¶¶ 1–16.

[104] *Crowe* v. *Cnty. of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir.1978)).

[105] *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) (citing *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991)).

[106] *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1117 (9th Cir. 2018).

[107] *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1242 (9th Cir. 2015) (quoting *Gregory v. City of Louisville,* 444 F.3d 725, 741 (6th Cir.2006), and citing *Ricciuti v. N.Y. City Transit Auth.,* 124 F.3d 123, 127, 130 (2d Cir. 1997) (recognizing a falsification-of-evidence claim for forwarding "false information likely to influence a jury's decision" to prosecutors, although the evidence was not admitted at trial); *see also Gregory v. City of Louisville*, 444 F.3d 725, 741 (6th Cir. 2006) (officer's investigatory notes "were the result of pretrial fabrication efforts by [the officers]," and "comprise[d] part of the documentary record before the prosecution and defense and affected the course of the criminal proceedings independent of any testimony to the notes' contents. . . . Their very existence, even if not introduced as evidence at trial, affected Plaintiff's criminal prosecution."); *Halsey v. Pfeiffer*, 750 F.3d 273, 289, 294 n.19 (3rd Cir. 2014) (holding defendant suffered an injury when fabricated evidence was used to initiate a prosecution).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

there had not been a trial.  A "§ 1983 plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is enough."[108]

"Overall, [t]he touchstone of proximate cause in a § 1983 action is foreseeability."[109] Here, there is evidence from which a jury could conclude that the fabricated evidence set in motion a series of acts by others that foreseeably led to McGuffin to be indicted at grand jury, prosecuted, and then convicted.[110]  That was, in fact, the very purpose of purporting to "solve" the cold case in the first place.  Section 1983 is read "against the background of tort liability that makes a man responsible for the natural consequences of his actions."[111]  A jury can find that Walter absolutely knew, expected, and foresaw that McGuffin would be prosecuted based upon his phony "profile" and narrative of the crime, which is exactly what happened.[112]  The motion must be denied.

**C.    A reasonable jury can find Walter suppressed favorable evidence from McGuffin.**

The Due Process Clause requires police to produce material information—*i.e.*, exculpatory and impeachment information—to the accused.[113]  Under *Brady* and its progeny, the state's suppression of evidence favorable to the defense violates due process where that evidence is material either to guilt or to punishment *regardless* of the good faith or bad faith of the state.[114]

---

[108] *Caldwell*, 889 F.3d at 1115 (citing *Deveraux*, 263 F.3d at 1074-75, and Ninth Cir. Jury Instr. § 9.33).
[109] *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 817 (9th Cir. 2023) (quoting *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007)).
[110] *See* Statement of Facts ¶¶ 1–16.
[111] *Monroe v. Pape*, 365 U.S. 167, 189 (1961).
[112] *See* Statement of Facts ¶¶ 11, 12, 16.
[113] *Brady v. Maryland*, 373 U.S. 83 (1963).
[114] *Id.*; *Youngblood v. West Virginia*, 547 U.S. 867 (2006) (*per curiam*); *Giglio v. United States*, 405 U.S. 150 (1972).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Due process requires disclosure of information that would "cast a shadow across" the investigation by illustrating the existence of police misconduct as impeachment.[115]

Walter argues that he did not have a duty to disclose evidence to McGuffin because his work on the investigation ended before the prosecutor's duty to disclose arose. This argument is untenable. Police officers often collect information and conduct investigation before people are indicted—that is their job. To hold state actors can suppress evidence generated before an indictment is actually secured would nullify *Brady* entirely. The Ninth Circuit explained long ago that "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does."[116] Any rule to the contrary "would undermine *Brady* by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's hands until the agency decided the prosecutor ought to have it, and by allowing the prosecutor to tell the investigators not to give him certain materials unless he asked for them."[117] An investigating agent cannot avoid the *Brady* obligation by withholding favorable information from the prosecution.

Walter also argues that he did not withhold any evidence. There is evidence from which a jury could find otherwise. A reasonable jury could find that Walter withheld evidence of the nature and extent of his involvement in crafting the phony narrative of the crime and the fabricated evidence to support it. Vidocq documented Walter's involvement in its synopsis, and neither the District Attorney or McGuffin's defense counsel had ever seen that document before McGuffin's wrongful conviction became final.[118] The District Attorney testified that he had

---

[115] *Atkins v. Cty. of Riverside*, 151 F. App'x 501, 505 (9th Cir. 2005).
[116] *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009) (quoting *United States v. Blanco*, 392 F.3d 382, 388 (9th Cir. 2004)).
[117] *Id.*
[118] R. Paul Frasier Civil Suit Deposition at 87:16–19 (Exhibit 3 to Puracal Decl.); Shaun McCrea

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

"dissociated" from Walter by June 30, 2010.[119]  Notably, *Brady* applies regardless of whether the information is reduced to writing.[120]  Walter was aware of his own misconduct and had an obligation to disclose it.[121]

Finally, Walter asserts that his contact with the Municipal Defendants and the District Attorney ended "at the latest on June 30, 2010, well before Frasier even convened the grand jury."[122]  There are many problems with this argument.  For one, it is irrelevant.  An agent who fabricates evidence before a grand jury is convened must disclose that act.  The government is obligated to "disclose *all* material information casting a shadow on a government witness's credibility.'"[123]  Information that would "cast a shadow across" an investigation by illustrating the existence of police misconduct,[124] or that would "have raised opportunities to attack . . . the thoroughness and even the good faith of the investigation" must be disclosed.[125]

---

Deposition at 281:17–282:11, 283:9–285:9 (Exhibit 16 to Puracal Decl.).

[119] R. Paul Frasier Civil Suit Deposition at 160:15–161:9, 216:17–20 (Exhibit 3 to Puracal Decl.).

[120] *See Stewart v. Coughlin*, No. 3:20-cv-00497-M, 2023 U.S. Dist. LEXIS 2364, at *22 (N.D. Tex. Jan. 6, 2023) ("More importantly, *Brady* does not limit exculpatory evidence to that which is reduced to writing and stored in an investigative file.  Hypothetically, if Coughlin only remembered that Davidson had made prior inconsistent statements to police officers, as opposed to memorializing it in writing, *Brady* would be violated if that impeachment evidence was intentionally withheld.").

[121] *See Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation."); *Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial of prisoner convicted in Louisiana state court because withheld *Brady* evidence "carried within it the potential . . . for the . . . discrediting . . . of the police methods employed in assembling the case").  *See also* R. Paul Frasier Civil Suit Deposition at 114:16–19 (Exhibit 3 to Puracal Decl.) (referring to Walter as "an idiot from the Vidocq Society").

[122] Walter's Motion for Summary Judgment at 39–40 [Dkt. No. 314].

[123] *Mellen v. Winn*, 900 F.3d 1085, 1097-98 (9th Cir. 2018) (quoting *Carriger v. Stewart*, 132 F.3d 463, 481-82 (9th Cir. 1997) (en banc)).

[124] *Atkins*, 151 F. App'x at 505.

[125] *Kyles v. Whitley*, 514 U.S. 419, 445 (1995)



MALONEY | LAUERSDORF | REINER, PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

In addition, though irrelevant, the timing actually supports the opposite inference Walter seeks to invoke. By 2010, Freeman's murder investigation had been open for a decade. Walter met with the Municipal Defendants. Then, *just one week later*, subpoenas were issued for the grand jury, which commenced two weeks after Walter's involvement.[126] A reasonable jury can find that Walter worked with the Municipal Defendants to fabricate evidence that directly led to the criminal charges against McGuffin, which occurred in a decade-old cold case, just one week after their last contact. In so doing, the State presented the phony narrative and fabricated evidence that was the result of the collaboration between Walter and the Municipal Defendants. Walter's made-up theories were directly communicated to the grand jury, resulting in McGuffin's indictment.[127]

### D.    A reasonable jury can find Walter acted in violation of the Fourth Amendment.

Walter asserts that the "*Smiddy* Presumption" bars Plaintiffs' Fourth Amendment claims. Walter is wrong. The "presumption of prosecutorial independence does not bar a subsequent malicious prosecution claim against those who knowingly provided misinformation or otherwise engaged in wrongful conduct that was actively instrumental in causing the initiation of criminal proceedings."[128] The presumption is inapplicable where agents "knowingly provide misinformation to [the prosecutor], concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings."[129] Indeed, "a plaintiff can rebut a *prima facie* finding of probable cause [ ] by

---

[126] *See* Grand Jury Subpoena to Denise Bertrand (née Freeman) (Exhibit 77 to Puracal Decl.). *See also* Grand Jury (2010) Transcripts [Dkt. No. 295-1] (starting with testimony of Denise Bertrand (née Freeman)).

[127] *See* Statement of Facts ¶ 16.

[128] *Peterson v. Porter*, No. 3:16-cv-01955-JR, 2018 U.S. Dist. LEXIS 219691, at *21 (D. Or. Nov. 1, 2018).

[129] *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith."[130]  Given a reasonable jury can find Walter fabricated evidence, the presumption of prosecutorial independence cannot apply here.[131]

As it relates to Plaintiffs' state-law malicious prosecution claims, for which the "*Smiddy* presumption*" does not apply, Oregon law is similar:  "[i]f pertinent information is withheld or there are misrepresentations made as to the facts, or undue influence brought to bear, there can be no intelligent exercise of the officer's discretion, and the person thus procuring the action of the officer is not insulated from responsibility."[132]

There are material questions of fact about whether Walter instigated or encouraged the indictment by fabricating evidence and withholding exculpatory evidence.  There is evidence that the Municipal Defendants worked with Walter to fabricate evidence and withhold exculpatory evidence.[133]  There is also evidence that Walter partnered up with the Municipal Defendants to announce their fabricated evidence on national television.[134]  Vidocq also documented those fabrications in an internal memorandum.[135]

---

[130] *Id.* (citations omitted).

[131] *See Caldwell*, 889 F.3d at 1116 ("Deliberately fabricated evidence in a prosecutor's file can rebut any presumption of prosecutorial independence"); *Rodarte v. Gutierrez*, 2023 WL 109723, at *2 (9th Cir. Jan. 5, 2023) (rejecting similar causation argument).

[132] *Pearson v. Galvin*, 253 Or. 331, 337 (1969) (quoting *Humbert v. Knutson*, 224 Or. 133, 138, 354 P.2d 826 (1960)).  *See also Pulido v. Monk*, No. 03:15-CV-01992-AC, 2016 U.S. Dist. LEXIS 182907, at *19 (D. Or. Oct. 18, 2016); *Gordon v. Kleinfelder West, Inc.*, No. 3:11-CV-00245-HU, 2012 U.S. Dist. LEXIS 32982, *27 (D. Or. Mar. 12, 2012); *Singh v. McLauglin*, 255 Or. App. 340, 350, 297 P.3d 514 (2013); *Hiber v. Creditors Collections Serv., Inc.*, 154 Or. App. 408, 414, 961 P.2d 898 (1998).

[133] *See* Statement of Facts ¶¶ 11, 12, 16.

[134] *See* ABC News 20/20 Transcript (2010) at 9–11 (Exhibit 1 to Puracal Decl.) (discussing fabricated blood evidence on Freeman's right shoe and fabricated evidence that she was hit in the face causing her to bleed in that location next to the cemetery).

[135] Vidocq Synopsis [Dkt. No. [293-2 at 119].

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Walter asserts that he did not contribute to the District Attorney's decision to pursue an indictment against McGuffin. But there are facts from which a reasonable jury can find the opposite. After the presentation in Philadelphia during which Dannels and Zanni identified McGuffin as the lead suspect, Vidocq told the District Attorney, Dannels, and Zanni that they were "on the right track," and Walter gave them a profile of a "Power Assertive" perpetrator that Walter said "fits Mr. McGuffin."[136]

Though the fabrication and withholding of evidence is sufficient to deny the motion, there is also evidence that Walter and other officers specifically tried to convince the District Attorney to pursue an indictment of only McGuffin.[137]

One week after Walter's meeting with the Municipal Defendants in Coquille, the District Attorney issued grand jury subpoenas, and proceedings began one week later. During those grand jury proceedings, several of the Municipal Defendants presented pieces of the fabricated narrative, and Dannels testified that they eliminated everyone except McGuffin.[138] That tactic—of saying they eliminated everyone except McGuffin—came directly from Walter. In the ABC News 20/20 episode, "You want to rule out, rule out, rule out. Eventually, then, your bad guy, you're not gonna be able to rule him out, okay? So there he stands with his hand up that he really has no answer for where he was, what he was doing."[139]

Based on the fabricated evidence and Dannels' representation that they eliminated everyone except McGuffin, the grand jury indicted.[140] At trial the following year, the state's

---

[136] R. Paul Frasier Civil Suit Deposition at 226:10–23, 228:2–16, 231:14–20, 238:8–24 (Exhibit 3 to Puracal Decl.).
[137] *Id.* at 114:11–116:16.
[138] Grand Jury (2010) (Mark Dannels) at 134:1–8, 137:2–138:21 [Dkt. No. 295-1 at 1544].
[139] *See* ABC News 20/20 Transcript (2010) at 16 (Exhibit 1 to Puracal Decl.).
[140] Indictment [Dkt. No. 291-15 at 2].

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

closing argument parroted Walter's phony theory of how the crime occurred.[141]  The jury

convicted.[142]

The question for the jury in this civil suit will be whether Walter worked with the

Municipal Defendants to secure the indictment by fabricating evidence (including a theory of

how the crime occurred and how McGuffin could not be eliminated), withholding exculpatory

evidence (including the fact of Walter's involvement in crafting the fabrications), and exercising

undue influence over the prosecutor (including by announcing the fabricated theory on national

television and to the District Attorney).  The Court should deny the motions.

**E.    A reasonable jury can find that Walter destroyed evidence.**

Under *California v. Trombetta*, "the government's failure to preserve evidence violates a

defendant's due process rights if the unavailable evidence 'possessed an exculpatory value that

was apparent before the evidence was destroyed, and is of such nature that the defendant would

be unable to obtain comparable evidence by other reasonably available means.'"[143]

Walter argues that he had no duty to preserve evidence because he was not a state actor

and had no control or custody of evidence developed during the investigation.  As discussed

above, there are material questions of fact about whether Walter was a state actor.  In addition,

there are material questions of fact about whether Walter had custody or control over evidence

developed during the investigation.  For example, a jury could find that Walter destroyed the

materials he reviewed as part of his involvement in the investigation.  The District Attorney

testified that Dannels sent some materials to Vidocq in advance of the January 2010 presentation

---

[141] *See* Statement of Facts ¶ 16.
[142] Criminal Case Judgment (Exhibit 71 to Puracal Decl.).
[143] *Sanders v. Cullen*, 873 F.3d 778, 811 (9th Cir. 2017) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

and, when the team arrived in Philadelphia, "it was either as we were walking in the door or shortly thereafter, here's Mr. Walter."[144]   The District Attorney testified that Walter immediately started "telling us how he had looked at the material that had been sent in.  He started talking about a profile he had developed."[145]   That was the "Power Assertive" profile "that fit Mr. McGuffin."[146]   Walter, however, has never produced the "material" he reviewed that led to the development of that profile or the statements that Freeman "was forcibly taken from" the road next to the cemetery where "[s]he got probably smashed in the face."[147]   Now Walter is simultaneously asserting that he (1) never reviewed anything and (2) he assumed the truth of the information he was provided.[148]   There is evidence from which a jury could find that Walter destroyed the very materials that would impeach the credibility of his "profile" and narrative of the crime, and confirm exactly what the Second Circuit came to believe about Walter's work—as District Attorney Frasier put it, "that he would take the facts of the case as we knew them and then he would manufacture, if you will, a profile that would fit the only suspect that the prosecution was looking at."[149]

**F.**     **A reasonable jury can find that Walter detained McGuffin without probable cause.**

Walter asserts that Plaintiffs' claims for malicious prosecution and illegal pretrial detention fail because Walter did not initiate the prosecution and had no effect on McGuffin's indictment.  Following the Supreme Court's recent decisions, there is no distinction between a Fourth Amendment claim for detention and so-called malicious prosecution under the

---

[144] R. Paul Frasier Civil Suit Deposition at 227:18–228:7 (Exhibit 3 to Puracal Decl.).
[145] *Id.*
[146] *Id.* at 218:21–219:6.
[147] 2010-10-15 ABC News 20/20 Transcript (2010) at 11 (Exhibit 1 to Puracal Decl.).
[148] Walter's Motion for Summary Judgment at 17–18 [Dkt. No. 314].
[149] R. Paul Frasier Civil Suit Deposition at 118:20–25 (Exhibit 3 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Constitution.[150]  Instead, "because the gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause" and "the wrongful initiation of charges without probable cause is likewise the gravamen of the tort of malicious prosecution," these claims overlap and arise under the same constitutional framework.[151]

Walter misunderstands what it means to initiate a prosecution.[152]  A malicious prosecution claim may lie against government officials who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings."[153]

Walter fabricated a "profile" of the killer to fit McGuffin, and then worked hand-in-hand with the Municipal Defendants to fabricate an entire narrative of how the crime supposedly happened and the evidence that would support the phony narrative—always tailoring the story to fit anything he knew about McGuffin.[154]  After *ten years* without a story that would secure an indictment, subpoenas for grand jury were issued *one week* after Walter was filmed fabricating the evidence with the Municipal Defendants and after Dannels specifically asked Walter to meet

---

[150] *See Chiaverini v. City of Napoleon*, 602 U.S. 556, 556 (2024) (recognizing Fourth Amendment "claims have been analogized to the common-law tort of malicious prosecution"); *Thompson v. Clark*, 596 U.S. 36, 43 (2022); *Manuel v. City of Joliet*, 580 U.S. 357, 364, (2017); *Fatai v. City & Cnty. of Honolulu*, No. 19-CV-00603-DKW-WRP, 2022 WL 2669530, at *5 (D. Haw. July 11, 2022) (recognizing that *Thompson* "did resolve the labeling question" by "equating malicious prosecution with "unreasonable seizure pursuant to legal process." (citing *Thompson*, 142 S. Ct. at 1337)).

[151] *Thompson*, 596 U.S. at 43.

[152] *See* Walter's Motion for Summary Judgment at 40–43 [Dkt. No. 314].

[153] *Awabdy*, 368 F.3d at 1067.  *See also Leonetti v. Bray*, No. 2018 U.S. Dist. LEXIS 241282, at **66–67 (D. Or. Feb. 16, 2018) ("It is well established under both Oregon and federal law that malicious prosecution actions are not limited to suits against only prosecutors, but rather may be brough against any person who has wrongfully initiated or caused charges to be filed.") (collecting cases).

[154] *See* Statement of Facts ¶¶ 11, 12.



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

with the District Attorney to pursuing a grand jury indictment of only McGuffin.[155]

Walter is responsible for the obviously foreseeable actions of McGuffin being indicted on the basis of his wrongful acts.[156]

**G.    A reasonable jury can find that Walter failed to intervene.**

Under Ninth Circuit authority, if "an officer fails to intercede, 'the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who' performed the offending action."[157]

Walter argues that he did not have an opportunity to intervene because his work "ended weeks before Frasier presented the case to grand jury."[158]  That is not relevant.  Walter still went on national television and knew McGuffin was being prosecuted based upon his made-up profile and phony narrative of the crime.[159]  Walter could have, but refused to, disclose that he had fabricated those things, including the idea that the cemetery shoe had blood on it, that Freeman was smacked in the face next to the cemetery, and that he (Walter) could discern the "profile" of the killer.  Yet, he chose not to.

Walter also argues that he did not have the opportunity to intervene because he was not apprised of any conduct that violated McGuffin's constitutional rights.  But a jury could find otherwise.  For example, a jury could find that Walter knew that the right (cemetery) shoe did not have any blood on it, because Dannels wrote that down in his case summary given to Vidocq

---

[155] *See id.* ¶¶ 1–16.
[156] *Blankenhorn*, 485 F.3d at 482; *Barlow*, 943 F.2d at 1136.
[157] *Tobias v. Arteaga*, 996 F.3d 571, 583 (9th Cir. 2021) (quoting *United States v. Koon*, 34 F.3d 1447 n.25 (9th Cir. 1994)).
[158] Walter's Motion for Summary Judgment at 44 [Dkt. No. 314].
[159] 2010-10-15 ABC News 20/20 Transcript (2010) at 11 (Exhibit 1 to Puracal Decl.).  *See also* Excerpt of 2010-10-15 ABC News 20/20 Video (2010) at Time Stamp 7:18 (Exhibit 2 to Puracal Decl.).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

and Walter before they met at the scene.[160]  Walter then stood next to Dannels on national

television while Dannels fabricated the lie that the shoe had blood on it.[161]  Rather than

intervening, Walters jumped on the lie, fabricating the additional lie that the blood on that shoe

meant that Freeman was hit in the face in that location.  Walter knew that there was no evidence

of such an injury.  Again, Dannels wrote that down in his case summary for Vidocq.[162]  Material

questions of fact preclude summary judgment.

**H.    A reasonable jury can find Walter liable for harm to S.M.**

Walter argues that S.M.'s claims fail because (1) her father's section 1983 claims fail and

(2) they are not cognizable under Oregon law.

As discussed above, McGuffin's section 1983 claims do not fail.  S.M.'s section 1983

claim, therefore, survives.

In addition, this Court has already recognized that a child has a cognizable claim for loss

of consortium under Oregon law as a result of a defendant's intentional and reckless actions.[163]

Walter does not address the Court's prior ruling at all.

## IV.  POINTS AND AUTHORITIES ON PLAINTIFFS'
## CLAIMS UNDER STATE LAW

Walter moves against Plaintiffs' state law claims for false imprisonment, civil

conspiracy, and spoliation.  Walter's arguments must fail:

- False imprisonment:  This Court has already recognized that "[i]n Oregon,

  'liability for false imprisonment extends not only to the person who directly

---

[160] *See* Dannels' Case Summary for Vidocq at 3 (Exhibit 4 to Puracal Decl.).
[161] 2010-10-15 ABC News 20/20 Transcript (2010) at 11 (Exhibit 1 to Puracal Decl.).  *See also* Excerpt of 2010-10-15 ABC News 20/20 Video (2010) at Time Stamp 7:18 (Exhibit 2 to Puracal Decl.).
[162] *See* Statement of Facts ¶ 12.
[163] Findings and Recommendations at 28 [Dkt. No. 83].



MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

confines a plaintiff, but equally to one who instigates the confinement by directing, requesting, inviting or encouraging it."[164]  There are facts from which a jury can conclude that Walter instigated McGuffin's imprisonment.[165]

- Civil conspiracy:  As discussed above, there are facts from which a jury can conclude that Walter conspired with the Municipal Defendants to fabricate evidence was relied upon and directly led to the arrest, indictment, and wrongful conviction of McGuffin.[166]

- Spoliation:  As discussed above, there are facts from which a jury can conclude that Walter destroyed evidence.[167]

In response to Plaintiffs' claim for intentional infliction of emotional distress, Walter argues that his acts were not the cause of McGuffin's severe emotional distress.[168]  There is evidence from which a jury could decide otherwise.[169]  A jury could reasonably conclude that Walter fabricated a profile of the murderer that would fit McGuffin in order to encourage the Municipal Defendants to continue their focus on McGuffin, to the exclusion of the real killer.  A jury could also reasonably conclude that Walters worked with the Municipal Defendants to fabricate evidence about how the murder was committed in order to seek—and ultimately obtain—the arrest, indictment, prosecution, and wrongful conviction of Nicholas McGuffin.[170]  At minimum, material questions of fact about causation that preclude summary judgment.

Walter further argues that his acts did not constitute an extraordinary transgression of the

---

[164] Findings and Recommendations at 33 [Dkt. No. 83] (quoting *Hiber*, 154 Or. App. at 414).
[165] *See* Statement of Facts ¶¶ 11, 12, 16.
[166] *See*, *supra*, III(A)(1).
[167] *See*, *supra*, Section III(E).
[168] Walter's Motion for Summary Judgment at 49 [Dkt. No. 314].
[169] *See* Statement of Facts ¶¶ 11, 12, 16.
[170] *Id.*

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

bounds of socially tolerable conduct.[171]  Courts recognize that "[f]abricating evidence to be used against a defendant in a criminal case may be considered 'extreme and outrageous conduct' meant to cause, or done with reckless disregard of the probability of causing, emotional distress."[172]  Those courts deny summary judgment in cases like this—where there is evidence from which a jury could find that the defendant fabricated evidence and the plaintiff spent years in prison as a result.[173]  There are material questions of fact in this case that preclude summary judgment.

## V.  POINTS AND AUTHORITIES ON REMAINING ISSUE

Walter and Vidocq assert that the claims in this lawsuit are barred by the doctrine of collateral estoppel (issue preclusion).  Walter simultaneously argues that (1) the issue of Walter's misconduct was "actually litigated" in the post-conviction case such that collateral estoppel applies and (2) the issue of Walter's misconduct was never litigated in the post-conviction case such that it should be deemed waived.[174]

Collateral estoppel under Oregon law requires proof of five elements,[175] and Walter/Vidocq bear the burden of proof.[176]  Walter/Vidocq has not—and cannot—sustain their

---

[171] Walter's Motion for Summary Judgment at 49 [Dkt. No. 314].

[172] *Harris v. City of Los Angeles*, No. 2:21-cv-07999-WLH-JPR, 2024 U.S. Dist. LEXIS 173887, at *34 (C.D. Cal. Sept. 24, 2024) (citing *Hadley v. City of Anaheim*, No. 818CV01831DOCKES, 2020 U.S. Dist. LEXIS 171721, at *15 (C.D. Cal. Sept. 18, 2020)).

[173] *See id.*

[174] Walter's Motion for Summary Judgment at 53 [Dkt. No. 314].

[175] *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104, 862 P.2d 1293 (1993) (Elements of collateral estoppel under Oregon law requires proof that five requirements are met: "1. The issue in the two proceedings is identical.  2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.  3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.  4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.  5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.") (citations omitted).

[176] *Hernandez v. Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) ("The burden of pleading and proving the identity of issues rests on the party asserting estoppel.  To sustain this burden a party

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

burden for at least four reasons.

- First, and most significantly, the issue of whether Walter caused McGuffin harm was never "actually litigated" in the post-conviction proceedings. Walter concedes the point.[177]

- Second, collateral estoppel would work an unfairness in a case such as this one where it "is asserted by a person who was neither a party nor in privity with a party to the first case."[178] McGuffin cannot be faulted for focusing on his *post-conviction* claims during his post-conviction proceedings; not focusing on civil liability for any particular individual.

- Third, the issues in a post-conviction proceeding are not identical to the issues in a civil suit for damages. A post-conviction petitioner has no authority to name as a defendant anyone other than the superintendent of the institution where he is housed, and the post-conviction court has no authority to award damages.[179]

- Fourth, a post-conviction court does not determine causation (*i.e.*, who caused the petitioner harm).[180] The post-conviction court addresses only the issue of whether the petitioner was afforded his constitutional rights in the underlying criminal trial.

Walter adds another argument, waiver under ORS 138.550(3). Waiver does not apply.

---

must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.") (citations omitted).

[177] Walter's Motion for Summary Judgment at 54 [Dkt. No. 314].

[178] *State Farm Fire & Cas. Co. v. Century Home Components, Inc*., 275 Or. 97, 103, 550 P.2d 1185, 1188 (1976) (citations and internal quotes omitted).

[179] *See* ORS 138.520; ORS 138.570. *See also* Plaintiffs' Opposition to Motion to Dismiss by City/County Defendants at 32 [Dkt. No. 51] (addressing Oregon post-conviction law).

[180] *Cf. Cox v. Premo,* 297 Or. App. 302, 314, 440 P.3d 81 (2019) (citing *Green v. Franke*, 357 Or. 301, 322–23, 350 P.3d 188 (2015)).

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Walter asserts that, because McGuffin chose not to litigate in post-conviction the issue of whether Walter caused McGuffin's harm, the issue is waived pursuant to ORS 138.550(3).[181]  As McGuffin explained in response to the Municipal Defendants' motion to dismiss based on *res judicata*, the Oregon Supreme Court has repeatedly explained that ORS 138.550(3) in the Post-Conviction Hearing Act operates as a "*res judicata*" provision, which "concerns the effect that failure to raise a ground for relief in one post-conviction case has *on a subsequent post-conviction case*."[182]  The statute requires a post-conviction petitioner to bring all post-conviction claims in one proceeding in order to "provide a clear and workable basis for reducing the tide of post-conviction litigation to manageable proportions[.]"[183]  The Oregon Supreme Court, in *Johnson v. Premo*, explained that, historically, "the principle of *res judicata*, did not apply to habeas corpus proceedings," resulting in petitions for post-conviction relief that were "repetitious."[184]  The court changed that in *Barber v. Gladden* where it held that "the principle of res judicata should be fully applicable to habeas corpus proceedings,"[185] and the Oregon legislature codified the holding by enacting ORS 138.550(3).[186]

Walter provides no authority for his conclusory assertion that ORS 138.550(3) applies in a civil suit in federal court.  There is no such authority.  This case is governed by the Federal Rules of Civil Procedure and the substantive law as articulated in the sections above.

Walter's arguments on collateral estoppel must fail as a matter of law.

\*     \*     \*

---

[181] Walter's Motion for Summary Judgment at 53 [Dkt. No. 314].
[182] *Ogle v. Nooth*, 365 Or. 771, 773, 785, 453 P.3d 1274 (2019) (emphasis added).
[183] *Bogle v. State*, 363 Or. 455, 467, 423 P.3d 715 (citing Jack G. Collins and Carl R. Neil, *The Oregon Postconviction Hearing Act*, 39 Or. L. Rev. 337, 356 (1960)).
[184] *Johnson v. Premo*, 355 Or. 866, 875, 333 P.3d 288 (2014) (citations omitted).
[185] 215 Or. 129, 136, 332 P.2d 641 (1958).
[186] *Johnson*, 355 Or. at 875 (citing Collins and Neil, 39 Or. L. Rev. at 356).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

Finally, Walter (and Vidocq) ask the Court to take judicial notice of documents from the underlying criminal and post-conviction cases.[187]  Federal Rule of Evidence 201 governs judicial notice of adjudicative facts, permitting courts to take notice of a fact that is not subject to reasonable dispute because it is either generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.  Walter does not specify which documents should be judicially noticed, instead making a blanket request that would apply to all of the documents from the underlying criminal and post-conviction cases.  Those documents include the very evidence Plaintiffs contend was fabricated.  They also include transcripts, police reports, lab reports, and a host of other materials that form the core of the parties' dispute.  Plaintiffs do not object to judicial notice of the *existence* of those documents.  This Court cannot, however, take judicial notice of the *facts* recited in those documents,[188] and Plaintiffs object to Walter's request.

///

///

///

///

///

---

[187] Declaration of Eric S. DeFreest ¶¶ 8, 10 [Dkt. No. 315].

[188] *See Williams v. Alameda Cnty.*, 642 F. Supp. 3d 1001, 1014 (N.D. Cal. 2022) (declining to take judicial notice of disputed facts in declarations on summary judgment); *Bank of N.Y. Mellon v. Davidson*, No. 1:17-cv-01335-DAD-EPG, 2019 U.S. Dist. LEXIS 138460, at **12–13 (E.D. Cal. Aug. 15, 2019) ("A court may take judicial notice of a public record not for the truth of the facts recited therein, but for the existence of the document.  It is unclear to the court why plaintiff seeks judicial notice of documents identified above.  At the summary judgment stage, these documents could have been attached to the moving papers without judicial notice. . . . Moreover, if the court took judicial notice, it would only notice the existence of the documents, and not the truth of any facts asserted therein.  Finding no reason to take judicial notice at this stage of the litigation, the court denies plaintiff's request for judicial notice, but will consider the documents identified above as admissible evidence submitted in support of plaintiff's motion for summary judgment.") (citations omitted).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## VI.  CONCLUSION

Based upon the foregoing, Plaintiffs request the Court deny Walter's motion for summary judgment.

DATED:  February 18, 2025

| MALONEY LAUERSDORF REINER PC | LOEVY & LOEVY |
|---|---|
| By /s/Janis C. Puracal<br>   Janis C. Puracal, OSB #132288<br>   E-Mail:  jcp@mlrlegalteam.com<br>   Andrew C. Lauersdorf, OSB #980739<br>   E-Mail:  acl@mlrlegalteam.com | By /s/David B. Owens<br>   David B. Owens, WSBA #53856<br>   E-Mail:  david@loevy.com<br>   *Pro hac vice* |

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page limitation under Dkt. No. 271 because it contains less than 50 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, the foregoing PLAINTIFFS' RESPONSE TO RICHARD WALTER'S MOTION FOR SUMMARY JUDGMENT was served on the following parties at the following address by sending to them a true copy thereof via the method indicated below:

| | |
|---|---|
| Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net<br>*Attorneys for Defendants*<br>*City of Coquille, City of Coos Bay, Coos*<br>*County, Craig Zanni, Chris Webley, Eric*<br>*Schwenninger, Sean Sanborn, Ray McNeely,*<br>*Kris Karcher, Pat Downing, Mark Dannels,*<br>*Kip Oswald, Michael Reaves, David Zavala,*<br>*Anthony Wetmore, Shelly McInnes* | Jesse B. Davis<br>Todd Marshall<br>Kristen Hoffmeyer<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>todd.marshall@doj.state.or.us<br>jesse.b.davis@doj.state.or.us<br>kristen.hoffmeyer@doj.state.or.us<br>*Attorneys for Defendants Oregon State*<br>*Police, John Riddle, Susan Hormann,*<br>*Mary Krings, Kathy Wilcox* |
| Anthony R. Scisciani III<br>Kelsey L. Shewbert<br>Meredith A. Sawyer<br>Lisa Lear<br>HWS Law Group<br>101 SW Main Street, Suite 1605<br>Portland, OR 97204<br>ascisciani@hwslawgroup.com<br>kshewbert@hwslawgroup.com<br>msawyer@hwslawgroup.com<br>llear@hwslawgroup.com<br>*Attorneys for Defendant Vidocq Society* | Eric S. DeFreest<br>Luvaas Cobb<br>777 High Street, Ste. 300<br>Eugene, OR 97401<br>edefreest@luvaascobb.com<br><br>Laura E. Coffin<br>Coffin Law<br>541 Willamette Street, Ste. 211<br>Eugene, OR 97401<br>lauracoffin@coffin.law<br>*Attorneys for Defendant Richard*<br>*Walter* |

MALONEY | LAUERSDORF | REINER pc<br>ATTORNEYS AT LAW<br>1111 E. Burnside Street, Ste. 300<br>Portland, Oregon 97214<br>Telephone: 503.245.1518<br>Facsimile: 503.245.1417

☒ by electronic means through the Court's ECF System on the date set forth above.

MALONEY LAUERSDORF REINER PC


By  /s/Janis C. Puracal
    Janis C. Puracal, OSB #132288
    E-Mail:  jcp@mlrlegalteam.com

Attorneys for Plaintiffs

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417