Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian ad litem, on behalf Of S.M., a minor,<br><br>        Plaintiffs,<br><br>  vs.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY,<br><br>        Defendants. | Civil No.<br>6:20-cv-01163-MK |

DEPOSITION OF SUSAN HORMANN

Taken in behalf of Plaintiffs

May 06, 2022

\* \* \*

```
                                                              Page 2
 1          BE IT REMEMBERED THAT, pursuant to the Oregon

 2   Rules of Civil Procedure, the remote deposition of

 3   SUSAN HORMANN was taken by Amanda K. Fisher, Certified

 4   Shorthand Reporter, on May 06, 2022, in the City of

 5   Portland, County of Multnomah, State of Oregon.

 6

 7

 8                        APPEARANCES:

 9

10      MALONEY LAUERSDORF REINER, PC
        Counsel for Plaintiffs
11      1111 E. Burnside Street
        Suite 300
12      Portland, Oregon 97214
        acl@mlrlegalteam.com
13      jpuracal@forensicjusticeproject.org
            BY:   ANDREW C. LAUERSDORF
14                JANIS C. PURACAL

15

16      LAW OFFICE OF ROBERT E. FRANZ, JR.
        Counsel for Defendants: City of Coquille, City of
17      Coos Bay, Coos County, Craig Zanni, Chris Webley,
        Eric Schwenninger, Sean Sanborn, Ray McNeely,
18      Kris Karcher, Pat Downing, Mark Dannels, Kip Oswald,
        Michael Reaves, David Zavala, Anthony Wetmore,
19      Shelly McInnes
        PO Box 62
20      Springfield, Oregon 97477
        shenderson@franzlaw.comcastbiz.net
21          BY:   SARAH R. HENDERSON

22

23      OREGON DEPARTMENT OF JUSTICE
        Counsel for Defendants: Oregon State Police, John
24      Riddle, Susan Hormann, Mary Krings, Kathy Wilcox
        100 SW Market Street
25      Portland, OR 97201
```

```
 1       todd.marshall@doj.state.or.us
             BY:   JESSE B. DAVIS
 2                 TODD MARSHALL

 3

         WOOD SMITH HENNING & BERMAN LLP
 4       Counsel for Defendants: Vidocq Society and Richard
         Walter
 5       12755 Southwest 69th Avenue
         Suite 100
 6       Portland, Oregon 97223
         kschaffer@wshblaw.com
 7           BY:   KARIN L. SCHAFFER

 8
         Also present:   Nicholas McGuffin, Mary Krings,
 9                 Marla Kaplan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                PORTLAND, OREGON; FRIDAY, MAY 06, 2022
 2                              9:00 A.M.
 3                              *   *   *
 4                           SUSAN HORMANN
 5         called as a witness in behalf of Plaintiffs,
 6            having first been sworn by the Reporter,
 7                       testifies as follows:
 8
 9                            EXAMINATION
10
11          MS. PURACAL:  Why don't we do a round of
12   introductions for the record, just to get that on here.
13              This is Janis Puracal for Plaintiffs, and I
14   have Andrew Lauersdorf with me.  Plaintiff, Nick
15   McGuffin, will be joining shortly.
16          MS. SCHAFFER:  Good morning.  My name is
17   Karin Schaffer.  One of the attorneys representing
18   Richard Walter and the Vidocq Society, sometimes
19   referred to the Vidocq Defendants.
20          MS. HENDERSON:  I'm Sarah Henderson.  I'm
21   here on behalf of all of the Municipal Defendants.
22          MR. DAVIS:  Jesse David on behalf of the
23   deponent and the State Defendants.
24          MS. PURACAL:  And it looks like we have
25   Todd Marshall on for the Department of Justice, as
```

```
 1     A.   Yes.
 2     Q.   Once you transferred into the DNA unit, did you
 3   receive a different title other than criminalist?
 4     A.   No.
 5     Q.   Did your title as criminalist continue until the
 6   time that you left Oregon State Police?
 7     A.   No.
 8     Q.   At what point did your title change?
 9     A.   In 2008 I became the DNA Unit Supervisor.
10     Q.   What did that work involve?
11     A.   That was overseeing the DNA unit and the
12   analysts in that unit; you know, budget, operations,
13   supervision of employees.
14     Q.   Were you also doing DNA work, or were you on the
15   management end?
16     A.   There was a transition time where I was still
17   doing some, but not very much DNA work.
18     Q.   How long was that transition time?
19     A.   Probably until 2010.  Through 2010 probably.
20     Q.   After 2010, or sometime in 2010, were you the
21   DNA Unit Supervisor exclusively?
22     A.   During that transition time, 2010, I took a
23   temporary position as Operations Manager at the Salem
24   General Headquarters, so it was -- I sort of had both
25   hats on for a little while.
```

Page 57

1  BY MS. PURACAL: (Continuing)
2      Q.  Before we took a break, Ms. Hormann, I was
3  sharing my screen with you, and I'll do that again.  I
4  was showing you what I have marked as Exhibit 1, which
5  is your May 24th, 2010 report.
6          Did you get a chance to take a look at that?
7      A.  Yes.
8      Q.  Why did this set of requests go to you in 2010?
9      A.  Because I was -- my recollection is because I
10 was the one that technically reviewed the work by Mary
11 Krings, who was the original analyst in the case.  That
12 was sort of the unwritten protocol that -- you know,
13 that the person who technically reviewed it, if the
14 analyst was no longer working there, would normally be
15 the person to do any additional analysis.
16     Q.  You said that was the unwritten protocol.  Why
17 was that the unwritten protocol?
18     A.  Because there might've been some other reason
19 why, you know, somebody else was assigned to the case.
20 But it made sense that, you know, since the person who
21 had technically reviewed it was -- was the most
22 familiar with it, next to the analyst who had original
23 ly worked it, it made sense that, if possible, they
24 would do the analysis.
25     Q.  Before you did that analysis in 2010, what would

1    Q.   Let's go back to what I had marked as Exhibit 6.
2    This was your declaration from 2019.  In paragraph 3
3    here it says, "In 2000, if an allele peak was below 150
4    RFUs and above 50 RFUs, the protocol states that the
5    peak may be interpreted with caution.  The analysts
6    have the discretion whether to report information
7    between 50 RFUs and 150 RFUs."
8         Was it your understanding that the lab protocol
9    allowed the analyst to choose whether to report the
10   information or whether to interpret that data?
11   A.   It was to report it.  The -- what I think of as
12   the interpretation is what is then written on the
13   allele call profile, plus you're writing down what your
14   observations are there.  I don't know, maybe that's
15   documentation.  Probably maybe splitting hairs, but it
16   was their discretion to report the information.
17   Q.   So let me see if I can bring up a document to
18   make sure that we're talking about the same thing.
19            (Exhibit No. 9 marked for identification.)
20   Q.   So this is Exhibit 9.  This is the allele call
21   chart for -- or the allele call table for the samples
22   from Ms. Freeman's shoes.  This is the document that
23   you may recognize.  We discussed it during Ms. Krings'
24   deposition yesterday.
25            So when you said the allele call table, is this

Page 138

```
 1                    C E R T I F I C A T E

 2    STATE OF OREGON        )

 3                           ) ss.

 4    COUNTY OF MULTNOMAH    )

 5

 6         I, Amanda K. Fisher, a Certified Shorthand

 7    Reporter, do hereby certify that, pursuant to

 8    stipulation of counsel for the respective parties

 9    hereinbefore set forth, SUSAN HORMANN remotely appeared

10    before me at the time and place set forth in the

11    caption hereof; that at said time and place I reported

12    in Stenotype all testimony adduced and other oral

13    proceedings had in the foregoing matter; that

14    thereafter my notes were reduced to typewriting under

15    my direction; and that the foregoing transcript, pages

16    1 to 137, both inclusive, constitutes a full, true and

17    accurate record of all such testimony adduced and oral

18    proceedings had, and of the whole thereof.

19         Witness my hand and stamp at Portland, Oregon,

20    May 17, 2022.

21

22                         _____
23                         AMANDA K. FISHER
                           CSR No. 3229
24

25
```

CASE NAME: McGuffin et al v. Dannels et al
DEPONENT: Susan Hormann

| Page: | Line: | Reason: | Correction: |
|---|---|---|---|
| 35 | 2 | | replace "2019" with "2020" |
| 35 | 4 | | replace "Yes" with "2020" |
| 103 | 6 | | replace "Washington County" with "working" |

*State of Oregon*
*Washington County*

I hereby certify that I have read the deposition taken on May 06, 2022, and that this deposition, together with any corrections or additions, is a true and accurate record of my testimony.


Susan Hormann

Subscribed and sworn to before me under the penalties of perjury, this 2nd day of June, 2022.

*Jill Reimer Getzendaner*

Notary Public for the State of Oregon.
My commission expires: 9/29/2025.

OFFICIAL STAMP
JILL REIMER GETZENDANER
NOTARY PUBLIC - OREGON
COMMISSION NO. 1017463
MY COMMISSION EXPIRES SEPTEMBER 29, 2025