**Janis Puracal**

| | |
|---|---|
| **From:** | Paul Frasier <pfrasier@co.coos.or.us> |
| **Sent:** | Wednesday, May 03, 2017 11:24 AM |
| **To:** | Winter Sermeno, Stephenie; Gardner, Alexander R |
| **Subject:** | RE: State v. McGuffin |

Greetings:

In looking at the original letter from the IP on the DNA issues in the case, they point out that I did not provide the crime lab DNA file on testing done from 2010 on in this case. Since they are being critical of me for not getting that information would you please send to me the DNA file for all testing done by the lab through 2011 on the Freeman case. I have the materials from the 2000 through I think 2003, but we had additional testing done starting in 2010. I do not have those materials. If you could send them to me I would appreciate it.

In meeting with my investigative team yesterday, we are all of the opinion that the correct person was convicted in this case. If we had any doubts that the DNA matters brought to our attention in the last month or so changed that conclusion I would be moving to get Mr. McGuffin out of prison.

I am a bit confused by your comment that you cannot say a mistake was made. As I understood you to say, and the notes you gave me last week, Kip Oswald is excluded as the donor of the DNA in question. The lab in the past said it was consistent. If he is now excluded, how can we say there was not a mistake?

As to the testing issues, I think we need to look at the big picture here. I went back and reviewed the letter from the IP that I sent out earlier where they first started talking about errors made by the lab and their accusations that exculpatory evidence was withheld. I had forgotten about it, but in that letter they make the allegation that Kip Oswald, based on the crime lab data, was actually excluded as the donor of the DNA in question. We have to remember that when I tried this case back in 2011 the evidence presented was that male DNA on that shoe was consistent with Oswald. Given that the other male DNA profiles were not reported because of low numbers, we created at trial the impression that there was no unknown DNA in the case. Now we know it is not true. We do have unknown male DNA in the case and the defendant is excluded. While we will endeavor to find the donors, what if we can't ID the profiles? I suspect then a PCR judge would send this case back for a new trial. I doubt OSP will want to see that in the press.

This case had a lot of publicity (national, state and local) surrounding it and the more I think about it I think any filing made will probably be picked up by the press. Even if they don't pick up on it, given the facts as we now know it, I would not put it past the IP to tell the press about filing such a motion. I have been trying to avoid having a DNA motion filed in Coos County by the IP to avoid the publicity associated with such a motion. When push comes to shove, I have no leverage to get the IP to let OSP do that testing if they insist that OSP not do the testing. If I cannot come up with some other way to placate them, the motion will get filed and the publicity will begin. Under the provisions of ORS 138.692(6) the court, if it finds compelling circumstances otherwise, can order another lab do the testing. Given the makeup of the bench down here in Coos County, unless we can explain how the error was made, I believe my judges would order another lab to do the testing. And I think it is not the interests of the lab or the prosecution to have a public hearing on that issue. I mean, does OSP want a judge in Coos County to publically state that because of an error that another lab should do the testing?

I spoke with the head of the Arizona Lab yesterday, Mr. Vince Figarellis. While they have not committed to do the testing, they are willing to look at the case and they are wanting to help. I believe they are willing to do so as a favor to the former chief, Mark Dannels. I have also been looking at private lab in Richmond, California (SERI). Of course that will cost a bunch of money.

I know we are faced with establishing precedent here. Paul Reim and I discussed yesterday the potential impact having an outside lab do the testing may have on other PCR cases. However, we are also faced with the potential of a publicity nightmare and the very strong likelihood that if the IP presses on the issue another lab is going to be doing the testing anyway. I think a way to potentially deal with this is to have another lab do the testing. Assuming their results agrees with yours, we can then use those results to reaffirm the competency of the OSP DNA lab.

There is one other thing you need to be aware of. The person who supervised the processing of the scene where the body was found and directed how the body should be recovered was the Lt. in charge of the Coos Bay Lab in 2000, now retired, named Jim Pex. He was included in our meeting yesterday as we needed to get everyone together who was involve with body to recall who was all there. Mr. Pex. knows about these issues.

Is the Superintendent aware of this issue? Perhaps we should have another meeting to discuss this within the next few days including the Superintendent. Please let me know.

Paul Frasier

---

**From:** Winter Sermeno, Stephenie [mailto:stephenie.winter_sermeno@state.or.us]
**Sent:** Wednesday, May 03, 2017 8:36 AM
**To:** Gardner, Alexander R; Paul Frasier
**Subject:** RE: State v. McGuffin

Good morning Paul-

Thanks for the email update. I want to clarify that I can't definitively say an error was made in the original interpretation of the DNA from the shoe. It is difficult to understand the conclusion that was made, as none of our current staff was here at the time the analysis was completed. Science continues to evolve and improve and the interpretation of the profile based on our current knowledge led to a different conclusion in regard to that profile. Again, I can't say that the original interpretation is an error.

I was not aware that the former Chief of Coquille PD reached out to another publicly funded lab to do this testing. I am surprised, as most publicly funded laboratories exist, by law, to assist the criminal justice community within their jurisdiction. Oregon would not perform testing for another jurisdiction unless there was an MOU in place in regard to a specific category of testing. For example, we assist Idaho with some impression testing because they do not have anyone trained to do this testing in their state. I'm concerned about the precedent this would set in regard to PCR testing statewide.

Thanks, Stephenie

---

**From:** Paul Frasier [mailto:pfrasier@co.coos.or.us]
**Sent:** Tuesday, May 02, 2017 3:00 PM
**To:** Gardner, Alexander R; Winter Sermeno, Stephenie
**Subject:** State v. McGuffin

My investigative team met this morning discussing this case. One thing that came up is since there was an error on identifying Kip Oswald as being the contributor of the DNA on one of the shoes, and since we do not know how that error was made, that I use another lab for additional testing in the case.

I would like to discuss this with you. So you are aware, the former police chief of Coquille PD when this case was tried and who is now a sheriff in Arizona, has reached an agreement with the Arizona State Crime Lab to do the additional testing in the case.

2

Please contact me so we can talk about this.

R. Paul Frasier
District Attorney for Coos County Oregon
250 North Baxter
Coquille, Oregon 97423
541-396-7555