Anthony R. Scisciani III, OSB No. 070013
Meredith A. Sawyer, *pro hac vice*
Lisa Lear, OSB No. 852672
Kelsey L. Shewbert, OSB No. 221063
HWS LAW GROUP
101 SW Main Street, Suite 1605
Portland, OR 97204
Phone: (503) 542-1200
Fax: (503) 542-5248
ascisciani@hwslawgroup.com
msawyer@hwslawgroup.com
llear@hwslawgroup.com
kshewbert@hwslawgroup.com
*Attorneys for Defendant Vidocq Society*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| NICHOLAS JAMES MCGUFFIN, as an individual and as guardian *ad litem,* on behalf of S.M., a minor,<br><br>Plaintiffs,<br><br>V.<br><br>MARK DANNELS, PAT DOWNING, SUSAN HORMANN, MARY KRINGS, KRIS KARCHER, SHELLY MCINNES, RAYMOND MCNEELY, KIP OSWALD, MICHAEL REAVES, JOHN RIDDLE, SEAN SANBORN, ERIC SCHWENNINGER, RICHARD WALTER, CHRIS WEBLEY, ANTHONY WETMORE, KATHY WILCOX, CRAIG ZANNI, DAVID ZAVALA, JOEL D. SHAPIRO AS ADMINISTRATOR OF THE ESTATE OF DAVID E. HALL, VIDOCQ SOCIETY, CITY OF COQUILLE, CITY OF COOS BAY, and COOS COUNTY,<br><br>Defendants. | Civil Case No. 6:20-CV-01163-MTK (Lead Case)<br><br><br>DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS' RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY JUDGMENT |

VIDOCQ SOCIETY,

                Cross-Claimant.

v.

MARK DANNELS, PAT DOWNING,
SUSAN HORMANN, MARY KRINGS,
KRIS KARCHER, SHELLY MCINNES,
RAYMOND MCNEELY, KIP OSWALD,
MICHAEL REAVES, JOHN RIDDLE,
SEAN SANBORN, ERIC
SCHWENNINGER, RICHARD WALTER,
CHRIS WEBLEY, ANTHONY WETMORE,
KATHY WILCOX, CRAIG ZANNI, DAVID
ZAVALA, JOEL D. SHAPIRO AS
ADMINISTRATOR OF THE ESTATE OF
DAVID E. HALL, CITY OF COQUILLE,
CITY OF COOS BAY, and COOS COUNTY.

                Cross Defendants


NICHOLAS JAMES MCGUFFIN, as an
individual and as guardian *ad litem*, on behalf
of S.M., a minor,

                Plaintiffs,

v.

OREGON STATE POLICE,

                Defendant.

Civil Case No. 3:21-cv-01719-MTK
(Trailing Case)

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

**TABLE OF CONTENTS**

*Page*

POINTS AND AUTHORITIES ...................................................................11

I.   Summary Judgment in Favor of Vidocq is Proper Because There is an Absence of Evidence to Support Plaintiffs' Claims....................................11

  A. Plaintiffs Failed to Present Evidence Creating a Genuine Issue of Material Fact.................................................................................................11

  B. Plaintiffs' Unsupported Factual Assertions Must Be Disregarded Under Fed. R. Civ. P. 56(c)..................................................................................14

  C. Plaintiffs Rely on Inadmissible Evidence That Cannot Create a Genuine Issue of Fact ...........................................................................................14

II.  Vidocq Was Acting Only as a Private Limited Consultant to Oregon Law Enforement. Plaintiffs Have Failed to Produce Evidence to Create a Genuine Issue of Material Fact That Vidocq Was Acting Under Color of Law As Requried To Prove §1983 Liability Under *Monell* .................................15

  A. Vidocq was not acting pursuant to any state policy ................................16

  B. Vidocq was not a state actor.....................................................................17

    1. Vidocq did not exercise any direct power or authority over McGuffin that caused constitutional harm.........................................................18

    2. Vidocq and Oregon law enforcement did not engage in joint action such that Vidocq's conduct can be attributed to the state............................20

      a. Plaintiffs have failed to show the substantial degree of cooperative action or interdependence necessary to show joint action between Vidocq and Oregon law enforcement such that Vidocq's conduct Should be attributed to the state.................................................20

      b. Evidence regarding Vidocq's involvement in prior cases and its members' individual employment histories is not relevant to the court's inquiry regarding joint action.........................................25

III. Plaintiffs have failed to produce evidence to create a genuine issue of material fact that Vidocq's policies and practices caused a deprivation of McGuffin's constitutional rights, as required to prove §1983 liability under *Monell* ..................................................................................................27

  A. Plaintiffs improperly attempt to circumvent this Court's prior order dismissing their claim for vicarious liability by arguing that Vidocq's policies and practices caused Walter to violate Plaintiffs' constitutional rights .......................27

  B. Plaintiffs have failed to show constitutional harm caused by Walter ..................28

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 3

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

1.  The Power Assertive Personality profile was not "fabricated evidence" and did not affect grand jury testimony or Frasier's closing ...........................29

2.  Walter's alleged crime narrative had no bearing on the indictment, arrest or prosecution of McGuffin...................................................31

3.  Walter did not "fabricate" blood evidence on Freeman's left shoe.................31

C.  Plaintiffs have failed to show the necessary causal link between Vidocq's policies and Plaintiffs' alleged constitutional harm attributed to Walter...............32

    1.  Alleged insufficient policies regarding training/supervision .........................33

        a.  The absence of a training policy on *Brady* did not cause constitutional harm to Plaintiffs............................................34

        b.  The absence of *other* unspecified types of training policies did not cause constitutional harm to Plaintiffs .......................................35

    2.  Vidocq's confidentiality policy is not unconstitutional ...................................37

    3.  There is no evidence to support Plaintiffs' theories that Walter was a policy maker or that Vidocq ratified Walter's conduct  ................................38

IV.  A Reasonable Jury Could Not Find Vidocq Liable for SM's Loss of Parental Consortium Under §1983 or Oregon State Law ......................................39

V.  A Reasonable Jury Could Not Find Vidocq Liable for Plaintiffs' State Law Claims ...................................................................................40

    A.  <u>False Imprisonment</u>: Vidocq did not Direct or Influence McGuffin's Imprisonment........................................................................40

    B.  <u>Malicious Prosecution</u>: Neither Vidocq nor Walter instigated or encouraged McGuffin's indictment ......................................................41

    C.  <u>Civil Conspiracy</u>: Neither Walter nor Vidocq engaged in a conspiracy to fabricate evidence.................................................................42

    D.  <u>Negligent Training/Supervision</u>: Vidocq owed no duty to Plaintiffs to train or supervise Walter...................................................43

    E.  <u>Negligent/Intentional Infliction of Emotional Distress</u>: Neither Vidocq nor Walter acted or intended to act to cause Plaintiffs' emotional distress.................44

    F.  <u>Spoliation of Evidence</u>: Vidocq did not spoil evidence ...........................................45

VI.  Collateral Estoppel Operates to Bar Plaintiffs' Claims...........................................46

    A.  Vidocq has not waived the collateral estoppel defense...........................................46

    B.  Vidocq has satisfied the elements of issue preclusion ...........................................47

        1.  The fundamental issue in the prior PCR proceeding and the current civil

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 4

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

suit are the same ..........................................................................................47

    2.   Given the unique nature of the PCR proceedings and its explicit waiver provision, the issue of whether Vidocq's conduct caused a violation of McGuffin's constitutional rights was "actually litigated" ...............................48

VII.    CONCLUSION ......................................................................................49

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 5

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

# TABLE OF CASES AND AUTHORITIES

**Page(s)**

## Cases

*Federal Cases*

*Anthoine v. N. Cent. Counties Consortium*
  605 F.3d 740 (9th Cir. 2010) .................................................................................11

*Bates v. City of San Jose*
  359 Fed. Appx. 771 (9th Cir. 2009).....................................................................47

*Bd. of Cnty. Comm'rs of Bryan Cnty., Olk. v. Brown*
  520 U.S. 397 (1997)........................................................................................27, 32

*Brady v. Maryland*
  373 U.S. 83 (1963)........................................................................................ *passim*

*City of Canton v. Harris*
  489 U.S. 378 (1989)........................................................................................28, 32

*City of Los Angeles v. Heller*
  475 U.S. 796 (1986)................................................................................................28

*City of Oklahoma City v. Tuttle*
  471 U.S. 808, 105 S. Ct. 2427 (1985)...................................................................28

*Collins v. Womancare*
  878 F.2d 1145 (9th Cir. 1989) ................................................................16, 24, 26

*Connick v. Thompson*
  563 U.S. 51 (2011)...................................................................................................33

*Drake v. Portundo*
  553 F.3d 230 (2nd Cir. 2009)..................................................................... *passim*

*Florer v. Congregation Pidyon Shevuyim*
  639 F.3d 916 (9th Cir. 2011) ..........................................................................16, 18

*Franklin v. Fox*
  312 F.3d 423 (9th Cir. 2002) ................................................................................20

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*Galen v. Country of Los Angeles*
    477 F.3d 652 (9th Cir. 2007) ...........................................................................28, 32

*Gibson v. County of Washoe*
    290 F.3d, 1175 (9th Cir. 2002) .................................................................................33

*Halsey v. Airbus Helicopters S.A.S.*
    6:24-CV-00649-MC, 2025 WL 318744 (D. Or. Jan. 28, 2025) ...........................45

*Harbeson v. Parke Davis, Inc.*
    746 F.2d 517 (9th Cir. 1984) ....................................................................................46

*Howerton v. Gabica*
    708 F.2d 380 (9th Cir. 1983) ....................................................................................26

*Jackson v. City of Bremerton*
    268 F.3d 646 (9th Cir. 2001) ....................................................................................28

*Leibel v. City of Buckley*
    556 F. Supp. 3d 1042 (D. Ariz. 2021) ....................................................................41

*Lockhead v. Weinstein*
    24 Fed. App'x 805 (9th Cir. 2001) ..........................................................................25

*Lowerison v. Yavno*
    26 Fed. Appx. 720 (9th Cir. 2002)...........................................................................46

*Lugar v. Edmondson Oil Co.*
    457 U.S. 922 (1982)...........................................................................15, 16, 18, 20

*Monell v. Dep't of Soc. Servs. of New York*
    436 U.S. 658 (1978).................................................................................... *passim*

*Naoko Ohno v. Yuko Yasuma*
    723 F.3d 984 (9th Cir. 2013) ....................................................................................16

*National Collegiate Athletic Assn. v. Tarkanian*
    488 U.S. 179 (1988)...................................................................................................18

*O'Handley v. Padilla*
    579 F. Supp. 3d 1163, (N.D. Cal. 2022), *aff'd sub nom, O'Handley v.*
    *Weber*, 62 F.4[th] 1145 (9th Cir. 2023)..................................................................24

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 7

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*Omnipoint Communications, Inc. v. Comi*
    233 F. Supp. 2d 388 (N.D. N.Y. 2002)...............................................................24

*Oviatt v. Pearce*
    954 F.2d 1470 (9th Cir. 1992) ............................................................................33

*Rawson v. Recovery Innovations, Inc.*
    975 F.3d 742 (9th Cir. 2020) ..............................................................................25

*R-Goshen LLC v. Vill. of Goshen*
    289 F. Supp. 2d 441 (S.D. N.Y. 2003), *aff'd sub nom, R-Goshen LLC v.*
    *Andrews,* 115 F. App'x 465 (2d Cir. 2004) ........................................................24

*Samuelson v. Jewell Sch. Dist. 8*
    725 F. Supp. 3d 1195 (D. Or. 2024) ...................................................................20

*Sutton v. Providence St. Joseph Med. Ctr.*
    192 F.3d 826 (9th Cir. 1999) ..............................................................................19

*Tsao v. Dessert Palace, Inc.*
    698 F.3d 1128 (9th Cir. 2012) ....................................................15, 18, 26, 28, 33

*United States v. Bagley*
    473 U.S. 667 (1985)............................................................................................38

*United States v. Check*
    582 F.2d 668 (2d Cir. 1978)...............................................................................14

*West v. Atkins*
    487 U.S. 42 (1988)..............................................................................................18

*Wilkins v. United States*
    CV 18-147-M-DLC, 2024 WL 4680696 (D. Mont. Nov. 5, 2024) ......................40

**State Cases**

*House v. Hicks*
    218 Or. App. 348, 179 P.3d 730 (2008)..............................................................40

*Miller v. Baldwin*
    176 Or. App 500 P.3d 234 (2001)........................................................................48

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 8

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*Norwest, By & Through Crain v. Presbyterian Intercommunity Hosp.*
    293 Or. 543, 652 P.2d 318 (1982) ...................................................................39, 40

*Pearson v. Galvin*
    253 Or. 331, 454 P.2d 638 (1969) .......................................................................40

*Philibert v. Kluser*
    360 Or. 698, 385 P.3d 1038 (2016) ....................................................................40

*Shoemaker v. Management Recruiters, Int'l*
    125 Or. App. 568, 865 P.2d 1331  (1993)...........................................................40

## Statues and Rules

### Federal Statutes and Rules

42 U.S.C. § 1983 ..................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................39

Fed. R. Civ. P. 56(c) ..................................................................................11, 14

Fed. R. Evid. 801 ............................................................................................14

Fed. R. Evid. 801(c)........................................................................................14

Fed. R. Evid. 802 .......................................................................................11, 14

Fed. R. Evid. 803 ............................................................................................14

Circuit Manual of Model Criminal Jury Instructions 1.3 and 1.4.....................14

### State Statutes and Rules

ORS 30.020...........................................................................................39

ORS 138.550(3) ................................................................................48, 49

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

## POINTS AND AUTHORITIES

**I.     Summary Judgment in Favor of Vidocq is Proper Because There is an Absence of Evidence to Support Plaintiffs' Claims.**

Plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact regarding their federal and/or state claims against Vidocq Society related Nicholas McGuffin's conviction for the tragic homicide of Leah Freeman. Under established legal principles, undisputed facts must be accepted as true for purposes of summary judgment.

Additionally, Plaintiffs rely on unsupported factual assertions and inadmissible evidence in an attempt to create a factual dispute. Under Fed. R. Civ. P. 56(c), facts asserted to demonstrate a genuine issue of material fact must be supported by admissible evidence. Plaintiffs' factual assertions in Section II, paragraphs 2, 4, and 5 (last sentence) lack any citation to the record and should be disregarded. Furthermore, Plaintiffs improperly rely on inadmissible evidence, including McGuffin's unsworn sentencing statement claiming innocence, which constitutes hearsay under Fed. R. Evid. 802, and the prosecutor's closing arguments from trial, which are not evidence under well-established legal principles. Because Plaintiffs have failed to meet their burden under Rule 56, summary judgment in favor of Vidocq is warranted.

**A.     Plaintiffs' Have Failed to Present Evidence to Creating a Genuine Issue of Material Fact.**

Plaintiffs have failed to submit evidence necessary to create an issue of fact with respect to each of their claims. Undisputed facts are taken as true for purposes of a motion

for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th

Cir. 2010). Plaintiffs do not dispute the following determinative facts:

- That McGuffin was the primary suspect from the start of the first investigation in 2000 regarding the death of Leah Freeman;[1]

- That McGuffin has never been found actually innocent or exonerated for Freeman's homicide;[2]

- That neither the CPD nor Frasier hired Vidocq or any of its members including Walter;[3]

- That Walter was not Vidocq's employee but instead was a volunteer member of the organization;[4]

- That neither the CPD nor Frasier paid Vidocq or any of its members, including Walter for its consultation regarding the Freeman case, which consultation was provided on a pro-bono basis;[5]

- That CPD did not relinquish its authority or decision making to Vidocq or Walter;[6]

- That Frasier did not relinquish his authority or decision making to Vidocq or Walter;[7]

- That neither Vidocq nor Walter were acting as agents of or on behalf of the CPD or Frasier; [8]

- That Frasier retained sole prosecutorial decision-making authority with respect to convening a grand jury; [9]

---

[1] DKT # 287, Vidocq Motion at FN 12
[2] DKT # 287, Vidocq Motion at FN 74
[3] DKT # 287, Vidocq Motion at FN 24
[4] DKT # 287, Vidocq Motion at FN 110-111
[5] DKT # 287, Vidocq Motion at FN 88
[6] DKT # 287, Vidocq Motion at FN 55-56, 88, 106
[7] DKT # 287, Vidocq Motion at FN 59
[8] DKT # 287, Vidocq Motion at FN 88
[9] DKT # 287, Vidocq Motion at FN

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

- That Frasier did not specifically ask the grand jury to indict McGuffin but left the decision regarding who to indict to the grand jury;[10]

- That Frasier retained sole prosecutorial decision-making authority regarding the decision to prosecute McGuffin for Freeman's murder; [11]

- That Frasier rejected Walter's Power Assertive Personality theory, including that the Freeman's murder involved a sexual assault; [12]

- That Walter's journal article regarding the Power Assertive Personality theory was written in 1999, one year *prior to* Freeman's death;[13]

- That no later than June 30, 2010, Frasier severed all ties with Walter and Vidocq several weeks before he convened the grand jury; [14]

- That no member of Vidocq testified at the grand jury proceeding or at McGuffin's criminal trial;[15]

- That the grand jury transcript does not contain any testimony regarding Vidocq, Walter, or Walter's Power Assertive Personality theory;[16]

- That neither Vidocq nor Walter's involvement in the Freeman case influenced the CPD's investigation of Freeman's murder. [17]

- That neither Vidocq nor Walter's involvement in the Freeman case influenced Frasier's independent decision to pursue an indictment, arrest, or prosecution of McGuffin for Freeman's murder.[18]

---

[10] MAS Supp. Decl. Exh 33 (Frasier Dep at 66:1-24)
[11] DKT # 287, Vidocq Motion at FN 59
[12] DKT # 287, Vidocq Motion at FN 48-49
[13] MAS Supp. Decl. Exh 34 (Kepler, Walter 1999, Profiling Killers: A Revised Classification Model for Understanding Sexual Murder, *Int'l Journal of Offender Therapy,* 43 (4) 417-437.)
[14] DKT #287, Vidocq Motion at FN 108
[15] DKT #287, Vidocq Motion at FN 52, 65
[16] DKT # 287, Vidocq Motion at FN 52
[17] DKT # 287, Vidocq Motion at FN 58
[18] DKT # 287, Vidocq Motion at FN 61

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 12

**B.     Plaintiffs' Unsupported Factual Assertions Must Be Disregarded Under Fed. R. Civ. P. 56(c)**

In addition, Plaintiffs make numerous factual assertions without any citation to the record. This is contrary Fed. R. Civ. P. 56 (c) which requires that every fact asserted to show the existence of a genuine issue of material fact must be supported by evidence that is admissible at trial. Plaintiff's factual assertions at Section II, paragraphs 2, 4, and 5 (last sentence) are not supported with citation to evidence in the record. These assertions must disregarded for purposes of ruling on Vidocq's motion.

**C.     Plaintiffs Rely on Inadmissible Evidence That Cannot Create a Genuine Issue of Fact**

Plaintiffs also improperly attempt to create an issue of fact by relying on evidence that would be inadmissible at trial.

First, McGuffin's unsworn statement at his sentencing hearing that he is innocent of any crime is inadmissible hearsay because it was not made under oath. An unsworn statement is hearsay and is not admissible at trial where the declarant is available. *United States v. Check*, 582 F.2d 668, 679 (2d Cir. 1978); Fed. R. Evid. 802.  Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). McGuffin's unsworn statement is not excluded from the hearsay rule under Fed. R. Evid. 801, nor does it fall within any exception in Fed. R. Evid. 803. Accordingly, it is inadmissible for purposes of summary judgment and should be disregarded.

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 13

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Second, Fraiser's closing argument regarding how the crime occurred is not evidence that is admissible at trial. Pursuant to the Circuit Manuel of Model Criminal Jury Instructions, statements made by counsel during opening statements and closing arguments are not evidence and cannot be considered by the jury in rendering a verdict.[19] Only sworn witness testimony and exhibits received into evidence are evidence.[20] The judge in McGuffin's criminal trial expressly advised the jurors in his jury instructions that counsel's statements were not evidence, and should not be considered in rendering their verdict.[21] Accordingly, Fraiser's arguments made during his closing are inadmissible for purposes of ruling on Vidocq's motion for summary judgment.

II.     **Vidocq Was Acting Only as a Private Limited Consultant to Oregon Law Enforcement. Plaintiffs Have Failed to Produce Evidence to Create a Genuine Issue of Material Fact That Vidocq Was Acting Under Color of Law, as Required To Prove § 1983 Liability Under *Monell*.**

Plaintiffs concede that, as a private entity Vidocq has no § 1983 liability under *Monell* unless they can show that (1) Vidocq was acting under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom Vidocq. *Tsao v. Desert Palace, Inc.,* 698 F. 3d 1128, 1138 (9th Cir. 2012).

Before the Court considers the impact of Vidocq's policies and procedures, the Court must first decide whether Vidocq was a state actor. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744 (1982). Whether a private entity is a state actor is a question of law. *Id.* The Court must begin "with the presumption that conduct by private actors is

---

[19] Circuit Manual of Model Criminal Jury Instructions 1.4.
[20] Circuit Manual of Model Criminal Jury Instructions 1.3
[21] DKT # 284-1 at p. 1655  (2011 Criminal Trial Transcript at D9-55)

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

not state action." *Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 922 (9th Cir. 2011). It is the plaintiff's burden to prove otherwise. *Id.*

To determine whether actions that allegedly caused the deprivation of a constitutional right are fairly attributable to the state even though they were committed by private actors, federal courts follow a two-part approach: (1) the constitutional deprivation must be caused by a state policy and (2) the party charged with deprivation must be a state actor. *Lugar,* 457 U.S. at 937; *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989). Plaintiffs have not submitted evidence to create an issue of material fact with respect to either requirement. To the contrary, the evidence is undisputed that Vidocq was acting as a private consultant to Oregon law enforcement. It was never acting under color of Oregon law.

### A.     Vidocq was not acting pursuant to any state policy.

Plaintiffs acknowledge that to show state action they must prove that Vidocq's conduct in this case was pursuant to a policy of the state. Nonetheless they fail to address this requirement at all.

To meet the state policy requirement, a private party's act must have "resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (citing *Lugar,* 457 U.S. at 937). "'The state policy requirement ensures that the alleged deprivation [by the private party] is fairly attributable to a state policy.'" *Collins,* 878 F.2d at 1151 (9th Cir. 1989).

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 15

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Plaintiffs cannot satisfy the state policy requirement. Plaintiffs have failed to identify any specific policy of the CPD or other Municipal Defendants which governed Vidocq's conduct with respect to the Freeman case. To the contrary, the record is undisputed that Vidocq's consultation with the CPD and prosecuting attorney was pursuant to its own policies, including Vidocq's Bylaws and Code of Ethics. Vidocq did not assume any role as an agent of the CPD, other Municipal Defendant or the state prosecuting attorney nor was it delegated any authority by these entities.[22]  Accordingly, because Vidocq was not acting pursuant to a state policy, Vidocq cannot be deemed a state actor under § 1983.

> **B.     Vidocq was not a state actor.**

For a private entity to be considered a state actor under §1983, the private entity must exercised some power derived from the state and taken direct action against the plaintiff that causes constitutional harm.

Here, Plaintiffs do not allege and have not shown that Vidocq (or Walter) exercised any authority or took any decisive action against McGuffin at all. Instead, their claim boils down to one of influence, that is, that Vidocq (and Walter) merely influenced the actual state decision makers.  The sworn testimony of both Chief Dannels and District Attorney Frasier clearly refutes this argument.

Moreover, to prove that Vidocq was a state actor requires a substantial showing of cooperative action between Vidocq and the State to satisfy the "joint action" test.  Plaintiffs

---

[22] DKT # 287, Vidocq Motion, FN 54-59

have not produced sufficient evidence to make this showing. At most, Vidocq acted as a limited consultant to the CPD and prosecuting attorney, which is insufficient to establish joint action. Simply put, Plaintiffs' claims are legally insufficient.

1.     **Vidocq did not exercise any direct power or authority over McGuffin that caused constitutional harm.**

Federal decisions repeatedly emphasize that a private person or entity has acted under color of state law where there is a showing that the private party has "*exercised* power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (emphasis added). The actual exercise of power or authority by the private party against the §1983 plaintiff is necessary for the court to find state action.

As the Court explained in *National Collegiate Athletic Ass'n v. Tarkanian,* 488 U.S. 179, 192, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988):

> In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action.

For example, in *Lugar,* 457 U.S. at 937 private party defendants used a prejudgment attachment procedure against a property owner (the §1983 plaintiff) to prevent him from disposing of his property. In *Tsao,* 698 F. 3d at 1138 (9th Cir. 2012) a private casino's employee issued a citation against a trespasser (the § 1983 plaintiff). In *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011), private entities acting as contract chaplains for a state prison center refused to provide a prisoner (the § 1983 plaintiff) a copy of certain religious material he asked for. In *Collins,* 878 F.2d at 1151, employees of a private woman's health clinic made citizen arrests of certain protesters (the

§ 1983 plaintiffs). In *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 838 (9th Cir. 1999) a private hospital refused to hire a job applicant (the §1983 plaintiff) because he would not provide his social security number.

In all of these cases the private party exercised clear authority and power over the plaintiff. The issue before the court was whether the state was sufficiently connected to or intertwined with the private party's conduct such that the private party's conduct should be viewed as action by the state.

Here, Plaintiffs do not allege - nor have they shown - that Vidocq (or Walter) ever took any direct action or decisive step or exercised any authority against McGuffin which caused constitutional harm. There is no evidence that Vidocq (or Walter) issued any citation to McGuffin, refused to hire him, refused to provide religious support or medical care, deprived him of his property in any manner, or made any citizen's arrest.  In fact, Vidocq (and Walter) never had any direct interaction with McGuffin at any time. This is fatal to Plaintiffs' claim.

Instead, Plaintiffs argue that Vidocq, through its purported agent Walter, made false statements and/or posited unsupported psychological theories that ***influenced*** the CPD and Frasier and that this influence caused the CPD and Frasier to exercise their own authority to investigate, indict, arrest, and prosecute McGuffin. Of course, Plaintiffs ignore the undisputed sworn testimony of CPD Chief Dannels and District Attorney Frasier, that they were *<u>not</u>* influenced by Vidocq or Walter. Regardless, Plaintiffs have cited no legal authority that state action can be shown where the private party defendant has *not* exercised any direct authority or taken any direct action against the § 1983 plaintiff.

Based on standards set forth in *Lugar*, Plaintiffs' assertions that Vidocq is a state actor based on its purported influence alone, necessarily falls short of the required showing.

**2.    Vidocq and Oregon law enforcement did not engage in joint action such that Vidocq's conduct can be attributed to the state.**

Plaintiffs agree that the proper test for determining whether Vidocq was engaged in state action is the "joint action" test. Under the joint action test, Plaintiffs must show that the private party was jointly engaged with state officials in the conduct by the private party that allegedly violated the plaintiff's constitutional or other federal right. As the Ninth Circuit has explained in *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002):

> Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. The test focuses on whether the state has so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity. A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.
>
> * * *
>
> Our cases have been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights.

*See also*, *Samuelson v. Jewell Sch. Dist. 8,* 725 F. Supp. 3d 1195, 1213 (D. Or. 2024).

**a.    Plaintiffs have failed to show the substantial degree of cooperative action or interdependence necessary to show joint action between Vidocq and Oregon law enforcement such that Vidocq's conduct should be attributed to the state.**

There is no dispute that Vidocq's consultation with the Oregon law enforcement regarding the Freeman case was extremely limited, by any measure. The consultation

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 19

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

consisted of the lunch presentation in January 2020 and Walter's short trip to Coquille at the invitation of ABC to film a 20/20 episode.[23]

Specifically, Vidocq invited Oregon law enforcement to put on presentation to their membership regarding the Freeman homicide in January 2010. In advance of the luncheon, the CPD provided a written summary of the case to Vidocq's membership. As stated in Vidocq's motion, the CPD and Frasier had sole decision making regarding what information to provide to Vidocq. Just prior to the presentation, Walter provided Fraiser with a journal article he and a colleague had published in 1999, *Profiling Killers: A Revised Classification Model for Understanding Sexual Murder*. The article concerned the authors' theories regarding the four personality types of persons who commit sexual murders. Walter told Frasier that the Power Assertive Personality profile described in the article might be useful in identifying Freeman's killer. Frasier did not read the article until he returned to Coquille. Frasier then put on a Power Point presentation regarding the Freeman case to the Vidocq membership. Some discussion ensued. The whole interaction took less than an hour and a half.[24]

Thereafter, sometime in late spring 2010, Walter travelled to Oregon to appear on the ABC television show 20/20 regarding the Freeman case. During the trip Walter met briefly with Chief Dannels and DA Frasier. He was shown some photos of Freeman's decomposed body and her tennis shoes. He was also taken by ABC to the locations where

---

[23] DKT # 287, Vidocq Motion, pp. 35-36; FN 52; 55-59; 20-24. (For purposes of this motion, Vidocq does not dispute it was aware of Walter's trip to Coquille.)

[24] There is no evidence to suggest Walter received any unique material before the Vidocq presentation. Walter first met Dannels and Frasier at the January luncheon and only had prior knowledge of the Freeman Investigation from the Dannels Summary. See, DKT #314, FN 9 (Walter's Motion)

Freeman's left shoe was found and where her body was found. Walter was interviewed by ABC producers regarding his opinions regarding the "Power Assertive" personality theory and his understanding of certain physical evidence, which understanding turned out to be wrong.[25]

It is undisputed that neither Vidocq nor Walter were paid for their services, that their involvement was purely on a pro bono basis, consistent with Vidocq's mission. At no time did the CPD or Frasier delegate any authority to Vidocq (or Walter) to take any action on its behalf and neither did so. [26]

Finally, there is no dispute that Frasier severed all ties with Vidocq and Walter no later than June 30, 2010, after Frasier learned that Walter's expert opinions in a federal second circuit case had been excluded.  Frasier and CPD Chief Dannels were unequivocal that their consultation with Vidocq and Walter *did not* influence the investigation, indictment, arrest, or prosecution of McGuffin, as Plaintiffs continue to claim. As Frasier testified in his deposition:

> You know, I don't recall Vidocq Society giving me any advice. And frankly, I was disappointed in the trip. . . . I was looking for information that would help us move forward, either to tell us we were going the wrong way or that this was – we were going the right way. And they didn't - they didn't give us any suggestions whatsoever that I recall. [27]

Frasier made similar statements during the PCR proceedings, stating that:

---

[25] The fact that other Vidocq members were interviewed on the ABC 20/20 show to discuss Vidocq is not evidence demonstrating substantial cooperation and interdependence between Vidocq and the Oregon law enforcement necessary to show joint action. Furthermore Plaintiffs misstate the deposition testimony of Vidocq member, William Fleisher. He states that ABC filmed Walter, Bender and himself in Philadelphia but that the content had nothing to do with the Freeman investigation. DKT #330-89 (Fleisher Dep. at 103:21-104:16.
[26] DKT 287, Vidocq Motion FN 20-24; 54-59.
[27] DKT #287, Vidocq Motion, FN 40

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Long story short: I did not use anything we learned from Mr. Walter or the Vidocq Society and certainly did not use it at trial and it had no effect on the verdict in this case.[28]

Dannels confirmed Frasier's assessments, testifying in his deposition that Vidocq "added no significant value to where we went with the case." [29]

Based on this undisputed record, Plaintiffs have failed create an issue of material fact regarding joint action. Plaintiffs have failed to produce evidence showing a substantial degree of *cooperative action* between Vidocq and the CPD or other Municipal Defendants, or that law enforcement "so far insinuated itself into a position of interdependence with Vidocq and/or Walter "that it must be recognized as a joint participant in the challenged activity."[30]

The absence of cooperation is further confirmed, given that only specific assistance offered by Walter to Frasier concerned his Power Assertive Personality theory - and this this theory, whether "fabricated" to fit McGuffin as Plaintiffs claim or not - was rejected outright by Frasier as not fitting the crime. Frasier did not rely upon or advance this theory at trial.[31] Plaintiffs' argument that it is irrelevant how Oregon law enforcement made use of information received from Vidocq (or Walter) makes no sense. Given that the test for state action requires evidence of "substantial cooperative action" between a private party and the state, where the state refuses to cooperate with the private party by declining to use

---

[28] DKT #287, Vidocq Motion, FN 63
[29] DKT #287, Vidocq Motion, FN 41
[30] In fact, the entire claim falls apart when one considers that activity being challenged by Plaintiffs is that Vidocq and Walter improperly *influenced* Oregon law enforcement to initiate criminal proceedings against McGuffin – a claim that both Frasier and Chief Dannel deny.
[31] DKT #287, Vidocq Motion, FN 48, 49, 92

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

information being offered, cooperative action is not shown. *Collins v. Womancare* is on point. There the court held there was no joint action between the private health care clinic, whose employees made citizens' arrests of plaintiff protestors, and the San Diego Police Department, given that the impetus for the arrests came from the clinic's employees and not the police; the police attempted to discourage the arrests and warned of the danger of civil liability for false arrest; and the police officer, after independently investigating, refused to arrest the protestors on his own authority. 878. F2d. at 1155-1156.

As explained in Vidocq's motion, the above record shows that Vidocq acted as a limited consultant to Oregon law enforcement, by sponsoring a luncheon where Vidocq members offered their views, opinions, and comments regarding the Freeman case, based on the information law enforcement provided. Oregon law enforcement was free to use or reject that information at will.

Notably Plaintiffs ignore - and make no effort to distinguish - the several cases cited in Vidocq's motion, holding that a consultant's professional opinions and the advice a consultant offers to municipalities are not "state action" and thus cannot support claims against such consultants for liability under §1983. *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 465 (S.D.N.Y. 2003), *aff'd sub nom R-Goshen LLC v. Andrews*, 115 F. App'x 465 (2d Cir. 2004), *citing Omnipoint Communications, Inc. v. Comi,* 233 F.Supp.2d 388, 395 (N.D.N.Y.2002) (where a consultant merely provides professional advice to a municipality, such advice cannot be considered state action for purposes of §1983). *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1181 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (one party supplying information to

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 23

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

another party does not amount to joint action); *Lockhead v. Weinstein*, 24 Fed. App'x 805, 806 (9th Cir. 2001) ("[M]ere furnishing of information by a private party to police officers does not constitute joint action").

> **b. Evidence regarding Vidocq's involvement in prior cases and its members' individual employment histories is not relevant to the court's inquiry regarding joint action.**

In an strained effort to try and create an issue of fact regarding joint action, Plaintiffs point to (1) evidence of Vidocq's involvement in *other* cases in *other* jurisdictions and (2) evidence regarding the employment histories of Vidocq's volunteers. Assuming such evidence is even admissible, none of it is relevant to show joint action in this case and these arguments should be summarily rejected.

To show joint action, Plaintiffs must demonstrate that there was a sufficiently close nexus between the parties involved in *this* case, namely Vidocq and Oregon law enforcement such that the actions of Vidocq may be fairly treated as those of Oregon law enforcement. Or, alternatively, that there is evidence that Oregon law enforcement so far insinuated itself into a position of interdependence with Vidocq that it must be recognized as a joint participant in the challenged activity by Vidocq. *Rawson v. Recovery Innovations, Inc., 975 F.3d 742, 747-48 (9th Cir. 2020).* The joint action test requires a showing that these *specific* parties were acting jointly, in concert, or in a significantly cooperative manner which caused constitutional harm to the named §1983 plaintiff.

Conduct by Vidocq in *other* cases in *other* jurisdictions regarding its actions in those cases is not evidence of joint action in *this* case and cannot be used to create an issue

of material fact with respect to the existence of joint action here. Several federal cases are illustrative:

In *Tsao v. Desert Palace, Inc.,* 698 F. 3d 1128 (9th Cir. 2012) the inquiry was whether a private casino's security officer who issued a citation to the plaintiff for trespassing had engaged in joint action with the Las Vegas Police Department with respect allegations of constitutional harm alleged by the plaintiff. Notably, the court did not consider evidence of the private casino's conduct at other locations or involving other customers.

In *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989) the inquiry was whether the private health clinic whose employees made a citizens' arrests of several protestors was engaged in joint action with the San Diego Police Department. Notably, the court did not consider evidence of whether the health clinic had made citizens arrests in *other* jurisdictions in cooperation with *other* police departments that potentially affected *other* plaintiffs.

In *Howerton v. Gabica,* 708 F.2d 380 (9th Cir.1983), the inquiry was whether a private landlord who evicted a tenant, had engaged in joint action with the Kooskia Police Department in the course of the landlord's efforts to evict the tenant. Notably, the court did not consider evidence of the landlord's conduct with respect to its cooperation with this or any other police department regarding evictions of other tenants.

Allowing a jury to infer *additional* cooperative action between Vidocq and Oregon law enforcement by considering evidence of Vidocq's involvement in other cases with other law enforcement agencies, would be tantamount to allowing improper speculation by

the jury. This is because Vidocq has produced actual evidence in this matter demonstrating the particular limited nature of its relationship with Oregon law enforcement. The court should reject Plaintiffs' efforts to bootstrap Vidocq's involvement in *other* cases in *other* jurisdictions as evidence of joint action here.

Similarly, the employment history of a private party's employees – or here a private party's *volunteers* - is entirely irrelevant to the issue of whether the private party and the state were acting as joint participants in conduct that caused constitutional harm to the named plaintiffs. Plaintiffs do not cite any legal authority where a court considered the employment history of a private non-profit organization's volunteer members – or the employment history of a for-profit private company – in assessing whether there was joint action between the private party and the state.

III.    **Plaintiffs have failed to produce evidence to create a genuine issue of material fact that Vidocq's policies and practices caused a deprivation of McGuffin's constitutional rights, as required to prove §1983 liability under *Monell*.**

A.    **Plaintiffs attempt to circumvent this Court's prior order dismissing their claim for vicarious liability by arguing that Vidocq's policies and practices caused Walter to violate Plaintiffs' constitutional rights.**

In order to avoid holding Vidocq vicariously liable for the actions of Walter, the court must be mindful of the heighted standards of culpability and causation that Plaintiffs must demonstrate when their claim pertains to the policies and practices of a municipality or private entity.    Numerous cases have held that where a plaintiff claims that a municipality (or private party) has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397 at 405; *City*

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 26

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

*of Canton v. Harris*, 489 U.S. 378, 391-392, 109 S. Ct. 1197 (1989); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S. Ct. 2427 (1985).

    **B.    Plaintiffs have failed to show constitutional harm caused by Walter.**

    To establish liability under § 1983 under *Monell*, Plaintiffs must show that Vidocq's policy, practices, or customs caused constitutional harm to McGuffin, in the sense that Vidocq's policies were the "moving force' behind Walter's alleged unconstitutional acts. *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1139 (9th Cir. 2012); *Galen v. County of Los Angeles,* 477 F.3d 652, 667 (9th Cir. 2007); *City of Canton v. Harris,* 489 U.S. at 385

    The initial inquiry is whether a constitutional violation occurred. If no such injury or constitutional violation occurred, the private party cannot be held liable under §1983. *Jackson v. City of Bremerton*, 268 F.3d 646, 653–54 (9th Cir. 2001), citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 157 (1986) (holding "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")

    Plaintiffs have failed to produce competent admissible evidence sufficient to show that Walter's conduct caused McGuffin to suffer constitutional harm. As explained above, Plaintiffs do not assert that Walter exercised any actual authority or power over McGuffin that caused constitutional harm. The only conduct that Plaintiffs point to as causing as constitutional harm is that Walter *influenced* the decision-making of the CPD and prosecuting attorney by allegedly "fabricating evidence" that implicated McGuffin in Freeman's homicide The alleged "fabricated evidence" consists of: (1) a "fabricated"

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 27

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Power Assertive Personality profile; (2) a "false narrative" regarding how Freeman's murder was committed; and (3) "fabricated" blood evidence on Freeman's left shoe. The actual evidence in this case disproves each of these assertions, as is also described in detail in Walter's Motion and Reply Memorandum.[32]

### 1. The Power Assertive Personality profile was not "fabricated evidence" and did not affect grand jury testimony or Frasier's closing.

The Power Assertive Personality profile was not created by Walter to implicate McGuffin but instead was a theory developed by Walter and his college, Robert Kepler, a Ph.D. in criminal justice, no later than 1999 – a year *before* Freeman was killed. The Power Assertive Personality was one of four personality types the authors posited could be helpful in understanding sexual murder. They published a journal article in 1999 regarding this model entitled, *Profiling Killers: a Revised Classification Model for Understanding Sexual Murder.* Walter gave this journal article to Frasier on the day of the of the Vidocq luncheon, which he read after returning to Oregon. Given that Power Assertive Personality theory predated Freeman's homicide, the theory clearly was not developed to implicate McGuffin. Moreover, the characterization that the profile was "fabricated evidence" makes no sense in this context.

Second, the Power Assertive Personality profile did not and could not have caused Plaintiffs to suffer constitutional harm as Plaintiffs claim because the profile was rejected outright by Frasier shortly after he read the article. He told Walter that the profile did not fit the Freeman case because there was no evidence the Freeman's murder was sexual in

---

[32] DKT # 314, Walter Motion; DKT # 342,Walter Reply

nature. Frasier testified unequivocally that the Power Assertive Personality profile was not advanced during the grand jury proceedings nor introduced as evidence at trial. Plaintiffs entirely ignore Frasier's unrefuted sworn testimony on this subject.[33]

Despite Frasier's unrefuted sworn testimony, Plaintiffs continue to argue that Frasier was nonetheless *influenced* by the Power Assertive Personality theory, which in turn influenced witness testimony during the grand jury proceedings and that Frasier argued a power assertive personality theory in his closing argument. Again, neither argument holds up to scrutiny.

Grand Jury Testimony: Plaintiffs argue that evidence fabricated by Walter and the Municipal Defendants was featured during the grand jury proceedings. In support of this argument Plaintiffs refer to the grand jury testimony of David Zavala, Kris Karcher, Dave Hall, Kip Oswald, Craig Zanni, Ray McNeely and Mark Dannels, detailed at footnote 38 of their response.[34] A review of the referenced testimony demonstrates no such connection. There is no reference to any of Walter's ideas or to Walter or Vidocq in any of the referenced testimony. By and large, all of the facts testified to by these grand jury witnesses was known to the CPD and Frasier prior to their initial visit Vidocq in January 2010 as demonstrated by a review of the CPD Freeman Summary and Fraiser's Power Point presentation.

Closing Argument: Similarly, Fraiser's closing argument was not evidence in the criminal trial and therefore cannot be used to defeat summary judgment here. Moreover, the portions of Frasier's closing argument cited by Plaintiffs which they attempt to attribute

---

[33] DKT # 287, Vidocq Motion, FN 48-51; 54-59; 62-63
[34] DKT # 328, Plaintiffs Response, at FN 38 and 39

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

to Walter's Power Assertive Personality profile, were part of the CPD and Frasier's theory of the case long before Vidocq and Walter became involved. Again, this theory is detailed in the CPD Summary that Dannels presented at the Vidocq luncheon and includes that: there was an altercation between McGuffin and Freeman, Freeman lost a shoe, Freeman ended up with a bloody lip or nose, and Freeman was heard screaming.[35]

### 2. Walter's alleged crime narrative had no bearing on the indictment, arrest, or prosecution of McGuffin.

Contrary to Plaintiffs unsupported assertions, all information that Walter had about the Freeman homicide came from the CPD and Frasier. Walter did not develop any evidence on his own. The fact that Frasier's theory of the case and Walter's theory of the case may have aligned in some respects is not evidence that Walter's theory influenced Frasier such that it caused constitutional harm to Plaintiffs' - particularly in light of the Frasier's unrefuted testimony that neither Walter nor Vidocq had any bearing on the prosecution.

### 3. Walter did not "fabricate" blood evidence on Freeman's left shoe.

Contrary to Plaintiffs' misleading suggestion, there is no evidence that Walter ever had access to the physical evidence in this case nor did he ever physically alter evidence with respect to Freeman's shoes. Plaintiffs' actual objection is that Walter *reported* on the ABC 20/20 show that blood <u>existed</u> on the left shoe, when it did not. Walter's mistake in this regard does not amount to conduct causing constitutional harm to Plaintiffs. The ABC show was not introduced as evidence at trial and accordingly had no impact on the verdict.

---

[35] DKT # 293-1, Exh. 6 (CPD Freeman Case Summary); DKT 293-2 Exh. 18 (Power Point)

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 30

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Moreover, the mistake regarding which shoe had Freeman's blood on it was an error initially and inadvertently made by Kathy Wilcox with the OSP Crime Lab during the initial investigation in 2000. Wilcox corrected this mistake at trial.[36]

In sum, Plaintiffs have failed to establish constitutional harm caused by Walter. In the absence of a showing of such harm, Vidocq cannot be liable under §1983 based on its policies and practices under *Monell.*

> ### C. Plaintiffs have failed to show the necessary causal link between Vidocq's policies and Plaintiffs' alleged constitutional harm attributed to Walter.

Assuming arguendo that Walter's conduct did cause Plaintiffs' constitutional harm, to impose § 1983 liability against Vidocq, Plaintiffs must show a direct causal link between Vidocq's policy and Walter's conduct.  Generally, a municipality (or private party) is liable under *Monell* only if a municipal policy or custom was the "moving force" behind the constitutional violation. *Galen v. County of Los Angeles,* 477 F.3d 652, 667 (9th Cir.2007). In other words, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  As stated by the Supreme Court in *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown:*

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. (citations omitted)

520 U.S. 397, 405, 117 S. Ct. 1382 (1997)

---

[36] DKT # 314 (Walter Motion, at pp. 14).

Plaintiffs assert that Vidocq's policies and practices were insufficient with respect to training and supervision, that its confidentiality policy was unconstitutional, that Walter was a Vidocq policy maker, and that Vidocq ratified Walter's conduct. Vidocq addresses each of these assertions below.

### 1. Alleged insufficient policies regarding training/supervision

A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. *Tsao,* 698 F.3d at 1143, citing *Oviatt v. Pearce,* 954 F.2d 1470, 1477 (9th Cir.1992). To establish a policy of omission, plaintiffs must make two showings (1) that the insufficient policy amounts to "deliberate indifference" to the plaintiff's constitutional right and (2) and that the policy caused the violation, in that the municipality (or private entity) could have prevented its employee's violation with an appropriate policy." *Id*., citing *Gibson,* 290 F.3d, 1175, 1194 (2002) (overruled on other grounds).

"Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor (or private entity) disregarded a known or obvious consequence of his action. A showing of simple or even heightened negligence will not suffice. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.,* 520 U.S. 397 at 410. In a failure to train or supervise case, a showing of deliberate indifference requires proof that the municipality (or, here the private entity) disregarded a known or obvious consequence of its failure to train or supervise its employees. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bd of Comm'rs of Bryan Cnty,* 520 U.S. at 410 (1997)). It is "ordinarily necessarily" to demonstrate a pattern of constitutional violations to make out a *Monell* claim based on a

failure to train or supervise. *Connick, 563 U.S* at 62. Such proof shows that policymakers were on notice regarding the constitutional deficiencies of a training or supervision program and chose to perpetuate it. *Id.*

**a. The absence of a training policy on *Brady* did not cause constitutional harm to Plaintiffs.**

Plaintiffs argue that Vidocq should have had a training policy regarding *Brady's* obligations to turn over exculpatory and impeachment material to the defense because Vidocq's members "are part of a law enforcement teams that provide evidence to prosecutors and courts on a regular basis." Plaintiffs contend that Vidocq's failure to implement such a policy amounts to "deliberate indifference" of their constitutional rights.

First, Plaintiffs' assertion regarding Vidocq's role in assisting law enforcement with respect unresolved homicides - is a blatant misstatement of the established record.[37] Vidocq is not part of law enforcement teams, does not develop evidence, and does not regularly provide evidence to prosecutors or the courts.  Vidocq is a private non-profit organization made up of volunteers with expertise in the criminal justice system. It acts as an independent pro bono consultant to law enforcement, to share expertise that might be helpful in solving their cold cases and views this work as a public service to society. Because Vidocq does not gather or develop evidence and because Vidocq is a private entity which has no obligations under *Brady*, the fact that it does not have a *Brady* policy is not evidence of deliberate indifference to Plaintiffs' constitutional rights.

---

[37] DKT # 287, Vidocq Motion, pp. 17-18, FN  20-32.

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Second, Plaintiffs have not produced any evidence that Walter suppressed any evidence in his possession that would be governed by *Brady.* All evidence regarding his involvement in the Freeman case, including his journal articles, were provided by Frasier to his defense counsel and his theories were well known. Hence, the absence of any training policy regarding *Brady* did not cause and was not the driving force any constitutional harm suffered by Plaintiffs.

### b. The absence of *other* unspecified types of training policies did not cause constitutional harm to Plaintiffs.

Plaintiffs argue that Vidocq showed "deliberate indifference" to McGuffin's constitutional rights because it lacked a general policy to train and supervise Walter in light of its knowledge of *Drake v. Portundo* opinion in which Walter was disqualified as an expert witness in 2009.[38] Plaintiffs provide no explanation as to what specific training they contend would be necessary to avoid constitutional harm. Their argument is without merit.

First, the *Drake* opinion has nothing to do with Vidocq or with Walter's membership in Vidocq. In *Drake,* Walter was privately retained as an expert witness by a prosecuting attorney in Niagara County in New York State and was acting in his personal capacity and not as a member of Vidocq. Vidocq is not mentioned in the case. The fact that the second circuit excluded Walter's opinions based on the court's conclusion that Walter exaggerated his credentials and advanced a questionable psychological theory has nothing to do with Vidocq and is not evidence that Vidocq demonstrated "deliberate indifference" to the constitutional rights of McGuffin or any other accused. This is particularly so when Walter

---

[38] Drake v. Portundo, 553 F3d. 230 (Second Cir. 2009)

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

was not called as an expert witness in the McGuffin case. The *Drake* opinion had absolutely no bearing on McGuffin's criminal trial. The idea that Vidocq should have adopted a policy to train its members, acting in their professional capacities, in their respective fields, and outside of their participation in Vidocq in order to prevent a potential violation of a citizen's constitutional rights is not an obligation federal courts have endorsed.

Second, Plaintiffs' argument begs the question as to what exactly Vidocq should have trained Walter to do or not do? To not exaggerate his credentials when providing expert testimony in his personal capacity on matters that have nothing to do with Vidocq? Notably, Vidocq as an entity does not have the expertise to train Walter regarding his expertise in psychology – nor the expertise to train any of its other members who have expertise in other fields.

Third, Plaintiffs ignore Vidocq's affirmative policy as set forth in its Code of Ethics regarding the professionalism expected of members. Specifically, in terms of their personal conduct, members are required to: "At all times during the performance of their services conduct themselves in such a manner as to not discredit themselves or the Vidocq Society."[39] And finally, contrary to Plaintiffs' assertion, Vidocq did conduct an independent investigation of Walter regarding the *Drake* opinion, consistent with its policies, as did the American Academy of Forensic Scientists of which Walter was a member, and both cleared Walter of any wrongdoing.[40]

---

[39] DKT #293-1 (Code of Ethics, pp. 2-3)
[40] Supp MAS Decl. at Exh. 35 (Correspondence re: various investigations)

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 35

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

In sum, Plaintiffs have not shown the heightened state of mind required to demonstrate "deliberate indifference" nor the necessary causal link between Vidocq's allegedly insufficient polices and any constitutional harm.

### 2. Vidocq' confidentiality policy is not unconstitutional.

Plaintiffs argue that Vidocq's confidentiality policy violates *Brady,* is unconstitutional, and that the policy led to the suppression of the Freeman Synopsis. This argument fails.

On its face, Vidocq's confidentiality policy does not pertain *Brady* material as it is narrow in scope. Specifically, the policy applies only to information that Vidocq receives from law enforcement. It requires that Vidocq members keep that information confidential to protect the law enforcement's ongoing investigation. To the extent law enforcement provides *Brady* material to Vidocq, the law enforcement agency is the entity that has the *Brady* obligation. Because Vidocq does not have information outside what is provided by law enforcement, including other evidence that might be discovered in the course of an investigation, its confidentiality policy does not implicate any *Brady* material.

Moreover, Vidocq's confidentiality policy had no bearing on the disclosure or non-disclosure of the Freeman Synopsis, regardless of when exactly it was written. It is undisputed that Vidocq was unaware of the existence of Synopsis until its author (Bornhoffen) became incapacitated in 2013, two years after McGuffin's sentencing.[41]

Further, there is nothing new in the Freeman Synopsis and therefore, it is not reasonably probable that had the Synopsis been given to McGuffin's defense counsel prior

---

[41] Dkt # 343 -1 (Cohan Dep)

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 36

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

to trial, that the outcome of the jury's verdict would been different. All of the information in the Synopsis was provided to McGuffin's defense counsel prior to trial. This includes information provided from the CPD Case Summary and Frasier's Power Point presentation, Walter's journal articles, and information publicized in the ABC 20/20 show, of which McGuffin's defense counsel was aware.[42]

Finally, *Brady* requires the prosecution and the police to disclose evidence to the accused that is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 S. Ct. 1194 (1963) This includes exculpatory evidence and impeachment evidence. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375 (1985). Even assuming Vidocq, as a private entity, could arguably be tasked with *Brady* obligations, Plaintiffs fail to identify any part of the Freeman Synopsis that was favorable to McGuffin or could be viewed as exculpatory or impeachment evidence.

In sum, Plaintiffs have failed to show the necessary causal link between Vidocq's confidentiality policy and Plaintiffs' alleged constitutional harm.

### 3. There is no evidence to support Plaintiffs' theories that Walter was a policy maker or that Vidocq ratified Walter's conduct.

The evidence is undisputed that Walter was not an official policy maker for Vidocq at the time he was involved in the Freeman case. He was invited to attend board meetings

---

[42] Dkt 343-5 (McCrea Dep)

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

in 2012 as an ex-offico member - after McGuffin had been convicted and sentenced) - but did not have voting rights. Accordingly, Walter never held a policy making role at Vidocq.[43]

Regarding Plaintiffs' ratification argument, it is unclear what specifically they contend Vidocq did to ratify Walter's conduct with respect to his role as a Vidocq member in the Freeman case, such that it became official policy of Vidocq and causing constitutional harm to Plaintiffs. The argument is both vague and conclusory, making a response impossible.

## IV.    A Reasonable Jury Could Not Find Vidocq Liable for SM's Loss of Parental Consortium Under §1983 or Oregon State Law.

Plaintiffs do not dispute that SM's loss of consortium claims under both federal and state law are derivative of her father's claims and they only survive if McGuffin is successful on his direct claims.

Regarding S.M.'s loss of consortium claim under Oregon state law, although this Court previously ruled in the context of a Rule 12(b) motion that S.M. had adequately pled her claim for loss of consortium, no Oregon court has affirmatively held that a loss of parental consortium claim exists, outside a claim for wrongful death under ORS 30.020. The Oregon Supreme Court case on the subject is binding precedent. *Norwest, By & Through Crain v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 569, 652 P.2d 318 (1982).

While *Norwest* recognized the potential for a loss of parental consortium claim by a child, the Court indicated there would need to be a showing that a plaintiff's injury "has

---

[43] DKT # 297 Vidocq Motion, FN 30-32

a legal source besides its foreseeability." *Id*. at 569. Oregon courts have only allowed three

avenues through which a plaintiff may attempt to assert a claim for emotional damages: (1)

when they are physically injured; (2) when the defendant acted intentionally in causing

emotional damage; and (3) when a defendant negligently causes foreseeable, serious

emotional distress and also infringes some other legally protected interest. *Philibert v.*

*Kluser,* 360 Or. 698 702-703, 385 P.3d.1038 (2016) (citing *Norwest*, 293 Or. at 569). SM

has neither alleged nor shown any of these bases for recovery. The other two cases cited by

the Court do not concern loss of parental consortium. *Shoemaker v. Management*

*Recruiters, Int'l*, 125 Or. App. 568 572 (1993) concerns loss of spousal consortium. *House*

*v. Hicks*, 218 Or. App. 360 (2008) concerns intentional infliction of emotional distress

damages.

## V.    A Reasonable Jury Could Not Find Vidocq Liable for Plaintiffs' State Law Claims

### A.    Underline[False Imprisonment]: Vidocq did not Direct or Influence McGuffin's Imprisonment

Plaintiffs argue that liability for false imprisonment can extend to one who

instigates the confinement by directing, inviting, or influencing the decision maker. In

*Pearson v. Galvin,* 253 Or. 331,335-37, 454 P.2d 638 (1998) cited by Plaintiffs, the court

held that Plaintiffs must show that the person accused of false imprisonment "participated

by taking *an active part* in the arrest." Plaintiffs fail to cite to any evidence that Vidocq

engaged in such conduct. The fact that Plaintiffs' claim of false imprisonment claim

survived a Rule 12(b) motion to dismiss, is not determinative of the issue on summary

judgment, given the different standards that apply. *Wilkins v. United States,* CV 18-147-M-

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 39

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

DLC, 2024 WL 4680696, at *3 (D. Mont. Nov. 5, 2024), citing *Leibel v. City of Buckey*, 556 F. Supp. 3d 1042, 1057 (D. Ariz. 2021). The unrefuted deposition testimony of both Chief Dannels and Frasier, which testimony was not before the Court on Vidocq's motion to dismiss, establishes that Vidocq's involvement in the Freeman case played no role in the decision to arrest and confine McGuffin. The claim should be dismissed.

      **B.**   <u>**Malicious Prosecution**</u>**: Neither Vidocq nor Walter instigated or encouraged McGuffin's indictment.**

Plaintiffs' response clarifies that their claim for malicious prosecution concerns only the grand jury's indictment of McGuffin and does not concern his prosecution at trial. Moreover, the claim is premised solely on Walter's conduct, acting as Vidocq's alleged agent, and that Walter instigated or encouraged McGuffin's indictment by fabricating evidence and withholding exculpatory evidence.

First, as explained above, there is no evidence that Walter fabricated or suppressed any evidence or that he "partnered" with Oregon law enforcement to fabricate and suppress evidence in an effort to convince the Frasier to pursue an indictment of only McGuffin.

Second, Frasier's unrefuted testimony demonstrates that neither Walter nor Vidocq's involvement in the Freeman case had any influence whatsoever regarding Frasier's exercise of his independent prosecutorial authority. This includes Frasier's testimony that: (1) Weeks prior to the convening grand jury proceedings, Frasier severed all ties with Walter and Vidocq and expressly rejected Walter's Power Assertive Personality profile as being inapplicable to the facts of the Freeman homicide; (2) Frasier did not ask the grand jury to indict McGuffin specifically, but instead them if anyone should be indicted and if so who; and (3) That the decision to initiate grand jury proceedings (and

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

subsequently to prosecute McGuffin) was Frasier's alone, consistent with his prosecutorial authority and that neither Walter nor Vidocq had any influence on his decision.

Plaintiffs nonetheless argue there is a question of fact for the jury regarding Walter's influence on Frasier with respect to his decision to seek an indictment. In support of their argument, Plaintiffs' point to statements made by Walter on the ABC 20/20 show that aired in October 2010 – three months after the jury returned an indictment. Regardless of what was said on the 20/20 show, given the timing it could not have influenced Frasier's independent decision to convene a grand jury. Moreover, Plaintiffs cannot create an issue of fact by challenging Frasier's credibility with respect to his sworn deposition testimony. There simply is no evidence that Walter or Vidocq's involvement in the Freeman case had any influence on Frasier's decision to convene a grand jury and seek an indictment.

**C.**      <u>Civil Conspiracy</u>**: Neither Walter nor Vidocq engaged in a conspiracy to fabricate evidence.**

Plaintiffs argue that Walter "joined the conspiracy" with the Municipal Defendants to fabricate evidence that would result in the indictment, prosecution, and conviction of McGuffin, and that Vidocq recorded and documented the agreement in the Freeman Synopsis. No reasonable jury could find Vidocq nor Walter liable for conspiracy under Oregon law.

First as explained above, there is no evidence that Vidocq or Walter fabricated evidence.

Second, Plaintiffs have failed to produce any evidence that Vidocq or Walter knew of or supported any unlawful objective during their brief consultation with the CPD and

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 41

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

Frasier. Notably, Plaintiffs have not cited any direct evidence linking Vidocq or Walter to any alleged conspiracy with the CPD or other Municipal Defendants.

Third, there is no circumstantial evidence that suggests the necessary "meeting of the minds" to violate Plaintiffs' rights. Plaintiffs' reliance on the Freeman Synopsis, arguing that it "documents the agreement between Walter and the Municipal Defendants to fabricate evidence" is belied by words in the Synopsis is itself. There simply is no reference anywhere in the Synopsis regarding any agreement to fabricate evidence nor have Plaintiffs identified any specific language that demonstrates such an agreement. Moreover, Frasier's decision to sever all ties with Walter and Vidocq prior to the convening of grand jury proceedings is evidence of the *absence* of a meeting of the minds.

### D.    <u>Negligent Training/Supervision</u>: Vidocq owed no duty to Plaintiffs to train or supervise Walter.

Plaintiffs' argument regarding negligent training and supervision is premised on an alleged agency relationship between Vidocq and Walter. Plaintiffs implicitly concede that Walter was not employed by Vidocq as previously alleged, but instead was only a volunteer member of Vidocq.

Even assuming that Walter was acting as Vidocq's agent with respect to the Freeman case, Plaintiffs have failed to cite any legal authority under Oregon law that a private non-profit organization such as Vidocq owes a duty to a third party, who may in the future be accused of a crime, to train and supervise its volunteer members. The assertion of the claim by Plaintiffs begs the question: What exactly should Vidocq have trained its volunteers to do? And, how should Vidocq have supervised those volunteers?

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 42

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

In their response Plaintiffs contend that Vidocq should have trained and supervised Walter to prevent "the type of harm that befell Plaintiffs" - an assertion so nebulous as to be meaningless. Plaintiffs fail to explain what kind of training Vidocq should or could have provided to Walter, a psychologist, when Vidocq itself is not an organization of psychologists.

Furthermore, as explained above, there is no evidence that any harm actually "befell" Plaintiffs that was caused by Vidocq or Walter conduct, given Frasier and Dannels unrefuted testimony that their involvement had no effect on the investigation, indictment, or prosecution of McGuffin.

E.    **Negligent/Intentional Infliction of Emotional Distress: Neither Vidocq nor Walter acted or intended to act to cause Plaintiffs' emotional distress.**

Plaintiffs' argument regarding infliction of emotional distress is also premised on an alleged agency relationship between Vidocq and Walter. Plaintiffs' argument constitutes an implicit concession that they are not asserting an independent emotional distress claim against Vidocq.

Assuming arguendo that Walter was acting as Vidocq's agent, the premise of Plaintiffs' emotional distress claim rests on the assumption that Walter fabricated evidence for purposes of securing McGuffin's indictment, prosecution and conviction – and that this conduct amounts to an "extraordinary transgression of the bounds of socially tolerable conduct". The flaw with Plaintiffs claim is that they have failed to produce evidence supporting the fabrication argument as explained above. Moreover, given Frasier's and Dannels' undisputed sworn testimony that neither Walter nor Vidocq's conduct influenced

the handling of the Freeman case, their conduct cannot be the cause of Plaintiffs' emotional distress.

Furthermore, Plaintiffs have failed to produce any evidence sufficient to create an issue of material fact with respect to the intent element of their emotional distress claim i.e., that Walter "desired" to cause emotional distress to Plaintiffs. The fact that Walter consulted with the CPD regarding the Freeman case is clearly not sufficient to prove Walter's intent that such consultation was certain or substantially certain to cause severe emotional distress to Plaintiffs. Moreover, the statements attributed to Walter on the ABC 20/20 television show, do not concern these specific Plaintiffs and they are insufficient to show the necessary intent with respect to these Plaintiffs. In addition, statements by Walter that he supports seeing a guilty party arrested does not constitute an "an extraordinary transgression of the bounds of socially tolerable conduct." Most people would agree with that sentiment and it is consistent with the overall duties of law enforcement.

**F.    Spoilation of Evidence: Vidocq did not spoil evidence**

At the outset, Plaintiffs do not dispute that spoliation of evidence is not a recognized cause of action in Oregon but, at best, only gives rise only to an evidentiary presumption. The case referenced by Plaintiffs in their response, *Halsey v. Airbus Helicopters S.A.S.,* 6:24-CV-00649-MC, 2025 WL 318744, at *6 (D. Or. Jan. 28, 2025), does not decide whether an independent spoliation claim exists.

Plaintiffs have failed to cite any evidence that Vidocq suppressed or destroyed any evidence that was favorable to McGuffin such that an evidentiary presumption is warranted. As explained above and in Vidocq's motion and as shown by the established

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 44

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

record, all material regarding Vidocq's involvement in the Freeman case was provided to McGuffin's defense counsel prior to trial. In addition, regardless of whether the Freeman Synopsis was written over time or after McGuffin's trial had concluded, all information in the Synopsis came from the CPD or Frasier and was provided to McGuffin's defense counsel prior to trial.[44]

Plaintiffs' newest hypothesis is that a jury might find that Vidocq destroyed *other* evidence that was somehow favorable to McGuffin, including hypothetical handwritten notes prepared by Vidocq members during the Philadelphia lunch meeting and business records showing Vidocq authorized Walter's trip to Coquille. Plaintiffs do not explain how such documents would be favorable to McGuffin or relevant to his claim that he was wrongly convicted. The suggestion that other favorable documents may have existed but were destroyed is pure speculation, without any evidentiary support, and is insufficient to create a material issue of fact.

## VI. Collateral Estoppel Operates to Bar Plaintiffs' Claims.

### A. Vidocq has not waived the collateral estoppel defense.

The fact that Vidocq did not assert collateral estoppel as an affirmative defense in its answer, does not operate as a waiver. The Ninth Circuit has repeatedly held that an affirmative defense, including collateral estoppel, can be raised for the first time in a dispositive motion if the plaintiff is not unfairly surprised or prejudiced. *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984); *Lowerison v. Yavno*, 26 Fed. Appx. 720 (9th

---

[44] DKT # 342 (Walter Reply at pp. 15); DKT # 293-1, Exh 6 (CPD Freeman Case Summary); DKT # 293-2, Exh 18 (Power Point Presentation)

Cir. 2002); *Bates v. City of San Jose*, 359 Fed. Appx. 771 (9th Cir. 2009). Plaintiffs have responded substantively to Vidocq's argument regarding its issue preclusion/collateral estoppel defense, demonstrating they have not been prejudiced.

**B.    Vidocq has satisfied the elements of issue preclusion.**

**1.    The fundamental issue in the prior PCR proceeding and the current civil suit are the same.**

To succeed on his PCR claim based on alleged constitutional violations, McGuffin, as the petitioner, was required to show:

> A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.

Thus, in the PCR proceeding McGuffin was required to show both a denial of his constitutional rights, and that said denial caused the conviction to be void. While the statute does not expressly state that McGuffin was required to prove *who* caused the denial of his constitutional rights, in practice that is exactly what he tried to show, by pointing to improper conduct by his trial counsel, appellate counsel, and the state prosecuting attorney whose conduct he claimed resulted in a denial of his constitutional rights. The PCR court ruled on those issues and specifically identified conduct by trial counsel and the prosecuting attorney that caused prejudice to McGuffin in that, on a more-than-mere-possibility basis, that conduct effected the outcome the trial, thereby warranting the vacation of his conviction and remand for a new trial. In other words, the court found a causal link between the challenged conduct of counsel and prejudice to McGuffin which rendered his conviction was void i.e. wrongful.

In the present case, Plaintiffs are asserting the same basic claim against Vidocq, that Vidocq's conduct caused a violation of McGuffin's constitutional rights which, resulted in McGuffin's wrongful conviction.

### 2. Given the unique nature of the PCR proceedings and its explicit waiver provision, the issue of whether Vidocq's conduct caused a violation of McGuffin's constitutional rights was "actually litigated."

Relevant to the question of whether Vidocq's conduct caused a violation of McGuffin's constitutional rights leading to his wrongful conviction was "actually litigated" in the prior PCR proceeding, is the PCHA's express provision related to waiver. Specifically, ORS 138.550(3) states that grounds for relief that were not raised in the original or amended petition *are deemed waived*. ORS 138.550(3). The petitioner is responsible for ensuring that *all* the issues the petitioner wants litigated in a post-conviction proceeding are brought to the attention of the post-conviction court. The petitioner may not sit by and later complain if the post-conviction lawyer fails to raise all issues that the petitioner wants raised. *Miller v. Baldwin*, 176 Or. App 500, 507, 32 P.3d 234 (2001).

As explained in Vidocq's motion, McGuffin's Third Amended Petition included allegations related to Vidocq's involvement in the Freeman case and the state prosecuting attorney's failure to disclose materials regarding that involvement. In response to the state's motion for summary judgment – a contested motion - McGuffin withdrew and effectively abandoned his claims pertaining to Vidocq's involvement. While the withdrawal of such claims might not have preclusive effect in the context of a general civil proceeding, that is not the case in a PCR proceeding, given the explicit waiver language of the PCHA. McGuffin's withdrawal and abandonment of his claims related to Vidocq's involvement in

the Freeman case clearly operates as a waiver of those claims and a bar against assertion

of them later, based on ORS 138.550(3).

## VII. CONCLUSION

Based on the aforementioned reasoning and argument and Vidocq's Motion, there

is no genuine issue of material fact regarding Plaintiffs' claims against Vidocq.  Vidocq

reaffirms its motion for summary judgment and asks the Court to dismiss all claims against

Vidocq with prejudice.

DATED this 18th day of March, 2025.

HWS LAW GROUP

BY: */s/ Meredith A. Sawyer*
Anthony R. Scisciani III, OSB No. 070013
ascisciani@hwslawgroup.com
Meredith A. Sawyer, *pro hac vice*
msawyer@hwslawgroup.com
Kelsey L. Shewbert, OSB No. 221063
kshewbert@hwslawgroup.com
Lisa Lear, OSB No. 852672
llear@hwslawgroup.com
Attorneys for Defendant Vidocq Society

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 48

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Oregon, that the following is true and correct:

I am employed by the law firm of HWS Law Group.

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document(s) to which this is attached, in the manner noted on the following person(s):

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| **CO / Plaintiffs**<br>Janis C. Puracal<br>Andrew C. Lauersdorf<br>Maloney Lauersdorf Reiner PC<br>1111 E. Burnside Street, Suite 300<br>Portland, OR 97214 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>jcp@mlrlegalteam.com<br>acl@mlrlegalteam.com<br>cv@mlrlegalteam.com<br>ms@mlrlegalteam.com |
| **CO / Plaintiffs**<br>David B. Owens, *Pro Hac Vice*<br>Loevy & Loevy<br>100 S. King Street, Suite 100<br>Seattle, WA 98104-2885 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>david@loevy.com |
| **CO / Defendants City of Coquille, City of Coos Bay, Coos County, Craig Zanni, Chris Webley, Eric Schwenninger, Sean Sanborn, Ray McNeely, Kris Karcher, Pat Downing, Mark Dannels, Kip Oswald, Michael Reaves, David Zavala, Anthony Wetmore and Shelly McInnes**<br>Robert E. Franz, Jr.<br>Sarah R. Henderson<br>Law Office of Robert E. Franz, Jr.<br>PO Box 62<br>Springfield, OR 97477 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>rfranz@franzlaw.comcastbiz.net<br>shenderson@franzlaw.comcastbiz.net |
| **CO / Defendants John Riddle, Susan Hormann, Mary Krings, Kathy Wilcox, and Oregon State Police**<br>Jesse B. Davis<br>Todd Marshall<br>Kristen Hoffmeyer<br>Oregon Department of Justice<br>100 SW Market Street<br>Portland, OR 97201 | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via Overnight Mail**<br>☒ **Via Court E-Service, if applicable**<br>jesse.b.davis@doj.oregon.gov<br>todd.marshall@doj.oregon.gov<br>kristen.hoffmeyer@doj.oregon.gov<br>maureen.a.mccarthy@doj.oregon.gov<br>jennifer.burdick@doj.oregon.gov |

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 49

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248

| **CO / Defendant Richard Walter**<br>Eric S. DeFreest<br>Luvaas Cobb<br>777 High Street, Suite 300<br>Eugene, OR 97401 | ☐    **Via U.S. Mail**<br>☒    **Via E-Mail**<br>☐    **Via Overnight Mail**<br>☒    **Via Court E-Service, if applicable**<br>edefreest@luvaascobb.com<br>KWorkman@luvaascobb.com |
|---|---|
| **CO / Defendant Richard Walter**<br>Laura E. Coffin<br>Coffin Law<br>541 Willamette St Ste 211<br>Eugene OR 97401<br>541-325-8080 | ☐    **Via U.S. Mail**<br>☒    **Via E-Mail**<br>☐    **Via Overnight Mail**<br>☒    **Via Court E-Service, if applicable**<br>lauracoffin@coffin.law |

DATED this 18th day of March, 2025.

/s/ Caroline Bryant
Caroline Bryant, Legal Assistant

DEFENDANT VIDOCQ SOCIETY'S REPLY TO PLAINTIFFS'
RESPONSE TO VIDOCQ SOCIETY'S MOTION FOR SUMMARY
JUDGMENT -Page 50

**HWS LAW GROUP**
101 SW MAIN STREET, SUITE 1605
PORTLAND, OR 97204
P: (503) 542-1200 F: (503) 542-5248